Joshua N. Eppich
Texas Bar I.D. No. 24050567
J. Robertson Clarke
Texas Bar I.D. No. 24108098
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR**
**DEBTOR AND DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NAVARRO PECAN COMPANY, INC., | § | CASE NO. 23-40266-elm11 |
| | § | |
| Debtor.[1] | § | |
| | § | |
| | § | |

### DEBTOR'S MOTION FOR ORDER
### AUTHORIZING PAYMENT OF CRITICAL PRE-PETITION CLAIMS

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 WEST TENTH STREET, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON MARCH 15, 2023, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH**

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109. The Debtor's facilities are located at 2131 East Highway 31, Corsicana, Texas 75109.

**HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned proposed counsel, respectfully submits this *Debtor's Motion for Order Authorizing Payment of Certain Pre-Petition Claims* (the "**Motion**") and submits the following:

## I.      RELIEF REQUESTED

1.      The Debtor seeks the entry of an order (the "**Order**"), substantially in the form attached as **Exhibit A**, granting the Debtor the authority, but not the direction, to pay certain pre-petition, unsecured claims identified in this Motion (each a "**Critical Vendor**," and together, the "**Critical Vendors**")[2] in exchange for a Critical Vendor's agreement to continue to provide the Debtor goods and services on a post-petition basis, as more specifically defined below. The Debtor seeks to pay the Critical Vendors in an aggregate amount not to exceed $899,679.55 (the "**Critical Vendor Cap**"). The Critical Vendors are essential to the Debtor and preservation of its estate. Expedient payment of their claims is necessary to avoid immediate and irreparable harm. The Debtor submits the *Declaration of Brad Walker in Support of the Motion* (the "**Walker Declaration**"), attached as **Exhibit B**, to support the Motion.

## II.      JURISDICTION

2.      This Court has jurisdiction over this Chapter 11 case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, dated August 3, 1984. This is a core

---

[2] A Detailed list of the Critical Vendors and their claims is attached as **Exhibit C** to this Motion.

proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for relief are Sections 105(a), 363, and 1107(a) of Title 11 of the United States Code[3] and Bankruptcy Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### III.    BACKGROUND

3.    On January 30, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11. The Debtor is operating its business and managing is properties as a debtor in possession per to Sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made, and no official unsecured creditors committee has been appointed.

4.    A detailed description of the Debtor, its business, and the facts and circumstances supporting the Motion and this Chapter 11 case is set forth in greater detail in the *Declaration of Brad Walker in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**"), which was filed on the Petition Date.

### IV.    DISCUSSION

**A.    Identification of the Critical Vendors and Amounts Owed**

5.    Before filing this Motion, the Debtor examined various creditors to determine whether payment of a claim: (i) was necessary; (ii) would avoid immediate and irreparable harm to the Debtor; and (iii) would ensure that the Debtor could continue to operate in the ordinary course. To identify vendors qualifying as critical, the Debtor reviewed the overall impact on its business or the pending sale if a vendor immediately ceased providing the Debtor goods or services. Once the Debtor identified the Critical Vendors, it estimated the total, necessary payments to ensure the continued supply of vital goods and services to the Debtor and further

---

[3] All statutory references in this Motion are to the Title 11 of the United States Code unless directed otherwise.

considered (i) its urgent need to receive those goods or services uninterrupted, (ii) its ability to find additional sources to provide goods or services, and (iii) the likelihood that a Critical Vendor or alternate vendor (if available) would extend trade terms post-petition despite the Debtor's failure to pay such vendors' pre-petition outstanding trade debt. Based upon those considerations, the Debtor identified the Critical Vendors set forth on Exhibit C.

6.       Importantly, the vast majority of the proposed payments to Critical Vendors are for the Debtor's primary suppliers of in-shell pecans, Easterlin Pecan Company, Pecan Producers Inc., and U.S. Pecan Trading Co. Ltd. (the "**Vendors**"). These Critical Vendors are owed substantially more than the proposed payments, and the proposed payments relate only to recent deliveries of pecans. The Debtor is ***not*** requesting authority to pay the Vendors' full pre-petition claims.

7.       The Critical Vendors are not insiders of, related to, or affiliated with the Debtor.

**B.       Necessity of paying the Critical Vendors and consequences of not paying**

8.       To operate, the Debtor depends on the Critical Vendors who regularly provide the Debtor with pecans or related services. These goods and services are necessary to maintain the Debtor's operations and estate's value. If the Debtor cannot immediately pay the Critical Vendors, they will not provide goods or services post-petition, which would greatly harm the Debtor and its estate.

9.       Immediate payment of the Critical Vendors is also essential to the Debtor's proposed sale. As further detailed in the First day Declaration, the Debtor is pursuing a sale to benefit all creditors. Paying the Critical Vendors is vital to the terms of the proposed sale.

**C.       There are no alternatives to the Critical Vendors**

10.      The Debtor has considered alternatives to the Critical Vendors. In the Debtor's business judgment, it has determined that one of four conditions exists that excludes alternative vendors. First, no an alternative vendor exists to provide these goods or services. Second, the cost

to switch to another vendor would be prohibitive. Third, there are no alternate terms a Critical Vendor will agree to other than payment of its claim to continue providing goods and services. Fourth, the Debtor's proposed sale requires payment of these Critical Vendors as part of the consideration in order to maintain the business operations of the Debtor.

**D.        The Debtor's and Critical Vendors' relationship post-petition**

11.        The Debtor seeks further authorization—in order to procure a Critical Vendor's goods or services—to negotiate, via written agreement, different trade terms with any Critical Vendor as a condition to payment to any Critical Vendor's claim during this Chapter 11 case. Once accepted by a Critical Vendor, such agreed terms shall govern the parties' post-petition trade relationship (the "**Trade Agreement**"). For those Critical Vendors who agree to provide goods or services to the Debtor on different terms from their customary terms with the Debtor, (the "**Customary Trade Terms**"), the Debtor reserves the right to seek written acknowledgment of such terms.

12.        If a Critical Vendor refuses to comply with Customary Trade Terms or any Trade Agreement following payment of a Critical Vendor, without further Court order, the Debtor seeks the authority to: (i) declare that any Trade Agreement or Customary Trade Terms between the Debtor and Critical Vendor is terminated and (ii) declare that any payments made to a Critical Vendor on account of its pre-petition claim be deemed to have been in payment of the then outstanding, post-petition claims of such Critical Vendor without further Court order. If the Debtor exercises either right in the preceding clauses, the Debtor desires to return the parties to their respective positions immediately prior to the entry of the Order.

## VI.    **BASIS FOR RELIEF**

### A.    **Authority regarding Critical Vendors**

13.    Section 105(a), in conjunction with Section 1107(a), allows a debtor-in-possession to pay pre-petition creditors post-petition. *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004).

14.    To pay the Critical Vendors, the Debtor must show that (1) continuing to deal with them is critical; (2) not dealing with them creates a risk of harm or loss of economic advantage to the debtor's estate that is disproportionate to their claim; and (3) there is no practical or legal alternative that the Debtor can use to deal with the Critical Vendor other than paying their claim. *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003); *CoServ*, 273 at 498.

15.    In addition, the "Doctrine of Necessity" permits a "bankruptcy court to authorize the payment of prepetition claims prior to confirmation." *In re C.A.F. Bindery*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996). To utilize the Doctrine of Necessity, however, "the powers granted by [Section 105(a)] must be exercised in a manner that is consistent with the Bankruptcy Code." *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.)*, 4 F.3d 1329, 1334 (5th Cir. 1993).

16.    "To get from [Section 105(a)] to the Doctrine of Necessity, the Court must find a bridge that makes application to the Doctrine of Necessity 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *CoServ*, 273 at 496–97.

### B.    **Basis for payment of Critical Vendors**

17.    "To meet this requirement debtor must show that, for one reason or another, dealing with the claimant is virtually indispensable to profitable operations or preservation of the estate." *CoServ*, 273 at 498.

18.    The Critical Vendors provide necessary goods and services that the Debtor relies on to operate. The Debtor's operations rely entirely on receiving in-shell pecans and shipping those

pecans before and after processing. Without the Critical Vendors, the Debtor and its day-to-day operations would suffer.

19.     Per the second element "a debtor must show that meaningful economic gain to the estate or the going concern value of the business will result or that serious economic harm will be avoided through payment of the prepetition claim, which itself is materially less than the potential loss to the estate or business." *Id.* at 498–99.

20.     Not paying the Critical Vendors would disproportionately harm the Debtor. Not paying the Critical vendors would harm the Debtor's operations, and could cause the Debtor miss a serious economic advantage with the proposed sale.

21.     "If payment is intended to assuage the claimant's concern about future dealings, a deposit, collect on delivery terms, payment on shipment and countless other devices are available that will not offend the general principle that prepetition claims should not be paid." *Id.* "On the legal side, if the claimant is bound to the debtor by contract, so long as the debtor performs post-petition, so must the claimant." *Id.*

22.     The Debtor has determined, in its business judgment, that there are no alternatives to obtain these goods and services other than paying the Critical Vendors. First, no alternative vendors exist that could provide the Debtor with the necessary pecans and related services. Second, even if other vendors existed, the cost to switch would be prohibitive. Third, these Critical Vendors will not accept alternate terms other than payment to continue providing their goods and services.

23.     The Court can also exercise its equitable powers under Section 105(a) consistent with the Bankruptcy Code and allow payment to the Critical Vendor. Specifically, Section 105(a), in conjunction with Sections 363(f) and 1107(a), allows the Court to authorize the payment to the Critical Vendors. Pursuant to Section 1107(a), the Debtor has determined—in its business

judgment—that the proposed sale under Section 363(f) is in the best interest of the estate and all creditors. Under the proposed sale, the Debtor must pay the Critical Vendors. The proposed sale is being made pursuant to the best interest of the estate and all its creditors. Therefore, payment of the Critical Vendors is in the best interest of the estate and its creditors.

## C.    Basis for immediate payment

24.    If the payment of the Critical Vendors constitutes use of property under Section 363(b), the Debtor seeks waiver of the notice requirement and fourteen-day stay under Bankruptcy Rule 6004. If applicable, the Debtor requests that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.

25.    The relief this Motion requests is necessary to avoid immediate and irreparable harm, so the Debtor can continue operating, preserve the value of the estate, and move forward with the proposed sale of assets. Obtaining immediate authorization to pay the Critical Vendors their claims is vital. Any further delay or interruption in the goods or services the Critical Vendors provide would immediately jeopardize the Debtor, its ability and generate revenue, and the value of the Debtor's assets.

26.    Accordingly, the Debtor seeks immediate authority, but not direction, pursuant to Sections 105(a), 363, and 1107(a), to pay the Critical Vendors.

## VII.    NOTICE

27.    The Debtor will provide notice of this Motion to: (i) the Office of the U.S. Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor; (iii) the Internal Revenue Service and any other governmental agencies required by applicable rules; (iv) the Critical Vendors listed in this Motion; and (v) any parties entitled to notice pursuant to the Local Rules. In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

8

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, grant the

relief this Motion request, and grant such other and further relief as may be just and proper.

Dated: February 22, 2023                    Respectfully Submitted,

/s/ *Joshua N. Eppich*
Joshua N. Eppich
Texas Bar I.D. No. 24050567
J. Robertson Clarke
Texas Bar I.D. No. 24108098
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 22, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Joshua N. Eppich*
Joshua N. Eppich

## Exhibit A

**"Proposed Order"**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NAVARRO PECAN COMPANY, INC., | § | CASE NO. 23-40266-elm11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

**ORDER GRANTING MOTION FOR ORDER
<u>AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION CLAIMS</u>**

On this date, the Court considered the *Debtor's Motion for Order Authorizing Payment of Certain Pre-Petition Claims* (the "**<u>Motion</u>**")[2] filed by Navarro Pecan Company, Inc., the Debtor in the above-captioned Chapter 11 case; and the Court having heard the statements of counsel in support of the relief requested by the Debtor in the Motion; and it appearing that granting the

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109. The Debtor's facilities are located at 2131 East Highway 31, Corsicana, Texas 75109.

[2] All capitalized terms not defined herein shall have the meaning given to them in the Motion.

1

Motion is in the best interests of the Debtor's estate; and due notice of the Motion having been given; and it appearing that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Debtor is authorized, in its sole discretion and in the reasonable exercise of its business judgment, to pay pre-petition claims of the Critical Vendors subject to the conditions set forth in this Order;

**ORDERED** that the Debtor's payment of the pre-petition claims of the Critical Vendors shall not exceed $899,679.55 (the "**Critical Vendor Cap**") in the aggregate unless the Court orders otherwise;

**ORDERED** that the Debtor shall undertake all appropriate efforts to cause each Critical Vendor to enter into a Trade Agreement with the Debtor as set forth in the Motion;

**ORDERED** that the Debtor may, in its sole discretion and business judgment, declare a Trade Agreement with a Critical Vendor to have terminated, together with the other benefits to the Critical Vendor as contained in this Order, on the date the Debtor delivers notice to the Critical Vendor that the Critical Vendor has not complied with the terms and provisions of the Trade Agreement or has failed to continue to provide Customary Trade Terms to the Debtor;

**ORDERED** that if a Trade Agreement is terminated, as set forth above, or a Critical Vendor who has received payment of a pre-petition claim later refuses to continue to supply goods or services to the Debtor on Customary Trade Terms during the pendency of the Chapter 11 case, the Debtor may, in its discretion and business judgment, declare that provisional payments made to the Critical Vendor on account of its pre-petition claim be deemed to have been in payment of the then-outstanding post-petition amounts owed to such Critical Vendor without further order of the Court or action by any person or entity;

2

**ORDERED** that, under the circumstances described in the preceding paragraph, a Critical Vendor shall then immediately repay to the Debtor any payments made to such Critical Vendor on account of its pre-petition claim to the extent that such payments exceed the post-petition amounts then owing to such Critical Vendor, without the right of setoff or reclamation, The express intentions of this Court are to return the parties to the status quo in effect as of the date of entry of this Order with respect to all pre-petition claims if a Trade Agreement is terminated;

**ORDERED** that the execution of a Trade Agreement by the Debtor shall not be declared a waiver of any other cause of action, including avoidance actions, that may be held by the Debtor;

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order;

**ORDERED** that, to the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived;

**ORDERED** that, notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof; and

**ORDERED** that, to the extent applicable, Bankruptcy Rule 6003 is satisfied.

**# # # END OF ORDER # # #**

Order submitted by:

Joshua N. Eppich
Texas Bar I.D. No. 24050567
J. Robertson Clarke
Texas Bar I.D. No. 24108098
Bryan C. Assink
Texas Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR THE
DEBTOR AND DEBTOR-IN-POSSESSION**

## **Exhibit B**

**"Walker Declaration"**

Joshua N. Eppich
Texas Bar I.D. No. 24050567
J. Robertson Clarke
Texas Bar I.D. No. 24108098
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR
DEBTOR AND DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NAVARRO PECAN COMPANY, INC., | § | CASE NO. 23-40266-elm11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

### DECLARATION OF BRAD WALKER IN SUPPORT OF THE MOTION

The following is a declaration under penalty of perjury made pursuant to 28 U.S.C. § 1746:

1.      My name is Brad Walker. I am over the age of twenty-one (21) and am competent to make this Declaration.

2.      I am the Chief Restructuring Officer of the above-captioned debtor and debtor-in-possession (the "**Debtor**").

3.      I submit this declaration in support of the *Debtor's Motion for Order Authorizing*

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109. The Debtor's facilities are located at 2131 East Highway 31, Corsicana, Texas 75109.

1

*Payment of Certain Pre-Petition Claims* (the "**Motion**")[2] filed by the Debtor in the above-numbered bankruptcy case and to apprise the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "**Court**"), of the matters contained in the Motion (the "**Declaration**").

4.    I have personal knowledge of each of the facts stated in this Declaration, except for those facts stated upon information and belief. As to those facts, I am informed that they are, and believe them to be, true. If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge, except where otherwise indicated below. To the extent that any information disclosed in this Declaration requires amendment or modification upon my completion of further analysis, a supplemental declaration will be submitted to the Court.

5.    I have read the Motion. To the best of my knowledge, the statements set forth in the it and exhibits attached to it are true and correct.

A.    **Critical Vendors**

  *i.*    ***Identification of the Critical Vendors and amounts owed***

6.    Before the Debtor filed the Motion, I examined various creditors to determine whether immediate payment of a claim: (i) was necessary; (ii) would avoid immediate and irreparable harm to the Debtor's; and (iii) would ensure that the Debtor could continue to operate in the ordinary course. To identify vendors qualifying as critical, I reviewed the overall impact on the Debtor's business if a vendor immediately ceased providing the Debtor goods or services. Once I identified the Critical Vendors, I estimated the total, necessary payments to ensure the continued supply of vital goods and services to the Debtor and further considered (i) the Debtor's urgent need to receive those goods or services uninterrupted, (ii) its ability to find additional sources to provide

---

[2] Capitalized terms used but not otherwise defined in this Order shall have the meaning set forth in the Motion.

the goods or services, and (iii) the likelihood that a Critical Vendor or alternate vendor (if available) would extend trade terms post-petition despite the Debtor's failure to pay such vendors pre-petition outstanding trade debt. Based upon those considerations, the Debtor identified the Critical Vendors and total estimated outstanding claims:

| Easterlin Pecan Company | $287,703.09 |
| Pecan Producers Inc. | $176,154.31 |
| U.S. Pecan Trading Co. Ltd | $364,439.79 |
| Bruce Roy | $71,382.36 |
| **TOTAL** | **$899,679.55** |

7.      The Critical Vendors are not insiders of, related to, or affiliated with the Debtor.

### ii.      *Necessity of paying the Critical Vendors and consequences of failing to pay*

8.      To operate, the Debtor depends on the Critical Vendors who regularly provide the Debtor with pecans or related services. These goods and services are necessary to maintain the Debtor's operations and estate's value. If the Debtor cannot immediately pay the Critical Vendors, they will not provide goods or services post-petition, which would greatly harm the Debtor and its estate.

### iii.      *There are no alternatives to the Critical Vendors*

9.      On the Debtor's behalf, I have considered alternatives to the Critical Vendors, and I have determined that one of three conditions exists that excludes alternative vendors. First, there is not an alternative vendor to provide these goods or services. Second, the cost to switch to another vendor would be prohibitive. Third, there are no alternate terms a Critical Vendor will agree to other than payment of its claim to continue providing goods and services.

### iv.      *The Debtor's and Critical Vendors' relationship post-petition*

10      If the Debtor and Critical Vendor agree to new terms to govern their post-petition trade relationship, then those Trade Agreements shall govern the parties' post-petition trade relationship. For those Critical Vendors who agree to provide goods or services to the Debtor on

terms different from their Customary Trade Terms, the Debtor may seek written acknowledgement of those terms from those Critical Vendors.

13.    I believe immediate payment of the Critical Vendors is essential to the Debtor's proposed sales. As I described in the First Day Declaration, the Debtor is pursuing a sale to benefit all creditors. Paying the Critical Vendors is vital to the terms of the proposed sale.

**B.    The Debtor Should be Allowed to Immediately Pay the Critical Vendors**

14.    The relief the Motion request is necessary to avoid immediate and irreparable harm, so the Debtor can continue operating and preserve the value of its estate. Obtaining immediate authorization to pay the Critical Vendors is vital to the Debtor. Any delay or interruption in the goods or services the Critical Vendors provide would immediately jeopardize the Debtor's operations, its ability to generate revenue, and the value of the Debtor's assets.

15.    I reserve the right to supplement this Declaration in the event that I discovers any facts bearing on matters described in this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 22, 2023.

*/s/ Brad Walker*
Brad Walker
Chief Restructuring Officer, Navarro Pecan
Company, Inc.

### Exhibit C

**"Critical Vendors"**

| Critical Vendor | Amount |
|---|---|
| Easterlin Pecan Company | $287,703.09 |
| Pecan Producers Inc. | $176,154.31 |
| U.S. Pecan Trading Co. Ltd | $364,439.79 |
| Bruce Roy | $71,382.36 |
| **TOTAL** | **$899,679.55** |