

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 9, 2023**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NAVARRO PECAN COMPANY, INC., | § | CASE NO. 23-40266-ELM-11 |
| | § | |
| Debtor.[1] | § | |
| | § | |
| | § | |

**ORDER GRANTING AMENDED MOTION FOR THE ENTRY OF AN ORDER
(A) AUTHORIZING THE SALE OF SUBJECT ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS,
(B) GRANTING THE BUYER THE PROTECTIONS AFFORDED TO A
GOOD FAITH PURCHASER, (C) APPROVING BUYER PROTECTIONS IN
CONNECTION WITH SALE OF ASSETS OF THE DEBTOR
AND (D) GRANTING RELATED RELIEF**

Upon consideration of the amended motion (the "**Motion**")[2] of the above-captioned debtor

and debtor-in-possession (the "**Debtor**") for entry of an order (this "**Sale Order**"), (i) authorizing

the Debtor to sell certain assets (collectively, the "**Subject Assets**") to RJS Holdings, LLC, and/or

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109. The Debtor's facilities are located at 2131 East Highway 31, Corsicana, Texas 75109.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as defined herein), as applicable.

{00010115:3}                                    1

its assigns (the "**Buyer**") pursuant to that certain Asset Purchase Agreement, in the form attached hereto as **Exhibit 1** (including all schedules, exhibits, and amendments, the "**Asset Purchase Agreement**," such transaction, the "**Sale**") free and clear of all liens ("**Liens**"), Claims (as defined below) encumbrances ("**Encumbrances**"), and other interests, except to the extent otherwise set forth in the Asset Purchase Agreement pursuant to Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"); Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); (ii) granting the Buyer the protections afforded to a good-faith purchaser pursuant to Section 363(m) of the Bankruptcy Code, (iii) granting certain Buyer protections in connection with the Sale; (iv) approving certain mutual releases (the "**Mutual Releases**") described in the Asset Purchase Agreement; and (v) granting related relief, all as more fully set forth in the Motion; and a hearing having been held on March 8, 2023 (the "**Sale Hearing**") to consider approval of the Asset Purchase Agreement; and reasonable, adequate, and sufficient notice of the Motion and the Sale Hearing having been given to all parties in interest in this case; and all such parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered (a) the Motion, (b) any objections to the Motion, (c) all responses to any objections and replies in further support of the Motion, (d) the arguments made by counsel at the duly-noticed and conducted hearing Sale Hearing, and (e) the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors, and other parties in interest; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED** that

1.      The Motion is GRANTED and APPROVED in all respects as set forth herein.

2.       All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the

merits and denied with prejudice, or the subject matter of such objections have been otherwise

satisfied or adequately provided for.

### APPROVAL OF THE SALE OF THE SUBJECT ASSETS

3.       The Asset Purchase Agreement, including any amendments, supplements, and

modifications thereto, and all of the terms and conditions therein, is hereby approved.

4.       Pursuant to Section 363(b) of the Bankruptcy Code, the sale of the Subject Assets

to the Buyer upon the Closing free and clear of all obligations, Liens, Claims, Encumbrances, and

other interests of any kind or nature whatsoever (except the Assumed Liabilities), and the

transactions contemplated thereby all pursuant to the terms of the Asset Purchase Agreement is

approved in all respects.

### SALE AND TRANSFER OF SUBJECT ASSETS

5.       Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is hereby authorized

and directed to sell the Subject Assets to the Buyer and consummate the Sale in accordance with,

and subject to the terms and conditions of, the Asset Purchase Agreement, and to transfer and

assign all right, title, and interest (including common law rights) to all property, licenses, and rights

to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase

Agreement and this Sale Order, and are further authorized and directed to execute and deliver, and

are empowered to perform under, consummate, and implement, the Asset Purchase Agreement,

together with all additional instruments and documents that may be reasonably necessary or

appropriate to implement the Asset Purchase Agreement, including, without limitation, the related

documents, exhibits, and schedules, and, subject to the Asset Purchase Agreement and this Sale

Order, to take all further actions as may be necessary or desirable to implement the Asset Purchase

Agreement and the Sale, including for the purposes of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Subject Assets, or as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Asset Purchase Agreement.

## TRANSFER OF SUBJECT ASSETS

6.      Pursuant to Section 363(f) of the Bankruptcy Code, the Subject Assets shall be so transferred to the Buyer free and clear of all Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (except for the Assumed Liabilities), including without limitation, rights or claims (for purposes of this Sale Order, the term "claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code) based on any taxes, intercompany claims, or successor or transferee liability, including, without limitation, all claims arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors or non-Debtor affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of this chapter 11 case, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims otherwise arising under federal or state or non-U.S. tax laws or doctrines of successor or transferee liability (collectively, the "**Claims**").

7.      Following the Closing, the Debtor or the Buyer and their respective affiliates are authorized and directed to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) in the Subject Assets. On the Closing, this Sale Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Subject Assets and/or a bill (or bills) of sale transferring good and

marketable title in such Subject Assets to the Buyer. Each and every federal, state, local, and foreign governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

8.      All entities who are presently, or on the Closing may be, in possession of some or all of the Subject Assets are hereby directed to surrender possession of the Subject Assets to the Buyer on the Closing.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Subject Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, equity owners, and other creditors, holding Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) against or in the Debtor or the Subject Assets (whether legal or equitable, secured, or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Subject Assets or the operation of the Subject Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns and affiliates, their respective property and the Subject Assets, such persons' or entities' Liens, Claims, Encumbrances, or other interests.

11.     On the Closing of the Sale, each of the Debtor's creditors and affiliates are authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens, Claims, Encumbrances, and other interests on the Subject Assets, if any, as such Liens, Claims, Encumbrances, and other interests may have been recorded or otherwise exist.

12.     To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Subject Assets on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale.

13.     Subject to the terms and conditions of this Sale Order, the transfer of the Subject Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Subject Assets, and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Subject Assets free and clear of all Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities).

## NO SUCCESSOR LIABILITY

14.     The Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and, except as provided in the Purchase Agreement or this Sale Order, the Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or its estate with respect to the Subject Assets or otherwise. Neither the purchase of the Subject Assets by the Buyer nor the fact that the Buyer is using any of the Subject Assets previously operated by the Debtor will cause the Buyer to be deemed a successor in any respect to the Debtor's business or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment,

environmental, or other law, rule, or regulation (including, without limitation, filing requirements

under any such laws, rules, or regulations), or under any products liability law or doctrine with

respect to the Debtor's liability under such law, rule, regulation, or doctrine.

15.     The Buyer has paid substantial consideration under the Asset Purchase Agreement,

which consideration shall constitute valid and valuable consideration for the releases of any

potential claims of successor liability of the Buyer and which shall be deemed to have been given

in favor of the Buyer by all holders of Liens, Claims, Encumbrances, and other interests of any

kind or nature whatsoever (except for the Assumed Liabilities) in or against the Debtor, or the

Subject Assets. The Buyer shall not be deemed to (a) be the successor to the Debtor, (b) have, *de

facto* or otherwise, merged with or into the Debtor, or (c) be a mere continuation, alter ego or

substantial continuation of the Debtor.

16.     Except to the extent the Buyer otherwise specifically agreed in the Asset Purchase

Agreement or as specifically provided in this Sale Order (including the Buyer's obligation to

satisfy the Assumed Liabilities), the Buyer shall not have any liability, responsibility, or obligation

for any claims, liabilities, or other obligations of the Debtor or its estate, including without

limitation, any claims, liabilities or other obligations related to the Subject Assets prior to Closing.

Under no circumstances shall the Buyer be deemed a successor of or to the Debtor for any Liens,

Claims, Encumbrances, and other interests of any kind or nature whatsoever (except for the

Assumed Liabilities) against, in or to the Debtor or the Subject Assets.

**MUTUAL RELEASES**

17.     The mutual releases of claims arising at or prior to Closing, as described in more

detail in the Asset Purchase Agreement, between and among the Debtor, Buyer, and Truist Bank

("**Truist**"): (i) are fair and reasonable under the circumstances, (ii) were made for good and

valuable consideration, and (iii) are materially beneficial to, and in the best interests of, the Debtor, its Estate, and its stakeholders. As such, the Debtor's entry into the mutual releases represents a good faith exercise of the Debtor's business judgment. The mutual releases are also a fair and equitable compromise of any claims Debtor, Buyer, and Truist may have against one another. They were negotiated in good faith and at arm's-length and satisfy the factors set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) and its progeny. Accordingly, the mutual releases described in the Asset Purchase Agreement are approved.

## GOOD FAITH

18.     The Buyer is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of this Sale Order shall not affect the validity of the sale as to the Buyer, except to the extent such authorization is duly stayed pending such appeal prior to such consummation, and neither the Debtor nor any successor in interest to the Debtor's estate shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

## BUYER PROTECTIONS

19.     In the event that RJS Holdings, LLC, and/or its assigns is not the Buyer, the Court finds that its offer(s) to purchase the Subject Assets served as the basis and catalyst for higher or better offers. Accordingly, RJS Holdings, LLC, and/or its assigns are entitled to a topping/break-up fee equal to 3.5% of its highest and best offer to purchase the Subject Assets.

## ADDITIONAL PROVISIONS

20.     The consideration provided by the Buyer for the Subject Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, District of Columbia, or laws of any foreign jurisdiction.

21.    Each and every federal, state, local, and non-U.S. governmental agency, court or

department is directed to accept any and all documents and instruments necessary and appropriate

to consummate the transactions contemplated by the Asset Purchase Agreement. On the Closing,

the Debtor and the Buyer are authorized to take such actions as may be necessary to obtain a release

of any and all obligations, Liens, Claims, Encumbrances, and other interests (other than the

Assumed Liabilities) in the Subject Assets, if any, and to the extent contemplated hereby and by

the Asset Purchase Agreement. This Sale Order (a) shall be effective as a determination that, on

the Closing, all Liens, Claims, Encumbrances, or other interests of any kind or nature whatsoever

(other than the Assumed Liabilities) existing as to the Subject Assets prior to the Closing have

been unconditionally released, discharged and terminated, and that the conveyances described

herein have been effected and (b) shall be binding upon and shall govern the acts of all entities

including without limitation, all filing agents, filing officers, title agents, title companies, recorders

of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, local, and non-U.S. officials, and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register, or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any of the Subject Assets. Each and

every federal, state, local, and non-U.S. governmental agency or department is hereby directed to

accept any and all documents and instruments necessary and appropriate to consummate the

transactions contemplated by the Asset Purchase Agreement. The Buyer and the Debtor may take

such further steps and execute such further documents, assignments, instruments and papers as

shall be reasonably requested by the other to implement and effectuate the transactions

contemplated in this paragraph. All interests of record as of the date of this Sale Order shall be

forthwith deemed removed and stricken as against the Subject Assets. All entities described in this

paragraph are authorized and specifically directed to strike all such recorded Liens, Encumbrances,

Claims and other interests of any kind or nature whatsoever against the Subject Assets (other than

the Assumed Liabilities) from their records, official and otherwise.

22.     If any person or entity that has filed statements or other documents or agreements

evidencing Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever in

any of the Subject Assets (other than the Assumed Liabilities) does not deliver to the Debtor or

the Buyer prior to the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of liens and easements, and any other

documents necessary for the purpose of documenting the release of all interests and other interests

that the person or entity has or may assert with respect to any of the Subject Assets, the Debtor

and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases

and other documents on behalf of such persons or entity with respect to any of the Subject Assets.

23.     Subject to the terms of the Asset Purchase Agreement, the Debtor will cooperate

with the Buyer to ensure that the transaction contemplated in the Asset Purchase Agreement is

consummated, and the Debtor will make such modifications or supplements to any bill of sale or

other document executed in connection with the closing to facilitate such consummation as

contemplated by the Asset Purchase Agreement (including, without limitation, adding such

specific assets to such documents as may be reasonably requested by the Buyer pursuant to the

terms of the Asset Purchase Agreement).

24.     Except as provided in the Asset Purchase Agreement and this Sale Order, the Buyer

shall have no liability or responsibility for any claims (as defined in Section 101(5) of the

Bankruptcy Code), liability or other obligation of the Debtor or any of its affiliates arising under

or related to the Subject Assets other than for the Assumed Liabilities. Without limiting the

generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase

Agreement, the Buyer shall not be liable for any claims against the Debtor or any of its

predecessors or affiliates other than the Assumed Liabilities, and the Buyer shall have no successor

or vicarious liabilities of any kind or character whether known or unknown as of the Closing, now

existing or hereinafter arising, whether fixed or contingent, with respect to the Debtor, the Subject

Assets or any obligations of the Debtor arising prior to the Closing, including, but not limited to,

liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with,

or in any way relating to the operation of the business prior to the Closing.

25.     All persons holding Liens, Claims, Encumbrances, and other interests against, on,

or in the Debtor or the Subject Assets of any kind or nature whatsoever (other than the Assumed

Liabilities) shall be, and hereby are, forever barred, estopped, and permanently enjoined from

asserting, prosecuting, or otherwise pursuing such Liens, Claims, Encumbrances or other interests

of any kind or nature whatsoever (except the Assumed Liabilities) against the Buyer, its officers,

directors, shareholders and professionals, its property, its successors and assigns, or the Subject

Assets with respect to any Encumbrance, Claim or interest of any kind or nature whatsoever (other

than the Assumed Liabilities) such person or entity had, has, or may have against or in the Debtor,

its estates, officers, directors, shareholders, or the Subject Assets. Following the Closing, no holder

of a Lien, Encumbrance, Claim, or interest in the Debtor shall interfere with the Buyer's title to or

use and enjoyment of the Subject Assets based on or related to such Encumbrance or interest, or

any actions that the Debtor may take in its chapter 11 case.

26.     The terms and provisions of the Asset Purchase Agreement and this Sale Order

shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and its respective

affiliates, successors and assigns, and estates.

27.     The failure specifically to include any particular provisions of the Asset Purchase

Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its

entirety.

28.     The Asset Purchase Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented in accordance with the terms thereof,

without further order of the Court; provided that any such modification, amendment, or supplement

does not have a material adverse effect on the Debtor's estate.

29.     Nothing contained in any plan of reorganization or liquidation confirmed in this

chapter 11 case or any order of this Court confirming such plans or in any other order in this

Chapter 11 Case, including any order entered after any conversion of this Chapter 11 Case to a

case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the

provisions of the Asset Purchase Agreement or the terms of this Sale Order. The provisions of this

Sale Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto

shall survive entry of any order which may be entered confirming or consummating any plan of

reorganization of the Debtor, or which may be entered converting this Chapter 11 Case to a case

under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset Purchase

Agreement as well as the rights and interests granted pursuant to this Sale Order and the Asset

Purchase Agreement shall continue in this Chapter 11 Case or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtor, its estate, and the Buyer and its respective successors and permitted assigns.

30.     Compliance with the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, any laws of any foreign jurisdiction relating to bulk sales and transfers is not necessary or appropriate under the circumstances.

31.     The Debtor and each other person having duties or responsibilities under the Asset Purchase Agreement or this Sale Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file, and record, as appropriate, the Asset Purchase Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Sale Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Sale Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Sale Order and the transactions contemplated thereby and hereby. Notwithstanding Bankruptcy Rules 6004(h), this Sale Order shall be effective immediately upon entry and the Debtor and the Buyer are authorized to transfer the Subject Assets immediately upon entry of this Sale Order.

32.     Subject to the terms of this Sale Order, the sale of the Subject Assets shall be free and clear of all Liens, Claims, Encumbrances, and other interests and such Liens, Claims, Encumbrances, and other interests shall be transferred to the proceeds of Sale to the same extent and with the same validity and in the same order of priority as in the Subject Assets pursuant to Sections 105(a) and 363(f)(2) and/or (3) of the Bankruptcy Code, and, except as otherwise expressly provided in the Asset Purchase Agreement, all such Liens, Claims, Encumbrances, and other interests shall be, and hereby are, released, terminated, and discharged as to the Buyer and the Subject Assets (but not the proceeds thereof).

33.     Due to a pending tax appeal on Navarro County tax account # 10640, as adequate protection for Navarro County, the Debtor shall escrow $346,586.65 from the proceeds of the Sale in a segregated account that is not an account subject to a deposit control agreement, pending resolution of any disputes between Navarro County and the Debtor regarding 2022 ad valorem tax liability. The liens of Navarro County shall attach to the segregated account to the same extent and with the same priority as the liens they now hold against the property of the Debtor. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of Navarro County, nor a cap on the amounts it may be entitled to receive. Furthermore, the claims and liens of Navarro County shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed only in payment of the claims and liens of Navarro County upon agreement between Navarro County and the Debtor, or by subsequent order of the Court, duly noticed to Navarro County.

34.     The 2023 ad valorem taxes of Navarro County are a Permitted Lien, as defined in the Purchase Agreement. The Purchaser assumes full responsibility for the 2023 *ad valorem* taxes and shall be responsible for paying the *ad valorem* taxes in full, in the ordinary course of

businesses, when due. If not timely paid, Navarro County may proceed with its non-bankruptcy

collection rights against the Purchaser or the Assets, without leave or approval of the Court. Any

proration to the Debtor shall be credited to the Purchaser at closing or on terms agreed upon by the

Debtor and Purchaser. Any dispute regarding the proration of the ad valorem taxes between the

Debtor and Purchaser shall have no effect on Purchaser's responsibility to pay the 2023 ad valorem

taxes. Navarro County shall retain its liens against the taxable Subject Assets, as applicable, until

paid in full, including any applicable penalties or interest.

35.     Nothing in the Asset Purchase Agreement or this Order Approving the Sale of the

Debtor's Assets releases, nullifies, precludes, or enjoins the enforcement of any police or

regulatory liability to a governmental unit (including, but not limited to, the Texas Commission

on Environmental Quality) that any entity would be subject to as the post-sale owner or operator

of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase

Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c)

registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder,

without compliance with all applicable legal requirements and approvals under police or regulatory

law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or

regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

36.     In full satisfaction and release of its claims against the estate, to which claims the

Debtor and Buyer do not object, and in exchange for a release of its liens, which releases shall be

filed within 14 days of closing of the sale, Hillcrest Bank shall be paid $5,404,053.95 in cash at

closing via wire transfer, plus Hillcrest Bank's reasonable attorneys' fees and expenses incurred

until Closing. If Closing occurs after March 15, 2023, per diem interest will accrue at the rate of

$1,330.98.

{00010115:3}                                    15

37.    Notwithstanding any other term of this Sale Order, Pure & Natural Food Consortium LLC ("**PNFC**") may offset $129,013.50 against the asserted pre-petition amount due and owing in connection with the Purchased Accounts Receivable identified in Schedule 2.1(h), with such offset being deemed effectuated at Closing. The Debtor, Buyer, and PNFC otherwise reserve all rights.

38.    Notwithstanding any other provision of this Sale Order or the Asset Purchase Agreement, the product identified in **Exhibit 2** (the "**U.S. Pecan Product**") shall not be sold to the Buyer and any receivables generated from the sale of the U.S. Pecan Product shall not be sold to Buyer unless that product or those receivables, as applicable, is paid for at or prior to Closing. Debtor is not acknowledging or representing that it is in the possession of any of the U.S. Pecan Product or any receivables generated from the sale of the U.S. Pecan Product. Prior to the Closing and transfer of the Subject Assets to the Buyer, Debtor shall segregate in its facility and Debtor shall cause 3M Processing, LLC ("**3M**") to segregate the U.S. Pecan Product which is in the possession of Debtor at 3M's warehouse facility. If the U.S. Pecan Product was sent to any other facility by Debtor, then Debtor shall cause such inventory to be segregated as well. Within fourteen (14) days of Entry of this Order, Debtor is required to account for the U.S. Pecan Product, and accounts receivable, and Debtor and the U.S. Pecan Entities will endeavor to reconcile any discrepancies, lots, and accounts receivable to be confirmed, including but not limited to an on-site audit by the U.S. Pecan Entities or their authorized representative. U.S. Pecans, Ltd., and U.S. Pecan Trading Co., Ltd. are required to remove all U.S. Pecan Product from the facilities within thirty (30) days of Closing unless an agreement is reached with the Buyer.

39.    Notwithstanding any other provision of this Sale Order or the Asset Purchase Agreement, certain product of Pecan Producers, Inc. and D&P Cold Storage identified in **Exhibit 3**

(collectively, the "**PPI and D&P Product**") shall not be sold to the Buyer and any receivables generated from the sale of the PPI and D&P Product shall not be sold to Buyer unless that product or those receivables, as applicable, is paid for at or prior to Closing. Debtor is not acknowledging or representing that it is in the possession of any of the PPI and D&P Product or any receivables generated from the sale of the PPI and D&P Product. Prior to the Closing and transfer of the Subject Assets to the Buyer, Debtor shall segregate in its facility and Debtor shall cause 3M to segregate the PPI and D&P Product which is in the possession of Debtor at 3M's warehouse facility. If the PPI and D&P Product was sent to any other facility by Debtor, then Debtor shall cause such inventory to be segregated as well. Within fourteen (14) days of Entry of this Order, Debtor is required to account for the PPI and D&P Product, and accounts receivable, and Debtor and Pecan Producers, Inc. and D&P Cold Storage will endeavor to reconcile any discrepancies, lots, and accounts receivable to be confirmed, including but not limited to an on-site audit by Pecan Producers, Inc. and D&P Cold Storage or their respective authorized representative. Pecan Producers, Inc. and D&P Cold Storage are required to remove all PPI and D&P Product from the facilities within thirty (30) days of Closing unless an agreement is reached with the Buyer.

40.     Notwithstanding any other provision of this Sale Order or the Asset Purchase Agreement, the product identified in **Exhibit 4** (the "**Easterlin Product**") shall not be sold to the Buyer and any receivables generated from the sale of the Easterlin Product shall not be sold to Buyer unless that product or those receivables, as applicable, is paid for at or prior to Closing. Debtor is not acknowledging or representing that it is in the possession of any of the Easterlin Product or any receivables generated from the sale of the Easterlin Product. Prior to the Closing and transfer of the Subject Assets to the Buyer, Debtor shall segregate in its facility and Debtor shall cause 3M to segregate the Easterlin Product which is in the possession of Debtor at 3M's

warehouse facility. If the Easterlin Product was sent to any other facility by Debtor, then Debtor shall cause such inventory to be segregated as well. Within fourteen (14) days of Entry of this Order, Debtor is required to account for the Easterlin Product, and accounts receivable, and Debtor and Easterlin Pecan Company ("**Easterlin**") will endeavor to reconcile any discrepancies, lots, and accounts receivable to be confirmed, including but not limited to an on-site audit by Easterlin or its authorized representative. Easterlin is required to remove all Easterlin Product from the facilities within thirty (30) days of Closing unless an agreement is reached with the Buyer.

41.     In consideration for the mutual releases set forth in the Asset Purchase Agreement, Truist shall be paid the Truist Collateral Payment upon Closing, and Truist shall be authorized upon Closing, pursuant to Sections 2.1 and 2.4 of the Asset Purchase Agreement, to apply the funds in the Lockbox Account to the outstanding obligations owed by Debtor to Truist.

42.     The fourteen-day stay period under Bankruptcy Rules 6004(h) is hereby waived.

43.     This Court shall retain jurisdiction to enforce and implement the terms and provisions of this Sale Order and the Asset Purchase Agreement.

# # # END OF ORDER # # #