## **EXHIBIT 1**

**ASSET PURCHASE AGREEMENT**

**BETWEEN AND AMONG**

**RJS HOLDINGS, LLC, BUYER**

**NAVARRO PECAN COMPANY, INC., SELLER**

**AND**

**TRUIST BANK, CONSENTING PARTY**

## TABLE OF CONTENTS

ARTICLE I.          DEFINITIONS.................................................................................................1

    Section 1.1.    Defined Terms .........................................................................................1
    Section 1.2.    Other Definitional Provisions ..................................................................9

ARTICLE II.        TRANSFER OF ASSETS AND ASSUMPTION OF LIABILITIES ..............9

    Section 2.1.    Transfer of Subject Assets .......................................................................9
    Section 2.2.    Assumption of Liabilities........................................................................11
    Section 2.3.    Subject Assets Sold "As Is, Where Is" ..................................................11
    Section 2.4.    Excluded Assets......................................................................................11
    Section 2.5.    Method of Conveyance and Transfer.......................................................12
    Section 2.6.    Delivery of Instruments of Transfer .......................................................12
    Section 2.7.    Further Assurances..................................................................................13

ARTICLE III.       PAYMENT OF PURCHASE PRICE..............................................................13

    Section 3.1.    Purchase Price .......................................................................................13
    Section 3.2.    Tax Allocation of Purchase Price ...........................................................14
    Section 3.3.    Transfer Taxes ........................................................................................14

ARTICLE IV.       REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF SELLER
                         .......................................................................................................................14

    Section 4.1.    Organization and Good Standing............................................................14
    Section 4.2.    Authority.................................................................................................15
    Section 4.3.    No Violation or Consents........................................................................15
    Section 4.4.    Compliance with Law .............................................................................15
    Section 4.5.    Litigation.................................................................................................15
    Section 4.6.    Financial Statements and Reports; Material Liabilities ..................................16
    Section 4.7.    Absence of Certain Events.......................................................................16
    Section 4.8.    Material Contracts...................................................................................16
    Section 4.9.    Employee Benefit Plans ..........................................................................17
    Section 4.10.   Intellectual Property................................................................................17
    Section 4.11.   Environmental..........................................................................................17
    Section 4.12.   Real Property ..........................................................................................18
    Section 4.13.   Seller as Debtor in Possession; No Trustee ...........................................19
    Section 4.14.   Assigned Executory Contracts ................................................................19
    Section 4.15.   Notice ......................................................................................................19

ARTICLE V.        REPRESENTATIONS AND WARRANTIES OF BUYER..........................19

    Section 5.1.    Organization and Good Standing............................................................19
    Section 5.2.    Authority .................................................................................................19
    Section 5.3.    No Violation of Charter Documents, Contracts or Laws...............................20
    Section 5.4.    Subject Assets "As Is" ...........................................................................20
    Section 5.5.    Available Funds ......................................................................................20

ARTICLE VI.   ADDITIONAL COVENANTS OF THE PARTIES ......................................20

Section 6.1.   Due Diligence; Access to Information................................................20
Section 6.2.   Mutual Cooperation.............................................................................20
Section 6.3.   Seller's Employees...............................................................................21
Section 6.4.   Name Change.......................................................................................21
Section 6.5.   Further Assurances...............................................................................21
Section 6.6.   Governmental Approvals .....................................................................21
Section 6.7.   Publicity ...............................................................................................22
Section 6.8.   Casualty................................................................................................22
Section 6.9.   Conduct of Business. ...........................................................................22

ARTICLE VII.   BANKRUPTCY PROCEDURES, ETC.........................................................22

Section 7.1.   Motion to Sell and Notice ...................................................................22
Section 7.2.   Defense of Orders ...............................................................................23
Section 7.3.   Assumption and Rejection of Contracts and Leases and Cure Procedure ......23

ARTICLE VIII.   CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER .................23

Section 8.1.   Representations and Warranties...........................................................23
Section 8.2.   Performance of Covenants ..................................................................24
Section 8.3.   No Injunctions......................................................................................24
Section 8.4.   No Violation of Law ............................................................................24
Section 8.5.   No Material Adverse Effect .................................................................24
Section 8.6.   Assigned Executory Contracts ............................................................24
Section 8.7.   Instruments of Transfer; Third-party Consents...................................24
Section 8.8.   Required Regulatory Approvals ...........................................................24
Section 8.9.   Absence of Certain Changes ...............................................................24
Section 8.10.   Certificate of Non-Foreign Status ......................................................24
Section 8.11.   No Defaults under Orders ...................................................................25
Section 8.12.   Sale Order ...........................................................................................25

ARTICLE IX.   CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS...................25

Section 9.1.   Representations and Warranties...........................................................25
Section 9.2.   Performance of Covenants ..................................................................25
Section 9.3.   No Injunctions......................................................................................25
Section 9.4.   No Violation of Law ............................................................................25
Section 9.5.   Cure Procedure, Procedure for Designation of Assigned Executory Contracts
              and Satisfaction of Cure Obligations ..............................................25
Section 9.6.   Sale Order ............................................................................................26
Section 9.7.   No Material Adverse Effect .................................................................26

ARTICLE X.   CONDITIONS PRECEDENT TO CONSENTING PARTY'S
             OBLIGATIONS..........................................................................................26

Section 10.1.   Receipt of Release Payment ...............................................................26
Section 10.2.   No Injunctions.....................................................................................26

{00010196:3}

Section 10.3.    No Violation of Law ........................................................26
Section 10.4.    Sale Order ....................................................................26

ARTICLE XI.    CLOSING ....................................................................26

Section 11.1.    Closing ........................................................................26

ARTICLE XII.    TERMINATION; SURVIVAL AND LIMITATIONS OF
REPRESENTATIONS AND WARRANTIES................................27

Section 12.1.    Termination....................................................................27
Section 12.2.    Effect of Termination.......................................................28
Section 12.3.    Termination of Representations and Warranties....................28
Section 12.4.    Termination of Covenants..................................................28
Section 12.5.    Limitations of Representations and Warranties .....................28

ARTICLE XIII.    MUTUAL RELEASES......................................................29

Section 13.1.    Release by Seller............................................................29
Section 13.2.    Release by Buyer............................................................29
Section 13.3.    Release by Consenting Party .............................................29
Section 13.4.    Limited Exceptions to Releases .........................................29

ARTICLE XIV.    OTHER AGREEMENTS ...................................................29

Section 14.1.    Other Agreements ...........................................................29

ARTICLE XV.    EXPENSES..................................................................30

Section 15.1.    Expenses ......................................................................30

ARTICLE XVI.    NOTICES....................................................................30

Section 16.1.    Notices ........................................................................30

ARTICLE XVII.    REMEDIES NOT EXCLUSIVE ...........................................31

ARTICLE XVIII.    MISCELLANEOUS ........................................................31

Section 18.1.    Counterparts .................................................................31
Section 18.2.    Captions and Section Headings .........................................32
Section 18.3.    Singular and Plural.........................................................32
Section 18.4.    Passage of Title and Risk of Loss ......................................32
Section 18.5.    Waivers .......................................................................32
Section 18.6.    Parties in Interest...........................................................32
Section 18.7.    Benefit and Burden; Assignment ........................................32
Section 18.8.    Amendments, Supplements or Modifications.........................32
Section 18.9.    Entire Agreement ...........................................................32
Section 18.10.    Governing Laws.............................................................33

Section 18.11.  Venue and Jurisdiction.................................................................................33
Section 18.12.  Construction..................................................................................................33
Section 18.13.  Validity of Provisions ...................................................................................33
Section 18.14.  Access to Records and Records Retention....................................................33
Section 18.15.  Notice to Customers......................................................................................34

[Signatures follow on the next page.]......................................................................................34

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "***Agreement***") is made and entered into as of the [Day] day of February, 2023 (the "***Execution Date***"), by and between RJS Holdings, LLC ("***Buyer***"), a Texas limited liability company, Navarro Pecan Company, Inc., a Texas corporation ("***Seller***"), and Truist Bank ("***Consenting Party***"). Seller and Buyer may be referred to herein individually as a "***Party***" or collectively, as the "***Parties***."

## BACKGROUND

A.      Seller is engaged in the business of pecan shelling, marketing, packaging, and distribution (collectively, the "***Business***"). On January 30, 2023 (the "***Petition Date***"), Seller filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of Texas, Case No. 23-40266 (the "***Case***") thus creating the bankruptcy estate.

B.      Buyer desires to purchase the Subject Assets (as defined below), including certain assets that are subject to liens in favor of Consenting Party, pursuant to the applicable sections of the Bankruptcy Code and to assume the Assumed Liabilities (as defined below) from the Seller, on the following terms and conditions.

C.      Seller desires to sell the Subject Assets and to assign the Assumed Liabilities to Buyer on the following terms and conditions, and Consenting Party consents to the sale of the Subject Assets on the following terms and conditions.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties, and covenants herein contained, the Parties and the Consenting Party agree as follows:

## ARTICLE I.

## DEFINITIONS

Section 1.1.    **Defined Terms.** As used herein, the terms below shall have the following ascribed meanings:

(a)      "***Accounts Receivable***" means all of the accounts, instruments, drafts, acceptances, trade, note and other forms of receivables and all rights earned under contracts to sell goods or render services, including all rights in and to monies due for shelling, packaging, roasting, sell pecans from owners of vehicles or others for the transportation of vehicles plus any associated fees and costs, and any checks, drafts, instruments or other documents representing or constituting the same.

(b)      "***Affiliate***" has the meaning set forth in Bankruptcy Code Section 101.

(c)      "***Agreement***" means this Agreement (together with all schedules and exhibits referenced herein).

(d)    **"*Assigned Executory Contracts*"** means all executory contracts and unexpired leases, including, but not limited to, personal property leases, real property leases, service agreements, supplier agreements, distribution agreements and operating agreements set forth on Schedule 4.8 that relate to the Subject Assets. Schedule 4.8, the list of Assigned Executory Contracts, may be amended in accordance with Section 7.3 up until Closing.

(e)    **"*Assumed Liabilities*"** means only those obligations arising after the Closing Date under the Assigned Executory Contracts (except for any obligations or liabilities arising after the Closing Date attributable to any failure by Seller to fully comply with the terms of the Assigned Executory Contracts prior to the Closing Date).

(f)    **"*Bankruptcy Code*"** means the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq., as amended, or any successor thereto, and any rules and regulations promulgated thereunder.

(g)    **"*Bankruptcy Rules*"** means the Federal Rules of Bankruptcy Procedure, as amended, or any successor rules.

(h)    **"*Bill of Sale and Assignment*"** has the meaning set forth in Section 2.6, in the form attached to this Agreement as <u>Exhibit A</u>.

(i)    **"*Books and Records*"** has the meaning set forth in Section 2.1(m).

(j)    **"*Breach*"** means any breach of, or any inaccuracy in, any representation or warranty or any breach of, or failure to perform or comply with, any covenant or obligation in or of this Agreement or any other Contract, or any event which with the passing of time or the giving of notice, or both, would constitute such a breach, inaccuracy or failure.

(k)    **"*Business*"** has the meaning set forth in the Recitals to this Agreement.

(l)    **"*Business Day*"** means any day that is not a Saturday, Sunday, legal holiday or a day on which banks are closed as required by applicable Law.

(m)    **"*Buyer*"** has the meaning set forth in the first paragraph of this Agreement.

(n)    **"*Case*"** has the meaning set forth in the Recitals.

(o)    **"*Cash and Cash Equivalents*"** means cash, third-party checks, wire transfers and any other funds of Seller, and commercial paper, marketable securities, certificates of deposit and other bank deposits, treasury bills and other cash equivalents of Seller calculated in accordance with GAAP.

(p)    **"*Claim*"** or **"*Claims*"** has the meaning set forth in Section 2.4(b).

(q)    **"*Closing*"** or **"*Close*"** has the meaning set forth in Section 11.1.

(r)    **"*Closing Date*"** has the meaning set forth Section 11.1.

(s)      **"*Code*"** means the Internal Revenue Code.

(t)      **"*Confidential Information*"** means all information in any form or medium that relates to Seller, the Business, the Subject Assets or the Assumed Liabilities, including financial information, projections, pricing structures, technical data, trade secrets, know-how, ideas, inventions, designs, research, development plans, identities of and arrangements with customers and suppliers, software and data bases, but shall not include any information that (i) is generally available to, or known by, the public (other than as a result of disclosure in violation of this Agreement), (ii) is already in the recipient's possession or comes into recipient's possession on a non-confidential basis (other than as a result of disclosure in violation of this Agreement), or (iii) is independently developed by the receiving party without reliance in any way on any Confidential Information.

(u)      **"*Consenting Party*"** has the meaning set forth in the first paragraph of this Agreement.

(v)      **"*Copyrights*"** has the meaning set forth in the definition of the term Intellectual Property.

(w)      **"*Court*"** means the United States Bankruptcy Court for the Northern District of Texas.

(x)      **"*DIP Accounts Receivable*"** means Accounts Receivable generated from the sale of the DIP Inventory.

(y)      **"*DIP Funding*"** means that certain funding, aggregating $5,180,926.00 (which amount includes the DIP Inventory Funding), as may be increased in accordance with the procedures set forth in the DIP Order, provided by Buyer to Seller pursuant to the DIP Order permitting Buyer to extend credit to Seller, subject Buyer being afforded certain protections as a debtor in possession lender, as described in the DIP Order, and specifically including a lien on the Real Property.

(z)      **"*DIP Inventory*"** means, that certain inventory purchased by Seller using the proceeds from the DIP Inventory Funding.

(aa)      **"*DIP Inventory Funding*"** means that certain funding, aggregating $1,805,926.00, as may be increased in accordance with the procedures set forth in the DIP Order, provided by Buyer to Seller to purchase inventory pursuant to the DIP Order permitting Buyer to extend credit to Seller, subject Buyer being afforded certain protections as a debtor in possession lender, as described in the DIP Order, and specifically including a lien on the DIP Inventory, DIP Accounts Receivable, and Cash and Cash Equivalents generated therefrom.

(bb)      **"*DIP Order*"** means that certain interim/final order entered by the Bankruptcy Court.

(cc)      **"*Employee Benefit Plan*"** means (x) any "employee benefit plan" or "plan" within the meaning of Section 3(3) of the Employee Retirement Income Security Act ("*ERISA*"), and (y) all plans or policies providing for "fringe benefits" (including but not limited to vacation, paid

holidays, personal leave, employee discounts, educational benefits or similar programs), and each other bonus, incentive compensation, deferred compensation, profit sharing, stock, severance, retirement, health, life, disability, group insurance, employment, stock option, stock purchase, stock appreciation right, performance share, supplemental unemployment, layoff, consulting, or any other similar plan, agreement, policy or understanding (whether qualified or nonqualified, currently effective or terminated within the six (6) years preceding the date hereof), and any trust, escrow or other agreement related thereto, which (i) is or has been established, maintained or contributed to by Seller or any other corporation or trade or business under common control with Seller (an "*ERISA Affiliate*") as determined under Section 414(b), (c) or (m) of the Code with respect to the Business, or with respect to which Seller has or may have any Liability that could affect the Business, or (ii) provides benefits, or describes policies or procedures applicable, to any director, officer, employee, former director, officer, employee or dependent thereof of Seller, regardless of whether funded. Employee Benefit Plan also includes any written or enforceable oral representations made to any director, officer, employee or former director, officer or employee of Seller promising or guaranteeing any employer payment or funding for the continuation of medical, dental, life or disability coverage for any period of time beyond the end of the current plan year (except to the extent of coverage required under Code Section 4980B or complementary state law).

(dd)     "*Encumbrance*" means any charge, claim, community property interest, condition, equitable interest, Lien, option, pledge, security interest, mortgage, right-of-way, easement, encroachment, servitude, right of first option, right of first refusal or similar restriction, including any restriction on use, voting (in the case of any security or equity interest), transfer, receipt of income, exercise of any other attribute of ownership, or other similar encumbrances of any nature whatsoever.

(ee)     "*Excluded Assets*" has the meaning set forth in Section 2.4.

(ff)     "*Excluded Liabilities*" means each and every Liability of the Seller (whether arising prior to, at the time of, or subsequent to Closing) other than the Assumed Liabilities.

(gg)     "*Executory Contracts*" means all contracts and unexpired leases to which Seller is a party, and under which each party thereto continues to have unperformed obligations, including, but not limited to, the obligation of any party to make payment or perform services. The definition of "*Executory Contracts*" includes, but is not limited to, personal property leases, real property leases, supplier agreements, distribution agreements, operating agreements, and executory licenses of Intellectual Property.

(hh)     "*Final Order*" means an order or judgment, the operation or effect of which is not stayed, as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or motion for re-argument has been taken or been made and is pending for argument.

(ii)     "*Financial Statements*" has the meaning set forth in Section 4.6 of this Agreement.

(jj)     "*GAAP*" means United States generally accepted accounting principles.

(kk)     "*General Warranty Deed*" means <u>Exhibit C</u> attached hereto.

(ll)     "*Governmental Authority*" means any national, federal, state, local or other governmental, regulatory or administrative authority, agency, department, or any court, tribunal or judicial or arbitral body of any country or any political subdivision thereof.

(mm)     "*Intellectual Property*" means on a world-wide basis, any and all: (i) patents, patent disclosures, patent applications, designs, algorithms and other industrial property rights, (ii) trademarks, service marks, trade names, service names, brand names, all trade dress rights, labels or other trade rights, logos, domain names, corporate names and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, all applications, registrations and renewals thereof, material unregistered trademarks and the ability to apply and/or register any trademark, service mark or trade name used in the Business (collectively, "*Trademarks*"), (iii) copyrights, copyright registrations and applications therefor, works of authorship, and mask work rights and, material unregistered copyrights, in each case used primarily in connection with the purchased Business (collectively, "*Copyrights*"), (iv) mask works, (v) computer software (including source code (with all programmer notes, comments and remarks, if any), object code, macros, scripts, objects, routines, modules and other components), data, data bases and documentation thereof, (vi) trade secrets and other confidential or proprietary information (including ideas, formulas, recipes, compositions, inventions (whether patentable or unpatentable and whether or not reduced to practice), know-how, products, processes, techniques, methods, research and development information and results, drawings, specifications, designs, technical and development plans and proposals, technical data and customer, prospect and supplier lists and information), (vii) registered user entries, registrations of entries, Internet web sites and content, promotional material and other trade rights, whether or not registered, technology, proprietary and other technical information, including all contracts, agreements and licenses relating thereto, owned by Seller or in which it has any rights ("*Proprietary Property*"), (viii) other intellectual and industrial property rights of every kind and nature and however designated, whether arising by operation of law, contract, license or otherwise, (ix) "data" as defined in 48 CFR Section 27.401, (x) copies and tangible embodiments thereof (in whatever form or medium), and (xi) registrations, applications (pending and in-process), renewals, extensions, continuations, divisions or reissues of or for any of the foregoing rights, now or hereafter in force (including all rights therein).

(nn)     "*Intellectual Property Assignment Agreement*" has the meaning set forth in Section 2.6, a form of which is attached to this Agreement as Exhibit B.

(oo)     "*Inventory*" means the DIP Inventory and the Truist Inventory.

(pp)     "*Law*" means any national, federal, state, local or other law, statute, rule, regulation, ordinance, code, policy, order, decree, judgment, consent, settlement agreement or other governmental requirement enacted, promulgated, entered into, agreed to or imposed by any Governmental Authority.

(qq)     "*Liability*" and "*Liabilities*" means, as to any Person, all direct or indirect debts, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct, indirect, absolute or contingent, of such Person, whether accrued, vested or otherwise, whether known or unknown, whether due or to become due, whether asserted or

unasserted and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records.

(rr)    **"*Lien*"** means any claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, and deed of trust or other encumbrance.

(ss)    **"*Lockbox Account*"** means that certain bank account ending in 0688, at Truist Bank.

(tt)    **"*Lockbox Adjustment*"** means a reduction in the Truist Collateral Payment by an amount equal to the funds held in the Lockbox Account, other than funds attributable to the Truist Non-Purchased Collateral Proceeds..

(uu)    **"*Material*"** means any result, action or item which a reasonable Person operating a business of the size and type of Seller would deem sufficient to have a significant impact on such business's operation in the Ordinary Course of Business or on the value of the Subject Assets.

(vv)    **"*Material Adverse Effect*"** means an event, violation, inaccuracy, circumstance or other matter that (individually or in the aggregate) would adversely affect the business, condition (financial or otherwise), capitalization, assets, liabilities, operations or financial performance of the Subject Assets taken as a whole by more than $100,000.00; provided that the following shall not be deemed to constitute, create or cause a Material Adverse Effect (i) any changes, circumstances or effects that result from any of the transactions contemplated by this Agreement and public announcement thereof, (ii) a change in GAAP or regulatory accounting principles or interpretations thereof after the date hereof, (iii) any act of war or terrorism (or, in each case, escalation thereof) or declaration of a national emergency, (iv) any natural disaster, except in each case covered by clauses (i) through (iv) to the extent such event, effect, occurrence, development, circumstance or change of fact disproportionately affects Seller as compared to other companies engaged in an industry substantially similar to the Business. Any failure by Seller to meet internal or other financial projections or forecasts for any period shall not, by itself, be deemed a Material Adverse Effect.

(ww)    **"*Material Contracts*"** has the meaning set forth in Section 4.8 of this Agreement.

(xx)    **"*Ordinary Course of Business*"** means, with respect to any Person, such Person has conducted its business in the ordinary and usual course consistent with its past custom and practices (except any payments or liabilities to any related parties of Seller other than rent or salaries) and in accordance with applicable Laws.

(yy)    **"*Parties*"** has the meaning set forth in the first paragraph of this Agreement.

(zz)    **"*Party*"** has the meaning set forth in the first paragraph of this Agreement.

(aaa)    **"*Permit*"** means any permit, franchise, certificate, consent, clearance, notification, authorization, approval, registration or license granted by or obtained from any Governmental Authority in accordance with applicable Law.

(bbb)  **"*Permitted Encumbrances*"** means (i) statutory Liens for current Taxes, assessments or other governmental charges not yet due and payable, including for 2023 *ad valorem* taxes, or the amount or validity of which is being contested in good faith; (ii) zoning, entitlement and other land use and environmental regulations or designations by any Governmental Entity provided that such regulations or designations have not been violated, which in each case do not materially interfere with the operation of the Business as currently conducted; (iii) title of a lessor under a capital or operating lease arising from and related to any Assumed Liabilities; and (iv) Liens and Encumbrances arising from and related to any Assumed Liabilities.

(ccc)  **"*Person*"** means an individual, partnership, joint venture, corporation, business trust, limited liability company, trust, unincorporated organization, joint stock company, labor union, estate, Governmental Entity or other entity.

(ddd)  **"*Petition Date*"** has the meaning set forth in the Recitals to this Agreement.

(eee)  **"*Proceeding*"** means any action, suit, charge, complaint, claim or legal, administrative, arbitration or other alternative dispute resolution proceeding or investigation.

(fff)  **"*Proprietary Property*"** has the meaning set forth in the definition of Intellectual Property.

(ggg)  **"*Purchased Accounts Receivable*"** means the DIP Accounts Receivable, the Truist Accounts Receivable, and any other Accounts Receivable of the Seller.

(hhh)  **"*Purchase Price*"** has the meaning set forth in Section 3.1.

(iii)  **"*Real Property*"** has the meaning set forth in Section 2.1(l).

(jjj)  **"*Related Agreements*"** means the Bill of Sale and Assignment, the General Warranty Deed, the Intellectual Property Assignment Agreement, and any other written agreement executed on or after the date hereof by Seller, Buyer or any of their respective Affiliates, as applicable, in connection with the transactions provided for in this Agreement and the Closing hereunder.

(kkk)  **"*Required Regulatory Approvals*"** means all consents and approvals required from all regulatory authorities or Governmental Authorities having jurisdiction over the Parties as shall be necessary for the completion of the transactions contemplated by this Agreement and the continuation of the Business, by Buyer, post-Closing.

(lll)  **"*Sale Order*"** means an order approving the Motion to Sell which has become a final non-appealable order under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

(mmm)**"*Seller*"** has the meaning set forth in the first paragraph of this Agreement.

(nnn)  **"*Seller's Bankruptcy Filings*"** has the meaning set forth in Section 4.7.

(ooo)    **"Sorter"** means that certain TOMRA 5C 1200 Sorter with high-capacity EM infeed shaker with hopper, cooling unit, and spare parts package, Serial Number N-F-430281-21-04688.

(ppp)    **"Subject Assets"** has the meaning set forth in Section 2.1.

(qqq)    **"Tax"** or **"Taxes"** means any current, deferred, federal, state, county, local, foreign and other taxes, assessments, duties or charges of any kind whatsoever, including income, profits, gains, net worth, sales and use, *ad valorem,* gross receipts, business and occupation, license, minimum, alternative minimum, environmental, estimated, stamp, custom duties, occupation, property (real or personal), franchise, capital stock, license, excise, value added, payroll, employees, income withholding, social security, unemployment or other tax, together with any penalty, addition to tax or interest on the foregoing.

(rrr)    **"Tax Return"** means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(sss)    **"Trademarks"** has the meaning set forth in the definition of Intellectual Property.

(ttt)    **"Truist Accounts Receivable"** means the Truist Pre-Petition Accounts Receivable and the Truist Post-Petition Accounts Receivable, but excluding the Truist Non-Purchased Accounts Receivable.

(uuu)    **"Truist Collateral"** means the Sorter, the Truist Accounts Receivable, the Trust Inventory, all cash held by Seller's subsidiary, Pecan Producers International, Inc., and any other collateral securing any loan between Seller (or any subsidiary thereof) and Consenting Party.

(vvv)    **"Truist Collateral Payment"** means $5,665,000, less the Lockbox Adjustment.

(www)    **"Truist Comingled Inventory"** means Truist Inventory that is comingled with the DIP Inventory prior to its sale to a customer of Seller.

(xxx)    **"Truist Inventory"** means any inventory of Seller that is collateral securing any loan between Seller (or any subsidiary thereof) Consenting Party. The term "Truist Inventory" specifically excludes the DIP Inventory.

(yyy)    **"Truist Inventory Funding"** means any amount paid into the Lockbox Account that arises from Seller's use of the Truist Comingled Inventory.

(zzz)    **"Truist Non-Purchased Accounts Receivable"** means the Accounts Receivable set forth on Schedule 2.4(k).

(aaaa)    **"Truist Non-Purchased Collateral Proceeds"** means the proceeds of Truist Non-Purchased Accounts Receivable.

(bbbb)    **"Truist Post-Petition Accounts Receivable"** means Accounts Receivable generated from the sale of the Truist Inventory other than the Truist Comingled Inventory.

(cccc) ***"Truist Pre-Petition Accounts Receivable"*** means the Accounts Receivable set forth in Schedule 2.1(h).

(dddd) ***"Truist Release Payment"*** means the Truist Collateral Payment, plus the Truist Non-Purchased Collateral Proceeds collected as of the Closing Date.

Section 1.2.    <u>Other Definitional Provisions</u>.

(a)    The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both singular and plural forms of such terms.

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(d)    Words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(e)    A reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns.

(f)    A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(g)    All references to "$," USD and dollars shall be deemed to refer to the currency of the United States of America.

(h)    All references to any financial or accounting terms shall be defined in accordance with GAAP, except as otherwise specifically defined herein.

## ARTICLE II.

### TRANSFER OF ASSETS AND ASSUMPTION OF LIABILITIES

Section 2.1.    <u>Transfer of Subject Assets</u>. On the terms of and subject to the conditions in this Agreement, Seller will sell, convey, transfer, assign and deliver to Buyer and/or its assignee as specified in the General Warranty Deed and the Bill of Sale and Assignment, on the Closing Date, all of Seller's right and title to and interest in all of the operating assets of Seller, except the Excluded Assets (collectively, the ***"Subject Assets"*** including, but not limited to):

(a)    [Reserved];

(b)     All fixed assets, leasehold improvements, vehicles, and equipment set forth on Schedule 2.1(b);

(c)     All personal property including product catalogs, advertising materials, stationery, purchase order forms, sale order forms and invoices, backlog, claims and rights under contracts, distribution agreements, supplier agreements, purchase orders, work orders, leases of equipment, machinery, vehicles, production machinery, tooling and office furniture and equipment and other items of personal property set forth on Schedule 2.1(c);

(d)     All Inventory;

(e)     All licenses, permits, franchises, certificates, approvals and authorizations necessary to conduct the Business, including but not limited to the property set forth on Schedule 2.1(e);

(f)     All intangible assets and goodwill of Seller;

(g)     All Intellectual Property of any kind used in the Business, including, but not limited to, the property set forth on Schedule 2.1(g), the benefit of third-party representations, warranties and guarantees, supplier lists, customer lists, business plans and strategies, marketing materials and plans, trade secrets, know-how, computer software and programs, telephone numbers and domain names the trademarks and trade names "Navarro Pecan Company, Inc.," and "Navarro", and any derivative or combination of those marks and names and all other taglines or slogans used by Seller in connection with the Business or its products, including all goodwill associated therewith;

(h)     All Purchased Accounts Receivable of Seller, including the Truist Pre-Petition Accounts Receivable listed in Schedule 2.1(h);

(i)     The amount of any and all rights to any insurance proceeds received or entitled to be received by Seller related to any of the Subject Assets, including any real property, regardless of if a claim on the applicable insurance policy was made prior to Closing or after Closing;

(j)     All prepaid expenses, prepaid rents, prepaid insurance, prepaid insurance policies, utility deposits and deposits on contractual obligations related to Subject Assets set forth on Schedule 2.1(j));

(k)     All computer records, files, books and records ("***Books and Records***") of Seller relating to the Business (but excluding Seller's Retained Records), all as the same exist on the Closing Date including but not limited to, accounting information, marketing reports, statements, and customer lists and accounts;

(l)     The Real Property set forth on Schedule 2.1(l), together with all buildings and improvements located thereon, which will be assigned and transferred pursuant to the General Warranty Deed;

(m)     Any other Truist Collateral not otherwise specified in this Section 2.1, other than (i) the Truist Non-Purchased Collateral Proceeds, and (ii) funds held in the Lockbox Account at

{00010196:3}                                    -10-

Closing, which, as specified in Section 2.4(j) and 2.4(k), shall be applied to the outstanding obligations owed by Seller to Consenting Party at Closing; and

(n)     The Lockbox Account.

The Subject Assets, whether or not specifically itemized above, that fall under the definition of Assigned Executory Contracts are subject to the terms of Section 7.3, and any Executory Contract that is not specifically designated by Buyer in accordance with the procedures set forth in Section 7.3 shall be an Excluded Asset (as defined below). Subject Assets shall be identified within three (3) days of Closing, but Buyer retains the ability to amend the list of Subject Assets up until the day of Closing.

Section 2.2.     Assumption of Liabilities. In addition to the payment of the Purchase Price, Buyer shall assume the Assumed Liabilities at the Closing. Notwithstanding any provision in this Agreement or any other writing to the contrary, Buyer is assuming only the Assumed Liabilities and is not assuming any Excluded Liabilities or any other Liability of any predecessor of Seller or any prior owner of all or part of its businesses and assets of whatever nature, whether presently in existence or arising hereafter. All such other Liabilities (including the Excluded Liabilities) shall be retained by and remain obligations and liabilities of Seller.

Section 2.3.     Subject Assets Sold "As Is, Where Is". THE PARTIES HERETO AGREE THAT THE SUBJECT ASSETS SOLD PURSUANT TO THIS AGREEMENT ARE SOLD, CONVEYED, TRANSFERRED AND ASSIGNED ON AN "AS IS, WHERE IS" BASIS "WITH ALL FAULTS" AND THAT EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE IV OF THIS AGREEMENT, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, TERMS, CONDITIONS, UNDERSTANDINGS OR COLLATERAL AGREEMENTS OF ANY NATURE OR KIND, EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, CONCERNING THE SUBJECT ASSETS OR THE CONDITION, QUALITY, OR USEFULNESS, OF THE SUBJECT ASSETS, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH WARRANTIES ARE ALSO HEREBY EXPRESSLY DISCLAIMED. THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT NO PARTY SHALL BE LIABLE UNDER THIS AGREEMENT FOR ANY LOST PROFITS OR INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES UNDER ANY CIRCUMSTANCES.

Buyer confirms, acknowledges and agrees that it has inspected the Subject Assets prior to the execution of this Agreement to the extent that it wishes to do so and that Buyer is relying upon its own investigations and inspections of the Subject Assets with respect to the quality and condition thereof.

Section 2.4.     Excluded Assets. Seller shall retain, and Buyer shall not purchase, Seller's right, title and interest in or to any of the following assets and properties of Seller (collectively, the "***Excluded Assets***"), all of which shall remain the exclusive property of Seller, free and clear of any Claim of Buyer:

(a)     Any Executory Contracts other than the Assigned Executory Contracts listed on Schedule 4.8;

(b)     All rights, demands, claims, actions and causes of action (collectively, "***Claims***") which Seller may have (x) against any Affiliate of Seller in respect of intercompany receivables, guarantees or indemnities by Seller, or (y) against any Person (other than Buyer and its Affiliates) solely with respect to any Excluded Assets, other than Accounts Receivable with respect to Excluded Assets (the "***Excluded Claims***");

(c)     All Claims that Seller may have against any third-party, including any Governmental Entity, under Chapter 5 of the Bankruptcy Code or otherwise constituting Cause of Action (as defined in the Plan) (collectively, the "***Avoidance Actions***");

(d)     Loans owed to Seller by any employee or director of Seller and any intercompany loans;

(e)     All rights of Seller under this Agreement, and the agreements and instruments delivered to Seller by Buyer pursuant to this Agreement or the transactions contemplated hereby;

(f)     The company seal, minute books, charter documents, stock or equity record books and such other books and records as pertain to the organization, existence or capitalization of Seller;

(g)     Any information that constitutes personally identifiable information as defined by Bankruptcy Code Section 101(41A).

(h)     Seller's directors' and officers' liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, profit sharing, savings, retirement, stock option, stock purchase, group life, health or accident insurance or other Employer Benefit Plan;

(i)     All membership interests, capital stock or other equity interests of Seller, including any options, warrants or other securities exchangeable or convertible into membership interest, capital stock or other equity interests of Seller; and

(j)     All funds held in the Lockbox Account at Closing, which funds shall be swept by Consenting Party at Closing and applied to the outstanding obligations owed by Seller to Consenting Party.

(k)     All Truist Non-Purchased Accounts Receivable, and Truist Non-Purchased Collateral Proceeds, whether held in the Lockbox Account or otherwise, which funds (to the extent in the Lockbox Account), shall be swept by Consenting Party at Closing and applied to the outstanding obligations owed by Seller to Consenting Party.

Section 2.5.     Method of Conveyance and Transfer. At Closing and subject to the Sale Order, Seller shall transfer good and marketable title to the Subject Assets to Buyer free and clear of any and all Encumbrances other than the Assumed Liabilities.

Section 2.6.     Delivery of Instruments of Transfer. At Closing, Seller shall deliver to Buyer or its assignee such specific assignments, bills of sale, endorsements, certificates, leases, deeds, real property title documents and other good and sufficient instruments of conveyance and transfer, in form and substance satisfactory to Buyer and its counsel, as shall be reasonably

requested by Buyer to effectively vest in Buyer or its assignee, as provided in the Sale Order issued pursuant to the Bankruptcy Code, good and marketable title to all the Subject Assets, including, dated the Closing Date the Bill of Sale and Assignment in the form attached hereto as <u>Exhibit A</u>, the Intellectual Property Assignment Agreement in the form attached hereto as <u>Exhibit B</u>, and the General Warranty Deed in the form attached hereto as <u>Exhibit C</u>. Simultaneously with the delivery of such instruments and agreements, Seller shall place Buyer or its assignee in actual possession and operating control of the Subject Assets and, if required, as the case may be with respect to the domain names identified in Section 2.1(g) have the appropriate Person from Seller available to cause the transfer of those domain names as may be required by the Registrars of the domain names. In addition to the foregoing, at the Closing, Seller shall also deliver all of the documents and agreements and other deliveries contemplated by Article VIII.

Section 2.7.    <u>Further Assurances</u>. Seller and Consenting Party, at any time and from time to time after the Closing, upon reasonable request of Buyer, will do, execute, acknowledge and deliver all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances as may be reasonably required for the better conveying, transferring, assigning and delivering to Buyer, or to its successors and assigns, and for aiding and assisting in collecting and reducing to Buyer's possession, all of the Subject Assets free and clear of any Liens, Claims, and Encumbrances.

# ARTICLE III.

# PAYMENT OF PURCHASE PRICE

Section 3.1.    <u>Purchase Price</u>.

(a)    The purchase price for the Subject Assets (the "**_Purchase Price_**") will be equal to:

  i.    $17,638,310.00 USD, *plus*

  ii.    the DIP Funding at Closing, *minus*

  iii.    $5,180,926.00.

The Purchase Price allocation is set forth in <u>Exhibit D</u>.

(b)    The Purchase Price shall be funded through:

  i.    a credit bid of the DIP Funding at Closing and

  ii.    Cash.

(c)    The Purchase Price shall be reduced by:

  i.    any payments actually received by Seller (whether directly, via the Lockbox Account, or otherwise) from the sale of the DIP Inventory prior to Closing;

ii.      the Truist Inventory Funding;

iii.     any reduction in any assessed *ad valorem* taxes; and

iv.      any payments made to the Lockbox Account in connection with any Truist Accounts Receivable.

(d)      For the avoidance of doubt, nothing contained in this Section or any other part of the Agreement, shall be deemed an admission by the Parties as to the validity of the amount due in connection with any Tax, including any *ad valorem* taxes and each Party reserves all rights to challenge any amount allegedly owed with regard to any Tax, including any *ad valorem* taxes.

Section 3.2.     Tax Allocation of Purchase Price. The Buyer and Seller shall work together to agree on the allocation of the Purchase Price among the Subject Assets in accordance with Code Section 1060 and applicable Treasury Regulations (and similar provisions of state or local law). To the extent that Buyer and Seller agree on the allocation of the Purchase Price Buyer and Seller shall file, in accordance with Section 1060 of the Code an Asset Allocation Statement on Form 8594 which reflects the agreed upon allocations for the Subject Assets with its federal income tax return for the tax year in which the Closing Date occurs and shall contemporaneously provide the other Party with a copy of the Form 8594 being filed. Each Party agrees not to assert, in connection with any tax return, audit or other similar proceeding, any allocation of the aggregate consideration which differs from the agreed to allocation. Notwithstanding any other provisions of this Agreement, this Section 3.2 shall survive the Closing Date without limitation, and shall not be an admission of and shall not be evidence of the value of any of the Subject Assets on Seller's Case or any other related proceeding, and shall be for tax purposes only. To the extent that Buyer and Seller are unable to agree on the allocation of the Purchase Price for each Seller, then Buyer and each Seller shall be free to file a Form 8594 completed by such party.

Section 3.3.     Transfer Taxes. All applicable sales and transfer taxes ("***Transfer Taxes***"), if any, arising by reason of the transfer of the Subject Assets under this Agreement will be paid by Buyer.

# ARTICLE IV.

## REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF SELLER

Section 4.1.     Organization and Good Standing.

(a)      Seller is a company duly organized, validly existing and in good standing under the laws of the State of Texas. Seller has full power and authority to carry on the Business as and where now conducted and to own or lease and operate their respective properties as and where now owned or leased and operated by them, and are duly qualified to do business in every jurisdiction in which the property owned, leased or operated by them, or the nature of the business conducted by them, makes such qualification necessary.

(b)      Set forth on Schedule 4.1(b) is a true and correct list of all jurisdictions where Seller has material business operations or owns or leases property.

{00010196:3}                                        -14-

(c)      Set forth on Schedule 4.1(c) is a true and correct organization chart indicating Seller and its respective corporate parents or individual owners and subsidiaries as of the date of this Agreement and as of the Closing.

Section 4.2.      Authority. Subject to the entry of the Sale Order, (a) Seller has all requisite power and authority, corporate, trustee, partnership or otherwise, to execute, deliver and perform under this Agreement and the other agreements, certificates, and instruments to be executed by it in connection with or pursuant to this Agreement (together with this Agreement, the "**Seller's Documents**"); (b) the execution, delivery, and performance by Seller of each Seller Document to which it is a party has been duly authorized by all necessary action, corporate or otherwise, on the part of **such** Seller; (c) this Agreement has been, and at the Closing the other Seller's Documents will be, duly executed and delivered by Seller; and (d) this Agreement is, and upon execution and delivery, the Seller's Documents will be a legal, valid, and binding agreement of Seller and, enforceable against Seller in accordance with their respective terms.

Section 4.3.      No Violation or Consents. Subject to the entry of the Sale Order, except as set forth on Schedule 4.3, neither the execution, delivery and performance of this Agreement by the Seller, nor the consummation of the transactions contemplated hereby will (a) violate or conflict with any provision of the certificate of formation or incorporation, as applicable, bylaws, operating agreement or other governing documents of Seller (b) require the consent, waiver, approval, license or authorization of or any filing by Seller with any third-party or public authority, (c) violate, conflict with or result in a breach of or the acceleration of any material obligation under, or constitute a default (or an event which with notice or the lapse of time or both would become a default) under, or give to others any right of termination, amendment, acceleration or cancellation of, or result in the creation of an Encumbrance on any Subject Assets, other than the Permitted Encumbrances, or (d) to Seller's knowledge, violate or conflict with any law, rule, regulation, permit, ordinance or regulation applicable to the Subject Assets to be transferred to Buyer or its nominee hereunder.

Section 4.4.      Compliance with Law. Except as set forth on Schedule 4.4:

(a)      Except as otherwise specifically directed by the Court, Seller has conducted and continues to conduct the Business in accordance with all Laws applicable to Seller and the Subject Assets.

(b)      All filings and notices relating to the Business, or the ownership or operation thereof, required to be made by Seller with all Governmental Authorities have been made by or on behalf of Seller other than filings or notices for which the failure to provide is not, individually or in the aggregate, reasonably expected to have a Material Adverse Effect on Seller.

Section 4.5.      Litigation. Except as set forth in Seller's Bankruptcy Filings, there is no dispute, challenge, action, suit, proceeding in equity or law, arbitration or administrative or other proceeding, any investigation by any person (including, without limitation, any Governmental Authority), any claim of infringement of any Trademark identified on Schedule 2.1(g), pending or threatened against or affecting Seller or the Subject Assets that, if adversely determined, would have a Material Adverse Effect upon the Subject Assets or Seller's ability to perform their

obligations under this Agreement or upon the consummation of the transactions described herein. None of the Subject Assets are subject to any adverse order, judgment, injunction, writ or decree.

Section 4.6.    <u>Financial Statements and Reports; Material Liabilities</u>. Seller has provided Buyer with all financial statements and documents as requested and as required under the Sale Order, Bid Procedures Order and the Bankruptcy Code (collectively, these documents are referred to as the "***Financial Statements***"). The Financial Statements are true and accurate and were prepared in accordance with sound accounting practices applied on a consistent basis with the past practices of Seller.

Section 4.7.    <u>Absence of Certain Events</u>. Except as ordered by the Court and disclosed in the filings, including Seller's Schedules of Assets and Liabilities and Statement of Financial Affairs, as amended from time to time, made by the Seller with the Court in connection with the Case (the "***Seller's Bankruptcy Filings***"), Seller has conducted its business in the ordinary course, and there has not been any:

(a)    Material Adverse Effect on the Subject Assets or in the financial condition, liabilities, Business or results of operations of Seller;

(b)    sale, assignment or transfer of any of the Material Assets of Seller;

(c)    any breach of, or default under, any Material Contract by Seller;

(d)    any communication, written or oral that any counterparty to a Material Contract has indicated that it intends to terminate its agreement with Seller or Buyer post-Closing or that it intends to materially reduce orders from Seller or Buyer post-Closing;

(e)    any environmental issues affecting any of the Subject Assets, including the Real Property other than as disclosed in the Environmental Assessment, as the term is defined below;

(f)    destruction or loss of any Subject Asset; or

(g)    increase in the compensation of officers or employees of Seller (including any such increase pursuant to any bonus, pension, profit sharing or other plan or commitment) or any increase in the compensation payable or to become payable to any such officer or employee or any severance or termination pay or any modification of any employee benefit plan to which any Seller is a party.

Section 4.8.    <u>Material Contracts</u>.

(a)    Copies of all contracts material to the Subject Assets in effect as of the Petition Date have been provided or made available by Seller to Buyer and are true and correct copies of all contracts or other agreements to which Seller is a party or is bound, or by which any of the Subject Assets are bound, whether or not made in the ordinary course of business, including those contracts and leases identified in Section 2.1 and as set forth on Schedule 4.8 (collectively, the "***Material Contracts***"). With respect to the Assigned Executory Contracts on Schedule 4.8, Seller has indicated which Material Contracts may be classified as Executory Contracts.

(b)     Except as set forth on Schedule 4.8, subject to the orders of the Court and procedure prescribed in Section 7.3, (i) each Material Contract is a valid and binding agreement of Seller, enforceable in accordance with its terms; (ii) Seller has performed, and, to Seller's knowledge, each other party has performed or will perform, each material term, covenant and condition of each Material Contract required to be performed as of the date hereof and as of the Closing; and (iii) to Seller's knowledge, no event has occurred that would, with the passage of time or compliance with any applicable notice requirements or both, constitute a default by Seller under any of the Material Contracts.

Section 4.9.     Employee Benefit Plans.

(a)     Set forth in Schedule 4.9 is a true and correct list of all of Seller's Employee Benefit Plans.

(b)     Each Employee Benefit Plan is and at all times has been maintained, funded, operated, administered and invested in compliance with the terms of such Employee Benefit Plan and all applicable Laws, including ERISA, and the Code and Seller has performed all of its material obligations under each Employee Benefit Plan. All contributions required to be made to any Employee Benefit Plan by applicable Laws or by the terms of such Employee Benefit Plan, and all premiums due or payable with respect to insurance policies funding any Employee Benefit Plan, for any period through the Closing Date, have been paid in full. None of the Subject Assets is encumbered by any indebtedness to any Employee Benefit Plan, the Pension Benefit Guaranty Corporation, the Internal Revenue Service, or any other individual or agency.

Section 4.10.     Intellectual Property.

(a)     Schedule 2.1(g) identifies (i) each patent, Trademark or Copyright which has been issued to Seller and has not expired with respect to any Intellectual Property (with any relevant registration numbers identified), (ii) each pending patent application and application for registration of a Trademark or Copyright which Seller has made with respect to any Intellectual Property, and (iii) each license, sublicense, agreement or other permission, relating to Intellectual Property to which any Seller is a party, pursuant to which any Seller has granted to any third-party the right to use any Intellectual Property.

(b)     Each item of Proprietary Property disclosed on Schedule 2.1(g) and all Internet web site content and software developed internally by Seller (i) is owned by Seller, free and clear of any Encumbrances, other than Permitted Encumbrances, and (ii) is not currently the subject of any challenge, opposition, litigation or any other proceeding before any Governmental Authority.

(c)     To the best of each Seller's knowledge, no Person is infringing upon the Intellectual Property owned or used by Seller, and Seller has not notified any Person that it believes that such Person is so infringing.

Section 4.11.   Environmental. Except as specifically disclosed to Buyer and to the best of Seller's knowledge at the time of entering into this Agreement:

{00010196:3}                                    -17-

(a)      no environmental issues or non-compliance of environmental laws of any kind exist with respect to any real property owned or leased by the Seller, including the Real Property;

(b)      all permits have been obtained, are valid and in good standing;

(c)      all operations on or at the Real Property are and have been conducted in compliance with all applicable environmental laws;

(d)      Seller has not received any notification from any Governmental Authority seeking any information or alleging any violation of any applicable law;

(e)      Seller has not caused or permitted, and has no knowledge of, any release of any hazardous materials on-site or off-site of the Real Property;

(f)      the Real Property (and all uses thereof and operations conducted thereon) complies with all permits, and no hazardous materials are located on, in, or under the Real Property; and

(g)      no condition, circumstance, or set of facts directly or indirectly applicable to the Real Property constitutes or could reasonably be deemed to constitute a hazard to health, safety, property, or the environment for which Seller is or may be liable, or which is, or with the passage of time, could become an environmental claim or environmental noncompliance.

Section 4.12.  <u>Real Property</u>. To the best of Seller's knowledge at the time of entering into this Agreement:

(a)      All due, owing, and accrued (whether partially or fully) taxes on the Real Property have been paid prior to Closing, are being paid from the Purchase Price at Closing, or will be escrowed in a segregated account, pending any disputes relating thereto.

(b)      The Real Property is free and clear of all mechanic's liens, liens, mortgages, or encumbrances of any nature excepts as specifically identified and which shall be paid at closing from the proceeds of the Purchase Price.

(c)      There are no *lis pendens* filed against the Real Property in the applicable property records. Seller has full authority to sell the Real Property.

(d)      Seller has good and indefeasible fee simple title to the Real Property, free and clear of all conditions, exceptions, or reservations.

(e)      Seller has not granted any option or right of first refusal or first opportunity to any person or entity to acquire the Real Property or any interest therein.

(f)      Seller has not entered into any agreement or understanding, either written or oral, pursuant to which any person or entity has the right to own, acquire, use or occupy any portion of the Real Property or any interest therein.

(g)    Any improvements on the Real Property do not encroach on any easement or on any land not included within the boundary lines of the Real Property and there are no neighboring improvements encroaching on the Real Property.

(h)    The Real Property and its present use do not violate or conflict with any covenants, conditions or restrictions applicable to the Real Property.

(i)    There are no leases with any third-party tenants associated with or in existence which affect the Real Property.

(j)    There are no adverse parties in possession of the Real Property or of any part thereof and no parties in possession thereof except Seller.

(k)    There is no pending condemnation or similar proceeding affecting the Real Property and Seller has not received any written notice and has no knowledge that any such proceeding is contemplated.

Section 4.13.    <u>Seller as Debtor in Possession; No Trustee</u>. From the Petition Date through the Closing Date, Seller has been at all times in its Case debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code, and no trustee or examiner has been appointed in the Case.

Section 4.14.    <u>Assigned Executory Contracts</u>. A true and accurate copy of each Executory Contract was made available to Buyer by Seller. All Executory Contracts are listed on Schedule 4.8, and every contract listed on Schedule 4.8 that is an Executory Contract is designated as an Executory Contract.

Section 4.15.    <u>Notice</u>. Seller has provided notice of its intent to enter into this Agreement to all creditors and other parties in interest.

## ARTICLE V.

## REPRESENTATIONS AND WARRANTIES OF BUYER

As a material inducement to Seller to enter into this Agreement and the Related Agreements and all other agreements and documents executed by Seller in connection with this Agreement and the Closing hereunder and to consummate the transactions contemplated by this Agreement and the Related Agreements, Buyer represents and warrants to Seller that:

Section 5.1.    <u>Organization and Good Standing</u>. Buyer is a limited liability company validly existing and in good standing under the Laws of the State of Texas. Buyer has full power and authority to carry on its business as and where now conducted and to own or lease and operate its properties at and where now owned or leased and operated by it, and is duly qualified to do business and is in good standing in every jurisdiction in which the property owned, leased or operated by it, or the nature of the business conducted by it, makes such qualification necessary.

Section 5.2.    <u>Authority</u>. Buyer has all requisite power and authority, corporate, trustee, partnership or otherwise, to execute, deliver, and perform under this Agreement and the other agreements, certificates, and instruments to be executed by it in connection with or pursuant to this

Agreement (together with this Agreement, the "***Buyer Documents***"). The execution, delivery, and performance by Buyer of each Buyer Document to which it is a party has been duly authorized by all necessary action, corporate or otherwise, on the part of Buyer, as applicable. This Agreement has been, and at the Closing the other Buyer Documents will be, duly executed and delivered by Buyer, as applicable, if such Party is party thereto. This Agreement is, and upon execution and delivery and Bankruptcy Court approval, each of the other Buyer Documents will be, a legal, valid, and binding agreement of Buyer, as applicable, enforceable against Buyer, as applicable, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency or other laws affecting the enforcement of creditors' rights generally and general principles of equity.

Section 5.3.    No Violation of Charter Documents, Contracts or Laws. Neither the execution and delivery of this Agreement, nor the consummation of the transactions provided for herein or therein, will conflict with, or (with or without notice or lapse of time, or both) result in a termination, Breach, impairment or violation of: (a) any provision of Buyer's certificate of formation or incorporation, as applicable, bylaws, operating agreements or other charter documents, as applicable, as currently in effect; (b) any material contract to which Buyer is a party or bound; or (c) any federal, state, local or foreign judgment, writ, decree, order, statute, rule or regulation applicable to Buyer, which, in the case of clauses (b) and (c), would have or be reasonably expected to have a Material Adverse Effect on Buyer or their ability to consummate the transactions contemplated by this Agreement.

Section 5.4.    Subject Assets "As Is". Except as otherwise provided herein, Buyer shall acquire the Subject Assets on an "As Is, Where Is" basis, "With All Faults" as described Section 2.3 and Seller shall not be liable or bound in any manner by any oral or written statements or representations (other than those contained in this Agreement) relating to the Subject Assets. Buyer has entered into this Agreement on the basis of its own investigation of all the facts and conditions underlying or relating to the Subject Assets and the Business.

Section 5.5.    Available Funds. Buyer will have on the Closing Date sufficient funds available to it to perform all of their obligations under this Agreement, including, without limitation, to pay the Purchase Price in accordance with the terms of this Agreement and to assume the Assumed Liabilities.

## ARTICLE VI.

## ADDITIONAL COVENANTS OF THE PARTIES

Section 6.1.    Due Diligence; Access to Information. Buyer shall cooperate with Seller in permitting each to continue to conduct reasonable due diligence on Buyer, its operations, directors, principal shareholders, officers and employees.

Section 6.2.    Mutual Cooperation. The Parties agree to execute and deliver all other instruments and take all such other actions that either Party may reasonably request from time to time, before or after Closing and without payment of further consideration, to effectuate the transactions provided herein and to confer to the Parties hereto the benefits intended by such transactions. The Parties shall cooperate fully with each other and with their respective counsel

and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement. Specifically, the Seller will assist with the transfer and assignment of any bank accounts to Buyer within five (5) days of Closing and will execute any documents required to assign the bank accounts.

Section 6.3.    Seller's Employees. Seller shall, on or before the Closing Date, terminate the employment of all of its employees and Seller shall remain solely liable and responsible for all obligations to their employees and former employees, including all salary, wages, bonuses, welfare and pension benefits, WARN Act Obligations and other compensation or benefits related to, in connection with or arising out of their employment with Seller or the termination of their employment by Seller in connection with the transactions contemplated by this Agreement or otherwise.

Section 6.4.    Name Change. On the Closing Date, Seller shall, and hereby agrees to, unconditionally, irrevocably and in perpetuity, relinquish to Buyer all rights to the use of the names "Navarro Pecan Company, Inc.," "Pecan Producers International, Inc.," and "Navarro", and all other Trademarks in the Subject Assets and any and all derivative forms thereof. Seller shall cause each of its subsidiaries, if any, with a corporate name which includes all or a portion of a Trademark included in the Subject Assets to, change its corporate name to a name which does not include all or a portion of any Trademark included in the Subject Assets and shall make all necessary legal filings with the appropriate authorities to reflect such changes. Buyer shall file a motion for the modification of the case caption on the proceedings before the Court to reflect the change of the names of Seller.

Section 6.5.    Further Assurances.

(a)    If any of the Parties becomes aware, prior to the Closing Date, that any of its representations, warranties or covenants is inaccurate or incapable of being performed in any material respect, then such Party shall promptly give written notice of such inaccuracy or incapability to the other Parties; provided, however, that nothing contained in this Section shall relieve the Party bound by such representation, warranty or covenant from complying with such representation, warranty or covenant.

(b)    The Parties shall each use reasonable efforts to cause the transactions contemplated herein and in the Related Agreements to be consummated in accordance with the terms hereof and thereof and, without limiting the generality of the foregoing, shall use reasonable efforts to obtain all necessary approvals, waivers, consents, permits, licenses, registrations and other authorizations required in connection with the Related Agreements, including, but not limited to, the Sale Order.

(c)    The Sale Order shall contain provisions authorizing the representative of the Seller to sign any documents which may be required after entry of the Sale Order and before and after the Closing Date to effectuate the transactions set forth herein. The reorganized Seller shall cause such representative to cooperate with Buyer in obtaining any necessary approvals, waivers, consents, permits, licenses, registrations or other authorizations in accordance with Section 6.7.

Section 6.6.    Governmental Approvals. In addition to as more specifically provided for in this Agreement, the Parties shall each use reasonable efforts and shall proceed diligently and in

good faith to, as promptly as practicable, obtain all consents, approvals or actions of, make all filings with and give all notices to, Governmental Authorities required to consummate the transactions contemplated by this Agreement, if any. If consent by any Governmental Authority with respect to the assignment of a Material Contract is not granted Buyer, such withholding will be a material default under this Agreement and Buyer will not be required to consummate the transaction proposed by this Agreement.

Section 6.7.    <u>Publicity</u>. No public announcement, press release or similar publicity with respect to this Agreement or the transactions contemplated by this Agreement shall be made by any Party prior to the Closing Date unless planned and coordinated jointly between the Parties, except to the extent otherwise required by applicable laws, rules or regulations governing the Parties, including the Bankruptcy Code, the Bankruptcy Rules, the federal securities laws and the rules and regulations of any applicable stock exchange.

Section 6.8.    <u>Casualty</u>. Seller will maintain until Closing all existing insurance, at its sole cost and expense. If any material portion of any Subject Asset shall be damaged or destroyed by fire or other casualty before the Closing, any Party may, at its option, and upon written notice prior to Closing to the other Parties, elect to exclude such, Subject Asset from this Agreement. If neither party elects to exclude such Subject Asset from this Agreement, Seller shall pay the deductible due under any insurance policy or policies insuring the same and deliver to Buyer, at Closing, any insurance proceeds actually received by Seller by reason of such casualty, and assign to Buyer all of its right, title and interest in any claim under any applicable insurance policies in respect of such casualty.

Section 6.9.    <u>Conduct of Business</u>.

(a)    <u>Continuing Operations of Seller</u>. From the date hereof and prior to the Closing Date, and except (i) as otherwise contemplated by this Agreement, (ii) in accordance with any order of the Court, or (iii) with the specific prior written consent of Buyer, Seller covenants and agrees with respect to the Business of the Seller that Seller shall conduct its business in the ordinary course, consistent with past practices, and shall operate in accordance with any existing orders of the Bankruptcy Court.

(b)    <u>Continuing Operations of Buyer and Seller</u>. Prior to the Closing Date, Buyer shall conduct its business (i) in the ordinary and usual course and (ii) in compliance with all applicable laws, rules and regulations.

## ARTICLE VII.

## BANKRUPTCY PROCEDURES, ETC.

Section 7.1.    <u>Motion to Sell and Notice</u>. Within five days of execution of this Agreement, Seller shall file a Motion to Sell, in a form agreeable to Buyer and Consenting Party. Seller shall be responsible for giving notice under the Bankruptcy Code of all hearings thereon to all persons entitled to notice including those persons or entities who have asserted liens or encumbrances on the Subject Assets, all non-debtor parties to the Assigned Executory Contracts

and any other notices that the Court should require so long as such filings are made with the consent of Buyer.

Section 7.2.    <u>Defense of Orders</u>. Seller shall use its reasonable best efforts to defend against any challenges in the event that Buyer elects, in its sole discretion, to close the purchase of the Subject Assets notwithstanding the pendency of any motion for reconsideration or appeal of such orders.

Section 7.3.    <u>Assumption and Rejection of Contracts and Leases and Cure Procedure</u>. The list of contracts to be assumed and assigned is included by designation of specific contracts on Schedule 4.8 <u>provided</u>, <u>however</u>, Buyer may amend the designation of contracts to be assumed and assigned at any time prior to the Closing Date. As a separate exhibit to the Sale Motion, Seller shall file with the Court a notice of the contracts to be assumed and assigned and a proposed cure amount. Notice of the Sale Motion will be provided to each counter-party to the contract. To the extent that contract is either added or removed from the list of Assigned Executory Contracts prior to the Closing Date but after filing of the Sale Motion, notice will be provided to each counterparty and each counterparty shall have fourteen (14) days to object to the proposed cure and assumption and assignment of the contract.

Seller shall use its best efforts to resolve any disputes concerning any cure amounts or other objections to assumption and assignment but requiring the approval of Buyer. Buyer is entitled to rely on the cure amounts established by the Court and will not incur any additional liability to the non-debtor parties for cure obligations. Buyer shall have demonstrated the ability to satisfy the conditions of Sections 365(b)(1)(C) of the Bankruptcy Code to the extent necessary to permit the assumption by Buyer and the assignment to Seller of the Assigned Executory Contracts.

Any executory contract or unexpired lease which has not expired by its own terms on or prior to the Closing Date, which has not been assumed, assumed and assigned, is the subject of a motion seeking to assume and assign the executory contract, the subject of a notice requesting the assumption and assignment of the contract, or rejected with the approval of the Court, or which the Seller has obtained the authority to reject but have not rejected as of the Closing Date, shall be deemed rejected on the Closing Date, and entry of the Sale Order by the Court shall constitute approval of such rejection pursuant to sections 365(d) and 1123(b)(2) of the Code.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER

The obligations of Buyer under this Agreement are, at its option, subject to satisfaction or fulfillment of the following conditions at or prior to the Closing Date, any one or more of which may be expressly waived in writing by Buyer in its sole discretion:

Section 8.1.    <u>Representations and Warranties</u>. The representations and warranties made by Seller in this Agreement shall have been true and correct on the date hereof, and as of the Closing, with the same force and effect as though all such representations and warranties had been made as of the Closing.

Section 8.2.    <u>Performance of Covenants</u>. Each of the agreements, covenants and obligations, including each of the covenants under Articles IV and VI, that Seller is required to perform or to comply with pursuant to this Agreement at or prior to Closing shall have been duly performed and complied with. Seller shall have delivered each of the documents required to be delivered by Seller pursuant to this Agreement.

Section 8.3.    <u>No Injunctions</u>. There shall not be any pending or seriously threatened injunction or restraining order issued by a court of competent jurisdiction against the consummation of the sale and purchase of the Subject Assets pursuant to this Agreement.

Section 8.4.    <u>No Violation of Law</u>. There shall not be (i) any action taken, or any Law enacted, entered, enforced or deemed applicable to the transactions contemplated by this Agreement or the transactions contemplated by this Agreement by any Governmental Authority of competent jurisdiction, or (ii) any circumstance arising, or transaction, agreement, arrangement or instrument entered into, or which would be necessary to be entered into, in connection with the transactions contemplated by this Agreement or the transactions contemplated by this Agreement, which, in either case:

(a)    makes illegal or otherwise directly or indirectly restrains, enjoins or prohibits the transactions contemplated by this Agreement; or

(b)    results in a judgment or assessment of material damages directly or indirectly relating to the transactions contemplated herein.

Section 8.5.    <u>No Material Adverse Effect</u>. Since the date of this Agreement, no Material Adverse Effect shall have occurred with respect to the Subject Assets or the Business. For the avoidance of doubt, the mere filing of the Case shall not constitute a Material Adverse Effect.

Section 8.6.    <u>Assigned Executory Contracts</u>. The Court shall have entered an order in form and substance satisfactory to Buyer authorizing the assumption by Seller and the assignment to Buyer of the Assigned Executory Contracts; <u>provided</u>, <u>however</u>, that such order shall allow Buyer to amend the list of Assigned Executory Contracts as provided for in Section 7.3.

Section 8.7.    <u>Instruments of Transfer; Third-party Consents</u>. Buyer shall have received from Seller (i) the appropriate instruments of transfer required pursuant to Section 2.5 and Section 2.6, and (ii) any third-party consents required to transfer to Buyer all rights and benefits in and to the Subject Assets.

Section 8.8.    <u>Required Regulatory Approvals</u>. The Parties shall have received all Required Regulatory Approvals, necessary for the completion of the transactions contemplated by this Agreement and the continuation of the Business, by Buyer, post-Closing.

Section 8.9.    <u>Absence of Certain Changes</u>. Seller shall not be in breach of Section 4.7.

Section 8.10.    <u>Certificate of Non-Foreign Status</u>. Seller shall have delivered to Buyer a properly executed certificate, in the form prescribed by Treasury Regulations under Code Section 1445, stating that the Seller is not a "foreign person" within the meaning of Code Section 1445.

Section 8.11.    No Defaults under Orders. No default shall have occurred or be continuing under and pursuant to any order entered by the Bankruptcy Court.

Section 8.12.    Sale Order. Unless otherwise agreed to by the Parties, the Court shall have entered the Sale Order, which shall be in form and substance satisfactory to Buyer.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS

Seller's obligations hereunder are subject to the fulfillment or satisfaction, on and as of the Closing Date, of each of the following conditions (any one or more of which may be waived by Seller):

Section 9.1.    Representations and Warranties. The representations and warranties made by Buyer in this Agreement shall have been true and correct on the date hereof, and as of the Closing, with the same force and effect as though all such representations and warranties had been made as of the Closing Date.

Section 9.2.    Performance of Covenants. Each of the agreements, covenants and obligations, including each of the covenants under Article V, that Buyer is required to perform or to comply with pursuant to this Agreement at or prior to Closing shall have been duly performed and complied with. Buyer shall have delivered each of the documents required to be delivered by Buyer pursuant to this Agreement.

Section 9.3.    No Injunctions. There shall not be any pending or seriously threatened injunction or restraining order issued by a court of competent jurisdiction against the consummation of the sale and purchase of the Subject Assets pursuant to this Agreement.

Section 9.4.    No Violation of Law. There shall not be (i) any action taken, or any Law enacted, entered, enforced or deemed applicable to the transactions contemplated by this Agreement or the transactions contemplated by this Agreement by any Governmental Authority of competent jurisdiction, or (ii) any circumstance arising, or transaction, agreement, arrangement or instrument entered into, or which would be necessary to be entered into, in connection with the transactions contemplated by this Agreement or the transactions contemplated by this Agreement, which, in either case:

(a)    makes illegal or otherwise directly or indirectly restrains, enjoins or prohibits the transactions contemplated by this Agreement; or

(b)    results in a judgment or assessment of material damages directly or indirectly relating to the transactions contemplated herein.

Section 9.5.    Cure Procedure, Procedure for Designation of Assigned Executory Contracts and Satisfaction of Cure Obligations. Buyer shall have demonstrated the ability to satisfy the conditions of Sections 365(b)(1)(C) only of the Bankruptcy Code to the extent necessary to permit the assumption by Buyer and the assignment by Seller of the Assigned Executory Contracts in accordance with Section 7.3.

{00010196:3}                                    -25-

Section 9.6.    <u>Sale Order</u>. The Court shall have entered the Sale Order.

Section 9.7.    <u>No Material Adverse Effect</u>. Since the Execution Date, no Material Adverse Effect shall have occurred with respect to Buyer.

## ARTICLE X.

## CONDITIONS PRECEDENT TO CONSENTING PARTY'S OBLIGATIONS

Consenting Party's obligations hereunder are subject to the fulfillment or satisfaction, on and as of the Closing Date, of each of the following conditions (any one or more of which may be waived by Consenting Party):

Section 10.1.    <u>Receipt of Release Payment</u>. Consenting party shall have received the Truist Release Payment.

Section 10.2.    <u>No Injunctions</u>. There shall not be any pending or seriously threatened injunction or restraining order issued by a court of competent jurisdiction against the consummation of the sale and purchase of the Subject Assets pursuant to this Agreement, including payment of the Truist Release Payment.

Section 10.3.    <u>No Violation of Law</u>. There shall not be (i) any action taken, or any Law enacted, entered, enforced or deemed applicable to the transactions contemplated by this Agreement or the transactions contemplated by this Agreement by any Governmental Authority of competent jurisdiction, or (ii) any circumstance arising, or transaction, agreement, arrangement or instrument entered into, or which would be necessary to be entered into, in connection with the transactions contemplated by this Agreement or the transactions contemplated by this Agreement, which, in either case:

(c)    makes illegal or otherwise directly or indirectly restrains, enjoins or prohibits the transactions contemplated by this Agreement; or

(d)    results in a judgment or assessment of material damages directly or indirectly relating to the transactions contemplated herein.

Section 10.4.    <u>Sale Order</u>. The Court shall have entered the Sale Order, in form and substance satisfactory to Consenting Party.

## ARTICLE XI.

## CLOSING

Section 11.1.    <u>Closing</u>. The consummation of the transactions contemplated by this Agreement (the "***Closing***" or "***Close***") shall take place at the offices of Bonds Ellis Eppich Schafer Jones LLP, Fort Worth, TX, or at such other place as the Parties may agree, commencing at 10:00 a.m. local time on March 22, 2023 or such other date as Buyer and Seller may mutually determine but in no event later than April 5, 2023 (the "***Closing Date***"). The Parties shall use their commercially reasonable efforts to obtain the satisfaction or waiver of all conditions to the

obligations of the Parties to consummate the transactions contemplated hereby within fifteen (15) days after the Court has entered the Sale Order approving such sale to Buyer, unless this provision is waived by Buyer.

## ARTICLE XII.

## TERMINATION; SURVIVAL AND LIMITATIONS OF REPRESENTATIONS AND WARRANTIES

Section 12.1.   <u>Termination</u>. This Agreement may be terminated, and the transactions contemplated hereby may be abandoned, by written notice promptly given to the other Party hereto, at any time prior to the Closing Date:

(a)      by mutual written consent of the Parties;

(b)      by either Party by written notice to the other Party if any permanent injunction or other order of a court of competent authority or government agency that prevents the consummation of the transaction shall have become final and non-appealable;

(c)      immediately, by Seller, if Buyer is in breach of its obligations under Section 3.1: it being expressly understood and acknowledged by Buyer that time is of the essence with respect to their obligations in the afore-referenced sections,

(d)      by Seller if (i) any of the conditions specified in Article IX have not been met or waived by Seller on or before the Closing Date or (ii) Buyer or Seller commits a breach of any of the covenants or agreements (other than those specified in Section 12.1(c)) contained herein, which breach cannot be or has not been cured within ten (10) days after Seller has given written notice to Buyer of such breach, provided that such breach would be reasonably likely, individually or in the aggregate with other breaches, to materially impair the ability of Buyer to perform its obligations under this Agreement in any material respect or otherwise materially threaten or materially impede the consummation of the transactions described in this Agreement;

(e)      by Buyer if (i) any of the conditions specified in Article VIII have not been met or waived by Buyer on or before the Closing Date; or (ii) Seller commits a breach of any of the covenants or agreements contained herein, which breach cannot be or has not been cured within ten (10) days after Buyer has given written notice to Seller of such breach, provided that such breach would be reasonably likely, individually or in the aggregate with other breaches, to materially impair the ability of Seller to perform their obligations under this Agreement in any material respect or otherwise materially threaten or materially impede the consummation of the transactions described in this Agreement; or

(f)      by any Party if the Closing has not occurred by the latest of (i) March 22, 2023 (or such later date as the Parties may agree to) or (ii) the date that is fifteen (15) days after the entry of the Sale Order.

Section 12.2.    Effect of Termination.

(a)    Upon any termination of this Agreement pursuant to this Article XI, this Agreement shall become wholly void and of no further force or effect and there shall be no liability on the part of any of the Parties or their respective shareholders, officers or directors or any Seller Related Party; provided, however, such termination shall not affect the liability of any Party for the intentional breach of any provision of this Agreement; and further provided, however, that the provisions of Section 12.2, Section 12.3, Section 12.4, Section 12.5, Section 15.1 Sections 18.7-18.8 and Sections 18.10 - 18.13 shall remain in full force and effect.

(b)    If a Party terminates this Agreement, the Parties shall have no further obligation to each other.

Section 12.3.    Termination of Representations and Warranties. The representations and warranties of the Parties in this Agreement or in any exhibit, appendix or schedule attached hereto shall terminate at the Closing.

Section 12.4.    Termination of Covenants. The covenants and agreements of the Parties hereto contained in this Agreement or in any exhibit, appendix or schedule attached hereto, to the extent that, by their terms, they are to be performed prior to or on the Closing Date, shall terminate on the Closing Date or, to the extent they are to be performed after the Closing, shall terminate sixty (60) days following the expiration of all applicable statutes of limitations applicable to any claim with respect to such covenant or agreement.

Section 12.5.    Limitations of Representations and Warranties. Buyer understands that neither Seller nor any Seller Related Party are making any representation or warranty relating to Seller or any of their assets, liabilities or operations or the transactions contemplated hereby whatsoever, express or implied, except that Seller is making those representations and warranties explicitly set forth in this Agreement. Buyer represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the Subject Assets net of the Assumed Liabilities. Except as specifically set forth in the representations and warranties in this Agreement, Buyer is not relying on the accuracy or completeness of any information regarding Seller or any of its assets, liabilities or operations or the transactions contemplated hereby, and Buyer further agrees that no Seller Affiliate shall have or be subject to any liability to Buyer or any other person or entity resulting from the distribution to Buyer, or their respective use, of any such information. Buyer further acknowledges that Seller has made no agreement or promise to repair or improve any of the Subject Assets being sold to Buyer, and that Buyer takes all of the Subject Assets in the condition existing on the Closing Date "AS IS, WHERE IS" basis "WITH ALL FAULTS" and that except as expressly set forth in this Agreement, Seller makes no representations or warranties, terms, conditions, understandings or collateral agreements of any nature or kind, express or implied, by statute or otherwise, concerning the Subject Assets or the condition, quality, or usefulness of the Subject Assets, including without limitation any implied warranty of merchantability or fitness for a particular purpose, which warranties are also hereby expressly disclaimed. NO PARTY SHALL BE LIABLE UNDER THIS AGREEMENT FOR ANY LOST PROFITS OR INDIRECT, CONSEQUENTIAL, PUNITIVE, OR SPECIAL DAMAGES UNDER ANY CIRCUMSTANCES.

# ARTICLE XIII.

## MUTUAL RELEASES

Section 13.1.    <u>Release by Seller</u>. Subject to the terms of this Agreement, and except for the obligations created by this Agreement, Seller agrees to waive, relinquish and fully release and discharge any and all claims, liens, security interests, rights, title, interests, causes of action, obligations, damages, and any other claim, right, or interest of any nature whatsoever that Seller has or may have against Buyer or Consenting Party that arose at or prior to Closing whether or not they are known or unknown, discovered or discoverable, disclosed or not disclosed, contingent or not contingent, ripened or not ripened, liquidated or unliquidated, or asserted, assertable, and/or not assertable.

Section 13.2.    <u>Release by Buyer</u>. Subject to the terms of this Agreement, and except for the obligations created by this Agreement, Buyer agrees to waive, relinquish and fully release and discharge any and all claims, liens, security interests, rights, title, interests, causes of action, obligations, damages, and any other claim, right, or interest of any nature whatsoever that Buyer has or may have against Consenting Party or Seller that arose at or prior to Closing whether or not they are known or unknown, discovered or discoverable, disclosed or not disclosed, contingent or not contingent, ripened or not ripened, liquidated or unliquidated, or asserted, assertable, and/or not assertable.

Section 13.3.    <u>Release by Consenting Party</u>. Subject to  the terms of this Agreement, and except for the obligations created by this Agreement, Consenting Party agrees to waive, relinquish and fully release and discharge any and all claims, liens, security interests, rights, title, interests, causes of action, obligations, damages, and any other claim, right, or interest of any nature whatsoever that Consenting Party has or may have against Buyer or Seller that arose at or prior to Closing whether or not they are known or unknown, discovered or discoverable, disclosed or not disclosed, contingent or not contingent, ripened or not ripened, liquidated or unliquidated, or asserted, assertable, and/or not assertable.

Section 13.4.    <u>Limited Exceptions to Releases</u>. For the avoidance of doubt, these releases shall not release any party from any obligations imposed on such party by Court order entered prior to Closing.

# ARTICLE XIV.

## OTHER AGREEMENTS

Section 14.1.    <u>Other Agreements</u>. Seller will hold as constructive trustee for the benefit of Buyer and will promptly (and in no event less than seventy-two (72) hours) turn over to Buyer all Cash and Cash Equivalents, including those received by wire transfer, relating to the collection of Accounts Receivable after the Closing Date. Seller hereby grants Buyer an irrevocable power of attorney to endorse such checks, drafts and other matters and any check, draft or other matter arising after the Closing relating to Buyer's business issued in the name of Seller.

# ARTICLE XV.

## EXPENSES

Section 15.1.   <u>Expenses</u>. Except as otherwise provided herein, Buyer, Seller, and Consenting Party will bear their own respective expenses, including attorneys' and accountants' fees, in connection with the preparation and negotiation of the transactions contemplated by this Agreement and the Related Agreements. The provisions of this Article XIII shall not apply with respect to any expenses incurred by the Parties in connection with any action for a breach of this Agreement or any Related Agreement.

# ARTICLE XVI.

## NOTICES

Section 16.1.   <u>Notices</u>. All notices, requests, demands and other communications under this Agreement must be in writing and will be deemed duly given, unless otherwise expressly indicated to the contrary in this Agreement, (i) when personally delivered, (ii) upon receipt of a telephonic facsimile transmission with a confirmed telephonic transmission answer back, (iii) three (3) days after having been deposited in the United States mail, certified or registered, return receipt requested, postage prepaid, or (iv) one (1) Business Day after having been dispatched by a nationally recognized overnight courier service, addressed to the Buyer, Seller, and/or Consenting Party or their permitted assigns at the following addresses as follows:

| | |
|---|---|
| To Seller: | Navarro Pecan Company, Inc.<br>ATTN: Mary Magers<br>4200 South Hulen Street, Suite 680<br>Fort Worth, Texas 76109<br><br>Email: mmagers@navarropecan.com |
| With copies, which shall not constitute notice, to: | Bonds Ellis Eppich Schafer Jones LLP<br>Attn: Joshua Eppich<br>420 Throckmorton Street, Ste. 1000<br>Fort Worth, Texas 76102<br>Phone: (817) 405-6905<br>Joshua@BondsEllis.com |
| To Buyer: | RJS Holdings, LLC<br>Attn: RJ Sikes<br>1101 Little School Road<br>Arlington, Texas 76017<br>Phone: (254) 717-5110<br>Email: rj@gcpdq.com |

With copies, which shall not constitute notice, to:

Hansen & Associates
Attn: Jeff Hansen
1101 Little School Road
Arlington, Texas 76017
Phone: (817) 429-0956
Email: Jeff@hansenattorneys.com

Lundberg Law
Attn: Gregg Lundberg
501 N. 8th Street
Midlothian, Texas 76065
Phone: (972) 775-3500
Email: glundberg@gdllawyer.com

To Consenting Party:

Truist Bank
Attn: Edward Hill
101 N. Cherry St. 3rd Floor
Winston-Salem, NC 27101-4013
Phone: (336) 733-2672
Email: ed.hill@truist.com

With copies, which shall not constitute notice, to:

Holland & Knight
Attn: Brent McIlwain
One Arts Plaza, 1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 964-9481
Email: Brent.McIlwain@hklaw.com

Buyer, Seller, and Consenting Party may each change its address for the purposes of this Article by giving the other parties written notice of the new address in the manner set forth above.

## ARTICLE XVII.

## REMEDIES NOT EXCLUSIVE

Except as otherwise provided in Section 12.2(b), no remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy will be cumulative and will be in addition to every remedy given under this Agreement or now or subsequently existing, at Law or in equity, by statute or otherwise.

## ARTICLE XVIII.

## MISCELLANEOUS

Section 18.1. <u>Counterparts</u>. This Agreement may be executed in two (2) or more counterparts, each of which will be deemed to be an original but all of which together will

constitute one and the same document. Facsimile transmission or e-mail transmission in portable document format of the executed version of this Agreement or any counterpart thereof shall have the same force and effect as the original.

Section 18.2.   <u>Captions and Section Headings</u>. Captions and section headings are for convenience and reference only, are not a part of this Agreement and shall not be deemed to affect the meaning or interpretation of any section or paragraph hereof.

Section 18.3.   <u>Singular and Plural</u>. Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular and the singular includes the plural.

Section 18.4.   <u>Passage of Title and Risk of Loss</u>. Legal title, equitable title and risk of loss with respect to the Subject Assets will not pass to Buyer until such assets are transferred to Buyer at the Closing.

Section 18.5.   <u>Waivers</u>. The party for whose benefit a warranty, representation, covenant or condition is intended may in writing expressly waive any inaccuracies in the warranties and representations contained in this Agreement or expressly waive compliance with any of the covenants or conditions contained herein and so expressly waive performance of any of the obligations of the other parties hereto, and any defaults hereunder; provided, however, that such waiver must be in writing, and shall not affect or impair the waiving any party's rights with respect to any other warranty, representation or covenant or any default hereunder, nor shall any waiver constitute a continuing waiver.

Section 18.6.   <u>Parties in Interest</u>. Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and permitted assigns, nor is anything in this Agreement intended to relieve or discharge the obligations or liabilities of any third person or give any third person any right of subrogation or action over or against any party to this Agreement.

Section 18.7.   <u>Benefit and Burden; Assignment</u>. This Agreement is binding upon and shall inure to the benefit of the parties and their successors and permitted assigns; <u>provided, however,</u> that this Agreement is not assignable, directly or indirectly, or any part thereof, by (i) Buyer without the prior written consent of Seller (which consent shall not unreasonably be withheld, conditioned or delayed); or (ii) Seller without the prior written consent of Buyer (which consent shall not unreasonably be withheld, conditioned or delayed); provided, that Buyer may assign its rights and liabilities hereunder to one or more Affiliates of Buyer, which assignment shall not relieve Buyer of its obligations hereunder. Buyer hereby acknowledges that the assignment of this Agreement by Buyer may require the approval of the Court.

Section 18.8.   <u>Amendments, Supplements or Modifications</u>. The Parties may amend or modify this Agreement in a writing duly executed in the same manner as this Agreement by duly authorized representatives of the Parties, provided that any such amendment shall be subject to the approval of the Court.

Section 18.9.   <u>Entire Agreement</u>. This Agreement, together with the schedules, exhibits appendices and the agreements, certificates and instruments delivered pursuant hereto, contain the

entire agreement among the Parties hereto, and supersede all prior agreements and undertakings (written and oral) between the Parties, relating to the subject matter hereof.

Section 18.10.  <u>Governing Laws</u>. This Agreement shall be governed by and construed in accordance with the Bankruptcy Code, applicable Bankruptcy Rules and the internal, substantive laws of the State of Texas without regard to any state's choice or conflicts of laws provisions.

Section 18.11.  <u>Venue and Jurisdiction</u>.

(a)      THE COURT WILL HAVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY RELATED AGREEMENT; PROVIDED, HOWEVER, THAT IF THE COURT IS UNWILLING OR UNABLE TO HEAR ANY SUCH DISPUTE, THE COURTS OF THE STATE OF TEXAS LOCATED IN TARRANT COUNTY, AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN THE NORTHERN DISTRICT OF THE STATE OF TEXAS WILL HAVE SOLE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY.

(b)      EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 18.12.  <u>Construction</u>. The parties have participated jointly in the negotiation and drafting of this Agreement, and, in the event of an ambiguity or a question of intent or a need for interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

Section 18.13.  <u>Validity of Provisions</u>. Should any part of this Agreement for any reason be declared by any court of competent jurisdiction to be invalid, such decision shall not affect the validity of the remaining portions of this Agreement, which remaining portions shall continue in full force and effect as if this Agreement had been executed with the invalid portion thereof eliminated there from, it being the intent of the Parties that they would have executed the remaining portions of this Agreement without including any such part or portion which may for any reason be declared invalid.

Section 18.14.  <u>Access to Records and Records Retention</u>. Seller and Buyer shall (i) each provide the other with such assistance as may reasonably be requested by any of them in connection with the preparation of any Tax Return, audit or other examination by any taxing authority, or judicial or administrative Proceeding related to liability for Taxes; (ii) each retain and provide the other with any records or other information that may be relevant to such Tax Return, audit or examination, Proceeding, or determination; and (iii) each provide the other with any final determination of any such audit or examination, Proceeding, or determination that affects any amount required to be shown on any Tax Return of the other for any period. Without limiting the

generality of the foregoing, Buyer and Seller each shall retain, until the applicable statutes of limitations (including any extensions thereof) have expired, copies of all Tax Returns, supporting work schedules and other records or information that may be relevant to such returns for all tax periods or portions thereof ending before or including the Closing Date and shall not destroy or otherwise dispose of any such records without first providing the other Party with a reasonable opportunity to review and copy the same. (i) Buyer hereby acknowledges that Seller shall be entitled to make copies in electronic or paper form of all records relating to tax filings, production, shipping, inventory and depreciation as well as Seller's general ledger and (ii) such copies shall be retained by Seller following the Closing hereunder and may be moved to a location of Seller's choosing, all subject to reasonableness and reasonable notice.

Section 18.15. <u>Notice to Customers</u>. Seller agrees to cooperate in communicating the transfer of the Subject Assets to Buyer to its former and current customers via electronic mail communication (where available) and as otherwise may reasonably requested by Buyer after the Sale Order and before the Closing Date; <u>provided</u>, such communication is in accordance with all Laws and requirements of any relevant Governmental Authority.

[Signatures follow on the next page.]

IN WITNESS WHEREOF, the Buyer, Seller, and Consenting Party have each duly executed this Asset Purchase Agreement as of the date first set forth above.

**SELLER:**                                    **BUYER:**

**Navarro Pecan Company, Inc.**                **RJS Holdings, LLC**

By: _____                   By: _____

Name: _____                    Name: _____

Its: _____                   Its: _____


**CONSENTING PARTY:**

**Truist Bank**

By: _____

Name: _____

Its: _____

## List of Exhibits and Schedules

Exhibit A – Bill of Sale and Assignment
Exhibit B – Intellectual Property Assignment Agreement
Exhibit C – General Warranty Deed
Exhibit D – Purchase Price Calculation

Schedule 2.1(b) – Fixed Assets
Schedule 2.1(c) – Personal Property
Schedule 2.1(e) – Licenses and Permits
Schedule 2.1(g) – Intellectual Property
Schedule 2.1(h) – Trust Pre-Petition Accounts Receivable
Schedule 2.1(j) – Prepaid Assets
Schedule 2.1(l) – Real Property
Schedule 2.4(k) – Truist Non-Purchased Accounts Receivable
Schedule 4.1(b) – Seller Business Jurisdictions
Schedule 4.1(c) – Seller's Corporate Organizational Chart
Schedule 4.3 – Seller's Consents
Schedule 4.4 – Compliance with Law
Schedule 4.8 – Material Contracts
Schedule 4.9 – Seller's Employee Benefit Plans

## EXHIBIT A

## BILL OF SALE AND ASSIGNMENT AGREEMENT
## AND ASSUMPTION AGREEMENT

**THIS BILL OF SALE AND ASSIGNMENT AGREEMENT AND ASSUMPTION AGREEMENT** (this "Bill of Sale") is made as of _____ __, 2023 ("Effective Date"), by Navarro Pecan Company, Inc., a Texas corporation (the "Seller"), for the benefit of RJS Holdings, LLC (the "Buyer"), a Texas limited liability company. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as hereinafter defined).

**WHEREAS**, Seller and Buyer have entered into that certain Asset Purchase Agreement, of even date herewith (the "Purchase Agreement"), the terms of which are incorporated herein by reference, which provides, among other things, for the sale and assignment by Seller to Buyer of the Subject Assets.

**NOW, THEREFORE**, in consideration of the mutual promises contained in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller, and subject to the terms and conditions of the Purchase Agreement:

1.      Sale and Assignment of the Subject Assets.   Seller does hereby, as of the Effective Date, bargain, sell, grant, assign, transfer, convey and deliver unto Buyer, and its successors and assigns, forever, all of such Seller's right, title and interest in and to the Subject Assets of such Seller **TO HAVE AND TO HOLD** such Subject Assets, unto Buyer, and its successors and assigns, for its use forever.

2.      Assumption of Assumed Liabilities.   In accordance with and subject to the terms and conditions of the Purchase Agreement, in partial consideration for such transfer of the Subject Assets by Seller to Buyer, Buyer hereby undertakes to assume, pay, perform, satisfy and discharge all of the Assumed Liabilities.  Buyer does not agree to assume or pay any Excluded Liabilities or any debts, obligations or liabilities of Seller not expressly assumed by Buyer in the Purchase Agreement.

3.      Further Assurances.   Seller hereby agrees to make, execute, acknowledge and deliver any and all further documents and instruments and cause to be done all such further reasonable acts by such Seller to evidence and in any manner to perfect the transfer and assignment to Buyer of the Subject Assets.

4.      Successors and Assigns.   This Bill of Sale shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

5.      No Modification; Conflicts.   Nothing in this Bill of Sale, express or implied, is intended to or shall be construed to modify, expand or limit in any way the terms of the Purchase

{00010108:1}                              1

Agreement.  To the extent that any provision of this Bill of Sale conflicts or is inconsistent with the terms of the Purchase Agreement, the Purchase Agreement shall govern.

6.    <u>Counterparts</u>.  This Bill of Sale may be executed in one or more counterparts, or by the parties in separate counterparts, each of which when executed shall be deemed to be an original but both of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Bill of Sale by facsimile or other electronic means shall be effective as delivery of a manually executed counterpart to this Bill of Sale.

7.    <u>Governing Law</u>.  This Bill of Sale shall be governed by, and construed in accordance with, the laws of the State of Texas.

[Signature page follows on next page.]

**IN WITNESS WHEREOF**, the parties have duly executed and delivered this Bill of Sale as of the date first written above.

**SELLER:**                                      **BUYER:**

**Navarro Pecan Company, Inc.**          **RJS Holdings, LLC**

By:_____          By:_____

Name: _____          Name: _____

Its:_____          Its:_____

## EXHIBIT B

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

**THIS INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT** (this "Assignment"), made as of _____ __, 2023 ("Effective Date"), by and between Navarro Pecan Company, Inc., a Texas corporation (the "Seller") and RJS Holdings, LLC (the "Buyer"), a Texas limited liability company.

## BACKGROUND INFORMATION

A.    Pursuant to that certain Asset Purchase Agreement, dated as of even date herewith, by and between Seller and Buyer ("Purchase Agreement"), Seller has agreed to sell, transfer, assign, convey and deliver all of Seller's right, title and interest in and to certain Subject Assets, including the Intellectual Property, to Buyer, and Buyer has agreed to purchase, acquire and accept the Intellectual Property from Seller, on the terms and subject to the conditions more fully described in the Purchase Agreement.

B.    It is the Seller's and Buyer's intention to reflect the transfer of title to the Intellectual Property by the execution and delivery of this Assignment so that it may be recorded in appropriate filing offices.

C.    Capitalized terms used herein, but not otherwise defined, shall have the meanings specified in the Purchase Agreement.

NOW, THEREFORE, in consideration of Seller's receipt of the Purchase Price and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to the terms and subject to the conditions of the Purchase Agreement, Seller hereby agrees as follows:

Section 1.    Sale of Intellectual Property.  Subject to the terms and conditions of the Purchase Agreement, as of the Closing Date, (a) Seller does hereby sell, transfer, assign, convey and deliver to Buyer, and (b) Buyer does hereby purchase, acquire and accept from Seller, for all purposes, all of the right, title and interest of Seller in and to the Intellectual Property, free and clear of all Encumbrances other than Permitted Encumbrances, to have and to hold forever.

Section 2.    Transfer of Domain Names.  As of the Closing Date, Seller shall effect the transfer to Buyer of the domain names listed on Exhibit A (collectively, the "Domain Names") with the applicable domain name registrar(s) (the "Registrar").  Buyer shall cooperate with Seller in the transfer of the Domain Names, including, but not limited to, complying with any Registrar procedures or requests for documentation applicable to the transfer.  Seller hereby constitutes and appoints Buyer, and its successors and assigns, the true and lawful attorney or attorneys-in-fact of Seller, with full power of substitution, for it and in its name and stead or otherwise, to institute and prosecute from time to time, any proceedings at law, in equity or otherwise, that Buyer or its successors or assigns, may reasonably deem proper in order to assert or enforce any claim, right or title of any kind in and to the Domain Names, and to defend and compromise any and all proceedings in respect of any of the foregoing, and generally to do any and all such acts and things in relation thereto as Buyer, or its successors or assigns, shall reasonably deem

advisable, including, but not limited to, the execution and delivery of any and all assignments and instruments in furtherance thereof. Seller declares that the appointment hereby made and the powers hereby granted are coupled with an interest and shall be irrevocable by Seller.

Section 3.    <u>Assignment of Trademarks</u>.

(a)    As of the Closing Date, Seller hereby irrevocably assigns, transfers and conveys to Buyer all of Seller's rights, title and interest in, to and under the Trademarks set forth on Exhibit B attached hereto, together with the goodwill of the business associated therewith or symbolized thereby, and any and all common law rights, world-wide rights and other applications and registrations therefor, if any, owned by Seller together with the goodwill of the Business associated therewith or symbolized thereby (the "<u>Assigned Trademarks</u>"), including, but not limited to, the right to sue and collect damages for any past or future infringements of the Assigned Trademarks. Subject to Section 3(b) hereof, Seller shall execute and deliver or shall cause to be executed and delivered all such transfers, assignments, conveyances, powers of attorney, assurances or any other documents necessary to confirm, effectuate or record the assignment granted herein.

(b)    Buyer shall be responsible to file and record any and all documents of conveyance as may be necessary to vest in Buyer as a matter of public record all of the Assigned Trademarks that are registered marks.

(c)    Seller hereby constitutes and appoints Buyer, and its successors and assigns, the true and lawful attorney or attorneys-in-fact of Seller, with full power of substitution, for it and in its name and stead or otherwise, to institute and prosecute from time to time, any proceedings at law, in equity or otherwise, that Buyer, or its successors or assigns, may reasonably deem proper in order to assert or enforce any claim, right or title of any kind in and to the Assigned Trademarks, and to defend and compromise any and all actions, suits or proceedings in respect of any of the foregoing, and generally to do any and all such acts and things in relation thereto as Buyer, or its successors or assigns, shall reasonably deem advisable, including, but not limited to, the execution and delivery of any and all assignments and instruments in furtherance hereof. Seller declares that the appointment hereby made and the powers hereby granted are coupled with an interest and shall be irrevocable by Seller.

Section 4.    <u>Assignment of Patents</u>.

(d)    As of the Closing Date, Seller hereby irrevocably assigns, transfers and conveys to Buyer all of Seller's rights, title and interest in, to and under the Patents set forth on Exhibit C attached hereto, together with the goodwill of the business associated therewith or symbolized thereby, and any and all common law rights, world-wide rights and other applications and registrations therefor, if any, owned by Seller together with the goodwill of the Business associated therewith or symbolized thereby (the "<u>Assigned Patents</u>"), including, but not limited to, the right to sue and collect damages for any past or future infringements of the Assigned Patents. Subject to Section 4(b) hereof, Seller shall execute and deliver or shall cause to be executed and delivered all such transfers, assignments, conveyances, powers of attorney, assurances or any other documents necessary to confirm, effectuate or record the assignment granted herein.

{00010109:1}                                  2

(e)    Buyer shall be responsible to file and record any and all documents of conveyance as may be necessary to vest in Buyer as a matter of public record all of the Assigned Patents.

(f)    Seller hereby constitutes and appoints Buyer, and its successors and assigns, the true and lawful attorney or attorneys-in-fact of Seller, with full power of substitution, for it and in its name and stead or otherwise, to institute and prosecute from time to time, any proceedings at law, in equity or otherwise, that Buyer, or its successors or assigns, may reasonably deem proper in order to assert or enforce any claim, right or title of any kind in and to the Assigned Patents, and to defend and compromise any and all actions, suits or proceedings in respect of any of the foregoing, and generally to do any and all such acts and things in relation thereto as Buyer, or its successors or assigns, shall reasonably deem advisable, including, but not limited to, the execution and delivery of any and all assignments and instruments in furtherance hereof.  Seller declares that the appointment hereby made and the powers hereby granted are coupled with an interest and shall be irrevocable by Seller.

Section 5.    <u>Governing Agreement</u>.  This Assignment is expressly made subject to the terms and provisions of the Purchase Agreement.  This Assignment shall not affect, alter, enlarge, diminish or otherwise impair any of the representations, warranties, covenants, conditions, indemnities, terms or provisions of the Purchase Agreement, and all of the representations, warranties, covenants, conditions, indemnities, terms and provisions contained in the Purchase Agreement shall survive the delivery of this Assignment to the extent, and in the manner, set forth in the Purchase Agreement.  In the event of a conflict between the terms and provisions of this Assignment and the terms and provisions of the Purchase Agreement, the terms and provisions of the Purchase Agreement shall govern and control.

Section 6.    <u>Successors and Assigns</u>.  The provisions of this Assignment shall bind Seller and its successors and permitted assigns and inure to the benefit of Buyer and its successors and permitted assigns.

Section 7.    <u>Interpretation</u>.  Titles and headings to sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Assignment.  This Assignment shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting or causing any instrument to be drafted.

Section 8.    <u>Execution in Counterparts</u>.  This Assignment may be executed and delivered in two (2) original, PDF, scanned or facsimile counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same document.

Section 9.    <u>Governing Law</u>.  This Assignment shall be governed by and construed in all respects in accordance with the laws of Texas, and the Parties hereto hereby submit to the non-exclusive jurisdiction of the courts of Texas.

[Signature page follows on next page.]

**IN WITNESS WHEREOF,** the Parties have caused this Assignment to be duly executed as of the date first set forth above.

**SELLER:**                                          **BUYER:**

**Navarro Pecan Company, Inc.**          **RJS Holdings, LLC**

By:_____          By:_____

Name: _____          Name: _____

Its:_____          Its:_____

_{00010109:1}_   _Signature Page to Intellectual Property Assignment Agreement_

**Exhibit A**

Domain Names

**Exhibit B**

**Exhibit C**

Patents

**Exhibit D**

Copyrights

**Exhibit E**

Processes

<u>EXHIBIT C</u>

<u>GENERAL WARRANTY DEED</u>

AFTER RECORDING RETURN TO:

Hansen & Associates
Attn: Jeff Hansen
1101 Little School Road

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**GENERAL WARRANTY DEED**

**Effective Date:** [●]

**Grantor:** Navarro Pecan Company, Inc.

**Grantor's Mailing Address:** 2131 East Highway 31, Corsicana, Texas 75109

**Grantee:** RJS Holdings, LLC

**Grantee's Mailing Address:** 1101 Little School Road, Arlington, Texas 76017

**Consideration:** $10.00 and other good and valuable consideration.

**Property (including any improvements):**

All that certain lot, tract or parcel of land situated in the J. Peoples Survey, Abstract No. 9, Navarro County, Texas, being all of a called 22.321 acre tract described by deed recorded in Volume 877, Page 743, being part of a called 4.629 acre tract described by deed recorded in Volume 823, Page 135, being the abandoned portion of Powell Pike Street recorded in Volume 1463, Page 562, being a certain tract recorded in Volume 1448, Page 376, being part of Lots 8, 9, 10, 11, 12 and 13, Block C of the Parkdale Addition recorded in Volume 439, Page 16 and further described by deeds recorded in Volume 1448, Page 376, Volume 1555, Page 734, Instrument No. 2008-5112, Volume 1418, Page 483. (Tracts One and Two) of the Deed Records of Navarro County, Texas. Said tract or parcel of land being more fully described by metes and bounds in <u>Exhibit A</u> (collectively, the "<u>Property</u>").

This General Warranty Deed and the conveyance above are executed by Grantor and accepted by Grantee subject to any and all restrictions, easements, mineral reservations, and other matters of record, to the extent they are validly existing and applicable to the Property (collectively, "<u>Permitted Exceptions</u>").

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances to it in any way belonging, to Grantee, its successors, and its assigns forever, and Grantor binds itself, its successors, and its assigns to WARRANT AND FOREVER DEFEND all and singular the title to the Property to Grantee, its successors, and its assigns against any person lawfully claiming or to claim the same or any part of it, subject to the Permitted Exceptions.

{00010128:1}

Grantor, its successors, assigns, trustees, estates, executors and administrators, covenants with Grantee, and with its successors and assigns, that Grantor is lawfully seized in fee simple of the said Property; that said Property is free and clear from all liens, claims and encumbrances, except as set forth herein and in the Sale Order attached hereto as <u>Exhibit B</u>, and except for any restrictions properly filed of record in the pertaining to the Property of record in the Probate Office of said County; and that Grantor will, and its heirs, successors, assigns, trustees, estates, executors and administrators shall, warrant and defend the same to said Grantee, and its successors and assigns, forever against the lawful claims of all persons.

GRANTOR IS CONVEYING THE PROPERTY TO GRANTEE AS IS, WHERE IS, AND WITH ALL FAULTS, AND SPECIFICALLY AND EXCEPT AS SET FORTH HEREIN OR AS SET FORTH IN THE SALE ORDER EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE FROM OR ON BEHALF OF GRANTOR, EXCEPT FOR GRANTOR'S WARRANTY OF TITLE STATED ABOVE. GRANTEE ACKNOWLEDGES AND STIPULATES THAT GRANTEE IS NOT RELYING ON ANY REPRESENTATION, STATEMENT, OR OTHER ASSERTION ABOUT THE CONDITION OF THE PROPERTY MADE BY GRANTOR, OR ANYONE ACTING ON GRANTOR'S BEHALF, BUT IS RELYING ON GRANTEE'S OWN EXAMINATION OF THE PROPERTY.

Grantee, by its acceptance of this warranty deed, assumes payment of all standby charges, ad valorem taxes, and assessments for the 2023 calendar year and later calendar years not yet due and payable, each to the extent attributable to all or part of the Property.

When the context requires, singular nouns and pronouns include the plural.

NAVARRO PECAN COMPANY, INC.,
a Texas corporation


By: _____
Name: _____
Title: _____


THE STATE OF TEXAS                              §
                                                §
COUNTY OF _____      §


This instrument was acknowledged before me on the _____ day of _____, 2023, by _____ (*name*), the _____ (*title*) of Navarro Pecan Company, Inc., a Texas corporation.


_____
NOTARY PUBLIC, STATE OF TEXAS


{00010128:1}

## EXHIBIT A

### Legal Description

All that certain lot, tract or parcel of land situated in the J. Peoples Survey, Abstract No. 9, Navarro County, Texas, being all of a called 22.321 acre tract described by deed recorded in Volume 877, Page 743, being part of a called 4.629 acre tract described by deed recorded in Volume 823, Page 135, being the abandoned portion of Powell Pike Street recorded in Volume 1463, Page 562, being a certain tract recorded in Volume 1448, Page 376, being part of Lots 8, 9, 10, 11, 12 and 13, Block C of the Parkdale Addition recorded in Volume 439, Page 16 and further described by deeds recorded in Volume 1448, Page 376, Volume 1555, Page 734, Instrument No. 2008-5112, Volume 1418, Page 483 (Tracts One and Two) of the Deed Records of Navarro County, Texas. Said tract or parcel of land being more fully described by metes and bounds as follows:

BEGINNING on a set 1/2" iron rod for the southeast corner of this tract and the above-mentioned abandoned Powell Pike Street located in the St. Louis and Southwestern Railroad R.O.W.; Witness: N28° 32' 55" E 20.1 feet, a found 1/2" iron rod located on the north ROW of the St. Louis and Southwestern Railroad;

THENCE with said abandoned Powell Pike Street N86° 49' 12" W 1320.43 feet to the southwest corner of this tract; Witness: N36° 36' 56" E 22.9 feet, a found 6od nail on said north railroad R.O.W.;

THENCE N36° 36' 56" E 391.03 feet to an angle corner of this tract; Witness: S36° 36' 56" W 23.0 feet, a set 1" iron pipe;

THENCE N07° 33' 11" E 33.31 feet to an ell corner of this tract; Witness: N83° 10' 45" W 2.2 feet, a 2" pipe post;

THENCE S83° 10' 45" E 126.76 feet to an ell corner of this tract; Witness: S83° 10' 45" E 1.8 feet, a 2" pipe post;

THENCE N06° 43' 46" E 95.86 feet to a set 1/2" iron rod for an ell corner of this tract;

THENCE N82° 26' 50" W 125.37 feet to a set 1/2" iron rod for an ell corner of this tract located on the east line of Valley Drive;

THENCE with said east line N07° 33' 11" E 198.37 feet to a found 1" iron rod for an ell corner of this tract located on said east line of Valley Drive;

THENCE S82° 23' 25" E 122.88 feet to a found 1/2" iron rod for an ell corner of this tract;

THENCE N08° 00' 04" E 50.00 feet to a set 1/2" iron rod for an ell corner of this tract;

{00010128:1}

THENCE N82 ° 23' 25" W 123.27 feet to a set 1/2" iron rod for an ell corner of this tract located on said east line of Valley Drive;
THENCE with said east line N07° 33' 11" E 49.97 feet to a set 1/2" iron rod for an ell corner of this tract;

THENCE S82° 23' 25" E 123.66 feet to a found 1/2" iron rod for an ell corner of this tract;

THENCE N05° 49' 58" E 50.77 feet to a found 1" iron pipe for an ell corner of this tract;

THENCE S83° 17' 39" E 25.49 feet to a found 1" iron pipe for an ell corner of this tract;

THENCE N07° 19' 55" E 113.04 feet to a found 1" iron pipe for the northwest corner of this tract located on the south ROW of State Highway No. 31;

THENCE with said ROW S88° 05' 40" E 149.98 feet, N88° 14' 20" E 150.20 feet, N85° 46' 47" E 126.03 feet, S04° 03' 18" W 12.40 feet, N82° 05' 18" E 295.35 feet and N67 ° 30' 15" E 63.25 feet to the most northerly northeast corner of this tract; Witness:  N03 ° 54' 23" W 0.9 feet, a found T-Post;

THENCE S03° 54' 23" E 299.90 feet to a fence corner for an ell corner of this tract;

THENCE N77° 59' 42" E 300.39 feet to a found 1/2" iron rod for the most easterly northeast corner of this tract;

THENCE S04° 00' 35" E 319.63 feet to a found 1/2" iron rod for an angle corner of this tract;

THENCE S28° 32' 55" W 525.49 feet to the PLACE OF BEGINNING and containing 25.27 acres of land.

## EXHIBIT D

## PURCHASE PRICE ALLOCATION

| Purchase Price | $17,638,310 |
|---|---|
| | |
| *Price Allocation* | |
| Real Property | $7,800,000 |
| Equipment subject to Hillcrest's Liens | $970,000 |
| Taxes | |
|   Real Property | $185,000 |
|   Personal Property | $739,627 |
| Truist Collateral plus Vendor Checks | $6,576,454 |
| Intangibles | $15,000 |
| New Inventory and Accounts Receivable | $1,188,435 |
| Estimated Trustee Fees | $123,794 |
| Estimate of Additional Hillcrest Payoff | $40,000 |

*\* Subject to adjustment up to Closing.*

{00010110:2}

## Schedule 2.1(b) – Fixed Assets

| Group: 3M BUILDING EQUIPMENT | | |
|---|---|---|
| 1325 | METTLER TOLEDO XRAY MACHINE | 11/30/19 |
| 1328 | LAUGHLIN CONVEYOR SYSTEMS | 1/31/20 |
| | | |
| **Group: AUTOS & TRUCKS** | | |
| 574 | 1985 CHEVY TRUCK | 8/15/91 |
| 1057 | 99 CHEVROLET PICKUP | 5/01/99 |
| 1238 | USED IH CARGO TRUCK | 9/29/14 |
| 1247 | YARDDOG TRUCK | 12/19/14 |
| 1327 | USED SHELL TRAILER | 1/22/20 |
| | | |
| **Group: BUILDINGS** | | |
| 1 | ORIG BUILDING | 3/01/77 |
| 3 | AIR COND UNIT | 9/01/79 |
| 4 | NEW CONSTR | 8/01/79 |
| 5 | NEW CONSTR | 11/01/77 |
| 6 | MOBILE HOME IMPROVE | 3/01/80 |
| 7 | BUILDING COOLER | 10/01/77 |
| 8 | WIRING | 12/01/80 |
| 9 | BLDG IMPROVEMENTS | 12/31/80 |
| 10 | PLUMBING | 3/01/81 |
| 11 | INSTALLATION | 3/01/81 |
| 13 | NEW GRADING SYSTEM ROOM | 9/01/83 |
| 14 | IMPROVEMENTS TO WORM ROOM | 9/01/83 |
| 15 | IMPROVEMENTS TO RETAIL ST | 5/01/83 |
| 16 | ADDITIONS TO PARKING AREA | 5/01/83 |
| 17 | ROOSTING ROOM / SHOP | 3/30/84 |
| 18 | NEW ROOF/BLDG EXTDOCK | 3/30/84 |
| 19 | GRADING ROOM IMPROVE | 3/30/84 |
| 20 | NEW PANELS/CEILINGWHSE | 3/30/84 |
| 21 | LIGHTING MISCIMPROVEWH | 3/30/84 |
| 22 | MISC | 3/30/84 |
| 23 | MOBILE HOME | 3/01/85 |
| 24 | NEW PANELSWHSE | 3/01/85 |
| 25 | NEW ROOMS [5] WHSE | 6/01/85 |
| 26 | GLIDEROL DOORS [2] | 2/01/85 |
| 27 | MOBILE HOMECARPET | 1/01/86 |
| 28 | WIRING | 1/01/81 |
| 29 | NEW OFFICE SPACE | 4/01/86 |
| 30 | RETAIL STORE AREA | 4/01/86 |
| 31 | PROCESS BUILDING | 4/01/86 |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| 32 | DRYER ROOM | 4/01/86 |
| 33 | STORAGE & STAGING | 4/01/86 |
| 34 | LAND IMPROVEMENTS | 4/01/86 |
| 35 | PAVED PARKING | 4/01/86 |
| 36 | METAL STORAGE BLDG | 4/01/86 |
| 37 | RETAIL RESTROOM | 6/01/87 |
| 38 | TRUCKSCALE & HOUSE | 4/01/88 |
| 39 | NEW BREAKING ROOM | 4/01/89 |
| 40 | CONCRETE APRONS | 4/01/89 |
| 41 | FOAM INSULATION | 9/15/91 |
| 42 | AIR COND UNIT | 10/15/91 |
| 43 | INSHELL SIZER ADDITION | 8/15/92 |
| 44 | NEW INSHELL SIZER BLDG | 11/15/92 |
| 45 | PARKING LOT IMPROVEMENTS | 11/15/92 |
| 46 | ROOFING IMPROVEMENTS | 6/15/93 |
| 47 | WASTE WATER TREATMENT | 9/15/93 |
| 48 | 24' X 125' STORAGE BLDG | 4/01/94 |
| 49 | TRUCK LOADING WELL | 4/01/94 |
| 50 | GUARDRAILS & WALLS 123 | 4/01/94 |
| 51 | TRAILER STORAGE AREA | 4/01/94 |
| 52 | CONFERENCE ROOM ADDTION | 4/01/94 |
| 53 | GRAVEL PAVING | 4/01/95 |
| 54 | INSHELL RESTROOM | 4/01/95 |
| 55 | NEW STORAGE BUILDING | 4/01/95 |
| 56 | NEW SHIPPING DOCK | 1/01/96 |
| 57 | BAY 1 REPROCESSING ROOM | 1/01/96 |
| 58 | NEW INSHELL RECEIVING DOC | 9/01/96 |
| 59 | GRAVEL TRUCK PARKING | 4/01/96 |
| 60 | INSHELL RECEIVING DOCK | 11/01/96 |
| 61 | GRAVEL & PAVING | 4/01/97 |
| 62 | CAPITALIZED INTEREST '85 | 7/01/85 |
| 63 | URETHANE ROOF | 10/15/97 |
| 64 | REPROCESSING BUILDING | 1/01/99 |
| 65 | PARKING LOT REPROCESSIN | 1/01/99 |
| 66 | REPAIR TO WALLS | 3/01/99 |
| 67 | GRAVEL & PAVING ROADS | 4/01/00 |
| 68 | NEW SEWER LINE | 4/01/00 |
| 69 | PORTABLE SHIPPING OFFICE | 4/01/00 |
| 70 | MACHINE SHOP BUILDING | 4/01/00 |
| 71 | WATKINS BLDG IMPR | 4/01/01 |
| 72 | JOHNSON DRIVEWAYS | 4/01/01 |
| 73 | ATLAS PORTABLE BLDG | 4/01/01 |
| 74 | CONCRETE PAD INSHELL GATE | 8/31/07 |

{00010107:1}

| | | |
|---|---|---|
| 75 | NEW PARKING LOT PAVEMENT | 3/31/07 |
| 1086 | NEW ROOF - OLD PLANT | 1/05/10 |
| 1087 | NEW ROOF - OFFICE | 3/31/10 |
| 1089 | INSHELL BREAK ROOM ADDITION | 5/26/10 |
| 1093 | ROAD/PK LOT/PAVING | 5/25/10 |
| 1096 | CONCRETE/ASPHALT/DRAINAGE | 6/01/10 |
| 1097 | CONCRETE/ASPHALT/DRAINAGE | 7/28/10 |
| 1100 | CONCRETE WORK | 8/06/10 |
| 1107 | NEW ELECTRICAL - RANDY | 6/01/10 |
| 1117 | HA PAIR - CONCRETE | 11/30/10 |
| 1118 | RANDY/LOPEZ - ELEC/PAINT | 11/18/10 |
| 1134 | LOPEZ CONSTRUCTION | 4/30/11 |
| 1135 | H A PAIR ASPHALT | 4/30/11 |
| 1153 | SHELVES, HALL, DOOR LOPEZ | 1/25/11 |
| 1155 | PARKING LOT POLES | 5/20/11 |
| 1156 | EMERGENCY LIGHTS, WIRE CAMERAS | 7/15/11 |
| 1157 | BAY 2 & 3 DRAIN LINES AREA WIDE | 4/14/11 |
| 1163 | NEW DOORS - FAIRWAY | 12/15/11 |
| 1184 | REBUILD WALL BAY 2 & 3 | 10/29/12 |
| 1188 | ADD DOOR CLOSE DOORS ON ROASTING ROOM | 10/16/12 |
| 1189 | PARKING/CONCRETE INSHELL AREA | 10/26/12 |
| 1208 | LINER PANELS TO COVER INSULATION | 6/06/13 |
| 1214 | ADD FANS AND RESEAL BAY 2 & 3 WALL | 10/21/13 |
| 1225 | NEW CONDENSOR BAY 8 | 5/09/14 |
| 1226 | NEW A/C DEPT 3 | 5/08/14 |
| 1257 | ROOF REPAIR PARSONS | 4/15/15 |
| 1265 | SEAL & RESTRIPE PARKING LOT | 8/13/15 |
| 1271 | BARRELL WASH ROOM ADDITION | 10/08/15 |
| 1273 | ASPHALT WORK INSHELL PARKING | 10/16/15 |
| 1276 | BARRELL WASH ROOM ADDITION | 12/14/15 |
| 1277 | BARRELL WASH ROOM FLOOR | 12/14/15 |
| 1307 | NEW DOORS INSHELL | 11/13/17 |
| 1314 | TRENCH DRAIN FOR ALCOHOL ROOM | 2/08/18 |
| 1315 | ADD FRP TO PLANT RESTROOM WALLS | 2/15/18 |
| 1317 | FABRICATE FLOOR DRAIN DESTONER ROOM | 6/03/18 |
| 1318 | NEW DRAINS IN BARRELL WASH ROOM | 7/02/18 |
| | | |
| **Group: COLD STORAGE WAREHOUSE** | | |
| 1054 | REFRIGERATED STG STRUCT | 3/01/82 |
| 1055 | COOLER BUILDING | 4/01/86 |
| | | |
| **Group: NEW PLANT MACHINERY** | | |
| 645 | 1 PC PACKING HOPPER | 4/01/86 |

| | | |
|---|---|---|
| 646 | 2 COOLING BINS W/ FEEDERS | 4/01/86 |
| 649 | SET 6 INSP TBL BIN&SUP FW | 4/01/86 |
| 650 | DUAL BIN FOR FEED SAN BAS | 4/01/86 |
| 651 | 10THREE STEP INSP TABLES | 4/01/86 |
| 652 | 10ADD INSP TABLE MAGNET | 4/01/86 |
| 653 | 4LEG LENGTH&DECKS CHANGE | 4/01/86 |
| 654 | 4GA INSP TABLE HOPPER EXT | 4/01/86 |
| 655 | 1HYDRAULIC TOTE BIN DUMP | 4/01/86 |
| 657 | CONVEYOR W/THREE AIRGATES | 4/01/86 |
| 658 | 22 SCREEN FINAL 1/2 SIZE | 4/01/86 |
| 659 | 2SIZERSCREEN | 4/01/86 |
| 660 | 2CYCLONE HEAD FINAL BLOW | 4/01/86 |
| 661 | FINAL 1/2 SIZEBLOW STAND | 4/01/86 |
| 662 | CENTRIFUGAL STIKTITE BRK | 4/01/86 |
| 663 | SET HALF PACKING HOPPERS | 4/01/86 |
| 664 | COMPAK NUT ROASTER | 4/01/86 |
| 665 | FENCE1985 | 4/01/86 |
| 666 | SIMPLEX CONVEY ELEVATOR | 4/01/86 |
| 667 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 668 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 669 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 670 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 671 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 672 | PULLEYS RABBIT EAR CONVEY | 4/01/86 |
| 673 | VERTSECTION FOR CONVEYOR | 4/01/86 |
| 674 | SIZER SCREEN | 4/01/86 |
| 675 | 8 RALPHSPUGH | 4/01/86 |
| 676 | DUST COLLECTORS | 4/01/86 |
| 677 | CAST IRON HOUSING | 4/01/86 |
| 678 | #201 DUST COLLECTOR | 4/01/86 |
| 679 | FREIGHT ON DUST COLLECTOR | 4/01/86 |
| 680 | 418IN SHELLER | 4/01/86 |
| 681 | 2TWO SCREEN SIZER | 4/01/86 |
| 682 | 2CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 683 | 2SHELLER NO SUCTION FAN | 4/01/86 |
| 684 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 685 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 686 | INLINE SIZER MODEL | 4/01/86 |
| 688 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 689 | 2CONTINOUS BUCKET ELEVAT | 4/01/86 |
| 690 | 2CONTINOUS BUCKET ELEVAT | 4/01/86 |
| 691 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 692 | 2SANITIZER BLOWER PIPE | 4/01/86 |

{00010107:1}

| | | |
|---|---|---|
| 693 | MEYER EQUIPMENTFREIGHT | 4/01/86 |
| 695 | DRYERPROCTOR SCHWARTZ | 4/01/86 |
| 696 | 4TWO SCREEN SIZERS | 4/01/86 |
| 697 | 4ADDITIONAL 9/16IN SCREEN | 4/01/86 |
| 698 | 1 MEZZANINE | 4/01/86 |
| 699 | DUAL LANE CONVEYOR | 4/01/86 |
| 700 | FIVE SCREEN INLINE SIZER | 4/01/86 |
| 701 | 5EIGHT INCH BLOWERS | 4/01/86 |
| 702 | BLOWER SUPPORT STAND | 4/01/86 |
| 703 | DUALLANE CONVEYOR | 4/01/86 |
| 704 | B INDICATORS & BLOW PIPES | 4/01/86 |
| 705 | WASHER DESTONER | 4/01/86 |
| 706 | 4NINE INCH BLOWER | 4/01/86 |
| 707 | 2DOUBLE HALF BLOW STAND | 4/01/86 |
| 708 | CONTINOUS EXTRACTOR | 4/01/86 |
| 709 | TEN INCH ELEVATOR | 4/01/86 |
| 710 | BARREL LIFT DUMP | 4/01/86 |
| 711 | BARREL LIFT DUMP | 4/01/86 |
| 712 | 2FEEDER HOPPER | 4/01/86 |
| 714 | FREIGHT | 4/01/86 |
| 715 | PROC&SCHW HALF DRYER HOPP | 4/01/86 |
| 716 | AUGER FLOP GATE CHUTE | 4/01/86 |
| 717 | 11PAIR CONVEYELEVLEGS | 4/01/86 |
| 718 | CATWALK & LADDER ASSEMBLY | 4/01/86 |
| 719 | 2BLOWSHELL DISCHRG CHUT | 4/01/86 |
| 720 | CATWALK&LADDERINSH BINS | 4/01/86 |
| 721 | 818 GA CHUTES(2)ELEV | 4/01/86 |
| 722 | LINER FOR HALF DRYHOPPER | 4/01/86 |
| 723 | 216GA PROD INPUT HOPPERS | 4/01/86 |
| 724 | REMOVE SECTION OF ELEVAT | 4/01/86 |
| 725 | STAINLESS STEEL AUGER | 4/01/86 |
| 726 | STAINSTEEL SHELL AUGER | 4/01/86 |
| 727 | STAND W/LADDER | 4/01/86 |
| 728 | ELEVATED FLOAT FEEDHOPP | 4/01/86 |
| 729 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 730 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 731 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 732 | PIECE DRYER SPREADER | 4/01/86 |
| 733 | 4CRACKFEEDER END RISERS | 4/01/86 |
| 734 | CATWALK W/O HANDRAIL | 4/01/86 |
| 735 | 40SMITH CABLE CLAMP | 4/01/86 |
| 736 | 2SHEAVES&TAPER LOCK BUSH | 4/01/86 |
| 737 | FABRICATE 22 CHUTES | 4/01/86 |

{00010107:1}

| 738 | ELEVATOR INPUT TRANSITION | 4/01/86 |
|---|---|---|
| 739 | ELEVATOR DISCHARGE CHUTE | 4/01/86 |
| 740 | DUAL HOPPER EXTENSION | 4/01/86 |
| 741 | 6ELEVATOR TABLES | 4/01/86 |
| 742 | EXTENSIONS ON 2 ELEVATORS | 4/01/86 |
| 744 | 2REJECT CON&CHUTE SYSTE | 4/01/86 |
| 745 | 8RIGID PLATE CASTER | 4/01/86 |
| 746 | MAUREY SL SHEAVE | 4/01/86 |
| 747 | SHEAVE | 4/01/86 |
| 748 | TAPER LOCK BUSHING | 4/01/86 |
| 749 | SANITIZER VENT HOOD | 4/01/86 |
| 750 | STARITE WATER PUMP | 4/01/86 |
| 751 | PUMP TRAP W/STRAINER BSKT | 4/01/86 |
| 752 | 39ROLLER CONVEY ROLLERS | 4/01/86 |
| 753 | VIBRATORY CONVEYOR | 4/01/86 |
| 754 | CHUTE ASSEMBLY W/CONVEYOR | 4/01/86 |
| 755 | ELEVTO POP REMOVER CHUTE | 4/01/86 |
| 756 | OUTSIDE SCREW AUGER | 4/01/86 |
| 758 | 2PACKING SCALE STANDS | 4/01/86 |
| 759 | 2RUBBER STAMP TABLES | 4/01/86 |
| 760 | 4SHELLER OVERRIDE CHUTES | 4/01/86 |
| 761 | 2CHUTE ASSEMPCS OFF SZR | 4/01/86 |
| 762 | 2ELEVDISCHGE TO SZR CHU | 4/01/86 |
| 763 | CATWALK W/HANDRAIL | 4/01/86 |
| 764 | 2LONG SPIRAL EASY LETDWN | 4/01/86 |
| 765 | 2PACK TABLES FOR BOXES | 4/01/86 |
| 766 | 4WRITING TABLES | 4/01/86 |
| 767 | CATWALK W/LADDER | 4/01/86 |
| 768 | 1 LOT 11 CONVEELEVCOVRS | 4/01/86 |
| 769 | SINGLE SYNTRON CONTROLLER | 4/01/86 |
| 770 | 9INBLOWER INPUT TRANSITION | 4/01/86 |
| 771 | 9IN BLOWER SHELL | 4/01/86 |
| 772 | 7DEEP STEEL DUST PANS | 4/01/86 |
| 773 | 6CHLORINE WASH SHELFS | 4/01/86 |
| 774 | HOPPREDUCERSTRIMDIVRTR | 4/01/86 |
| 775 | LOWER LEVEL CATWALK ASSEM | 4/01/86 |
| 776 | 2SPIRAL LETDOWN CHUTES | 4/01/86 |
| 777 | ELEVPRODINPUT HOPASSEM | 4/01/86 |
| 778 | STSTEEL RAKE W/48INHANDLE | 4/01/86 |
| 779 | PAN W/HANDLE AT EACH END | 4/01/86 |
| 780 | SZR SCREEN RAKE72INT HAND | 4/01/86 |
| 781 | 9STAINLESS STEEL BOXES | 4/01/86 |
| 782 | 10 GALV BOXES W/O TOP | 4/01/86 |

{00010107:1}

| | | |
|---|---|---|
| 783 | 18GA SHAFT COUPLING GUARD | 4/01/86 |
| 784 | TWO LANE CONVEYHGHT EXT | 4/01/86 |
| 785 | CASTER MOUNTED DUST PAN | 4/01/86 |
| 786 | 18 GA STEEL INPUT HOPPER | 4/01/86 |
| 787 | 218 GA DUST HOODS | 4/01/86 |
| 788 | FREIGHT | 4/01/86 |
| 789 | 2STAINSTEEL WIRE CLOTHS | 4/01/86 |
| 790 | 2THREE STEP INSP TABLES | 4/01/86 |
| 791 | 2MAGNET ASSEMBLY | 4/01/86 |
| 792 | 2INSPTABLE HOPPER EXT | 4/01/86 |
| 793 | DESTONER PADDLE WHEEL | 4/01/86 |
| 794 | STSTEEL ELEVCHUTE HOOD | 4/01/86 |
| 795 | HOT WATER SANITIZER EXT | 4/01/86 |
| 796 | HALF DRYER RAKE INTINHANDLE | 4/01/86 |
| 797 | 3STAINSTEEL DUST PANS | 4/01/86 |
| 798 | FIVE SCREEN SACK SIZER | 4/01/86 |
| 799 | 20 CUBIC FTELEVATED HOP | 4/01/86 |
| 801 | 2AIR & 2OIL FILTERS | 4/01/86 |
| 802 | CHUTES FOR SHELLERSEPAR | 4/01/86 |
| 803 | SALES TAX ON 1085 EQUIP | 4/01/86 |
| 804 | FRGHT ON MACHINERY 12/85 | 4/01/86 |
| 805 | FREIGHT | 4/01/86 |
| 806 | BUCKET ELEVATOR | 4/01/86 |
| 807 | PARTS OF MACHINERY | 4/01/86 |
| 808 | REEVES MOTOR BASE | 4/01/86 |
| 809 | PARTS FOR MACHINERY | 4/01/86 |
| 810 | PARTS FOR MACHINERY | 4/01/86 |
| 812 | FREIGHT | 4/01/86 |
| 813 | MOD CHUTE | 4/01/86 |
| 814 | 3 CHUTES MOD | 4/01/86 |
| 815 | FAB DUST COLLECTING SYST | 4/01/86 |
| 816 | FREIGHTPACKAGE CONVEYOR | 4/01/86 |
| 817 | FIVE SCREEN STACKABLE SZR | 4/01/86 |
| 818 | 2PERMANENT MAGNETS | 4/01/86 |
| 819 | WORKBENCH W/22193 VISE | 4/01/86 |
| 820 | 5STAINLESS STEEL BOXES | 4/01/86 |
| 821 | 2STSTEEL SIZER INTIN RAKE | 4/01/86 |
| 822 | POP REMOVER CONVEY/HOPP | 4/01/86 |
| 823 | WALL MOUNT SCALE SHELF | 4/01/86 |
| 824 | SANITIZER VENT PIPE | 4/01/86 |
| 825 | FREIGHTLOCKERS | 4/01/86 |
| 826 | FREIGHTJB SANFILIPPO | 4/01/86 |
| 827 | FREIGHTJB SANFILIPPO | 4/01/86 |

| 828 | SWECO INCFREIGHT | 4/01/86 |
|---|---|---|
| 829 | THINNER & PAINT FOR CONST | 4/01/86 |
| 830 | CHOP SAW BLADER | 4/01/86 |
| 831 | PARTS FOR INSHELL ELEVA | 4/01/86 |
| 832 | COUPLING | 4/01/86 |
| 833 | REGULATORFITTHOSETAPE | 4/01/86 |
| 834 | SCREWSHOLGUN DRILLDRILL | 4/01/86 |
| 835 | SCREWS & NUTS | 4/01/86 |
| 836 | BOLTSHEXNUTSVALVEWASHR | 4/01/86 |
| 837 | SILVERLINE BENCH | 4/01/86 |
| 838 | HEAVY CAP PLATFORM SCALE | 4/01/86 |
| 839 | FLEXURE BASE5000# | 4/01/86 |
| 840 | PLATFORM SCALE2000# | 4/01/86 |
| 841 | FREIGHT | 4/01/86 |
| 842 | SALES TAX | 4/01/86 |
| 844 | STOOLS FOR PICKING TABLES | 4/01/86 |
| 845 | WET HOLDING TANK & ACCESS | 4/01/86 |
| 846 | 55 YARDS CONCRETE | 4/01/86 |
| 847 | AUGER FOR NEW SHELL BIN | 4/01/86 |
| 848 | 2MATIC ADJUSCASE SEALER | 4/01/86 |
| 849 | RECTANGULAR FITTING | 4/01/86 |
| 850 | 8inx6inx64in OPEN TOP CHUTE | 4/01/86 |
| 851 | 4BELT GUARDS W/BRACKETS | 4/01/86 |
| 852 | HOPPER W/FLAT BAR FLANGE | 4/01/86 |
| 853 | METAL FLEXIBLE PIPE | 4/01/86 |
| 854 | FABRICA&INSTALLOF EQUIP | 4/01/86 |
| 855 | EXHAUST DUCT OFF AIR COMP | 4/01/86 |
| 856 | WALL CREW TUBING | 4/01/86 |
| 857 | OPEN TOP CHUTESHELL ELEV | 4/01/86 |
| 858 | 8337 DRUM DOLLIE | 4/01/86 |
| 859 | ROLLER CONVEYOR | 4/01/86 |
| 860 | BLUEPRINTS&DRAW6CONVEY | 4/01/86 |
| 861 | TABLES&CHAIRS FOR LUNCHRM | 4/01/86 |
| 862 | 2DOUBLE TIER LOCKERS | 4/01/86 |
| 863 | FREIGHT ON NEW MACHINERY | 4/01/86 |
| 864 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 865 | FREIGHT ON EQUIPMENT | 4/01/86 |
| 866 | FREIGHT ON EQUIPMENT | 4/01/86 |
| 867 | INSTALLATION CHARGES | 4/01/86 |
| 868 | 2MODIFY STSTEEL CHUTES | 4/01/86 |
| 869 | BALL VALUESBELL REDUCER | 4/01/86 |
| 870 | DRESSER SLEEVESWELD ELLS | 4/01/86 |
| 871 | 9VOLT BATTPULLEYSSNAPS | 4/01/86 |

| 872 | TAXES ON EQUIPFROM MEYER | 4/01/86 |
|---|---|---|
| 873 | MOISTURE METER | 4/01/86 |
| 874 | REWORK DIVIDER DRYOVEN | 4/01/86 |
| 875 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 876 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 877 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 878 | HEATING/AIR CONDITIONING | 4/01/86 |
| 879 | SPECIAL ELECTRICAL | 4/01/86 |
| 880 | GRATE | 4/01/86 |
| 881 | MONORAIL | 4/01/86 |
| 882 | PAINT | 4/01/86 |
| 884 | BARREL LIFT DUMP | 6/01/85 |
| 885 | INLINE SIZERMEYER | 4/01/86 |
| 888 | 23STEP INSPTABLES | 8/01/85 |
| 889 | SSTEEL ALCOHOL TANK | 4/01/85 |
| 891 | WASTE TREATMENT FACILITY | 4/01/86 |
| 892 | WHSE UNIT HEATERS (10) | 4/01/86 |
| 893 | PROCESS SEWER | 4/01/86 |
| 894 | LABOREQUIP INSTALL | 4/01/86 |
| 895 | SPECIAL ELECTEQUIP | 4/01/86 |
| 896 | EQUIPMENT | 4/01/86 |
| 898 | 30IN INSPECT TABLES (2) | 11/01/85 |
| 900 | FILING CABINET | 11/01/86 |
| 903 | 72IN SIGHT PANELS (2) | 1/06/87 |
| 904 | NATURAL GAS HEATER | 12/31/86 |
| 905 | FILE CABINET | 1/23/87 |
| 908 | MACHINE PARTS | 3/15/87 |
| 909 | INSTALL PHONE & JACK | 11/18/86 |
| 910 | FILE CABINET | 12/08/86 |
| 911 | DESK CHAIRS | 12/08/86 |
| 913 | FILE CABINET | 12/08/86 |
| 918 | JOHNSON LADDER | 4/01/89 |
| 919 | VACUMN SEAL & FLT MACH | 4/01/89 |
| 921 | CANOPIES FOR BLDG | 4/01/89 |
| 923 | COMPRESSOR | 4/01/89 |
| 929 | TENOX MIXING DEVICE | 3/26/90 |
| 931 | BARREL LIFT DUMP | 9/13/90 |
| 932 | ROTARY AIR LOCK | 9/13/90 |
| 933 | DRYER AND CONVEYOR | 10/15/89 |
| 935 | SALES TAX BBL LIFT DUMP | 10/15/90 |
| 936 | BARREL LIFT DUMP | 5/15/91 |
| 938 | METAL DETECTORS | 11/15/91 |
| 939 | TAPE MACHINES (2) | 1/15/92 |

{00010107:1}

| | | |
|---|---|---|
| 940 | DRYER NEW PLANT | 4/15/92 |
| 942 | STAINLESS STEEL BARRELS | 8/15/93 |
| 943 | STEEL HOPPER | 4/01/94 |
| 946 | AJAX SHAKER # 0976 | 4/01/94 |
| 947 | RARE EARTH MAGNET SYSTEM | 4/01/94 |
| 949 | 4 16' STEEL CHUTES | 4/01/94 |
| 950 | AJAX SHAKER # 8822 | 4/01/94 |
| 952 | 2 SIMPLEX CONVEY ELEVATOR | 4/01/94 |
| 954 | PARKING LOT LIGHTS | 4/01/94 |
| 955 | 2 HALFBIN COOLING SYSTEM | 4/01/94 |
| 956 | STEEL HEAT EXCHNG & BLOWE | 4/01/94 |
| 957 | 2 CONVEYOR CHUTES | 4/01/94 |
| 958 | SWECO PUMP SYSTEM | 4/01/94 |
| 959 | CHAIN LIFT BARRELL DUMP | 4/01/94 |
| 960 | AJAX SHAKER # 8284 | 4/01/94 |
| 961 | CONVERT 2 QUANTZ FRAMES | 4/01/94 |
| 962 | STEEL HOPPER & STAND | 4/01/94 |
| 964 | AJAX SHAKER # 8938 | 4/01/94 |
| 966 | STORAGE SHELVING | 4/01/95 |
| 967 | HANDWASHER INSHELL RESTRO | 4/01/95 |
| 969 | TRASH COMPACTOR | 4/01/95 |
| 970 | FREIGHT ON SNA EQUIP | 4/01/95 |
| 971 | ELEVATED FEEDER/HOPPER | 4/01/95 |
| 972 | 2 INSPECTION TABLES | 4/01/95 |
| 974 | PLANT EQUIPMENT SNA | 4/01/95 |
| 977 | SPRINKLER SYSTEM | 4/01/97 |
| 978 | ELEVATORS & STANDS | 4/01/97 |
| 979 | TILE & LABOR ROASTING RM | 4/01/97 |
| 980 | RF BAR CODING EQUIPMENT | 4/01/97 |
| 981 | NUT DICER | 4/01/97 |
| 982 | AIR CONDITION COMPRESSOR | 4/01/97 |
| 983 | SEPARATOR UNIT | 4/01/97 |
| 985 | COATING TUMBLER | 4/01/97 |
| 986 | STAINLESS STEEL BARRELS | 4/01/97 |
| 988 | MOISTURE TESTER | 4/01/97 |
| 989 | LABORATORY EQUIPMENT | 4/01/97 |
| 990 | SIZER SHELLER TABLES ET | 4/01/97 |
| 991 | MAGNETS | 4/01/97 |
| 992 | MISC EQUPT FROM R&M AJE | 4/01/97 |
| 994 | CAPITALIZED INTEREST '85 | 7/01/85 |
| 997 | BINS & STANDS | 4/15/98 |
| 999 | 3 HOPPERS | 3/15/98 |
| 1000 | EQUIPMENT DOZIER | 3/01/99 |

{00010107:1}

**TO BE SUPPLEMENTED**

| 1002 | STANDS & EQUIPMENT | 3/01/99 |
|------|---------------------|---------|
| 1003 | MISC SHIPPING EQPT | 3/01/99 |
| 1007 | NEW FREEZER PANELS | 3/01/99 |
| 1008 | FENCE FANS ETC | 3/01/99 |
| 1009 | HOPPERS BINS ETC | 3/01/99 |
| 1010 | EQPT & FIXTURES REPROCESS | 1/01/99 |
| 1011 | MISC EQUIPMENT | 3/01/99 |
| 1012 | OVERHEAD DOOR | 4/01/00 |
| 1013 | NEW SCALES | 4/01/00 |
| 1014 | LADDER PLATFORM | 4/01/00 |
| 1015 | SPRINKLER SYSTEM | 4/01/00 |
| 1016 | DRYER | 4/01/00 |
| 1017 | STAIRS & HANDRAILS | 4/01/00 |
| 1018 | WIRE MACHINE SHOP | 4/01/00 |
| 1019 | REBUILD SV 45 | 4/01/00 |
| 1020 | FAB STAINLESS GUARDS | 4/01/00 |
| 1021 | WIRE NEW MACHINERY | 4/01/00 |
| 1022 | INSTALL LIGHTS | 4/01/00 |
| 1023 | FABRICATE GUARD | 4/01/00 |
| 1024 | MODEL 24 CYCLONE | 4/01/00 |
| 1025 | FABRICATE STEEL BOX | 4/01/00 |
| 1026 | 2 BOHN EVAPORATORS | 4/01/00 |
| 1027 | NEW CEILING PANELS FREEZE | 4/01/00 |
| 1028 | REBUILD FORKLIFT MOTOR | 4/01/00 |
| 1029 | FORKLIFT EQUIPMENT | 4/01/00 |
| 1030 | METAL DETECTOR | 4/01/00 |
| 1031 | MACHINE SHOP EQUIPMENT | 4/01/00 |
| 1032 | 2 SATAKE BELT SORTERS | 4/01/00 |
| 1034 | MISC EQUIPMENT ITEMS | 4/01/00 |
| 1036 | HOBBS FABRICATE CHUTES | 4/01/01 |
| 1037 | HOBBS STAINLESS ST ELEVAT | 4/01/01 |
| 1038 | AIRLOCK EQUIPMENT | 4/01/01 |
| 1039 | RANDY WIRING & NEW LIGHTS | 4/01/01 |
| 1040 | HOBBS NEW EQUIPMENT | 4/01/01 |
| 1041 | RANDY WIRING & NEW LIGHTS | 4/01/01 |
| 1042 | NEW AC UNITS FOR OFFFICE | 4/01/01 |
| 1043 | RANDY WIRING NEW EQUPT | 4/01/01 |
| 1044 | HOBBS FABR NEW EQUPT | 4/01/01 |
| 1045 | ACCUCORP SCALE | 4/01/01 |
| 1046 | PALLET LIFT TRUCK | 4/01/01 |
| 1049 | MISC EQUIPMENT | 4/01/01 |
| 1050 | VACUUM PACKAGING MACHINE | 4/01/06 |
| 1051 | SHIPPING DEPT PRINTER | 4/01/06 |

| | | |
|---|---|---|
| 1052 | RUSCO PACKAGING MACHINE | 3/31/07 |
| 1066 | WIFI ACCESS POINTS IN PLANT | 12/29/08 |
| 1068 | WIFI IN PLANT/MOTOROLA BARCODE | 2/25/09 |
| 1070 | MOTOROLA BAR CODE READER | 3/25/09 |
| 1082 | NEW CONDENSOR FOR BAY 5 | 9/14/09 |
| 1110 | NEW COMPRESSOR BAY 5 | 10/15/10 |
| 1115 | UPGRADES TO OLD SATAKES | 10/31/10 |
| 1125 | 2 NEW METAL DETECTORS | 3/31/11 |
| 1126 | KAISER - AIR SUPPLY PIPE | 1/31/11 |
| 1128 | ROYAL FLUSH NEW SINKS | 1/31/11 |
| 1136 | VIDEO JET LABEL PRINTERS | 4/11/11 |
| 1139 | MOTOROLA COMPUTERS QUEST | 6/15/11 |
| 1144 | AIR COND UNIT AREA WIDE | 8/15/11 |
| 1145 | USED EQPT - SOUTHERN NUT/PECANS.COM | 8/30/11 |
| 1148 | INSTALL SHELLERS | 9/14/11 |
| 1165 | ALARM SYSTEM FOR AIR COMPRESSORS | 12/07/11 |
| 1175 | 3 ZEBRA LABEL PRINTERS | 7/25/12 |
| 1178 | CONDENSOR FOR BAY 7 | 8/21/12 |
| 1179 | SS DUCTWORK FOR DRYER | 8/15/12 |
| 1180 | BUHLER SORTEX SORTER | 8/31/12 |
| 1182 | FIRE PROTECTION IN DRYER DUCTS | 8/30/12 |
| 1190 | SPRINKLE DEPT 8 DRYER | 11/07/12 |
| 1193 | LABEL APPL/PRINTER | 11/30/12 |
| 1197 | 15 HP CONDENSOR BAY 6 | 1/15/13 |
| 1201 | REFRIG UNIT BAY 8 #17 | 3/14/13 |
| 1205 | 4 BOX LABEL PRINTERS | 5/01/13 |
| 1206 | DUCTWORK ON DEPT 8 DRYER | 6/01/13 |
| 1224 | BEST SORTING MACHINE | 8/01/14 |
| 1229 | CONVEYOR AND HOPPER FOR BEST MACHINE | 8/01/14 |
| 1234 | TRANSFORMER & PANELS DEPT 7 | 8/22/14 |
| 1239 | ELECTRICAL FOR BEST SORTER | 9/29/14 |
| 1243 | FREIGHT ON BEST SORTER | 11/18/14 |
| 1249 | NEW DOCK PADS | 12/31/14 |
| 1262 | NEW AIR COND NEW PLANT | 6/01/15 |
| 1283 | BARRELL DUMP DEPOSIT | 4/22/16 |
| 1284 | CHANGE OUT A/C UNIT #13 | 4/04/16 |
| 1287 | TRANE AC UNIT WITH HEAT | 5/13/16 |
| 1288 | NEW METAL DETECTOR | 6/28/16 |
| 1292 | NEW BARREL DUMPER | 9/27/16 |
| 1310 | USED 5 SCREEN SIZER | 10/18/17 |
| 1313 | NEW BARRELL DUMPER | 2/01/18 |
| 1319 | NEW BARRELL DUMPER | 7/10/18 |
| 1332 | 1 NEW AMVT SORTER | 8/29/20 |

{00010107:1}

| 1336 | AIRLINES FOR NEW SORTERS | 7/01/20 |
|---|---|---|
| 1338 | SATAKE SORTERS | 8/01/20 |
| 1339 | NEW DOCK LEVELER | 8/23/20 |
| 1341 | NEW CRACKERS MODERN ELECTRONIC | 9/01/21 |
| 1342 | TOMRA LASER SORTER | 11/19/21 |
| 1344 | SATAKE SORTER | 12/31/21 |
| | | |
| **Group: OFFICE & DATA EQUIPMENT** | | |
| 76 | MINI BLINDS | 4/01/86 |
| 85 | CREDENZA | 12/01/85 |
| 86 | LAMP TABLE | 12/01/85 |
| 87 | LANDSCAPE SCREEN | 11/01/85 |
| 88 | FILE CABINET | 11/01/85 |
| 89 | FILE & STORAGE CABINET | 11/01/85 |
| 90 | WALNUT BOOKSHELF | 11/01/85 |
| 91 | 3 INWOOD DESKS | 11/01/85 |
| 92 | SECRETARIAL INWOOD DESK | 11/01/85 |
| 93 | 3 30X48 COMPUTER DESKS | 11/01/85 |
| 94 | 30X60 COMPUTER DESK | 11/01/85 |
| 96 | DISPLAY SHELVES&BINSRETL | 11/01/85 |
| 97 | DISPLAY RACKS&BINSRETAIL | 11/01/85 |
| 98 | 3 POSTURE CHAIRS | 12/01/85 |
| 100 | METAL STORAGE RACKSOFFIC | 12/01/85 |
| 101 | SALES TAX ON RETAIL EQUIP | 12/31/85 |
| 104 | 4 FOLDING TABLES | 4/08/86 |
| 105 | OFFICE FURNITURE | 4/30/86 |
| 107 | CHAIR SIDE FILE | 5/05/86 |
| 108 | DATA RACK | 5/05/86 |
| 111 | TYPEWRITER | 6/20/86 |
| 112 | FILE/DATA RACK | 6/19/86 |
| 113 | MINI BLINDS | 6/25/86 |
| 114 | OFFICE FURNITURE | 7/01/86 |
| 115 | HEATING/AIR CONDITOFFICE | 4/01/86 |
| 116 | HEATING/AIR COND RETAIL | 4/01/86 |
| 118 | FURNFIXTURES & OFFEQUIP | 7/01/78 |
| 119 | OFFICE FURNITURE | 3/31/79 |
| 120 | OFFICE FURNITURE | 3/31/79 |
| 121 | OFFICE FURNITURE | 5/21/79 |
| 122 | OFFICE FURNITURE | 6/01/79 |
| 123 | OFFICE FURN & EQUIPMENT | 12/31/79 |
| 124 | OFFICE FURNITURE | 2/28/80 |
| 126 | OFFICE EQUIPMENT | 11/11/80 |
| 127 | CABINETS OFFICE | 12/10/80 |

{00010107:1}

| 128 | CALCULATORS & CHAIRS | 12/07/81 |
|---|---|---|
| 129 | TYPEWRITER | 12/08/81 |
| 131 | MORTON'S OFFICE FURNITURE | 6/22/82 |
| 132 | MORTON'S OFFICE FURNITURE | 6/22/82 |
| 133 | 2 DESKS CHAIR/TYPE TABLE | 4/01/83 |
| 134 | IBM SELECTRIC TYPEWRITER | 6/01/83 |
| 140 | IBM SELECTRIC II TYPEWRIT | 11/01/84 |
| 141 | 2 DESKS | 12/01/84 |
| 142 | CHAIR | 12/01/84 |
| 143 | TABLE HASCO 600 | 12/01/84 |
| 147 | NEW FILE CABINET | 3/01/85 |
| 148 | IBM WHEELWRITER TYPEWRITE | 3/01/85 |
| 149 | FILE CABINET | 4/01/85 |
| 150 | DESK 2 CHAIRS & MATS | 4/01/85 |
| 153 | DESK CHAIR & CHAIR MAT | 7/01/85 |
| 154 | IBM TYPEWRITERWHEELWRITE | 8/01/85 |
| 155 | TABLE | 8/01/85 |
| 157 | EXHIBIT BOOTH | 9/01/85 |
| 158 | SIGN | 10/15/86 |
| 159 | EQUIPMENT | 11/01/86 |
| 162 | FILE CABINET | 2/09/87 |
| 164 | FILE CABINET LEGAL SIZE | 3/04/87 |
| 165 | TABLE BREAKROOM | 3/04/87 |
| 166 | STORAGE CABINET | 3/04/87 |
| 167 | SIDEARM CHAIRS (3) | 3/04/87 |
| 168 | DESK CHAIR DRAFT TABLE | 4/01/88 |
| 170 | LATERAL FILE CABINET | 4/01/88 |
| 174 | LATERAL FILE CABINET | 4/01/88 |
| 175 | IBM WHEELWRITER TYPEWRTER | 4/01/89 |
| 177 | DESK & COMPUTER TABLE | 4/01/89 |
| 178 | CHAIRS FILE CABINET | 4/01/89 |
| 188 | PORTABLE DISPLAY BOOTH | 10/15/92 |
| 190 | SECRETARIAL DESK | 2/15/93 |
| 191 | LATERAL FILE CABINET | 2/15/93 |
| 192 | OFFICE PARTITIONS | 2/15/93 |
| 193 | IBM SELECTRIC II | 5/15/93 |
| 196 | VIDEO TAPE FOR SHOWS | 9/15/93 |
| 197 | VIDEOTAPE | 4/01/94 |
| 199 | IBM TYPEWRITER & STAND | 4/01/94 |
| 206 | OFFICE STORAGE SHELVES | 4/01/94 |
| 208 | CHAIRS FOR CONF ROOM | 4/01/95 |
| 209 | CABINETS & SINK CONF ROOM | 4/01/95 |
| 210 | TABLE FOR CONF ROOM | 4/01/95 |

| 212 | TV & VCR FOR CONF ROOM | 4/01/95 |
|---|---|---|
| 215 | INSTALL PARTITIONS | 4/01/96 |
| 1081 | COMPUTHINK VIEWWISE SOFTWARE | 8/15/09 |
| 1088 | NEW PHONE SYSTEM - CUSTOM TEL | 5/27/10 |
| 1168 | HP NETWORK SWITCHES | 4/02/12 |
| 1198 | BARRACUDA LINK BALANCER | 1/15/13 |
| 1253 | WEBSITE DEVELOPMENT | 1/15/15 |
| 1255 | NOVA TIME CLOCKS & SOFTWARE | 2/28/15 |
| 1272 | DELL SERVER | 10/02/15 |
| 1280 | NEW DELL SERVER | 2/12/16 |
| 1289 | IBM RS 6000 SERVERS | 8/18/16 |
| 1326 | NEW AC RETAIL STORE | 1/06/20 |
| 1337 | ACCESS POINTS AND SWITCHES | 7/31/20 |
|  |  |  |
| **Group: OLD PLANT MACHINERY** |  |  |
| 229 | HYDRAULIC DUMPER | 11/01/77 |
| 230 | PECAN HOPPER | 11/01/77 |
| 232 | INFEED INSHELL CONVEYOR | 11/01/77 |
| 233 | ELEVATOR | 11/01/77 |
| 234 | ELECTRIC CONTROL PANEL | 11/01/77 |
| 235 | STEEL BIN HOLDING SYSTEM | 11/01/77 |
| 236 | CONVEYORS2 | 11/01/77 |
| 237 | PECAN GRADER | 11/01/77 |
| 238 | DESTONER SYSTEM | 11/01/77 |
| 239 | DESTONER CONTROL PANEL | 11/01/77 |
| 240 | ELEVATORS2 | 11/01/77 |
| 241 | ELEVATORS2 | 11/01/77 |
| 242 | ELEVATORS2 | 11/01/77 |
| 243 | ELEVATORS2 | 11/01/77 |
| 244 | ELEVATOR | 11/01/77 |
| 245 | INSHELL PECAN HOPPER | 11/01/77 |
| 246 | INSHELL PECAN HOPPERS2 | 11/01/77 |
| 247 | PECAN FEED HOPPER | 11/01/77 |
| 248 | AUTOFEED CONVEYORS 2 | 11/01/77 |
| 251 | VF2 SCREEN SIZERS [2] | 11/01/77 |
| 252 | AIR SEPARATOR UNITS 8 | 11/01/77 |
| 253 | CONTINUOUS DRYER /COOLER | 11/01/77 |
| 254 | COLLECTOR CONVEYOR | 11/01/77 |
| 255 | SHELLING PLANT BAY | 11/01/77 |
| 256 | VF2 SCREEN SIZER | 11/01/77 |
| 257 | AIR SEPARATOR UNITS 2 | 11/01/77 |
| 258 | STAINLESS HOPPERS 2 | 11/01/77 |
| 259 | BARREL DUMP 2 | 11/01/77 |

{00010107:1}

| 261 | SETTLING TANK 3 | 11/01/77 |
| 262 | CABINET TYPE DRYER | 11/01/77 |
| 263 | ELEVATOR | 11/01/77 |
| 264 | HOPPERS 2 | 11/01/77 |
| 265 | BARREL JUMP | 11/01/77 |
| 266 | FEED HOPPERS 2 | 11/01/77 |
| 269 | AIR CONVEYING SYSTEM 3 | 11/01/77 |
| 270 | DRYER | 11/01/77 |
| 272 | BUCKET ELEVATORS | 11/01/77 |
| 275 | WATER COOLER | 11/01/77 |
| 277 | SCALE | 11/01/77 |
| 278 | SCALE | 11/07/77 |
| 279 | SCALE | 11/01/77 |
| 280 | INTERNA`L WEIGHT SCALE | 11/01/77 |
| 281 | MASTER CONTROL PANEL | 11/01/77 |
| 282 | SHELL MOTOR | 1/01/78 |
| 283 | HYD LIFT | 1/01/78 |
| 284 | SIZER SCREEN | 1/01/78 |
| 285 | SCALE | 2/01/78 |
| 286 | CASEBEARER REMOVAL UNIT | 3/01/78 |
| 287 | CISCO STOOLS | 4/01/78 |
| 288 | AUREX BELT ASSEMBLY | 4/01/78 |
| 289 | ELECTRIC RANGE | 7/01/78 |
| 290 | M2 US ELEC REDUCERS | 8/01/78 |
| 291 | PLATE SEC/PIECE DRYER22 | 3/01/78 |
| 292 | SAW BAND | 3/01/78 |
| 293 | DRILL PRESS | 3/01/78 |
| 294 | WELDING TABLE | 3/01/78 |
| 295 | VALVE FOR FLOATER | 4/01/78 |
| 296 | COASTER WHEELS 112 | 5/01/78 |
| 297 | SIGN | 12/01/78 |
| 299 | LIFT STATION | 1/01/77 |
| 300 | PALLETS | 1/01/77 |
| 301 | WATER METER | 1/01/77 |
| 302 | MILITARY SHEET METAL | 1/01/78 |
| 303 | MV FLEX SIZER NUT POCKET | 3/01/78 |
| 304 | MEYER SHELLER AS1819R | 1/01/78 |
| 305 | INSTALLATION EXPENSE | 1/01/78 |
| 306 | COOLER EQUIPMENT | 1/01/78 |
| 307 | MACH DEPOSIT | 10/31/78 |
| 308 | INSTALLATION | 10/31/78 |
| 309 | INSTALLATION | 11/30/78 |
| 310 | INSTALLATION | 12/31/78 |

{00010107:1}

| 313 | RYERSON AND MCMEEKIN | 1/01/79 |
|---|---|---|
| 314 | ELEVATOR | 1/01/79 |
| 315 | PLASTIC STRIP CURTAIN | 2/28/79 |
| 317 | INSTALLATION | 3/31/79 |
| 319 | EXHAUST FAN & ROOF FAN | 3/31/79 |
| 320 | SSTEEL HOPPER EXTEN3 | 5/21/79 |
| 321 | PALLET BOXES 150 | 5/18/79 |
| 322 | TWO SCREEN STACK SIZER 2 | 5/21/79 |
| 323 | VERTICAL CONT DRYER/COOL | 5/21/79 |
| 324 | STOOLS 10 | 5/21/79 |
| 325 | SET OF WRENCHES (11) | 5/21/79 |
| 326 | DODGE PILLOW BLOCKS 4 | 6/12/79 |
| 327 | LOVEJOY COUPLING | 6/12/79 |
| 328 | 5/8INSTEEL COLLAR WOODS10 | 6/12/79 |
| 329 | GRAVEL FOR PARKING LOT | 6/12/79 |
| 330 | INSTALLATION | 6/12/79 |
| 331 | INSTALLATION OF EQUIP | 6/12/79 |
| 332 | INSTALLATION OF EQUIP | 6/01/79 |
| 334 | 200' SURE LINK BELTING | 7/11/79 |
| 335 | 9INBLOWER W/MOTOR | 7/11/79 |
| 336 | TUBES 3 | 7/11/79 |
| 337 | TUBES | 7/13/79 |
| 338 | COOLER | 7/26/79 |
| 339 | PANS4/ANGLES/FEEDER SEC | 8/07/79 |
| 340 | USED ENGINE | 8/29/79 |
| 341 | ENGINE | 9/06/79 |
| 344 | TOP WIDTH TABLETOP CHAIN | 9/16/79 |
| 345 | VERT/DRYER & INSP TABLE | 9/30/79 |
| 346 | STAINLESS STEEL HOPPER | 9/30/79 |
| 348 | ANGA3613/HR STRIP 105 | 9/30/79 |
| 349 | RYER EXP METAL SHT FLATT | 9/30/79 |
| 350 | VERTICAL SECTION | 9/30/79 |
| 352 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 353 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 354 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 355 | 2050 VSPD PULLEY/ACCESS | 9/30/79 |
| 356 | MOTORS/4SBLADES/6PULL2 | 9/30/79 |
| 357 | NEW PLUMBING | 10/30/79 |
| 358 | FENCE ON GROUNDS | 10/31/79 |
| 360 | BREAK ROOM FURNITURE | 11/30/79 |
| 361 | EQUIPMENT | 12/31/79 |
| 362 | INSTALLATION | 11/30/79 |
| 363 | OFFICE IN WAREHOUSE | 1/31/80 |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| 365 | MACHICE | 3/31/80 |
| 366 | EQUIPMENT | 5/06/80 |
| 367 | INSTALLATION | 5/06/80 |
| 368 | LUNCHROOM FURNITURE | 6/05/80 |
| 369 | MACHINERY | 6/30/80 |
| 370 | PUMP FOR SEWER SYSTEM | 9/02/80 |
| 371 | STOOLSFINISH ROOM | 9/02/80 |
| 373 | STEEL DUAL BIN | 7/25/80 |
| 374 | HOIST 1TON | 8/01/80 |
| 375 | TOOTH HD BLADES 18 | 8/01/80 |
| 376 | 3/8 DRIMPACT SOCK SET | 8/01/80 |
| 377 | 4 TUBE HREW STRUCTA500B | 8/08/80 |
| 378 | 5 TUBE HREW STRUCTA500B | 8/08/80 |
| 379 | 4 TUBE HREW STRUCTA500B | 8/08/80 |
| 380 | ANG HR A361X1X1 (40) | 8/08/80 |
| 381 | ANGA36 L3X2X3/16 (4) | 8/08/80 |
| 382 | HR A36 3/8X3FLTX61/2IN15 | 8/08/80 |
| 383 | HR A36 3/8X4FLT | 8/08/80 |
| 384 | HR A36 3/8X6FLTX8IN (5) | 8/08/80 |
| 385 | TUBE HREW STRUCT(5)A500B | 8/08/80 |
| 386 | TUBE HREW STRUCT(2)A500B | 8/08/80 |
| 387 | TUBE HREW STRUCT(2)A500B | 8/08/80 |
| 388 | PERFORATED SHEETS (2) | 8/08/80 |
| 389 | HR SHEET (20) | 8/08/80 |
| 390 | TAKE AWAY PAN | 8/08/80 |
| 391 | TUBE HR WELD (14) | 8/08/80 |
| 392 | TUBE HR WELD (6) | 8/08/80 |
| 393 | TUBE HR WELD (8) | 8/08/80 |
| 394 | TUBE HR WELD (8) | 8/08/80 |
| 395 | TUBE HREW STRUCTA500B | 8/08/80 |
| 396 | MACHINERY | 8/18/80 |
| 397 | MACHINERY | 8/18/80 |
| 398 | MACHINERY | 9/02/80 |
| 399 | 3 STEP INSPECTABLE (3) | 9/05/80 |
| 400 | 2 SCREEM SIZE SERIAL | 9/05/80 |
| 402 | ILS30X30LINE SIZER SCR | 9/22/80 |
| 403 | 26 GUAGE CHUTE EXTENSIONS | 9/27/80 |
| 404 | MACHINERY | 9/22/80 |
| 405 | MODEL 6914 PIECE SHELLER | 10/08/80 |
| 406 | EXTENSION SUCTION | 10/08/80 |
| 407 | SIMPLEX CONV ELEVATOR | 10/08/80 |
| 408 | PARTS FOR NEW MACHINERY | 10/08/80 |
| 409 | STAINLESS STEEL SCALE | 10/24/80 |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| 410 | PARTS FOR NEW MACHINERY | 10/28/80 |
| 411 | MACHINERY | 11/08/80 |
| 412 | MACHINERY | 12/03/80 |
| 413 | MACHINERY | 12/23/80 |
| 414 | MER55 BARREL FLOAT | 1/28/81 |
| 415 | INLINE SIZER | 1/28/81 |
| 416 | EIGHT INCH BLOWERS (8) | 1/28/81 |
| 417 | DUAL LANE CONVEYOR | 1/28/81 |
| 418 | STAND FOR MOUNTING BLOWER | 1/28/81 |
| 419 | MACHSALVAGE DEPT | 2/10/81 |
| 420 | BAG SEALER | 1/28/81 |
| 421 | SPIN BASKET | 5/22/81 |
| 422 | INSTALLATION | 6/16/81 |
| 423 | 30 ANGLE RINGS | 6/26/81 |
| 424 | INSTALLATION | 6/30/81 |
| 425 | SSTEEL DUAL BIN | 9/01/81 |
| 426 | PALLETS | 8/01/81 |
| 427 | SWIVEL PLATE COSTERS 100 | 8/01/81 |
| 430 | BENCH SCALE | 12/07/81 |
| 432 | ELEVATOR | 12/23/81 |
| 433 | CORSICANA SHEET METAL | 7/21/82 |
| 435 | MISC EQUIP | 8/26/82 |
| 436 | MISC EQUIP ROASTER | 9/30/82 |
| 437 | INSHELL HOLDING BIN | 9/30/82 |
| 438 | FEEDER CONVEYOR | 9/30/82 |
| 439 | DUAL LANE CONVEYOR | 9/30/82 |
| 440 | ELEVATOR HOPPER FEEDER | 9/30/82 |
| 441 | EIGHT INCH BLOWER | 9/30/82 |
| 442 | FREIGHT ON EQUIP | 9/30/82 |
| 443 | HOT WATER SANITIZER | 9/30/82 |
| 444 | TABLE DESKS 2 | 10/01/82 |
| 446 | MISC EQUIPMENT | 11/01/82 |
| 447 | FREIGHT ON NEW MACH | 12/01/82 |
| 448 | ROASTER | 12/01/82 |
| 449 | FREIGHT ON MACH | 12/01/82 |
| 450 | INSHELL GRADER | 1/01/83 |
| 452 | FREIGHT ON MACH | 1/01/83 |
| 454 | FREIGHT ON MACH | 2/01/83 |
| 455 | SSTEEL HOLDING BIN | 2/01/83 |
| 457 | HOT WATER HUMIDIFIER/TANK | 1/01/83 |
| 458 | INSTALL WIRE / MISC | 4/01/83 |
| 459 | EXHAUST FAN | 6/01/83 |
| 460 | HOTWASHER EQUIP | 6/01/83 |

{00010107:1}

**TO BE SUPPLEMENTED**

| 461 | INSTALL/SEPTIC TANK/EQUIP | 6/01/83 |
|-----|---------------------------|---------|
| 462 | INSTALLATION OF EQUIP | 6/01/83 |
| 467 | INLINE SIZER/SCREENS | 7/01/83 |
| 468 | 4INCH ELEVATOR/FREIGHT | 7/01/83 |
| 470 | SIMPLEX CONV ELEVATOR | 8/01/83 |
| 471 | WATER COOLER/INSTALLATION | 8/01/83 |
| 472 | CONTDBUCKET ELEVATOR | 9/01/83 |
| 473 | 1/3HP AUTO SUMP PUMP | 9/01/83 |
| 475 | SIGN ON BLDG | 9/01/83 |
| 476 | WET GRAIN HOLDING TANK | 8/01/83 |
| 477 | GRADING SYSTEM/MISC | 9/01/83 |
| 478 | GRADING SYSTEM 7 CHUTES | 9/01/83 |
| 479 | INSTALLSIZER & ELEVATOR | 9/01/83 |
| 480 | STEEL VENT HOOD | 7/01/83 |
| 481 | BARREL LIFT DUMP | 7/01/83 |
| 482 | DUAL BIN | 7/01/83 |
| 483 | VIBRATORY CONVW/AIR GATE | 7/01/83 |
| 484 | HOPPER | 7/01/83 |
| 485 | FEEDER CONVEYOR | 7/01/83 |
| 486 | MAGMET ASSEMBLY | 7/01/83 |
| 487 | SIZER STAND/HOPPER | 7/01/83 |
| 488 | ELEVATOR SPLITTER CHUTE | 7/01/83 |
| 489 | SUPPORTING LEGS (SIZER) | 7/01/83 |
| 490 | FREIGHT ON MACH | 9/01/83 |
| 491 | INSTALL EXHAUST HOODS | 7/01/83 |
| 492 | HYDRAULIC TOTE BIN DUMPER | 10/10/83 |
| 493 | FREIGHT ON MACH | 10/10/83 |
| 494 | MEYER PECAN GRADER | 11/01/83 |
| 495 | P40 FORKLIFT | 10/01/83 |
| 496 | CONT BUCKET ELEVATOR | 12/01/83 |
| 497 | STAR FILTER PRESS | 4/01/84 |
| 498 | BASKET STRAINER | 6/01/84 |
| 499 | FREIGHT ON MACH | 1/01/84 |
| 500 | REFRIGERATOR (TRAILER) | 3/01/84 |
| 501 | AJAX SHAKER | 4/01/84 |
| 502 | SYNCROGEAR REDUCER 2 | 5/01/84 |
| 503 | SIZER SCREEN | 5/01/84 |
| 504 | DECK SIZER SCREEM | 5/01/84 |
| 505 | STEEL TROUGH COVER | 5/01/84 |
| 506 | STAINLESS STEEL RAKE | 5/01/84 |
| 507 | LITLON ROLLER CONV 2 | 5/01/84 |
| 508 | SSTEEL VENTING DUCT | 7/01/84 |
| 509 | BLOWER FOR COOLING TABLE | 7/01/84 |

{00010107:1}

| 510 | AIR COOLED;COMPRESSOR | 3/01/84 |
|-----|------------------------|---------|
| 511 | INSTALLAIR COMPRESSOR | 4/01/84 |
| 512 | FREIGHT ON MACHINERY | 6/01/84 |
| 514 | REPAIR & RESHEET W/SS | 4/01/84 |
| 515 | GRADER/REWORK GRADER | 3/01/84 |
| 516 | 3STEP INSP TABLES 2 | 9/01/84 |
| 517 | TABLE HOPPER EXTEN 2 | 9/01/84 |
| 518 | STERILIZATION CHAMBER | 9/01/84 |
| 519 | BARREL LIFT DUMP | 9/01/84 |
| 521 | BARREL LIFT DUMP | 9/01/84 |
| 522 | DOUBLE BLOWER | 9/01/84 |
| 523 | DOUBLE BLOWER | 9/01/84 |
| 524 | HOOPER FEEDER | 9/01/84 |
| 525 | NEW MACH SCREW CONVCORP | 5/01/84 |
| 526 | FIRE EXTINGUISHER EQUIP | 7/01/84 |
| 527 | SETTING INSHELL GRADER | 12/01/83 |
| 528 | INSTALL CONVEYOR | 2/01/84 |
| 529 | FREIGHT ON MEYER MACH | 2/01/84 |
| 530 | INSTALLATION GAS CHAMBER | 7/01/84 |
| 531 | FREIGHT ON MACH PUMP VAC | 10/01/84 |
| 532 | PB SUBMERSIBLE PUMP | 11/01/84 |
| 533 | SYNCROGEAR REDUCER 2 | 11/01/84 |
| 534 | WEIGH TRONIX BENCH SCALE | 11/01/84 |
| 535 | WEIGH TRONIX DECK SCALE | 12/01/84 |
| 536 | FREIGHT ON MACH | 2/01/85 |
| 537 | INGREDIENT BIN | 5/01/85 |
| 539 | FREIGHT ON MACH | 6/01/85 |
| 540 | WORK TABLE/ROASTING ROOM | 6/01/85 |
| 541 | SSTEEL BOXES 10 | 6/01/85 |
| 542 | CONT D ELEV BUCKET | 5/01/82 |
| 543 | CONVEYOR | 5/01/82 |
| 544 | RACK INST & FREIGHT | 5/01/82 |
| 545 | RACKS | 3/01/83 |
| 546 | RACKS | 4/01/83 |
| 547 | INSTALLATION OF EQUIP | 6/01/83 |
| 548 | FREIGHT ON NEW MACH | 9/01/84 |
| 549 | FREIGHT ON MACH | 7/01/85 |
| 550 | CSTEEL METAL/MISCEQUIP | 7/01/85 |
| 553 | SVP 6030 BAILER | 4/01/88 |
| 558 | FIRE SPRINKLER SYSTEM | 4/01/88 |
| 559 | LEWIS CARTER CONVEYOR | 4/01/89 |
| 560 | LEWIS CARTER CONVEYOR | 4/01/89 |
| 571 | HANDWASHER | 2/15/91 |

| 572 | BARREL LIFT DUMP | 2/15/91 |
|---|---|---|
| 573 | FENCE INSHELL RECEIVING | 5/15/91 |
| 575 | 18IN MEYER DIAL SHELLER | 9/15/91 |
| 576 | NEW SCALE FOR LAB | 9/15/91 |
| 580 | AJAX FLOAT | 1/15/92 |
| 581 | BASKET SCALE | 2/15/92 |
| 582 | HOT WATER HEATER | 4/15/92 |
| 583 | BLOWERS | 5/15/92 |
| 584 | HOPPERS | 5/15/92 |
| 585 | INSHELL SCALE | 7/15/92 |
| 586 | INSHELL SIZING SYSTEM | 9/15/92 |
| 587 | HOIST | 9/15/92 |
| 588 | PUMPS & SEPARATOR WASTE P | 1/15/93 |
| 590 | DRY MATERIAL FEEDER | 4/15/93 |
| 591 | STAINLESS STEEL BARRELS | 4/15/93 |
| 592 | INSPECTION TABLE | 5/15/93 |
| 593 | AJAX SHAKER | 6/15/93 |
| 594 | NEW FRONT SIGN | 7/15/93 |
| 595 | SPRAY TUMBLER | 7/15/93 |
| 596 | CONVERSION FRAME 4 QUANTZ | 7/15/93 |
| 597 | MEYER 32' INSHELL SIZER | 7/15/93 |
| 599 | MEYER BUCKET ELEVATORS | 7/15/93 |
| 600 | AJAX SHAKER | 7/15/93 |
| 601 | MEYER 32' INSHELL SIZER | 8/15/93 |
| 603 | 10IN ADJACK | 8/15/93 |
| 604 | PECAN SHELLER | 9/15/93 |
| 605 | 3 COMPARTMENT SINK | 2/15/93 |
| 606 | AUTO DOORS FOR STORAGE | 8/15/93 |
| 607 | INSHELL GRADER REBUILT | 4/01/94 |
| 608 | VACUUM PACKAGING MACHINE | 4/01/94 |
| 610 | EQUIPMENT | 4/01/95 |
| 612 | USED FORKLIFT | 4/01/96 |
| 613 | ELECTRONIC SCALE | 4/01/96 |
| 619 | BINS & EQUIPMENT | 4/01/96 |
| 620 | ELEVATORS & EQUIPMENT | 4/01/96 |
| 621 | REFRIGERATION EQUIP | 4/01/96 |
| 622 | AIR COMPRESSORS FOR BAY 1 | 4/01/96 |
| 623 | TOTE BOXES & FRT | 10/15/97 |
| 625 | STAINLESS STEEL BARRELS | 3/15/98 |
| 627 | TRANE AIR CONDITIONER | 4/15/98 |
| 629 | REFRIGERATION EQUIPMENT | 6/15/98 |
| 632 | INSHELL GRADER PARTS | 6/15/98 |
| 633 | RARE EARTH MAGNETS | 8/15/98 |

| 634 | STENCIL MACHINE | 5/01/98 |
|---|---|---|
| 635 | SATAKE BELT SORTER | 6/15/98 |
| 636 | STAINLESS HOPPER | 3/15/98 |
| 638 | MISCELLANEOUS EQUIPMENT | 3/15/98 |
| 639 | INSTALLATION OF EQUIP | 7/01/99 |
| 640 | TABLES ROASTER DRAIN PAN | 11/15/06 |
| 641 | FIRE HYDRANTS SPRINLER S | 11/15/06 |
| 642 | MOTOROLA BASE & RADIOS | 12/19/06 |
| 643 | NEW SCALE | 6/26/07 |
| 644 | ELECTRIC NEW GATE COMPR | 9/15/07 |
| 1059 | PECAN SHAKER WATER SEPARATOR (2) | 10/31/07 |
| 1060 | ELECTRONIC GATE - INSHELL | 11/30/07 |
| 1061 | SPRINKLER FLUSHING NEW FOAM INSHELL COOLER | 12/31/07 |
| 1063 | SAFELINE METAL DETECTOR | 8/27/08 |
| 1065 | TRUCK SCALE INDICATOR/PRINTER | 11/04/08 |
| 1067 | ASPHALT PAVING INSHELL ENTRANCE | 12/03/08 |
| 1072 | REBUILD BATCH ROASTER | 4/30/09 |
| 1073 | SAFELINE METAL DETECTOR | 9/01/09 |
| 1074 | WIRELESS ACCESS POINTS | 6/29/09 |
| 1075 | SCISSOR LIFT TRUCK | 6/29/09 |
| 1076 | UPGRADE FIRE ALARM SYSTEM | 6/18/09 |
| 1077 | FLOOR SCRUBBER - TENNANT | 7/31/09 |
| 1078 | WI FI RADIOS & EQPT | 7/08/09 |
| 1079 | PIN TUMBLER SOUTHERN NUT N TREE | 7/31/09 |
| 1080 | OVERHEAD DOORS IN PLANT | 8/15/09 |
| 1083 | NEW ENERGY EFFICIENT LIGHTS RANDYS | 2/13/09 |
| 1084 | REBUILD BATCH ROASTER | 11/11/09 |
| 1085 | SOUTHERN NUT & TREE | 11/20/09 |
| 1095 | 8 USED TOYOTA FORKLIFTS | 6/15/10 |
| 1101 | NEW METAL DETECTOR | 10/31/10 |
| 1104 | PLUMBING - BARREL WASH | 9/15/10 |
| 1106 | NEW FENCING - ANNEX PROP | 5/01/10 |
| 1108 | NEW CONDENSER BAY 5 | 6/01/10 |
| 1109 | 3 NEW COMPRESSORS SHIPPING | 6/01/10 |
| 1111 | SCALE INDICATORES - TEMP TANKS | 10/15/10 |
| 1112 | NEW PALLET JACKS | 10/15/10 |
| 1113 | BARRELL WASHER EQUIP | 10/25/10 |
| 1114 | JOHNSON EQUIP | 10/27/10 |
| 1116 | NEW SCISSOR LIFT | 11/16/10 |
| 1119 | BARRELL WASH JOHNSON LOPEZ | 12/27/10 |
| 1120 | SALT MACHINE | 3/31/11 |
| 1121 | RANDYS ELEC/LOPEZ | 12/31/10 |
| 1122 | ROYAL FLUSH PLUMBING | 1/13/11 |

{00010107:1}

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| 1123 | USED SHELL TRUCK | 1/17/11 |
| 1124 | AREA WIDE COMPRESSORS | 1/19/11 |
| 1127 | RANDYS ELECTRIC WIRING | 1/31/11 |
| 1129 | JAMES MFG - GUARDS FOR MOTORS | 1/31/11 |
| 1130 | PAINTING & CONTRUCTION | 2/28/11 |
| 1131 | INSHELL PARKING LOT | 3/31/11 |
| 1132 | NEW AIR COMPRESSORS | 3/31/11 |
| 1137 | 2 USED FORKLIFTS | 6/03/11 |
| 1138 | 4 SAVAGE SHELLERS | 6/30/11 |
| 1140 | COMPRESSORS - BAY 5 AREA WIDE | 7/15/11 |
| 1141 | NEW PLUMBING FIXTURES | 7/18/11 |
| 1142 | FIRE ALARM STROBES ACTION | 7/18/11 |
| 1143 | BARRICADES FOR EQUIPMENT LOPEZ | 7/27/11 |
| 1146 | INTAKE FAN DUCTWORK CORS A/C | 8/10/11 |
| 1147 | ELECTRICAL WORK - RANDY | 8/15/11 |
| 1149 | AREA WIDE/KAISER | 9/23/11 |
| 1150 | LOPEZ CARPENTRY | 9/28/11 |
| 1154 | LOCKOUT TAGOUT DISCONNECT BOXES RANDY | 3/01/11 |
| 1158 | FABRICATE CHUTES/CATWALKS | 10/15/11 |
| 1159 | RANDY'S - NEW WIRING | 10/15/11 |
| 1160 | OUTDOOR CURTAIN FOR AIR COMPRESSORS | 10/15/11 |
| 1161 | FABRICATE CHUTES & CATWALKS | 11/15/11 |
| 1162 | NEW COMPRESSOR FOR BAY 2 | 11/01/11 |
| 1164 | CONCRETE SLAB - HA PAIR | 12/28/11 |
| 1166 | SURGE PROTECTOR AIR COMPRESSORS | 3/06/11 |
| 1167 | ACTION FIRE STROBES/HORNS | 4/16/12 |
| 1169 | BUILD WALL FOR AIR COMPRESSORS | 4/10/12 |
| 1170 | NEW REFRIGERATION COMPRESSORS | 4/24/12 |
| 1171 | LOPEZ FENCING NEW DOORS | 4/30/12 |
| 1172 | USED EQUIP - TOMS AUCTION | 5/02/12 |
| 1173 | NEW COMPRESSORS - AREA WIDE | 5/31/12 |
| 1174 | AIR COMPRESSOR PIPING | 7/16/12 |
| 1176 | FENCE & CLEAR NEW LOT | 7/26/12 |
| 1177 | REFRIGERATION COMPRESSORS | 7/15/12 |
| 1181 | NEW REFRIG UNITS FOR SHIP COOLER | 9/20/12 |
| 1185 | NEW CONDENSOR BAY 2 #33 | 10/17/12 |
| 1186 | NEW EXHAUST & INTAKE DEPT 1 DRYER | 10/19/12 |
| 1187 | JACKRABBIT STEEL FOR DUMPER | 10/30/12 |
| 1191 | 2 ELECTRIC AUGERS | 11/27/12 |
| 1192 | TOYOTA FORKLIFT | 11/23/12 |
| 1194 | TOYOTA PALLET JACK | 12/11/12 |
| 1195 | 4 EYEWASH STATIONS | 12/14/12 |
| 1196 | SPRINKLERS IN DRYER #3 | 12/27/12 |

| 1199 | POWER UNIT FOR DUMPER | 1/09/13 |
|------|------------------------|---------|
| 1200 | NEW EVAPORATOR COIL BAY 2 | 2/13/13 |
| 1202 | NEW DUCTWORK ON DRYER | 3/01/13 |
| 1203 | TENNANT FLOOR SCRUBBER | 4/15/13 |
| 1204 | SPRINKLER HEADS IN DRYER VENTS | 5/01/13 |
| 1207 | REBUILD INSHELL GRADER | 6/14/13 |
| 1209 | 3 NEW CONDENSOR/EVAPORATORS | 8/01/13 |
| 1210 | NEW CONDENSOR/EVAPORATOR | 8/01/13 |
| 1212 | FIRE SYSTEM ROASTING ROOM | 8/31/13 |
| 1213 | NEW CONDENSOR EVAPORATOR | 9/16/13 |
| 1215 | NEW CONDENSOR & EVAPORATOR BAY 2 | 10/14/13 |
| 1216 | REBUILD INSHELL GRADER | 11/01/13 |
| 1217 | HOISTS AND TROLLEYES FOR INSHELL GRADERS | 11/06/13 |
| 1218 | 1992 FRUEHAFF TRAILER | 12/11/13 |
| 1219 | FIRE SYSTEM ROASTING AND ALCOHOL ROOMS | 12/18/13 |
| 1220 | CONTROLLER FOR BOX PRINTERS | 12/06/13 |
| 1221 | USED 53' TRAILER | 1/10/14 |
| 1222 | FIRE SYSTEM ROASTING ROOM | 3/15/14 |
| 1223 | ERIEZ MAGNETS | 4/15/14 |
| 1227 | USED CENTRIFUGE | 5/02/14 |
| 1230 | 1 TON HOIST FOR CENTRIFUGE | 5/28/14 |
| 1231 | MEAL GRINDER - INCUS SPAIN | 6/30/14 |
| 1232 | NEW ROOF AIR OVER STORAGE AREA | 7/01/14 |
| 1233 | ELECTRICAL FOR CENTRIFUGE | 8/01/14 |
| 1236 | POWER WASHER TRAILER | 9/25/14 |
| 1237 | TOYOTA FORKLIFT | 9/25/14 |
| 1240 | NEW COPELAND COMPRESSOR | 11/04/14 |
| 1241 | REBUILD INSHELL SIZER | 11/18/14 |
| 1242 | INSHELL BLOWER/SCALE | 11/20/14 |
| 1244 | HOPPER FOR MEAL GRINDER | 11/25/14 |
| 1245 | FABRICATE ROASTER HOPPER AND FRAME | 11/05/14 |
| 1246 | ELECTRICAL FOR REFRIGERATION EQUP | 12/08/14 |
| 1248 | METER FOR SEWER WATER | 12/31/14 |
| 1250 | MEAL GRINDER INCUS SPAIN | 1/15/15 |
| 1251 | OVERHEAD DOORS | 1/15/15 |
| 1252 | FLOORING FOR ROASTING ROOM | 1/15/15 |
| 1254 | REBUILD INSHELL SIZER | 2/06/15 |
| 1256 | 2 ROASTING BASKETS | 3/25/15 |
| 1258 | BAY 7 REFRIGERATION SYSTEM | 4/10/15 |
| 1259 | RETROFIT LIGHTING TO LED | 4/01/15 |
| 1260 | NEW COOLER DOOR BAY 3 | 5/11/15 |
| 1261 | NEW CONDENSOR BAY 5 UNIT 39 | 6/08/15 |
| 1263 | STICKTITE BREAKER MODERN ELEC | 7/01/15 |

| | | |
|---|---|---|
| 1264 | MOISTURE ANALYZER | 8/24/15 |
| 1266 | 2 ELECTRONIC FLOOR SCALES | 12/15/14 |
| 1267 | REBUILD TOTE DUMP FOR SAFETY | 5/19/15 |
| 1268 | NEW BUG BLOCKER DOORS | 4/20/15 |
| 1269 | REBUILD 3 ROASTING BASKETS | 5/29/15 |
| 1270 | NEW EVAPORATOR BAY 5 UNIT 24 | 8/07/15 |
| 1274 | 1 TON HOIST WITH CONTROLLER | 10/30/15 |
| 1275 | SATAKE EVOLUTION SORTER | 11/05/15 |
| 1278 | MOISTURE ANALYZER | 12/15/15 |
| 1279 | METAL STORAGE RACKS | 2/08/16 |
| 1281 | NEW COMPRESSOR UNIT 22 | 3/15/16 |
| 1282 | STAINLESS STEEL BARRELLS | 4/11/16 |
| 1285 | NEW COMPRESSOR BAY 3 UNIT 30 | 5/01/16 |
| 1286 | BOHN 30HP CONDENSOR & 2 EVAPORATORS | 5/15/16 |
| 1290 | NEW REFRIG COMPRESSOR | 9/06/16 |
| 1291 | 1 TON HOIST | 9/19/16 |
| 1293 | SUBMERSIBLE PUMP ELECTRICO | 2/13/17 |
| 1294 | VACUUM TANK REPLACEMENT | 3/07/17 |
| 1295 | CONVEYORS | 3/08/17 |
| 1296 | 3 SIZERS MODERN ELEC | 3/24/17 |
| 1297 | CHART RECORDERS FOR TEMP TANKS | 4/10/17 |
| 1298 | STAINLESS STEEL FRAME HOPPER STICKTITE BRKR | 5/26/17 |
| 1299 | SIZER FEED HOPPERS | 6/06/17 |
| 1300 | RARE EARTH MAGNETS | 7/01/17 |
| 1301 | 1 TON HOIST | 7/18/17 |
| 1302 | FABRICATE HOPPERS AND CONTROLS TEMP TANKS | 8/31/17 |
| 1303 | 4 SAVAGE SHELLERS | 9/30/17 |
| 1304 | NEW EVAPORATOR FREEZER 24 | 8/28/17 |
| 1305 | OIL ROAST SYSTEM UPGRADE | 12/15/17 |
| 1306 | CONTINUOS ROASTER CONTROLS | 11/15/17 |
| 1308 | CUSTOM HOPPER EXTENSIONS | 12/11/17 |
| 1309 | REWORK ELEVATOR WET SHELL | 10/17/17 |
| 1311 | 2 TOYOTA PALLET JACKS | 12/15/17 |
| 1316 | REPLACE INSULATION ON SUCTION LINES | 6/01/18 |
| 1320 | NEW EVAPORATOR UNIT 41 | 7/25/18 |
| 1321 | NEW COMPRESSOR | 9/25/18 |
| 1322 | REPLACE COMPRESSOR 24 | 4/02/19 |
| 1323 | REPLACE COMPRESSOR 26 | 5/01/19 |
| 1329 | MOISTURE ANALYZER | 2/24/20 |
| 1330 | 2 SATAKE SORTERS | 5/01/20 |
| 1331 | 2 USED AMVT SORTERS | 5/12/20 |
| 1333 | SATAKE SORTERS | 6/08/20 |
| 1334 | REPLACE FREEZER UNIT AND EVAPORATOR | 6/22/20 |

**TO BE SUPPLEMENTED**

| 1335 | USED GENIE LIFT | 7/30/20 |
|------|-----------------|---------|
| 1340 | MOISTURE ANALYZER INSHELL | 5/30/21 |
| 1343 | 10 SAVAGE CRACKERS LEASED | 12/02/20 |
| 1346 | NEW EVAPORATOR ON UNIT 25 | 3/15/22 |

{00010107:1}

**TO BE SUPPLEMENTED**

## Schedule 2.1(c) – Personal Property

All Material Contracts described in Schedule 4.8

| Group: 3M BUILDING EQUIPMENT | | |
|---|---|---|
| 1325 | METTLER TOLEDO XRAY MACHINE | 11/30/19 |
| 1328 | LAUGHLIN CONVEYOR SYSTEMS | 1/31/20 |
| | | |
| **Group: AUTOS & TRUCKS** | | |
| 574 | 1985 CHEVY TRUCK | 8/15/91 |
| 1057 | 1999 CHEVROLET PICKUP | 5/01/99 |
| 1238 | USED IH CARGO TRUCK | 9/29/14 |
| 1247 | YARDDOG TRUCK | 12/19/14 |
| 1327 | USED SHELL TRAILER | 1/22/20 |
| | | |
| **Group: BUILDINGS** | | |
| 1 | ORIG BUILDING | 3/01/77 |
| 3 | AIR COND UNIT | 9/01/79 |
| 4 | NEW CONSTR | 8/01/79 |
| 5 | NEW CONSTR | 11/01/77 |
| 6 | MOBILE HOME IMPROVE | 3/01/80 |
| 7 | BUILDING COOLER | 10/01/77 |
| 8 | WIRING | 12/01/80 |
| 9 | BLDG IMPROVEMENTS | 12/31/80 |
| 10 | PLUMBING | 3/01/81 |
| 11 | INSTALLATION | 3/01/81 |
| 13 | NEW GRADING SYSTEM ROOM | 9/01/83 |
| 14 | IMPROVEMENTS TO WORM ROOM | 9/01/83 |
| 15 | IMPROVEMENTS TO RETAIL ST | 5/01/83 |
| 16 | ADDITIONS TO PARKING AREA | 5/01/83 |
| 17 | ROOSTING ROOM / SHOP | 3/30/84 |
| 18 | NEW ROOF/BLDG EXTDOCK | 3/30/84 |
| 19 | GRADING ROOM IMPROVEMENTS | 3/30/84 |
| 20 | NEW PANELS/CEILING WHSE | 3/30/84 |
| 21 | LIGHTING MISC IMPROVE WH | 3/30/84 |
| 22 | MISC | 3/30/84 |
| 23 | MOBILE HOME | 3/01/85 |
| 24 | NEW PANELS WHSE | 3/01/85 |
| 25 | NEW ROOMS [5] WHSE | 6/01/85 |
| 26 | GLIDEROL DOORS [2] | 2/01/85 |
| 27 | MOBILE HOME CARPET | 1/01/86 |
| 28 | WIRING | 1/01/81 |

**TO BE SUPPLEMENTED**

| 29 | NEW OFFICE SPACE | 4/01/86 |
|----|------------------|---------|
| 30 | RETAIL STORE AREA | 4/01/86 |
| 31 | PROCESS BUILDING | 4/01/86 |
| 32 | DRYER ROOM | 4/01/86 |
| 33 | STORAGE & STAGING | 4/01/86 |
| 34 | LAND IMPROVEMENTS | 4/01/86 |
| 35 | PAVED PARKING | 4/01/86 |
| 36 | METAL STORAGE BLDG | 4/01/86 |
| 37 | RETAIL RESTROOM | 6/01/87 |
| 38 | TRUCKSCALE & HOUSE | 4/01/88 |
| 39 | NEW BREAKING ROOM | 4/01/89 |
| 40 | CONCRETE APRONS | 4/01/89 |
| 41 | FOAM INSULATION | 9/15/91 |
| 42 | AIR COND UNIT | 10/15/91 |
| 43 | INSHELL SIZER ADDITION | 8/15/92 |
| 44 | NEW INSHELL SIZER BLDG | 11/15/92 |
| 45 | PARKING LOT IMPROVEMENTS | 11/15/92 |
| 46 | ROOFING IMPROVEMENTS | 6/15/93 |
| 47 | WASTE WATER TREATMENT | 9/15/93 |
| 48 | 24' X 125' STORAGE BLDG | 4/01/94 |
| 49 | TRUCK LOADING WELL | 4/01/94 |
| 50 | GUARDRAILS & WALLS 123 | 4/01/94 |
| 51 | TRAILER STORAGE AREA | 4/01/94 |
| 52 | CONFERENCE ROOM ADDTION | 4/01/94 |
| 53 | GRAVEL PAVING | 4/01/95 |
| 54 | INSHELL RESTROOM | 4/01/95 |
| 55 | NEW STORAGE BUILDING | 4/01/95 |
| 56 | NEW SHIPPING DOCK | 1/01/96 |
| 57 | BAY 1 REPROCESSING ROOM | 1/01/96 |
| 58 | NEW INSHELL RECEIVING DOC | 9/01/96 |
| 59 | GRAVEL TRUCK PARKING | 4/01/96 |
| 60 | INSHELL RECEIVING DOCK | 11/01/96 |
| 61 | GRAVEL & PAVING | 4/01/97 |
| 62 | CAPITALIZED INTEREST '85 | 7/01/85 |
| 63 | URETHANE ROOF | 10/15/97 |
| 64 | REPROCESSING BUILDING | 1/01/99 |
| 65 | PARKING LOT REPROCESSIN | 1/01/99 |
| 66 | REPAIR TO WALLS | 3/01/99 |
| 67 | GRAVEL & PAVING ROADS | 4/01/00 |
| 68 | NEW SEWER LINE | 4/01/00 |
| 69 | PORTABLE SHIPPING OFFICE | 4/01/00 |
| 70 | MACHINE SHOP BUILDING | 4/01/00 |
| 71 | WATKINS BLDG IMPR | 4/01/01 |

{00010107:1}

| 72 | JOHNSON DRIVEWAYS | 4/01/01 |
|---|---|---|
| 73 | ATLAS PORTABLE BLDG | 4/01/01 |
| 74 | CONCRETE PAD INSHELL GATE | 8/31/07 |
| 75 | NEW PARKING LOT PAVEMENT | 3/31/07 |
| 1086 | NEW ROOF - OLD PLANT | 1/05/10 |
| 1087 | NEW ROOF - OFFICE | 3/31/10 |
| 1089 | INSHELL BREAK ROOM ADDITION | 5/26/10 |
| 1093 | ROAD/PK LOT/PAVING | 5/25/10 |
| 1096 | CONCRETE/ASPHALT/DRAINAGE | 6/01/10 |
| 1097 | CONCRETE/ASPHALT/DRAINAGE | 7/28/10 |
| 1100 | CONCRETE WORK | 8/06/10 |
| 1107 | NEW ELECTRICAL - RANDY | 6/01/10 |
| 1117 | HA PAIR - CONCRETE | 11/30/10 |
| 1118 | RANDY/LOPEZ - ELEC/PAINT | 11/18/10 |
| 1134 | LOPEZ CONSTRUCTION | 4/30/11 |
| 1135 | H A PAIR ASPHALT | 4/30/11 |
| 1153 | SHELVES, HALL, DOOR LOPEZ | 1/25/11 |
| 1155 | PARKING LOT POLES | 5/20/11 |
| 1156 | EMERGENCY LIGHTS, WIRE CAMERAS | 7/15/11 |
| 1157 | BAY 2 & 3 DRAIN LINES AREA WIDE | 4/14/11 |
| 1163 | NEW DOORS - FAIRWAY | 12/15/11 |
| 1184 | REBUILD WALL BAY 2 & 3 | 10/29/12 |
| 1188 | ADD DOOR CLOSE DOORS ON ROASTING ROOM | 10/16/12 |
| 1189 | PARKING/CONCRETE INSHELL AREA | 10/26/12 |
| 1208 | LINER PANELS TO COVER INSULATION | 6/06/13 |
| 1214 | ADD FANS AND RESEAL BAY 2 & 3 WALL | 10/21/13 |
| 1225 | NEW CONDENSOR BAY 8 | 5/09/14 |
| 1226 | NEW A/C DEPT 3 | 5/08/14 |
| 1257 | ROOF REPAIR PARSONS | 4/15/15 |
| 1265 | SEAL & RESTRIPE PARKING LOT | 8/13/15 |
| 1271 | BARRELL WASH ROOM ADDITION | 10/08/15 |
| 1273 | ASPHALT WORK INSHELL PARKING | 10/16/15 |
| 1276 | BARRELL WASH ROOM ADDITION | 12/14/15 |
| 1277 | BARRELL WASH ROOM FLOOR | 12/14/15 |
| 1307 | NEW DOORS INSHELL | 11/13/17 |
| 1314 | TRENCH DRAIN FOR ALCOHOL ROOM | 2/08/18 |
| 1315 | ADD FRP TO PLANT RESTROOM WALLS | 2/15/18 |
| 1317 | FABRICATE FLOOR DRAIN DESTONER ROOM | 6/03/18 |
| 1318 | NEW DRAINS IN BARRELL WASH ROOM | 7/02/18 |
| | | |
| **Group: COLD STORAGE WAREHOUSE** | | |
| 1054 | REFRIGERATED STG STRUCT | 3/01/82 |
| 1055 | COOLER BUILDING | 4/01/86 |

{00010107:1}

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| **Group: NEW PLANT MACHINERY** | | |
| 645 | 1 PC PACKING HOPPER | 4/01/86 |
| 646 | 2 COOLING BINS W/ FEEDERS | 4/01/86 |
| 649 | SET 6 INSP TBL BIN&SUP FW | 4/01/86 |
| 650 | DUAL BIN FOR FEED SAN BAS | 4/01/86 |
| 651 | 10THREE STEP INSP TABLES | 4/01/86 |
| 652 | 10ADD INSP TABLE MAGNET | 4/01/86 |
| 653 | 4LEG LENGTH&DECKS CHANGE | 4/01/86 |
| 654 | 4GA INSP TABLE HOPPER EXT | 4/01/86 |
| 655 | 1HYDRAULIC TOTE BIN DUMP | 4/01/86 |
| 657 | CONVEYOR W/THREE AIRGATES | 4/01/86 |
| 658 | 22 SCREEN FINAL 1/2 SIZE | 4/01/86 |
| 659 | 2SIZERSCREEN | 4/01/86 |
| 660 | 2CYCLONE HEAD FINAL BLOW | 4/01/86 |
| 661 | FINAL 1/2 SIZEBLOW STAND | 4/01/86 |
| 662 | CENTRIFUGAL STIKTITE BRK | 4/01/86 |
| 663 | SET HALF PACKING HOPPERS | 4/01/86 |
| 664 | COMPAK NUT ROASTER | 4/01/86 |
| 665 | FENCE1985 | 4/01/86 |
| 666 | SIMPLEX CONVEY ELEVATOR | 4/01/86 |
| 667 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 668 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 669 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 670 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 671 | 2SIMPLEX CONVEYING ELEVA | 4/01/86 |
| 672 | PULLEYS RABBIT EAR CONVEY | 4/01/86 |
| 673 | VERTSECTION FOR CONVEYOR | 4/01/86 |
| 674 | SIZER SCREEN | 4/01/86 |
| 675 | 8 RALPHSPUGH | 4/01/86 |
| 676 | DUST COLLECTORS | 4/01/86 |
| 677 | CAST IRON HOUSING | 4/01/86 |
| 678 | #201 DUST COLLECTOR | 4/01/86 |
| 679 | FREIGHT ON DUST COLLECTOR | 4/01/86 |
| 680 | 418IN SHELLER | 4/01/86 |
| 681 | 2TWO SCREEN SIZER | 4/01/86 |
| 682 | 2CONTINOUS BUCKET ELEVAT | 4/01/86 |
| 683 | 2SHELLER NO SUCTION FAN | 4/01/86 |
| 684 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 685 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 686 | INLINE SIZER MODEL | 4/01/86 |
| 688 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 689 | 2CONTINOUS BUCKET ELEVAT | 4/01/86 |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| 690 | 2CONTINOUS BUCKET ELEVAT | 4/01/86 |
| 691 | CONTINOUS BUCKET ELEVATOR | 4/01/86 |
| 692 | 2SANITIZER BLOWER PIPE | 4/01/86 |
| 693 | MEYER EQUIPMENTFREIGHT | 4/01/86 |
| 695 | DRYERPROCTOR SCHWARTZ | 4/01/86 |
| 696 | 4TWO SCREEN SIZERS | 4/01/86 |
| 697 | 4ADDITIONAL 9/16IN SCREEN | 4/01/86 |
| 698 | 1 MEZZANINE | 4/01/86 |
| 699 | DUAL LANE CONVEYOR | 4/01/86 |
| 700 | FIVE SCREEN INLINE SIZER | 4/01/86 |
| 701 | 5EIGHT INCH BLOWERS | 4/01/86 |
| 702 | BLOWER SUPPORT STAND | 4/01/86 |
| 703 | DUALLANE CONVEYOR | 4/01/86 |
| 704 | B INDICATORS & BLOW PIPES | 4/01/86 |
| 705 | WASHER DESTONER | 4/01/86 |
| 706 | 4NINE INCH BLOWER | 4/01/86 |
| 707 | 2DOUBLE HALF BLOW STAND | 4/01/86 |
| 708 | CONTINOUS EXTRACTOR | 4/01/86 |
| 709 | TEN INCH ELEVATOR | 4/01/86 |
| 710 | BARREL LIFT DUMP | 4/01/86 |
| 711 | BARREL LIFT DUMP | 4/01/86 |
| 712 | 2FEEDER HOPPER | 4/01/86 |
| 714 | FREIGHT | 4/01/86 |
| 715 | PROC&SCHW HALF DRYER HOPP | 4/01/86 |
| 716 | AUGER FLOP GATE CHUTE | 4/01/86 |
| 717 | 11PAIR CONVEYELEVLEGS | 4/01/86 |
| 718 | CATWALK & LADDER ASSEMBLY | 4/01/86 |
| 719 | 2BLOWSHELL DISCHRG CHUT | 4/01/86 |
| 720 | CATWALK&LADDERINSH BINS | 4/01/86 |
| 721 | 818 GA CHUTES (2) ELEV | 4/01/86 |
| 722 | LINER FOR HALF DRYHOPPER | 4/01/86 |
| 723 | 216GA PROD INPUT HOPPERS | 4/01/86 |
| 724 | REMOVE SECTION OF ELEVAT | 4/01/86 |
| 725 | STAINLESS STEEL AUGER | 4/01/86 |
| 726 | STAINSTEEL SHELL AUGER | 4/01/86 |
| 727 | STAND W/LADDER | 4/01/86 |
| 728 | ELEVATED FLOAT FEEDHOPP | 4/01/86 |
| 729 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 730 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 731 | 2SPIRAL LET DOWN CHUTES | 4/01/86 |
| 732 | PIECE DRYER SPREADER | 4/01/86 |
| 733 | 4CRACKFEEDER END RISERS | 4/01/86 |
| 734 | CATWALK W/O HANDRAIL | 4/01/86 |

| | | |
|---|---|---|
| 735 | 40SMITH CABLE CLAMP | 4/01/86 |
| 736 | 2SHEAVES&TAPER LOCK BUSH | 4/01/86 |
| 737 | FABRICATE 22 CHUTES | 4/01/86 |
| 738 | ELEVATOR INPUT TRANSITION | 4/01/86 |
| 739 | ELEVATOR DISCHARGE CHUTE | 4/01/86 |
| 740 | DUAL HOPPER EXTENSION | 4/01/86 |
| 741 | 6ELEVATOR TABLES | 4/01/86 |
| 742 | EXTENSIONS ON 2 ELEVATORS | 4/01/86 |
| 744 | 2REJECT CON&CHUTE SYSTE | 4/01/86 |
| 745 | 8RIGID PLATE CASTER | 4/01/86 |
| 746 | MAUREY SL SHEAVE | 4/01/86 |
| 747 | SHEAVE | 4/01/86 |
| 748 | TAPER LOCK BUSHING | 4/01/86 |
| 749 | SANITIZER VENT HOOD | 4/01/86 |
| 750 | STARITE WATER PUMP | 4/01/86 |
| 751 | PUMP TRAP W/STRAINER BSKT | 4/01/86 |
| 752 | 39ROLLER CONVEY ROLLERS | 4/01/86 |
| 753 | VIBRATORY CONVEYOR | 4/01/86 |
| 754 | CHUTE ASSEMBLY W/CONVEYOR | 4/01/86 |
| 755 | ELEVTO POP REMOVER CHUTE | 4/01/86 |
| 756 | OUTSIDE SCREW AUGER | 4/01/86 |
| 758 | 2PACKING SCALE STANDS | 4/01/86 |
| 759 | 2RUBBER STAMP TABLES | 4/01/86 |
| 760 | 4SHELLER OVERRIDE CHUTES | 4/01/86 |
| 761 | 2CHUTE ASSEMPCS OFF SZR | 4/01/86 |
| 762 | 2ELEVDISCHGE TO SZR CHU | 4/01/86 |
| 763 | CATWALK W/HANDRAIL | 4/01/86 |
| 764 | 2LONG SPIRAL EASY LETDWN | 4/01/86 |
| 765 | 2PACK TABLES FOR BOXES | 4/01/86 |
| 766 | 4WRITING TABLES | 4/01/86 |
| 767 | CATWALK W/LADDER | 4/01/86 |
| 768 | 1 LOT 11 CONVEELEVCOVRS | 4/01/86 |
| 769 | SINGLE SYNTRON CONTROLLER | 4/01/86 |
| 770 | 9INBLOWER INPUT TRANSITION | 4/01/86 |
| 771 | 9IN BLOWER SHELL | 4/01/86 |
| 772 | 7DEEP STEEL DUST PANS | 4/01/86 |
| 773 | 6CHLORINE WASH SHELFS | 4/01/86 |
| 774 | HOPPREDUCERSTRIMDIVRTR | 4/01/86 |
| 775 | LOWER-LEVEL CATWALK ASSEM | 4/01/86 |
| 776 | 2SPIRAL LETDOWN CHUTES | 4/01/86 |
| 777 | ELEVPRODINPUT HOPASSEM | 4/01/86 |
| 778 | STSTEEL RAKE W/48INHANDLE | 4/01/86 |
| 779 | PAN W/HANDLE AT EACH END | 4/01/86 |

**TO BE SUPPLEMENTED**

| 780 | SZR SCREEN RAKE72INT HAND | 4/01/86 |
| 781 | 9STAINLESS STEEL BOXES | 4/01/86 |
| 782 | 10 GALV BOXES W/O TOP | 4/01/86 |
| 783 | 18GA SHAFT COUPLING GUARD | 4/01/86 |
| 784 | TWO LANE CONVEYHGHT EXT | 4/01/86 |
| 785 | CASTER MOUNTED DUST PAN | 4/01/86 |
| 786 | 18 GA STEEL INPUT HOPPER | 4/01/86 |
| 787 | 218 GA DUST HOODS | 4/01/86 |
| 788 | FREIGHT | 4/01/86 |
| 789 | 2STAINSTEEL WIRE CLOTHS | 4/01/86 |
| 790 | 2THREE STEP INSP TABLES | 4/01/86 |
| 791 | 2MAGNET ASSEMBLY | 4/01/86 |
| 792 | 2INSPTABLE HOPPER EXT | 4/01/86 |
| 793 | DESTONER PADDLE WHEEL | 4/01/86 |
| 794 | STSTEEL ELEVCHUTE HOOD | 4/01/86 |
| 795 | HOT WATER SANITIZER EXT | 4/01/86 |
| 796 | HALF DRYER RAKE INTINHANDLE | 4/01/86 |
| 797 | 3STAINSTEEL DUST PANS | 4/01/86 |
| 798 | FIVE SCREEN SACK SIZER | 4/01/86 |
| 799 | 20 CUBIC FTELEVATED HOP | 4/01/86 |
| 801 | 2AIR & 2OIL FILTERS | 4/01/86 |
| 802 | CHUTES FOR SHELLERSEPAR | 4/01/86 |
| 803 | SALES TAX ON 1085 EQUIP | 4/01/86 |
| 804 | FRGHT ON MACHINERY 12/85 | 4/01/86 |
| 805 | FREIGHT | 4/01/86 |
| 806 | BUCKET ELEVATOR | 4/01/86 |
| 807 | PARTS OF MACHINERY | 4/01/86 |
| 808 | REEVES MOTOR BASE | 4/01/86 |
| 809 | PARTS FOR MACHINERY | 4/01/86 |
| 810 | PARTS FOR MACHINERY | 4/01/86 |
| 812 | FREIGHT | 4/01/86 |
| 813 | MOD CHUTE | 4/01/86 |
| 814 | 3 CHUTES MOD | 4/01/86 |
| 815 | FAB DUST COLLECTING SYST | 4/01/86 |
| 816 | FREIGHTPACKAGE CONVEYOR | 4/01/86 |
| 817 | FIVE SCREEN STACKABLE SZR | 4/01/86 |
| 818 | 2PERMANENT MAGNETS | 4/01/86 |
| 819 | WORKBENCH W/22193 VISE | 4/01/86 |
| 820 | 5STAINLESS STEEL BOXES | 4/01/86 |
| 821 | 2STSTEEL SIZER INTIN RAKE | 4/01/86 |
| 822 | POP REMOVER CONVEY/HOPP | 4/01/86 |
| 823 | WALL MOUNT SCALE SHELF | 4/01/86 |
| 824 | SANITIZER VENT PIPE | 4/01/86 |

| | | |
|---|---|---|
| 825 | FREIGHTLOCKERS | 4/01/86 |
| 826 | FREIGHTJB SANFILIPPO | 4/01/86 |
| 827 | FREIGHTJB SANFILIPPO | 4/01/86 |
| 828 | SWECO INCFREIGHT | 4/01/86 |
| 829 | THINNER & PAINT FOR CONST | 4/01/86 |
| 830 | CHOP SAW BLADER | 4/01/86 |
| 831 | PARTS FOR INSHELL ELEVA | 4/01/86 |
| 832 | COUPLING | 4/01/86 |
| 833 | REGULATORFITTHOSETAPE | 4/01/86 |
| 834 | SCREWSHOLGUN DRILLDRILL | 4/01/86 |
| 835 | SCREWS & NUTS | 4/01/86 |
| 836 | BOLTSHEXNUTSVALVEWASHR | 4/01/86 |
| 837 | SILVERLINE BENCH | 4/01/86 |
| 838 | HEAVY CAP PLATFORM SCALE | 4/01/86 |
| 839 | FLEXURE BASE 5000# | 4/01/86 |
| 840 | PLATFORM SCALE 2000# | 4/01/86 |
| 841 | FREIGHT | 4/01/86 |
| 842 | SALES TAX | 4/01/86 |
| 844 | STOOLS FOR PICKING TABLES | 4/01/86 |
| 845 | WET HOLDING TANK & ACCESSORIES | 4/01/86 |
| 846 | 55 YARDS CONCRETE | 4/01/86 |
| 847 | AUGER FOR NEW SHELL BIN | 4/01/86 |
| 848 | 2MATIC ADJUSCASE SEALER | 4/01/86 |
| 849 | RECTANGULAR FITTING | 4/01/86 |
| 850 | 8 in x 6 in x 64 in OPEN TOP CHUTE | 4/01/86 |
| 851 | 4BELT GUARDS W/BRACKETS | 4/01/86 |
| 852 | HOPPER W/FLAT BAR FLANGE | 4/01/86 |
| 853 | METAL FLEXIBLE PIPE | 4/01/86 |
| 854 | FABRICA&INSTALLOF EQUIP | 4/01/86 |
| 855 | EXHAUST DUCT OFF AIR COMP | 4/01/86 |
| 856 | WALL CREW TUBING | 4/01/86 |
| 857 | OPEN TOP CHUTESHELL ELEV | 4/01/86 |
| 858 | 8337 DRUM DOLLIE | 4/01/86 |
| 859 | ROLLER CONVEYOR | 4/01/86 |
| 860 | BLUEPRINTS & DRAW6CONVEY | 4/01/86 |
| 861 | TABLES & CHAIRS FOR LUNCHRM | 4/01/86 |
| 862 | 2 DOUBLE TIER LOCKERS | 4/01/86 |
| 863 | FREIGHT ON NEW MACHINERY | 4/01/86 |
| 864 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 865 | FREIGHT ON EQUIPMENT | 4/01/86 |
| 866 | FREIGHT ON EQUIPMENT | 4/01/86 |
| 867 | INSTALLATION CHARGES | 4/01/86 |
| 868 | 2MODIFY STSTEEL CHUTES | 4/01/86 |

**TO BE SUPPLEMENTED**

| 869 | BALL VALUESBELL REDUCER | 4/01/86 |
|-----|--------------------------|---------|
| 870 | DRESSER SLEEVESWELD ELLS | 4/01/86 |
| 871 | 9VOLT BATTPULLEYSSNAPS | 4/01/86 |
| 872 | TAXES ON EQUIPFROM MEYER | 4/01/86 |
| 873 | MOISTURE METER | 4/01/86 |
| 874 | REWORK DIVIDER DRYOVEN | 4/01/86 |
| 875 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 876 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 877 | FREIGHT ON EQUIPMEYER | 4/01/86 |
| 878 | HEATING/AIR CONDITIONING | 4/01/86 |
| 879 | SPECIAL ELECTRICAL | 4/01/86 |
| 880 | GRATE | 4/01/86 |
| 881 | MONORAIL | 4/01/86 |
| 882 | PAINT | 4/01/86 |
| 884 | BARREL LIFT DUMP | 6/01/85 |
| 885 | INLINE SIZERMEYER | 4/01/85 |
| 888 | 23STEP INSPTABLES | 8/01/85 |
| 889 | SSTEEL ALCOHOL TANK | 4/01/85 |
| 891 | WASTE TREATMENT FACILITY | 4/01/86 |
| 892 | WHSE UNIT HEATERS (10) | 4/01/86 |
| 893 | PROCESS SEWER | 4/01/86 |
| 894 | LABOREQUIP INSTALL | 4/01/86 |
| 895 | SPECIAL ELECTEQUIP | 4/01/86 |
| 896 | EQUIPMENT | 4/01/86 |
| 898 | 30IN INSPECT TABLES (2) | 11/01/85 |
| 900 | FILING CABINET | 11/01/86 |
| 903 | 72IN SIGHT PANELS (2) | 1/06/87 |
| 904 | NATURAL GAS HEATER | 12/31/86 |
| 905 | FILE CABINET | 1/23/87 |
| 908 | MACHINE PARTS | 3/15/87 |
| 909 | INSTALL PHONE & JACK | 11/18/86 |
| 910 | FILE CABINET | 12/08/86 |
| 911 | DESK CHAIRS | 12/08/86 |
| 913 | FILE CABINET | 12/08/86 |
| 918 | JOHNSON LADDER | 4/01/89 |
| 919 | VACUMN SEAL & FLT MACH | 4/01/89 |
| 921 | CANOPIES FOR BLDG | 4/01/89 |
| 923 | COMPRESSOR | 4/01/89 |
| 929 | TENOX MIXING DEVICE | 3/26/90 |
| 931 | BARREL LIFT DUMP | 9/13/90 |
| 932 | ROTARY AIR LOCK | 9/13/90 |
| 933 | DRYER AND CONVEYOR | 10/15/89 |
| 935 | SALES TAX BBL LIFT DUMP | 10/15/90 |

{00010107:1}

**TO BE SUPPLEMENTED**

| 936 | BARREL LIFT DUMP | 5/15/91 |
|---|---|---|
| 938 | METAL DETECTORS | 11/15/91 |
| 939 | TAPE MACHINES (2) | 1/15/92 |
| 940 | DRYER NEW PLANT | 4/15/92 |
| 942 | STAINLESS STEEL BARRELS | 8/15/93 |
| 943 | STEEL HOPPER | 4/01/94 |
| 946 | AJAX SHAKER # 0976 | 4/01/94 |
| 947 | RARE EARTH MAGNET SYSTEM | 4/01/94 |
| 949 | 4 16' STEEL CHUTES | 4/01/94 |
| 950 | AJAX SHAKER # 8822 | 4/01/94 |
| 952 | 2 SIMPLEX CONVEY ELEVATOR | 4/01/94 |
| 954 | PARKING LOT LIGHTS | 4/01/94 |
| 955 | 2 HALFBIN COOLING SYSTEM | 4/01/94 |
| 956 | STEEL HEAT EXCHNG & BLOWE | 4/01/94 |
| 957 | 2 CONVEYOR CHUTES | 4/01/94 |
| 958 | SWECO PUMP SYSTEM | 4/01/94 |
| 959 | CHAIN LIFT BARRELL DUMP | 4/01/94 |
| 960 | AJAX SHAKER # 8284 | 4/01/94 |
| 961 | CONVERT 2 QUANTZ FRAMES | 4/01/94 |
| 962 | STEEL HOPPER & STAND | 4/01/94 |
| 964 | AJAX SHAKER # 8938 | 4/01/94 |
| 966 | STORAGE SHELVING | 4/01/95 |
| 967 | HANDWASHER INSHELL RESTRO | 4/01/95 |
| 969 | TRASH COMPACTOR | 4/01/95 |
| 970 | FREIGHT ON SNA EQUIP | 4/01/95 |
| 971 | ELEVATED FEEDER/HOPPER | 4/01/95 |
| 972 | 2 INSPECTION TABLES | 4/01/95 |
| 974 | PLANT EQUIPMENT SNA | 4/01/95 |
| 977 | SPRINKLER SYSTEM | 4/01/97 |
| 978 | ELEVATORS & STANDS | 4/01/97 |
| 979 | TILE & LABOR ROASTING RM | 4/01/97 |
| 980 | RF BAR CODING EQUIPMENT | 4/01/97 |
| 981 | NUT DICER | 4/01/97 |
| 982 | AIR CONDITION COMPRESSOR | 4/01/97 |
| 983 | SEPARATOR UNIT | 4/01/97 |
| 985 | COATING TUMBLER | 4/01/97 |
| 986 | STAINLESS STEEL BARRELS | 4/01/97 |
| 988 | MOISTURE TESTER | 4/01/97 |
| 989 | LABORATORY EQUIPMENT | 4/01/97 |
| 990 | SIZER SHELLER TABLES ET | 4/01/97 |
| 991 | MAGNETS | 4/01/97 |
| 992 | MISC EQUPT FROM R&M AJE | 4/01/97 |
| 994 | CAPITALIZED INTEREST '85 | 7/01/85 |

| 997 | BINS & STANDS | 4/15/98 |
| 999 | 3 HOPPERS | 3/15/98 |
| 1000 | EQUIPMENT DOZIER | 3/01/99 |
| 1002 | STANDS & EQUIPMENT | 3/01/99 |
| 1003 | MISC SHIPPING EQPT | 3/01/99 |
| 1007 | NEW FREEZER PANELS | 3/01/99 |
| 1008 | FENCE FANS ETC | 3/01/99 |
| 1009 | HOPPERS BINS ETC | 3/01/99 |
| 1010 | EQPT & FIXTURES REPROCESS | 1/01/99 |
| 1011 | MISC EQUIPMENT | 3/01/99 |
| 1012 | OVERHEAD DOOR | 4/01/00 |
| 1013 | NEW SCALES | 4/01/00 |
| 1014 | LADDER PLATFORM | 4/01/00 |
| 1015 | SPRINKLER SYSTEM | 4/01/00 |
| 1016 | DRYER | 4/01/00 |
| 1017 | STAIRS & HANDRAILS | 4/01/00 |
| 1018 | WIRE MACHINE SHOP | 4/01/00 |
| 1019 | REBUILD SV 45 | 4/01/00 |
| 1020 | FAB STAINLESS GUARDS | 4/01/00 |
| 1021 | WIRE NEW MACHINERY | 4/01/00 |
| 1022 | INSTALL LIGHTS | 4/01/00 |
| 1023 | FABRICATE GUARD | 4/01/00 |
| 1024 | MODEL 24 CYCLONE | 4/01/00 |
| 1025 | FABRICATE STEEL BOX | 4/01/00 |
| 1026 | 2 BOHN EVAPORATORS | 4/01/00 |
| 1027 | NEW CEILING PANELS FREEZE | 4/01/00 |
| 1028 | REBUILD FORKLIFT MOTOR | 4/01/00 |
| 1029 | FORKLIFT EQUIPMENT | 4/01/00 |
| 1030 | METAL DETECTOR | 4/01/00 |
| 1031 | MACHINE SHOP EQUIPMENT | 4/01/00 |
| 1032 | 2 SATAKE BELT SORTERS | 4/01/00 |
| 1034 | MISC EQUIPMENT ITEMS | 4/01/00 |
| 1036 | HOBBS FABRICATE CHUTES | 4/01/01 |
| 1037 | HOBBS STAINLESS ST ELEVAT | 4/01/01 |
| 1038 | AIRLOCK EQUIPMENT | 4/01/01 |
| 1039 | RANDY WIRING & NEW LIGHTS | 4/01/01 |
| 1040 | HOBBS NEW EQUIPMENT | 4/01/01 |
| 1041 | RANDY WIRING & NEW LIGHTS | 4/01/01 |
| 1042 | NEW AC UNITS FOR OFFFICE | 4/01/01 |
| 1043 | RANDY WIRING NEW EQUPT | 4/01/01 |
| 1044 | HOBBS FABR NEW EQUPT | 4/01/01 |
| 1045 | ACCUCORP SCALE | 4/01/01 |
| 1046 | PALLET LIFT TRUCK | 4/01/01 |

| 1049 | MISC EQUIPMENT | 4/01/01 |
| 1050 | VACUUM PACKAGING MACHINE | 4/01/06 |
| 1051 | SHIPPING DEPT PRINTER | 4/01/06 |
| 1052 | RUSCO PACKAGING MACHINE | 3/31/07 |
| 1066 | WIFI ACCESS POINTS IN PLANT | 12/29/08 |
| 1068 | WIFI IN PLANT/MOTOROLA BARCODE | 2/25/09 |
| 1070 | MOTOROLA BAR CODE READER | 3/25/09 |
| 1082 | NEW CONDENSOR FOR BAY 5 | 9/14/09 |
| 1110 | NEW COMPRESSOR BAY 5 | 10/15/10 |
| 1115 | UPGRADES TO OLD SATAKES | 10/31/10 |
| 1125 | 2 NEW METAL DETECTORS | 3/31/11 |
| 1126 | KAISER - AIR SUPPLY PIPE | 1/31/11 |
| 1128 | ROYAL FLUSH NEW SINKS | 1/31/11 |
| 1136 | VIDEO JET LABEL PRINTERS | 4/11/11 |
| 1139 | MOTOROLA COMPUTERS QUEST | 6/15/11 |
| 1144 | AIR COND UNIT AREA WIDE | 8/15/11 |
| 1145 | USED EQPT - SOUTHERN NUT/PECANS.COM | 8/30/11 |
| 1148 | INSTALL SHELLERS | 9/14/11 |
| 1165 | ALARM SYSTEM FOR AIR COMPRESSORS | 12/07/11 |
| 1175 | 3 ZEBRA LABEL PRINTERS | 7/25/12 |
| 1178 | CONDENSOR FOR BAY 7 | 8/21/12 |
| 1179 | SS DUCTWORK FOR DRYER | 8/15/12 |
| 1180 | BUHLER SORTEX SORTER | 8/31/12 |
| 1182 | FIRE PROTECTION IN DRYER DUCTS | 8/30/12 |
| 1190 | SPRINKLE DEPT 8 DRYER | 11/07/12 |
| 1193 | LABEL APPL/PRINTER | 11/30/12 |
| 1197 | 15 HP CONDENSOR BAY 6 | 1/15/13 |
| 1201 | REFRIG UNIT BAY 8 #17 | 3/14/13 |
| 1205 | 4 BOX LABEL PRINTERS | 5/01/13 |
| 1206 | DUCTWORK ON DEPT 8 DRYER | 6/01/13 |
| 1224 | BEST SORTING MACHINE | 8/01/14 |
| 1229 | CONVEYOR AND HOPPER FOR BEST MACHINE | 8/01/14 |
| 1234 | TRANSFORMER & PANELS DEPT 7 | 8/22/14 |
| 1239 | ELECTRICAL FOR BEST SORTER | 9/29/14 |
| 1243 | FREIGHT ON BEST SORTER | 11/18/14 |
| 1249 | NEW DOCK PADS | 12/31/14 |
| 1262 | NEW AIR COND NEW PLANT | 6/01/15 |
| 1283 | BARRELL DUMP DEPOSIT | 4/22/16 |
| 1284 | CHANGE OUT A/C UNIT #13 | 4/04/16 |
| 1287 | TRANE AC UNIT WITH HEAT | 5/13/16 |
| 1288 | NEW METAL DETECTOR | 6/28/16 |
| 1292 | NEW BARREL DUMPER | 9/27/16 |
| 1310 | USED 5 SCREEN SIZER | 10/18/17 |

| | | |
|---|---|---|
| 1313 | NEW BARRELL DUMPER | 2/01/18 |
| 1319 | NEW BARRELL DUMPER | 7/10/18 |
| 1332 | 1 NEW AMVT SORTER | 8/29/20 |
| 1336 | AIRLINES FOR NEW SORTERS | 7/01/20 |
| 1338 | SATAKE SORTERS | 8/01/20 |
| 1339 | NEW DOCK LEVELER | 8/23/20 |
| 1341 | NEW CRACKERS MODERN ELECTRONIC | 9/01/21 |
| 1342 | TOMRA LASER SORTER | 11/19/21 |
| 1344 | SATAKE SORTER | 12/31/21 |
| | | |
| **Group: OFFICE & DATA EQUIPMENT** | | |
| 76 | MINI BLINDS | 4/01/86 |
| 85 | CREDENZA | 12/01/85 |
| 86 | LAMP TABLE | 12/01/85 |
| 87 | LANDSCAPE SCREEN | 11/01/85 |
| 88 | FILE CABINET | 11/01/85 |
| 89 | FILE & STORAGE CABINET | 11/01/85 |
| 90 | WALNUT BOOKSHELF | 11/01/85 |
| 91 | 3 INWOOD DESKS | 11/01/85 |
| 92 | SECRETARIAL INWOOD DESK | 11/01/85 |
| 93 | 3 30X48 COMPUTER DESKS | 11/01/85 |
| 94 | 30X60 COMPUTER DESK | 11/01/85 |
| 96 | DISPLAY SHELVES&BINSRETL | 11/01/85 |
| 97 | DISPLAY RACKS&BINSRETAIL | 11/01/85 |
| 98 | 3 POSTURE CHAIRS | 12/01/85 |
| 100 | METAL STORAGE RACKSOFFIC | 12/01/85 |
| 101 | SALES TAX ON RETAIL EQUIP | 12/31/85 |
| 104 | 4 FOLDING TABLES | 4/08/86 |
| 105 | OFFICE FURNITURE | 4/30/86 |
| 107 | CHAIR SIDE FILE | 5/05/86 |
| 108 | DATA RACK | 5/05/86 |
| 111 | TYPEWRITER | 6/20/86 |
| 112 | FILE/DATA RACK | 6/19/86 |
| 113 | MINI BLINDS | 6/25/86 |
| 114 | OFFICE FURNITURE | 7/01/86 |
| 115 | HEATING/AIR CONDITOFFICE | 4/01/86 |
| 116 | HEATING/AIR COND RETAIL | 4/01/86 |
| 118 | FURNFIXTURES & OFFEQUIP | 7/01/78 |
| 119 | OFFICE FURNITURE | 3/31/79 |
| 120 | OFFICE FURNITURE | 3/31/79 |
| 121 | OFFICE FURNITURE | 5/21/79 |
| 122 | OFFICE FURNITURE | 6/01/79 |
| 123 | OFFICE FURN & EQUIPMENT | 12/31/79 |

| 124 | OFFICE FURNITURE | 2/28/80 |
|---|---|---|
| 126 | OFFICE EQUIPMENT | 11/11/80 |
| 127 | CABINETS OFFICE | 12/10/80 |
| 128 | CALCULATORS & CHAIRS | 12/07/81 |
| 129 | TYPEWRITER | 12/08/81 |
| 131 | MORTON'S OFFICE FURNITURE | 6/22/82 |
| 132 | MORTON'S OFFICE FURNITURE | 6/22/82 |
| 133 | 2 DESKS CHAIR/TYPE TABLE | 4/01/83 |
| 134 | IBM SELECTRIC TYPEWRITER | 6/01/83 |
| 140 | IBM SELECTRIC II TYPEWRIT | 11/01/84 |
| 141 | 2 DESKS | 12/01/84 |
| 142 | CHAIR | 12/01/84 |
| 143 | TABLE HASCO 600 | 12/01/84 |
| 147 | NEW FILE CABINET | 3/01/85 |
| 148 | IBM WHEELWRITER TYPEWRITE | 3/01/85 |
| 149 | FILE CABINET | 4/01/85 |
| 150 | DESK 2 CHAIRS & MATS | 4/01/85 |
| 153 | DESK CHAIR & CHAIR MAT | 7/01/85 |
| 154 | IBM TYPEWRITERWHEELWRITE | 8/01/85 |
| 155 | TABLE | 8/01/85 |
| 157 | EXHIBIT BOOTH | 9/01/85 |
| 158 | SIGN | 10/15/86 |
| 159 | EQUIPMENT | 11/01/86 |
| 162 | FILE CABINET | 2/09/87 |
| 164 | FILE CABINET LEGAL SIZE | 3/04/87 |
| 165 | TABLE BREAKROOM | 3/04/87 |
| 166 | STORAGE CABINET | 3/04/87 |
| 167 | SIDEARM CHAIRS (3) | 3/04/87 |
| 168 | DESK CHAIR DRAFT TABLE | 4/01/88 |
| 170 | LATERAL FILE CABINET | 4/01/88 |
| 174 | LATERAL FILE CABINET | 4/01/88 |
| 175 | IBM WHEELWRITER TYPEWRTER | 4/01/89 |
| 177 | DESK & COMPUTER TABLE | 4/01/89 |
| 178 | CHAIRS FILE CABINET | 4/01/89 |
| 188 | PORTABLE DISPLAY BOOTH | 10/15/92 |
| 190 | SECRETARIAL DESK | 2/15/93 |
| 191 | LATERAL FILE CABINET | 2/15/93 |
| 192 | OFFICE PARTITIONS | 2/15/93 |
| 193 | IBM SELECTRIC II | 5/15/93 |
| 196 | VIDEO TAPE FOR SHOWS | 9/15/93 |
| 197 | VIDEOTAPE | 4/01/94 |
| 199 | IBM TYPEWRITER & STAND | 4/01/94 |
| 206 | OFFICE STORAGE SHELVES | 4/01/94 |

| | | |
|---|---|---|
| 208 | CHAIRS FOR CONF ROOM | 4/01/95 |
| 209 | CABINETS & SINK CONF ROOM | 4/01/95 |
| 210 | TABLE FOR CONF ROOM | 4/01/95 |
| 212 | TV & VCR FOR CONF ROOM | 4/01/95 |
| 215 | INSTALL PARTITIONS | 4/01/96 |
| 1081 | COMPUTHINK VIEWWISE SOFTWARE | 8/15/09 |
| 1088 | NEW PHONE SYSTEM - CUSTOM TEL | 5/27/10 |
| 1168 | HP NETWORK SWITCHES | 4/02/12 |
| 1198 | BARRACUDA LINK BALANCER | 1/15/13 |
| 1253 | WEBSITE DEVELOPMENT | 1/15/15 |
| 1255 | NOVA TIME CLOCKS & SOFTWARE | 2/28/15 |
| 1272 | DELL SERVER | 10/02/15 |
| 1280 | NEW DELL SERVER | 2/12/16 |
| 1289 | IBM RS 6000 SERVERS | 8/18/16 |
| 1326 | NEW AC RETAIL STORE | 1/06/20 |
| 1337 | ACCESS POINTS AND SWITCHES | 7/31/20 |
| | | |
| **Group: OLD PLANT MACHINERY** | | |
| 229 | HYDRAULIC DUMPER | 11/01/77 |
| 230 | PECAN HOPPER | 11/01/77 |
| 232 | INFEED INSHELL CONVEYOR | 11/01/77 |
| 233 | ELEVATOR | 11/01/77 |
| 234 | ELECTRIC CONTROL PANEL | 11/01/77 |
| 235 | STEEL BIN HOLDING SYSTEM | 11/01/77 |
| 236 | CONVEYORS2 | 11/01/77 |
| 237 | PECAN GRADER | 11/01/77 |
| 238 | DESTONER SYSTEM | 11/01/77 |
| 239 | DESTONER CONTROL PANEL | 11/01/77 |
| 240 | ELEVATORS2 | 11/01/77 |
| 241 | ELEVATORS2 | 11/01/77 |
| 242 | ELEVATORS2 | 11/01/77 |
| 243 | ELEVATORS2 | 11/01/77 |
| 244 | ELEVATOR | 11/01/77 |
| 245 | INSHELL PECAN HOPPER | 11/01/77 |
| 246 | INSHELL PECAN HOPPERS2 | 11/01/77 |
| 247 | PECAN FEED HOPPER | 11/01/77 |
| 248 | AUTOFEED CONVEYORS 2 | 11/01/77 |
| 251 | VF2 SCREEN SIZERS [2] | 11/01/77 |
| 252 | AIR SEPARATOR UNITS 8 | 11/01/77 |
| 253 | CONTINUOUS DRYER /COOLER | 11/01/77 |
| 254 | COLLECTOR CONVEYOR | 11/01/77 |
| 255 | SHELLING PLANT BAY | 11/01/77 |
| 256 | VF2 SCREEN SIZER | 11/01/77 |

| 257 | AIR SEPARATOR UNITS 2 | 11/01/77 |
| 258 | STAINLESS HOPPERS 2 | 11/01/77 |
| 259 | BARREL DUMP 2 | 11/01/77 |
| 261 | SETTLING TANK 3 | 11/01/77 |
| 262 | CABINET TYPE DRYER | 11/01/77 |
| 263 | ELEVATOR | 11/01/77 |
| 264 | HOPPERS 2 | 11/01/77 |
| 265 | BARREL JUMP | 11/01/77 |
| 266 | FEED HOPPERS 2 | 11/01/77 |
| 269 | AIR CONVEYING SYSTEM 3 | 11/01/77 |
| 270 | DRYER | 11/01/77 |
| 272 | BUCKET ELEVATORS | 11/01/77 |
| 275 | WATER COOLER | 11/01/77 |
| 277 | SCALE | 11/01/77 |
| 278 | SCALE | 11/07/77 |
| 279 | SCALE | 11/01/77 |
| 280 | INTERNA`L WEIGHT SCALE | 11/01/77 |
| 281 | MASTER CONTROL PANEL | 11/01/77 |
| 282 | SHELL MOTOR | 1/01/78 |
| 283 | HYD LIFT | 1/01/78 |
| 284 | SIZER SCREEN | 1/01/78 |
| 285 | SCALE | 2/01/78 |
| 286 | CASEBEARER REMOVAL UNIT | 3/01/78 |
| 287 | CISCO STOOLS | 4/01/78 |
| 288 | AUREX BELT ASSEMBLY | 4/01/78 |
| 289 | ELECTRIC RANGE | 7/01/78 |
| 290 | M2 US ELEC REDUCERS | 8/01/78 |
| 291 | PLATE SEC/PIECE DRYER22 | 3/01/78 |
| 292 | SAW BAND | 3/01/78 |
| 293 | DRILL PRESS | 3/01/78 |
| 294 | WELDING TABLE | 3/01/78 |
| 295 | VALVE FOR FLOATER | 4/01/78 |
| 296 | COASTER WHEELS 112 | 5/01/78 |
| 297 | SIGN | 12/01/77 |
| 299 | LIFT STATION | 1/01/77 |
| 300 | PALLETS | 1/01/77 |
| 301 | WATER METER | 1/01/77 |
| 302 | MILITARY SHEET METAL | 1/01/78 |
| 303 | MV FLEX SIZER NUT POCKET | 3/01/78 |
| 304 | MEYER SHELLER AS1819R | 1/01/78 |
| 305 | INSTALLATION EXPENSE | 1/01/78 |
| 306 | COOLER EQUIPMENT | 1/01/78 |
| 307 | MACH DEPOSIT | 10/31/78 |

{00010107:1}

| 308 | INSTALLATION | 10/31/78 |
|-----|--------------|----------|
| 309 | INSTALLATION | 11/30/78 |
| 310 | INSTALLATION | 12/31/78 |
| 313 | RYERSON AND MCMEEKIN | 1/01/79 |
| 314 | ELEVATOR | 1/01/79 |
| 315 | PLASTIC STRIP CURTAIN | 2/28/79 |
| 317 | INSTALLATION | 3/31/79 |
| 319 | EXHAUST FAN & ROOF FAN | 3/31/79 |
| 320 | SSTEEL HOPPER EXTEN3 | 5/21/79 |
| 321 | PALLET BOXES 150 | 5/18/79 |
| 322 | TWO SCREEN STACK SIZER 2 | 5/21/79 |
| 323 | VERTICAL CONT DRYER/COOL | 5/21/79 |
| 324 | STOOLS 10 | 5/21/79 |
| 325 | SET OF WRENCHES (11) | 5/21/79 |
| 326 | DODGE PILLOW BLOCKS 4 | 6/12/79 |
| 327 | LOVEJOY COUPLING | 6/12/79 |
| 328 | 5/8INSTEEL COLLAR WOODS10 | 6/12/79 |
| 329 | GRAVEL FOR PARKING LOT | 6/12/79 |
| 330 | INSTALLATION | 6/12/79 |
| 331 | INSTALLATION OF EQUIP | 6/12/79 |
| 332 | INSTALLATION OF EQUIP | 6/01/79 |
| 334 | 200' SURE LINK BELTING | 7/11/79 |
| 335 | 9INBLOWER W/MOTOR | 7/11/79 |
| 336 | TUBES 3 | 7/11/79 |
| 337 | TUBES | 7/13/79 |
| 338 | COOLER | 7/26/79 |
| 339 | PANS4/ANGLES/FEEDER SEC | 8/07/79 |
| 340 | USED ENGINE | 8/29/79 |
| 341 | ENGINE | 9/06/79 |
| 344 | TOP WIDTH TABLETOP CHAIN | 9/16/79 |
| 345 | VERT/DRYER & INSP TABLE | 9/30/79 |
| 346 | STAINLESS STEEL HOPPER | 9/30/79 |
| 348 | ANGA3613/HR STRIP 105 | 9/30/79 |
| 349 | RYER EXP METAL SHT FLATT | 9/30/79 |
| 350 | VERTICAL SECTION | 9/30/79 |
| 352 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 353 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 354 | SIMPLEX CONV ELEVATOR | 9/30/79 |
| 355 | 2050 VSPD PULLEY/ACCESS | 9/30/79 |
| 356 | MOTORS/4SBLADES/6PULL2 | 9/30/79 |
| 357 | NEW PLUMBING | 10/30/79 |
| 358 | FENCE ON GROUNDS | 10/31/79 |
| 360 | BREAK ROOM FURNITURE | 11/30/79 |

| 361 | EQUIPMENT | 12/31/79 |
|-----|-----------|----------|
| 362 | INSTALLATION | 11/30/79 |
| 363 | OFFICE IN WAREHOUSE | 1/31/80 |
| 365 | MACHICE | 3/31/80 |
| 366 | EQUIPMENT | 5/06/80 |
| 367 | INSTALLATION | 5/06/80 |
| 368 | LUNCHROOM FURNITURE | 6/05/80 |
| 369 | MACHINERY | 6/30/80 |
| 370 | PUMP FOR SEWER SYSTEM | 9/02/80 |
| 371 | STOOLSFINISH ROOM | 9/02/80 |
| 373 | STEEL DUAL BIN | 7/25/80 |
| 374 | HOIST 1TON | 8/01/80 |
| 375 | TOOTH HD BLADES 18 | 8/01/80 |
| 376 | 3/8 DRIMPACT SOCK SET | 8/01/80 |
| 377 | 4 TUBE HREW STRUCTA500B | 8/08/80 |
| 378 | 5 TUBE HREW STRUCTA500B | 8/08/80 |
| 379 | 4 TUBE HREW STRUCTA500B | 8/08/80 |
| 380 | ANG HR A361X1X1 (40) | 8/08/80 |
| 381 | ANGA36 L3X2X3/16 (4) | 8/08/80 |
| 382 | HR A36 3/8X3FLTX61/2IN15 | 8/08/80 |
| 383 | HR A36 3/8X4FLT | 8/08/80 |
| 384 | HR A36 3/8X6FLTX8IN (5) | 8/08/80 |
| 385 | TUBE HREW STRUCT(5)A500B | 8/08/80 |
| 386 | TUBE HREW STRUCT(2)A500B | 8/08/80 |
| 387 | TUBE HREW STRUCT(2)A500B | 8/08/80 |
| 388 | PERFORATED SHEETS (2) | 8/08/80 |
| 389 | HR SHEET (20) | 8/08/80 |
| 390 | TAKE AWAY PAN | 8/08/80 |
| 391 | TUBE HR WELD (14) | 8/08/80 |
| 392 | TUBE HR WELD (6) | 8/08/80 |
| 393 | TUBE HR WELD (8) | 8/08/80 |
| 394 | TUBE HR WELD (8) | 8/08/80 |
| 395 | TUBE HREW STRUCTA500B | 8/08/80 |
| 396 | MACHINERY | 8/18/80 |
| 397 | MACHINERY | 8/18/80 |
| 398 | MACHINERY | 9/02/80 |
| 399 | 3 STEP INSPACTABLE (3) | 9/05/80 |
| 400 | 2 SCREEM SIZE SERIAL | 9/05/80 |
| 402 | ILS30X30LINE SIZER SCR | 9/22/80 |
| 403 | 26 GUAGE CHUTE EXTENSIONS | 9/27/80 |
| 404 | MACHINERY | 9/22/80 |
| 405 | MODEL 6914 PIECE SHELLER | 10/08/80 |
| 406 | EXTENSION SUCTION | 10/08/80 |

{00010107:1}

| 407 | SIMPLEX CONV ELEVATOR | 10/08/80 |
|-----|------------------------|----------|
| 408 | PARTS FOR NEW MACHINERY | 10/08/80 |
| 409 | STAINLESS STEEL SCALE | 10/24/80 |
| 410 | PARTS FOR NEW MACHINERY | 10/28/80 |
| 411 | MACHINERY | 11/08/80 |
| 412 | MACHINERY | 12/03/80 |
| 413 | MACHINERY | 12/23/80 |
| 414 | MER55 BARREL FLOAT | 1/28/81 |
| 415 | INLINE SIZER | 1/28/81 |
| 416 | EIGHT INCH BLOWERS (8) | 1/28/81 |
| 417 | DUAL LANE CONVEYOR | 1/28/81 |
| 418 | STAND FOR MOUNTING BLOWER | 1/28/81 |
| 419 | MACHSALVAGE DEPT | 2/10/81 |
| 420 | BAG SEALER | 1/28/81 |
| 421 | SPIN BASKET | 5/22/81 |
| 422 | INSTALLATION | 6/16/81 |
| 423 | 30 ANGLE RINGS | 6/26/81 |
| 424 | INSTALLATION | 6/30/81 |
| 425 | SSTEEL DUAL BIN | 9/01/81 |
| 426 | PALLETS | 8/01/81 |
| 427 | SWIVEL PLATE COSTERS 100 | 8/01/81 |
| 430 | BENCH SCALE | 12/07/81 |
| 432 | ELEVATOR | 12/23/81 |
| 433 | CORSICANA SHEET METAL | 7/21/82 |
| 435 | MISC EQUIP | 8/26/82 |
| 436 | MISC EQUIP ROASTER | 9/30/82 |
| 437 | INSHELL HOLDING BIN | 9/30/82 |
| 438 | FEEDER CONVEYOR | 9/30/82 |
| 439 | DUAL LANE CONVEYOR | 9/30/82 |
| 440 | ELEVATOR HOPPER FEEDER | 9/30/82 |
| 441 | EIGHT INCH BLOWER | 9/30/82 |
| 442 | FREIGHT ON EQUIP | 9/30/82 |
| 443 | HOT WATER SANITIZER | 9/30/82 |
| 444 | TABLE DESKS 2 | 10/01/82 |
| 446 | MISC EQUIPMENT | 11/01/82 |
| 447 | FREIGHT ON NEW MACH | 12/01/82 |
| 448 | ROASTER | 12/01/82 |
| 449 | FREIGHT ON MACH | 12/01/82 |
| 450 | INSHELL GRADER | 1/01/83 |
| 452 | FREIGHT ON MACH | 1/01/83 |
| 454 | FREIGHT ON MACH | 2/01/83 |
| 455 | SSTEEL HOLDING BIN | 2/01/83 |
| 457 | HOT WATER HUMIDIFIER/TANK | 1/01/83 |

{00010107:1}

| 458 | INSTALL WIRE / MISC | 4/01/83 |
|-----|---------------------|---------|
| 459 | EXHAUST FAN | 6/01/83 |
| 460 | HOTWASHER EQUIP | 6/01/83 |
| 461 | INSTALL/SEPTIC TANK/EQUIP | 6/01/83 |
| 462 | INSTALLATION OF EQUIP | 6/01/83 |
| 467 | INLINE SIZER/SCREENS | 7/01/83 |
| 468 | 4INCH ELEVATOR/FREIGHT | 7/01/83 |
| 470 | SIMPLEX CONV ELEVATOR | 8/01/83 |
| 471 | WATER COOLER/INSTALLATION | 8/01/83 |
| 472 | CONTDBUCKET ELEVATOR | 9/01/83 |
| 473 | 1/3HP AUTO SUMP PUMP | 9/01/83 |
| 475 | SIGN ON BLDG | 9/01/83 |
| 476 | WET GRAIN HOLDING TANK | 8/01/83 |
| 477 | GRADING SYSTEM/MISC | 9/01/83 |
| 478 | GRADING SYSTEM 7 CHUTES | 9/01/83 |
| 479 | INSTALLSIZER & ELEVATOR | 9/01/83 |
| 480 | STEEL VENT HOOD | 7/01/83 |
| 481 | BARREL LIFT DUMP | 7/01/83 |
| 482 | DUAL BIN | 7/01/83 |
| 483 | VIBRATORY CONVW/AIR GATE | 7/01/83 |
| 484 | HOPPER | 7/01/83 |
| 485 | FEEDER CONVEYOR | 7/01/83 |
| 486 | MAGMET ASSEMBLY | 7/01/83 |
| 487 | SIZER STAND/HOPPER | 7/01/83 |
| 488 | ELEVATOR SPLITTER CHUTE | 7/01/83 |
| 489 | SUPPORTING LEGS (SIZER) | 7/01/83 |
| 490 | FREIGHT ON MACH | 9/01/83 |
| 491 | INSTALL EXHAUST HOODS | 7/01/83 |
| 492 | HYDRAULIC TOTE BIN DUMPER | 10/10/83 |
| 493 | FREIGHT ON MACH | 10/10/83 |
| 494 | MEYER PECAN GRADER | 11/01/83 |
| 495 | P40 FORKLIFT | 10/01/83 |
| 496 | CONT BUCKET ELEVATOR | 12/01/83 |
| 497 | STAR FILTER PRESS | 4/01/84 |
| 498 | BASKET STRAINER | 6/01/84 |
| 499 | FREIGHT ON MACH | 1/01/84 |
| 500 | REFRIGERATOR (TRAILER) | 3/01/84 |
| 501 | AJAX SHAKER | 4/01/84 |
| 502 | SYNCROGEAR REDUCER 2 | 5/01/84 |
| 503 | SIZER SCREEN | 5/01/84 |
| 504 | DECK SIZER SCREEM | 5/01/84 |
| 505 | STEEL TROUGH COVER | 5/01/84 |
| 506 | STAINLESS STEEL RAKE | 5/01/84 |

| | | |
|---|---|---|
| 507 | LITLON ROLLER CONV 2 | 5/01/84 |
| 508 | SSTEEL VENTING DUCT | 7/01/84 |
| 509 | BLOWER FOR COOLING TABLE | 7/01/84 |
| 510 | AIR COOLED;COMPRESSOR | 3/01/84 |
| 511 | INSTALLAIR COMPRESSOR | 4/01/84 |
| 512 | FREIGHT ON MACHINERY | 6/01/84 |
| 514 | REPAIR & RESHEET W/SS | 4/01/84 |
| 515 | GRADER/REWORK GRADER | 3/01/84 |
| 516 | 3STEP INSP TABLES 2 | 9/01/84 |
| 517 | TABLE HOPPER EXTEN 2 | 9/01/84 |
| 518 | STERILIZATION CHAMBER | 9/01/84 |
| 519 | BARREL LIFT DUMP | 9/01/84 |
| 521 | BARREL LIFT DUMP | 9/01/84 |
| 522 | DOUBLE BLOWER | 9/01/84 |
| 523 | DOUBLE BLOWER | 9/01/84 |
| 524 | HOOPER FEEDER | 9/01/84 |
| 525 | NEW MACH SCREW CONVCORP | 5/01/84 |
| 526 | FIRE EXTINGUISHER EQUIP | 7/01/84 |
| 527 | SETTING INSHELL GRADER | 12/01/83 |
| 528 | INSTALL CONVEYOR | 2/01/84 |
| 529 | FREIGHT ON MEYER MACH | 2/01/84 |
| 530 | INSTALLATION GAS CHAMBER | 7/01/84 |
| 531 | FREIGHT ON MACH PUMP VAC | 10/01/84 |
| 532 | PB SUBMERSIBLE PUMP | 11/01/84 |
| 533 | SYNCROGEAR REDUCER 2 | 11/01/84 |
| 534 | WEIGH TRONIX BENCH SCALE | 11/01/84 |
| 535 | WEIGH TRONIX DECK SCALE | 12/01/84 |
| 536 | FREIGHT ON MACH | 2/01/85 |
| 537 | INGREDIENT BIN | 5/01/85 |
| 539 | FREIGHT ON MACH | 6/01/85 |
| 540 | WORK TABLE/ROASTING ROOM | 6/01/85 |
| 541 | SSTEEL BOXES 10 | 6/01/85 |
| 542 | CONT D ELEV BUCKET | 5/01/82 |
| 543 | CONVEYOR | 5/01/82 |
| 544 | RACK INST & FREIGHT | 5/01/82 |
| 545 | RACKS | 3/01/83 |
| 546 | RACKS | 4/01/83 |
| 547 | INSTALLATION OF EQUIP | 6/01/83 |
| 548 | FREIGHT ON NEW MACH | 9/01/84 |
| 549 | FREIGHT ON MACH | 7/01/85 |
| 550 | CSTEEL METAL/MISCEQUIP | 7/01/85 |
| 553 | SVP 6030 BAILER | 4/01/88 |
| 558 | FIRE SPRINKLER SYSTEM | 4/01/88 |

| 559 | LEWIS CARTER CONVEYOR | 4/01/89 |
| 560 | LEWIS CARTER CONVEYOR | 4/01/89 |
| 571 | HANDWASHER | 2/15/91 |
| 572 | BARREL LIFT DUMP | 2/15/91 |
| 573 | FENCE INSHELL RECEIVING | 5/15/91 |
| 575 | 18IN MEYER DIAL SHELLER | 9/15/91 |
| 576 | NEW SCALE FOR LAB | 9/15/91 |
| 580 | AJAX FLOAT | 1/15/92 |
| 581 | BASKET SCALE | 2/15/92 |
| 582 | HOT WATER HEATER | 4/15/92 |
| 583 | BLOWERS | 5/15/92 |
| 584 | HOPPERS | 5/15/92 |
| 585 | INSHELL SCALE | 7/15/92 |
| 586 | INSHELL SIZING SYSTEM | 9/15/92 |
| 587 | HOIST | 9/15/92 |
| 588 | PUMPS & SEPARATOR WASTE P | 1/15/93 |
| 590 | DRY MATERIAL FEEDER | 4/15/93 |
| 591 | STAINLESS STEEL BARRELS | 4/15/93 |
| 592 | INSPECTION TABLE | 5/15/93 |
| 593 | AJAX SHAKER | 6/15/93 |
| 594 | NEW FRONT SIGN | 7/15/93 |
| 595 | SPRAY TUMBLER | 7/15/93 |
| 596 | CONVERSION FRAME 4 QUANTZ | 7/15/93 |
| 597 | MEYER 32' INSHELL SIZER | 7/15/93 |
| 599 | MEYER BUCKET ELEVATORS | 7/15/93 |
| 600 | AJAX SHAKER | 7/15/93 |
| 601 | MEYER 32' INSHELL SIZER | 8/15/93 |
| 603 | 10IN ADJACK | 8/15/93 |
| 604 | PECAN SHELLER | 9/15/93 |
| 605 | 3 COMPARTMENT SINK | 2/15/93 |
| 606 | AUTO DOORS FOR STORAGE | 8/15/93 |
| 607 | INSHELL GRADER REBUILT | 4/01/94 |
| 608 | VACUUM PACKAGING MACHINE | 4/01/94 |
| 610 | EQUIPMENT | 4/01/95 |
| 612 | USED FORKLIFT | 4/01/96 |
| 613 | ELECTRONIC SCALE | 4/01/96 |
| 619 | BINS & EQUIPMENT | 4/01/96 |
| 620 | ELEVATORS & EQUIPMENT | 4/01/96 |
| 621 | REFRIGERATION EQUIP | 4/01/96 |
| 622 | AIR COMPRESSORS FOR BAY 1 | 4/01/96 |
| 623 | TOTE BOXES & FRT | 10/15/97 |
| 625 | STAINLESS STEEL BARRELS | 3/15/98 |
| 627 | TRANE AIR CONDITIONER | 4/15/98 |

| 629 | REFRIGERATION EQUIPMENT | 6/15/98 |
| 632 | INSHELL GRADER PARTS | 6/15/98 |
| 633 | RARE EARTH MAGNETS | 8/15/98 |
| 634 | STENCIL MACHINE | 5/01/98 |
| 635 | SATAKE BELT SORTER | 6/15/98 |
| 636 | STAINLESS HOPPER | 3/15/98 |
| 638 | MISCELLANEOUS EQUIPMENT | 3/15/98 |
| 639 | INSTALLATION OF EQUIP | 7/01/99 |
| 640 | TABLES ROASTER DRAIN PAN | 11/15/06 |
| 641 | FIRE HYDRANTS SPRINLER S | 11/15/06 |
| 642 | MOTOROLA BASE & RADIOS | 12/19/06 |
| 643 | NEW SCALE | 6/26/07 |
| 644 | ELECTRIC NEW GATE COMPR | 9/15/07 |
| 1059 | PECAN SHAKER WATER SEPARATOR (2) | 10/31/07 |
| 1060 | ELECTRONIC GATE - INSHELL | 11/30/07 |
| 1061 | SPRINKLER FLUSHING NEW FOAM INSHELL COOLER | 12/31/07 |
| 1063 | SAFELINE METAL DETECTOR | 8/27/08 |
| 1065 | TRUCK SCALE INDICATOR/PRINTER | 11/04/08 |
| 1067 | ASPHALT PAVING INSHELL ENTRANCE | 12/03/08 |
| 1072 | REBUILD BATCH ROASTER | 4/30/09 |
| 1073 | SAFELINE METAL DETECTOR | 9/01/09 |
| 1074 | WIRELESS ACCESS POINTS | 6/29/09 |
| 1075 | SCISSOR LIFT TRUCK | 6/29/09 |
| 1076 | UPGRADE FIRE ALARM SYSTEM | 6/18/09 |
| 1077 | FLOOR SCRUBBER - TENNANT | 7/31/09 |
| 1078 | WI FI RADIOS & EQPT | 7/08/09 |
| 1079 | PIN TUMBLER SOUTHERN NUT N TREE | 7/31/09 |
| 1080 | OVERHEAD DOORS IN PLANT | 8/15/09 |
| 1083 | NEW ENERGY EFFICIENT LIGHTS RANDYS | 2/13/09 |
| 1084 | REBUILD BATCH ROASTER | 11/11/09 |
| 1085 | SOUTHERN NUT & TREE | 11/20/09 |
| 1095 | 8 USED TOYOTA FORKLIFTS | 6/15/10 |
| 1101 | NEW METAL DETECTOR | 10/31/10 |
| 1104 | PLUMBING - BARREL WASH | 9/15/10 |
| 1106 | NEW FENCING - ANNEX PROP | 5/01/10 |
| 1108 | NEW CONDENSER BAY 5 | 6/01/10 |
| 1109 | 3 NEW COMPRESSORS SHIPPING | 6/01/10 |
| 1111 | SCALE INDICATORES - TEMP TANKS | 10/15/10 |
| 1112 | NEW PALLET JACKS | 10/15/10 |
| 1113 | BARRELL WASHER EQUIP | 10/25/10 |
| 1114 | JOHNSON EQUIP | 10/27/10 |
| 1116 | NEW SCISSOR LIFT | 11/16/10 |
| 1119 | BARRELL WASH JOHNSON LOPEZ | 12/27/10 |

| 1120 | SALT MACHINE | 3/31/11 |
|------|--------------|---------|
| 1121 | RANDYS ELEC/LOPEZ | 12/31/10 |
| 1122 | ROYAL FLUSH PLUMBING | 1/13/11 |
| 1123 | USED SHELL TRUCK | 1/17/11 |
| 1124 | AREA WIDE COMPRESSORS | 1/19/11 |
| 1127 | RANDYS ELECTRIC WIRING | 1/31/11 |
| 1129 | JAMES MFG - GUARDS FOR MOTORS | 1/31/11 |
| 1130 | PAINTING & CONTRUCTION | 2/28/11 |
| 1131 | INSHELL PARKING LOT | 3/31/11 |
| 1132 | NEW AIR COMPRESSORS | 3/31/11 |
| 1137 | 2 USED FORKLIFTS | 6/03/11 |
| 1138 | 4 SAVAGE SHELLERS | 6/30/11 |
| 1140 | COMPRESSORS - BAY 5 AREA WIDE | 7/15/11 |
| 1141 | NEW PLUMBING FIXTURES | 7/18/11 |
| 1142 | FIRE ALARM STROBES ACTION | 7/18/11 |
| 1143 | BARRICADES FOR EQUIPMENT LOPEZ | 7/27/11 |
| 1146 | INTAKE FAN DUCTWORK CORS A/C | 8/10/11 |
| 1147 | ELECTRICAL WORK - RANDY | 8/15/11 |
| 1149 | AREA WIDE/KAISER | 9/23/11 |
| 1150 | LOPEZ CARPENTRY | 9/28/11 |
| 1154 | LOCKOUT TAGOUT DISCONNECT BOXES RANDY | 3/01/11 |
| 1158 | FABRICATE CHUTES/CATWALKS | 10/15/11 |
| 1159 | RANDY'S - NEW WIRING | 10/15/11 |
| 1160 | OUTDOOR CURTAIN FOR AIR COMPRESSORS | 10/15/11 |
| 1161 | FABRICATE CHUTES & CATWALKS | 11/15/11 |
| 1162 | NEW COMPRESSOR FOR BAY 2 | 11/01/11 |
| 1164 | CONCRETE SLAB - HA PAIR | 12/28/11 |
| 1166 | SURGE PROTECTOR AIR COMPRESSORS | 3/06/11 |
| 1167 | ACTION FIRE STROBES/HORNS | 4/16/12 |
| 1169 | BUILD WALL FOR AIR COMPRESSORS | 4/10/12 |
| 1170 | NEW REFRIGERATION COMPRESSORS | 4/24/12 |
| 1171 | LOPEZ FENCING NEW DOORS | 4/30/12 |
| 1172 | USED EQUIP - TOMS AUCTION | 5/02/12 |
| 1173 | NEW COMPRESSORS - AREA WIDE | 5/31/12 |
| 1174 | AIR COMPRESSOR PIPING | 7/16/12 |
| 1176 | FENCE & CLEAR NEW LOT | 7/26/12 |
| 1177 | REFRIGERATION COMPRESSORS | 7/15/12 |
| 1181 | NEW REFRIG UNITS FOR SHIP COOLER | 9/20/12 |
| 1185 | NEW CONDENSOR BAY 2 #33 | 10/17/12 |
| 1186 | NEW EXHAUST & INTAKE DEPT 1 DRYER | 10/19/12 |
| 1187 | JACKRABBIT STEEL FOR DUMPER | 10/30/12 |
| 1191 | 2 ELECTRIC AUGERS | 11/27/12 |
| 1192 | TOYOTA FORKLIFT | 11/23/12 |

| 1194 | TOYOTA PALLET JACK | 12/11/12 |
|------|--------------------|----------|
| 1195 | 4 EYEWASH STATIONS | 12/14/12 |
| 1196 | SPRINKLERS IN DRYER #3 | 12/27/12 |
| 1199 | POWER UNIT FOR DUMPER | 1/09/13 |
| 1200 | NEW EVAPORATOR COIL BAY 2 | 2/13/13 |
| 1202 | NEW DUCTWORK ON DRYER | 3/01/13 |
| 1203 | TENNANT FLOOR SCRUBBER | 4/15/13 |
| 1204 | SPRINKLER HEADS IN DRYER VENTS | 5/01/13 |
| 1207 | REBUILD INSHELL GRADER | 6/14/13 |
| 1209 | 3 NEW CONDENSOR/EVAPORATORS | 8/01/13 |
| 1210 | NEW CONDENSOR/EVAPORATOR | 8/01/13 |
| 1212 | FIRE SYSTEM ROASTING ROOM | 8/31/13 |
| 1213 | NEW CONDENSOR EVAPORATOR | 9/16/13 |
| 1215 | NEW CONDENSOR & EVAPORATOR BAY 2 | 10/14/13 |
| 1216 | REBUILD INSHELL GRADER | 11/01/13 |
| 1217 | HOISTS AND TROLLEYES FOR INSHELL GRADERS | 11/06/13 |
| 1218 | 1992 FRUEHAFF TRAILER | 12/11/13 |
| 1219 | FIRE SYSTEM ROASTING AND ALCOHOL ROOMS | 12/18/13 |
| 1220 | CONTROLLER FOR BOX PRINTERS | 12/06/13 |
| 1221 | USED 53' TRAILER | 1/10/14 |
| 1222 | FIRE SYSTEM ROASTING ROOM | 3/15/14 |
| 1223 | ERIEZ MAGNETS | 4/15/14 |
| 1227 | USED CENTRIFUGE | 5/02/14 |
| 1230 | 1 TON HOIST FOR CENTRIFUGE | 5/28/14 |
| 1231 | MEAL GRINDER - INCUS SPAIN | 6/30/14 |
| 1232 | NEW ROOF AIR OVER STORAGE AREA | 7/01/14 |
| 1233 | ELECTRICAL FOR CENTRIFUGE | 8/01/14 |
| 1236 | POWER WASHER TRAILER | 9/25/14 |
| 1237 | TOYOTA FORKLIFT | 9/25/14 |
| 1240 | NEW COPELAND COMPRESSOR | 11/04/14 |
| 1241 | REBUILD INSHELL SIZER | 11/18/14 |
| 1242 | INSHELL BLOWER/SCALE | 11/20/14 |
| 1244 | HOPPER FOR MEAL GRINDER | 11/25/14 |
| 1245 | FABRICATE ROASTER HOPPER AND FRAME | 11/05/14 |
| 1246 | ELECTRICAL FOR REFRIGERATION EQUP | 12/08/14 |
| 1248 | METER FOR SEWER WATER | 12/31/14 |
| 1250 | MEAL GRINDER INCUS SPAIN | 1/15/15 |
| 1251 | OVERHEAD DOORS | 1/15/15 |
| 1252 | FLOORING FOR ROASTING ROOM | 1/15/15 |
| 1254 | REBUILD INSHELL SIZER | 2/06/15 |
| 1256 | 2 ROASTING BASKETS | 3/25/15 |
| 1258 | BAY 7 REFRIGERATION SYSTEM | 4/10/15 |
| 1259 | RETROFIT LIGHTING TO LED | 4/01/15 |

| 1260 | NEW COOLER DOOR BAY 3 | 5/11/15 |
| 1261 | NEW CONDENSOR BAY 5 UNIT 39 | 6/08/15 |
| 1263 | STICKTITE BREAKER MODERN ELEC | 7/01/15 |
| 1264 | MOISTURE ANALYZER | 8/24/15 |
| 1266 | 2 ELECTRONIC FLOOR SCALES | 12/15/14 |
| 1267 | REBUILD TOTE DUMP FOR SAFETY | 5/19/15 |
| 1268 | NEW BUG BLOCKER DOORS | 4/20/15 |
| 1269 | REBUILD 3 ROASTING BASKETS | 5/29/15 |
| 1270 | NEW EVAPORATOR BAY 5 UNIT 24 | 8/07/15 |
| 1274 | 1 TON HOIST WITH CONTROLLER | 10/30/15 |
| 1275 | SATAKE EVOLUTION SORTER | 11/05/15 |
| 1278 | MOISTURE ANALYZER | 12/15/15 |
| 1279 | METAL STORAGE RACKS | 2/08/16 |
| 1281 | NEW COMPRESSOR UNIT 22 | 3/15/16 |
| 1282 | STAINLESS STEEL BARRELLS | 4/11/16 |
| 1285 | NEW COMPRESSOR BAY 3 UNIT 30 | 5/01/16 |
| 1286 | BOHN 30HP CONDENSOR & 2 EVAPORATORS | 5/15/16 |
| 1290 | NEW REFRIG COMPRESSOR | 9/06/16 |
| 1291 | 1 TON HOIST | 9/19/16 |
| 1293 | SUBMERSIBLE PUMP ELECTRICO | 2/13/17 |
| 1294 | VACUUM TANK REPLACEMENT | 3/07/17 |
| 1295 | CONVEYORS | 3/08/17 |
| 1296 | 3 SIZERS MODERN ELEC | 3/24/17 |
| 1297 | CHART RECORDERS FOR TEMP TANKS | 4/10/17 |
| 1298 | STAINLESS STEEL FRAME HOPPER STICKTITE BRKR | 5/26/17 |
| 1299 | SIZER FEED HOPPERS | 6/06/17 |
| 1300 | RARE EARTH MAGNETS | 7/01/17 |
| 1301 | 1 TON HOIST | 7/18/17 |
| 1302 | FABRICATE HOPPERS AND CONTROLS TEMP TANKS | 8/31/17 |
| 1303 | 4 SAVAGE SHELLERS | 9/30/17 |
| 1304 | NEW EVAPORATOR FREEZER 24 | 8/28/17 |
| 1305 | OIL ROAST SYSTEM UPGRADE | 12/15/17 |
| 1306 | CONTINUOS ROASTER CONTROLS | 11/15/17 |
| 1308 | CUSTOM HOPPER EXTENSIONS | 12/11/17 |
| 1309 | REWORK ELEVATOR WET SHELL | 10/17/17 |
| 1311 | 2 TOYOTA PALLET JACKS | 12/15/17 |
| 1316 | REPLACE INSULATION ON SUCTION LINES | 6/01/18 |
| 1320 | NEW EVAPORATOR UNIT 41 | 7/25/18 |
| 1321 | NEW COMPRESSOR | 9/25/18 |
| 1322 | REPLACE COMPRESSOR 24 | 4/02/19 |
| 1323 | REPLACE COMPRESSOR 26 | 5/01/19 |
| 1329 | MOISTURE ANALYZER | 2/24/20 |
| 1330 | 2 SATAKE SORTERS | 5/01/20 |

{00010107:1}

**TO BE SUPPLEMENTED**

| 1331 | 2 USED AMVT SORTERS | 5/12/20 |
|------|---------------------|---------|
| 1333 | SATAKE SORTERS | 6/08/20 |
| 1334 | REPLACE FREEZER UNIT AND EVAPORATOR | 6/22/20 |
| 1335 | USED GENIE LIFT | 7/30/20 |
| 1340 | MOISTURE ANALYZER INSHELL | 5/30/21 |
| 1343 | 10 SAVAGE CRACKERS LEASED | 12/02/20 |
| 1346 | NEW EVAPORATOR ON UNIT 25 | 3/15/22 |

{00010107:1}

**TO BE SUPPLEMENTED**

### Schedule 2.1(e) – Licenses and Permits

Beneficial Use Permit – Texas Commission on Environmental Quality

Food Manufacturer's License - Texas Health and Human Services

Radioactive Material License - Texas Health and Human Services

Industrial/Business Pool, Conventional License - Federal Communications Commission

Industrial Alcohol User Permit – Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau

Texas Sales and Use Tax Permit

SQF Certification

{00010107:1}

**TO BE SUPPLEMENTED**

## Schedule 2.1(g) – Intellectual Property

### Domain Names

*To be added.*

### Entity Names

Navarro Pecan Company, Inc.

Pecan Producers International, Inc.

Navarro

### Trademarks

*To be added.*

### Patents

None

### Phone Numbers

*To be added.*

### Proprietary Processes

None

{00010107:1}

# Schedule 2.1(h) – Truist Pre-Petition Accounts Receivable

| BILLNAME | DESCRIPTION | Bill To | Name | Customer ID | Invoice # | Customer PO# | Original Amt | Balance Due | Terms Description |
|---|---|---|---|---|---|---|---|---|---|
| ARMADA WAREHOUSE SOLUTIONS | Bill to Name ARMADA WAREHOUSE SOLUTIONS | 247 | 2478 ARMADA WAREHOUSE SOLUTIONS | 598 | 75708 | 9718345 | 69744.4 | 69744.4 | NET 30 DAYS |
| ARMADA WAREHOUSE SOLUTIONS | Bill to Name ARMADA WAREHOUSE SOLUTIONS | 247 | 2478 ARMADA WAREHOUSE SOLUTIONS | 598 | 75778 | 10418101 | 69744.4 | 69744.4 | NET 30 DAYS |
| TOTAL | BILL TO | | 2478 ARMADA WAREHOUSE SOLUTIONS | | | | 139488.8 | 139488.8 | |
| TOTAL | BILLNAME | | 2478 ARMADA WAREHOUSE SOLUTIONS | | | | 139488.8 | 139488.8 | |
| AUSTINUTS WHOLESALE | Bill to Name AUSTINUTS WHOLESALE | 258 | 2586 AUSTINUTS WHOLESALE | 724 | 75771 | 266413 | 8420 | 8420 | NET 30 DAYS |
| TOTAL | BILL TO | | 2586 AUSTINUTS WHOLESALE | | | | 8420 | 8420 | |
| TOTAL | BILLNAME | | 2586 AUSTINUTS WHOLESALE | | | | 8420 | 8420 | |
| BISCOMERICA CORP. | Bill to Name BISCOMERICA CORP. | 254 | 2545 BISCOMERICA CORP. | 675 | 75755 | 121922 | 27645 | 27645 | NET 45 DAYS |
| TOTAL | BILL TO | | 2545 BISCOMERICA CORP. | | | | 27645 | 27645 | |
| TOTAL | BILLNAME | | 2545 BISCOMERICA CORP. | | | | 27645 | 27645 | |
| CEDAR FIBER COMPANY INC | Bill to Name CEDAR FIBER COMPANY INC | 26 | 263 CEDAR FIBER COMPANY INC | 95 | 75355 | K8907 | 809.2 | | NET 10 DAYS |
| CEDAR FIBER COMPANY INC | Bill to Name CEDAR FIBER COMPANY INC | 26 | 263 CEDAR FIBER COMPANY INC | 95 | 75739 | K8932 | 985.2 | 985.2 | NET 10 DAYS |
| CEDAR FIBER COMPANY INC | Bill to Name CEDAR FIBER COMPANY INC | 26 | 263 CEDAR FIBER COMPANY INC | 95 | 75740 | K8933 | 906.8 | 906.8 | NET 10 DAYS |
| TOTAL | BILL TO | | 263 CEDAR FIBER COMPANY INC | | | | 2701.2 | 1886 | |
| TOTAL | BILLNAME | | 263 CEDAR FIBER COMPANY INC | | | | 2701.2 | 1886 | |
| CEREAL BYPRODUCT CO | Bill to Name CEREAL BYPRODUCT CO | 49 | 495 CEREAL BYPRODUCT CO | 221 | 75734 | | 1743.24 | 1743.24 | NET 10 DAYS |
| TOTAL | BILL TO | | 495 CEREAL BYPRODUCT CO | | | | 1743.24 | 1743.24 | |
| TOTAL | BILLNAME | | 495 CEREAL BYPRODUCT CO | | | | 1743.24 | 1743.24 | |
| CONAGRA FOODS  FSC AP | Bill to Name CONAGRA FOODS  FSC AP | 11 | 118 CONAGRA FOODS  FSC AP | | CJA0000194 | | 0 | 903.79 | |
| TOTAL | BILL TO | | 118 CONAGRA FOODS  FSC AP | | | | 0 | 903.79 | |
| TOTAL | BILLNAME | | 118 CONAGRA FOODS  FSC AP | | | | 0 | 903.79 | |
| CRAFTMARK BAKERY LLC | Bill to Name CRAFTMARK BAKERY LLC | 240 | 2403 CRAFTMARK BAKERY LLC | 521 | 75705 | PO66770 | 30707.5 | 30707.5 | NET 30 DAYS |
| TOTAL | BILL TO | | 2403 CRAFTMARK BAKERY LLC | | | | 30707.5 | 30707.5 | |
| TOTAL | BILLNAME | | 2403 CRAFTMARK BAKERY LLC | | | | 30707.5 | 30707.5 | |
| DAYTON FOODS | Bill to Name DAYTON FOODS | 72 | 726 DAYTON FOODS | 707 | 75776 | 37 57565 | 144458.37 | 144458.37 | NET 30 DAYS |
| TOTAL | BILL TO | | 726 DAYTON FOODS | | | | 144458.37 | 144458.37 | |
| TOTAL | BILLNAME | | 726 DAYTON FOODS | | | | 144458.37 | 144458.37 | |
| DEAN DAIRY ICE CREAM LLC | Bill to Name DEAN DAIRY ICE CREAM LLC | 251 | 2514 DEAN DAIRY ICE CREAM LLC | 640 | 74852 | 41615558 | 179132.64 | 25861.11 | 2% 15 NET 60 |
| DEAN DAIRY ICE CREAM LLC | Bill to Name DEAN DAIRY ICE CREAM LLC | 251 | 2514 DEAN DAIRY ICE CREAM LLC | 640 | 75786 | 34830645 | 34553.6 | 34553.6 | 2% 15 NET 60 |
| TOTAL | BILL TO | | 2514 DEAN DAIRY ICE CREAM LLC | | | | 213686.24 | 8692.49 | |
| TOTAL | BILLNAME | | 2514 DEAN DAIRY ICE CREAM LLC | | | | 213686.24 | 8692.49 | |
| ETEX FIBER SUPPLY LLC | Bill to Name ETEX FIBER SUPPLY LLC | 253 | 2539 ETEX FIBER SUPPLY LLC | 668 | 75728 | | 1689.4 | 1689.4 | NET 10 DAYS |
| ETEX FIBER SUPPLY LLC | Bill to Name ETEX FIBER SUPPLY LLC | 253 | 2539 ETEX FIBER SUPPLY LLC | 668 | 75783 | | 1647.2 | 1647.2 | NET 10 DAYS |
| TOTAL | BILL TO | | 2539 ETEX FIBER SUPPLY LLC | | | | 3336.6 | 3336.6 | |
| TOTAL | BILLNAME | | 2539 ETEX FIBER SUPPLY LLC | | | | 3336.6 | 3336.6 | |
| FERVALUE USA INC | Bill to Name FERVALUE USA INC | 257 | 2579 FERVALUE USA INC | 717 | 75737 | 9330101020 2 | 23865 | 23865 | NET 45 DAYS |
| TOTAL | BILL TO | | 2579 FERVALUE USA INC | | | | 23865 | 23865 | |
| TOTAL | BILLNAME | | 2579 FERVALUE USA INC | | | | 23865 | 23865 | |
| FIELDS PIES | Bill to Name FIELDS PIES | 32 | 324 FIELDS PIES | 130 | 75701 | 09202022C | 220352 | 220352 | NET 60 DAYS |
| TOTAL | BILL TO | | 324 FIELDS PIES | | | | 220352 | 220352 | |
| TOTAL | BILLNAME | | 324 FIELDS PIES | | | | 220352 | 220352 | |
| GENERAL MILLS OPERATIONS LLC | Bill to Name GENERAL MILLS OPERATIONS LLC | 89 | 893 GENERAL MILLS OPERATIONS LLC | 437 | 75663 | 1250807 | 151852.8 | 151852.8 | NET 90 DAYS |
| GENERAL MILLS OPERATIONS LLC | Bill to Name GENERAL MILLS OPERATIONS LLC | 89 | 893 GENERAL MILLS OPERATIONS LLC | 437 | 75738 | 12549629 | 15446 | 15446 | NET 90 DAYS |
| GENERAL MILLS OPERATIONS LLC | Bill to Name GENERAL MILLS OPERATIONS LLC | 89 | 893 GENERAL MILLS OPERATIONS LLC | 437 | 75777 | 12561130 | 29459.08 | 29459.08 | NET 90 DAYS |
| TOTAL | BILL TO | | 893 GENERAL MILLS OPERATIONS LLC | | | | 196757.88 | 196757.88 | |
| TOTAL | BILLNAME | | 893 GENERAL MILLS OPERATIONS LLC | | | | 196757.88 | 196757.88 | |
| GLOBAL BOTTOMLINE | Bill to Name GLOBAL BOTTOMLINE | 16 | 160 GLOBAL BOTTOMLINE | 36 | 75476 | PER JOHN | 330.08 | 330.08 | NET 30 DAYS |
| TOTAL | BILL TO | | 160 GLOBAL BOTTOMLINE | | | | 330.08 | 330.08 | |
| TOTAL | BILLNAME | | 160 GLOBAL BOTTOMLINE | | | | 330.08 | 330.08 | |
| H.P. HOOD | Bill to Name H.P. HOOD | 58 | 584 H.P. HOOD | 1213005 | 75781 | 792202 | 31041.6 | 31041.6 | NET 30 DAYS |
| TOTAL | BILL TO | | 584 H.P. HOOD | | | | 31041.6 | 31041.6 | |
| TOTAL | BILLNAME | | 584 H.P. HOOD | | | | 31041.6 | 31041.6 | |
| HARRY AND DAVID CORPORATION | Bill to Name HARRY AND DAVID CORPORATION | 62 | 620 HARRY AND DAVID CORPORATION | 304 | 75753 | 4500139030 | 575 | 575 | NET 30 DAYS |
| TOTAL | BILL TO | | 620 HARRY AND DAVID CORPORATION | | | | 575 | 575 | |
| TOTAL | BILLNAME | | 620 HARRY AND DAVID CORPORATION | | | | 575 | 575 | |
| HIGH COUNTRY MERCANTILE INC | Bill to Name HIGH COUNTRY MERCANTILE INC | 254 | 2546 HIGH COUNTRY MERCANTILE INC | 676 | 75743 | 7474 | 10679.2 | 10679.2 | NET 30 DAYS |
| HIGH COUNTRY MERCANTILE INC | Bill to Name HIGH COUNTRY MERCANTILE INC | 254 | 2546 HIGH COUNTRY MERCANTILE INC | 676 | 75767 | 7475 | 11366.04 | 11366.04 | NET 30 DAYS |
| TOTAL | BILL TO | | 2546 HIGH COUNTRY MERCANTILE INC | | | | 22045.24 | 22045.24 | |
| TOTAL | BILLNAME | | 2546 HIGH COUNTRY MERCANTILE INC | | | | 22045.24 | 22045.24 | |
| HORMEL FOODS CORPORATION | Bill to Name HORMEL FOODS CORPORATION | 256 | 2567 HORMEL FOODS CORPORATION | 698 | 75053 | 4409086 | 170170 | 520 | NET 60 DAYS |
| TOTAL | BILL TO | | 2567 HORMEL FOODS CORPORATION | | | | 170170 | 520 | |
| TOTAL | BILLNAME | | 2567 HORMEL FOODS CORPORATION | | | | 170170 | 520 | |
| JOSH EARLY CANDIES | Bill to Name JOSH EARLY CANDIES | 4 | 42 JOSH EARLY CANDIES | 42000 | 75772 | 4774 | 10612.5 | 10612.5 | NET 30 DAYS |
| TOTAL | BILL TO | | 42 JOSH EARLY CANDIES | | | | 10612.5 | 10612.5 | |
| TOTAL | BILLNAME | | 42 JOSH EARLY CANDIES | | | | 10612.5 | 10612.5 | |
| KARS NUTS | Bill to Name KARS NUTS | 206 | 2066 KARS NUTS | 2066000 | 75760 | PO0021589 | 83360 | 83360 | NET 30 DAYS |
| TOTAL | BILL TO | | 2066 KARS NUTS | | | | 83360 | 83360 | |
| TOTAL | BILLNAME | | 2066 KARS NUTS | | | | 83360 | 83360 | |
| KELLOGG COMPANY | Bill to Name KELLOGG COMPANY | 221 | 2215 KELLOGG COMPANY | 2215000 | 75762 | 4203348374 | 120484.1 | 120484.1 | NET 45 DAYS |
| TOTAL | BILL TO | | 2215 KELLOGG COMPANY | | | | 120484.1 | 120484.1 | |
| TOTAL | BILLNAME | | 2215 KELLOGG COMPANY | | | | 120484.1 | 120484.1 | |
| KELLOGG USA INC NUUS | Bill to Name KELLOGG USA INC NUUS | 67 | 673 KELLOGG USA INC NUUS | 673 | 74304 | 4203030918 | 37151.18 | 336 | NET 45 DAYS |
| TOTAL | BILL TO | | 673 KELLOGG USA INC NUUS | | | | 37151.18 | 336 | |
| TOTAL | BILLNAME | | 673 KELLOGG USA INC NUUS | | | | 37151.18 | 336 | |
| KEMPS LLC VI#48062 | Bill to Name KEMPS LLC VI#48062 | 58 | 583 KEMPS LLC VI#48062 | 282 | 75754 | 732868 | 93883.2 | 93883.2 | 2% 15 NET 60 |
| TOTAL | BILL TO | | 583 KEMPS LLC VI#48062 | | | | 93883.2 | 93883.2 | |
| TOTAL | BILLNAME | | 583 KEMPS LLC VI#48062 | | | | 93883.2 | 93883.2 | |
| KRAFT HEINZ FOOD COMPANY | Bill to Name KRAFT HEINZ FOOD COMPANY | 55 | 556 KRAFT HEINZ FOOD COMPANY | 556 | 73224 | 3562485730 | 171600 | 125400 | NET 10 DAYS |
| TOTAL | BILL TO | | 556 KRAFT HEINZ FOOD COMPANY | | | | 171600 | 125400 | |
| TOTAL | BILLNAME | | 556 KRAFT HEINZ FOOD COMPANY | | | | 171600 | 125400 | |
| KROGER PROCESSING / PRGX | Bill to Name KROGER PROCESSING / PRGX | 85 | 854 KROGER PROCESSING / PRGX | 420 | 75442 | 1156485 | 3621 | 251.28 | NET 90 DAYS |
| KROGER PROCESSING / PRGX | Bill to Name KROGER PROCESSING / PRGX | 85 | 854 KROGER PROCESSING / PRGX | 420 | 75787 | 1177056 | 114072 | 114072 | NET 90 DAYS |
| TOTAL | BILL TO | | 854 KROGER PROCESSING / PRGX | | | | 117693 | 113820.72 | |
| TOTAL | BILLNAME | | 854 KROGER PROCESSING / PRGX | | | | 117693 | 113820.72 | |
| LANDSCAPERS PRIDE | Bill to Name LANDSCAPERS PRIDE | 250 | 2503 LANDSCAPERS PRIDE | 630 | 75748 | | 1329.9 | 1329.9 | CHK IN ADV. |
| TOTAL | BILL TO | | 2503 LANDSCAPERS PRIDE | | | | 1329.9 | 1329.9 | |
| TOTAL | BILLNAME | | 2503 LANDSCAPERS PRIDE | | | | 1329.9 | 1329.9 | |
| LIVING EARTH TECHNOLOGY | Bill to Name LIVING EARTH TECHNOLOGY | 62 | 625 LIVING EARTH TECHNOLOGY | 306 | 75599 | | 757 | 757 | NET 10 DAYS |

| | | | | | | Customer ID | Invoice # | Customer PO# | Original Amt | Balance Due | Terms Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LIVING EARTH TECHNOLOGY | Bill to Name LIVING EARTH TECHNOLOGY | 62 | | 625 | LIVING EARTH TECHNOLOGY | 306 | 75608 | | 811 | 811 | NET 10 DAYS |
| LIVING EARTH TECHNOLOGY | Bill to Name LIVING EARTH TECHNOLOGY | 62 | | 625 | LIVING EARTH TECHNOLOGY | 306 | 75623 | IS 126983 STKJY | 791.4 | 791.4 | NET 10 DAYS |
| LIVING EARTH TECHNOLOGY | Bill to Name LIVING EARTH TECHNOLOGY | 62 | | 625 | LIVING EARTH TECHNOLOGY | 306 | 75676 | 136083 STKJY | 770 | 770 | NET 10 DAYS |
| LIVING EARTH TECHNOLOGY | Bill to Name LIVING EARTH TECHNOLOGY | 62 | | 625 | LIVING EARTH TECHNOLOGY | 306 | 75774 | | 746.8 | 746.8 | NET 10 DAYS |
| TOTAL | BILL TO | | | 625 | LIVING EARTH TECHNOLOGY | | | | 3876.2 | 3876.2 | |
| TOTAL | BILLNAME | | | 625 | LIVING EARTH TECHNOLOGY | | | | 3876.2 | 3876.2 | |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 53765 | | 655.2 | 655.2 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 53893 | | 798.3 | 798.3 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 53894 | | 699 | 699 | NET 10 DAYS |
| BILLNAME | DESCRIPTION | | | Bill To | Name | Customer ID | Invoice # | Customer PO# | Original Amt | Balance Due | Terms Description |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 53895 | | 605.4 | 605.4 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 54002 | | 868.2 | 868.2 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 54802 | | 678.3 | 678.3 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 54904 | | 717.9 | 717.9 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 54905 | | 733.8 | 733.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55017 | | 678 | 678 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55200 | | 679.8 | 679.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55253 | | 646.8 | 646.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55254 | | 506.4 | 506.4 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55310 | | 637.2 | 637.2 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 55367 | | 663 | 663 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56166 | | 748.5 | 748.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56167 | | 648 | 648 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56246 | | 763.8 | 763.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56319 | | 852.6 | 852.6 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56413 | | 743.1 | 743.1 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56433 | | 681.9 | 681.9 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56478 | | 660.9 | 660.9 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56479 | | 693 | 693 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56886 | | 694.5 | 694.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56933 | | 1153 | 1153 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 56966 | | 1087.5 | 1087.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57013 | | 1214 | 1214 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57014 | | 1215 | 1215 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57066 | | 1216.5 | 1216.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57159 | | 1209 | 1209 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57297 | | 1220 | 1220 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57727 | | 1300 | 1300 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57728 | | 1133 | 1133 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 57948 | | 1146 | 1146 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58095 | | 1037 | 1037 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58133 | | 1125.5 | 1125.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58173 | | 991 | 991 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58273 | | 1208.5 | 1208.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58375 | | 1227 | 1227 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58525 | | 1169.5 | 1169.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58578 | | 1150 | 1150 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 58650 | | 1018.5 | 1018.5 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 74992 | 1998 | 1087.65 | 792.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 75281 | | 865.8 | 865.8 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 75287 | | 936 | 936 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 75741 | | 1043.1 | 1043.1 | NET 10 DAYS |
| LOUISANA REDUCTION | Bill to Name LOUISANA REDUCTION | 227 | | 2275 | LOUISANA REDUCTION | 2275000 | 75780 | | 837.9 | 837.9 | NET 10 DAYS |
| TOTAL | BILL TO | | | 2275 | LOUISANA REDUCTION | | | | 41645.05 | 39764.6 | |
| TOTAL | BILLNAME | | | 2275 | LOUISANA REDUCTION | | | | 41645.05 | 39764.6 | |
| MANSFIELD WHSE SVCS | Bill to Name MANSFIELD WHSE SVCS | 66 | | 666 | MANSFIELD WHSE SVCS | 666001 | 56996 | | 882 | 882 | NET 10 DAYS |
| MANSFIELD WHSE SVCS | Bill to Name MANSFIELD WHSE SVCS | 66 | | 666 | MANSFIELD WHSE SVCS | 666001 | 65473 | PER JOHN | 432 | 432 | NET 10 DAYS |
| MANSFIELD WHSE SVCS | Bill to Name MANSFIELD WHSE SVCS | 66 | | 666 | MANSFIELD WHSE SVCS | 666001 | 65558 | PER JOHN | 216 | 216 | NET 10 DAYS |
| TOTAL | BILL TO | | | 666 | MANSFIELD WHSE SVCS | | | | 1530 | 1530 | |
| TOTAL | BILLNAME | | | 666 | MANSFIELD WHSE SVCS | | | | 1530 | 1530 | |
| MOLINA'S MEXICAN | Bill to Name MOLINA'S MEXICAN | 154 | | 1545 | MOLINA'S MEXICAN | 1545000 | 75757 | EMAIL | 206.93 | 206.93 | NET 10 DAYS |
| TOTAL | BILL TO | | | 1545 | MOLINA'S MEXICAN | | | | 206.93 | 206.93 | |
| TOTAL | BILLNAME | | | 1545 | MOLINA'S MEXICAN | | | | 206.93 | 206.93 | |
| NEWELL ATKINSON | Bill to Name NEWELL ATKINSON | 50 | | 501 | NEWELL ATKINSON | 346 | 66163 | | 2204.4 | 1504.48 | NET 10 DAYS |
| NEWELL ATKINSON | Bill to Name NEWELL ATKINSON | 50 | | 501 | NEWELL ATKINSON | 346 | 68344 | | 750 | 750 | NET 10 DAYS |
| NEWELL ATKINSON | Bill to Name NEWELL ATKINSON | 50 | | 501 | NEWELL ATKINSON | | CIA0000179 | | 0 | 4207.2 | |
| NEWELL ATKINSON | Bill to Name NEWELL ATKINSON | 50 | | 501 | NEWELL ATKINSON | 346 | 75566 | | 531 | 531 | NET 10 DAYS |
| TOTAL | BILL TO | | | 501 | NEWELL ATKINSON | | | | 3485.4 | 1421.72 | |
| TOTAL | BILLNAME | | | 501 | NEWELL ATKINSON | | | | 3485.4 | 1421.72 | |
| NORTHERN GOLD FOODS LTD | Bill to Name NORTHERN GOLD FOODS LTD | 65 | | 657 | NORTHERN GOLD FOODS LTD | 657 | 75785 | 2672 | 33622 | 33622 | NET 30 DAYS |
| TOTAL | BILL TO | | | 657 | NORTHERN GOLD FOODS LTD | | | | 33622 | 33622 | |
| TOTAL | BILLNAME | | | 657 | NORTHERN GOLD FOODS LTD | | | | 33622 | 33622 | |
| PECAN DELUXE CANDY CO. | Bill to Name PECAN DELUXE CANDY CO. | 10 | | 107 | PECAN DELUXE CANDY CO. | 107000 | 68964 | 18781 | 56448 | 39456 | NET 30 DAYS |
| PECAN DELUXE CANDY CO. | Bill to Name PECAN DELUXE CANDY CO. | 10 | | 107 | PECAN DELUXE CANDY CO. | 107000 | 74424 | 141683 | 57330 | 14391 | NET 30 DAYS |
| PECAN DELUXE CANDY CO. | Bill to Name PECAN DELUXE CANDY CO. | 10 | | 107 | PECAN DELUXE CANDY CO. | 107000 | 75730 | 149220 | 69225.9 | 69225.9 | NET 30 DAYS |
| PECAN DELUXE CANDY CO. | Bill to Name PECAN DELUXE CANDY CO. | 10 | | 107 | PECAN DELUXE CANDY CO. | 107000 | 75761 | 149311 | 73553 | 73553 | NET 30 DAYS |
| TOTAL | BILL TO | | | 107 | PECAN DELUXE CANDY CO. | | | | 256556.9 | 88931.9 | |
| TOTAL | BILLNAME | | | 107 | PECAN DELUXE CANDY CO. | | | | 256556.9 | 88931.9 | |
| PERRY'S ICE CREAM | Bill to Name PERRY'S ICE CREAM | 132 | | 1326 | PERRY'S ICE CREAM | 1326001 | 75717 | 27983 | 39752.6 | 39752.6 | NET 30 DAYS |
| TOTAL | BILL TO | | | 1326 | PERRY'S ICE CREAM | | | | 39752.6 | 39752.6 | |
| TOTAL | BILLNAME | | | 1326 | PERRY'S ICE CREAM | | | | 39752.6 | 39752.6 | |
| PHILLIPS CANDY HOUSE INC | Bill to Name PHILLIPS CANDY HOUSE INC | 250 | | 2506 | PHILLIPS CANDY HOUSE INC | | CIA0000201 | | 0 | 2435.19 | |
| TOTAL | BILL TO | | | 2506 | PHILLIPS CANDY HOUSE INC | | | | 0 | 2435.19 | |
| TOTAL | BILLNAME | | | 2506 | PHILLIPS CANDY HOUSE INC | | | | 0 | 2435.19 | |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73288 | | 50684.8 | 9925.09 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73289 | | 2830.5 | 529.04 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73290 | | 21652.2 | 4647.2 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73291 | | 18680.3 | 4093.2 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73292 | | 18085.8 | 3450.41 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 73293 | | 1278.1 | 194.5 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 74950 | APRIL CONSUM | 3415.35 | 3415.35 | DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | | 2493 | PURE AND NATURAL FOOD | 617 | 75445 | AUGUST LABOR | 45980.19 | 45980.19 | DUE ON RECEIPT OF I |

{00010107:1}

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75446 | SEPTEMBER LA | 60183.02 | 60183.02 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75758 | OCTOBER 2022 | 14193.5 | 14193.5 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75759 | NOVEMBER 202 | 1666.38 | 1666.38 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75763 | OCTOBER 2022 | 60940.95 | 60940.95 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75764 | NOVEMBER 202 | 51463.63 | 51463.63 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75765 | DECEMBER 2022 | 55450.21 | 55450.21 DUE ON RECEIPT OF I |
| PURE AND NATURAL FOOD | Bill to Name PURE AND NATURAL FOOD | 249 | 2493 | PURE AND NATURAL FOOD | 617 | 75769 | DECEMBER 2022 | 2954.37 | 2954.37 DUE ON RECEIPT OF I |
| TOTAL | BILL TO | | 2493 | PURE AND NATURAL FOOD | | | | 396685.3 | 306313.04 |
| TOTAL | BILLNAME | | 2493 | PURE AND NATURAL FOOD | | | | 396685.3 | 306313.04 |
| QUEST NUTRITION | Bill to Name QUEST NUTRITION | 242 | 2429 | QUEST NUTRITION | 545 | 75768 | PON0037292 1 | 187.88 | 187.88 NET 30 DAYS |
| TOTAL | BILL TO | | 2429 | QUEST NUTRITION | | | | 187.88 | 187.88 |
| TOTAL | BILLNAME | | 2429 | QUEST NUTRITION | | | | 187.88 | 187.88 |
| RUSSELL STOVER CANDIES | Bill to Name RUSSELL STOVER CANDIES | 55 | 553 | RUSSELL STOVER CANDIES | 138003 | 75727 | 5400008968 | 172646.4 | 172646.4 NET 30 DAYS |
| TOTAL | BILL TO | | 553 | RUSSELL STOVER CANDIES | | | | 172646.4 | 172646.4 |
| TOTAL | BILLNAME | | 553 | RUSSELL STOVER CANDIES | | | | 172646.4 | 172646.4 |

| BILLNAME | DESCRIPTION | | Bill To | Name | Customer ID | Invoice # | Customer PO# | Original Amt | Balance Due Terms Description |
|---|---|---|---|---|---|---|---|---|---|
| SANDERS CANDY LLC | Bill to Name SANDERS CANDY LLC | 251 | 2517 | SANDERS CANDY LLC | | CIA0000168 | | 0 | 150 |
| SANDERS CANDY LLC | Bill to Name SANDERS CANDY LLC | 251 | 2517 | SANDERS CANDY LLC | 643 | 75704 | 220389 | 29661 | 29661 NET 30 DAYS |
| TOTAL | BILL TO | | 2517 | SANDERS CANDY LLC | | | | 29661 | 29511 |
| TOTAL | BILLNAME | | 2517 | SANDERS CANDY LLC | | | | 29661 | 29511 |
| SCHULZE & BURCH BISCUIT CO. | Bill to Name SCHULZE & BURCH BISCUIT CO. | 251 | 2510 | SCHULZE & BURCH BISCUIT CO. | 636 | 75736 | I 059316 | 103520 | 103520 NET 45 DAYS |
| TOTAL | BILL TO | | 2510 | SCHULZE & BURCH BISCUIT CO. | | | | 103520 | 103520 |
| TOTAL | BILLNAME | | 2510 | SCHULZE & BURCH BISCUIT CO. | | | | 103520 | 103520 |
| SITEONE LANDSCAPE SUPPLY,LLC | Bill to Name SITEONE LANDSCAPE SUPPLY,LLC | 73 | 738 | SITEONE LANDSCAPE SUPPLY,LLC | 371 | 75752 | 39099414 | 1003.2 | 1003.2 NET 10 DAYS |
| SITEONE LANDSCAPE SUPPLY,LLC | Bill to Name SITEONE LANDSCAPE SUPPLY,LLC | 73 | 738 | SITEONE LANDSCAPE SUPPLY,LLC | 371 | 75775 | 39125201 | 1073.8 | 1073.8 NET 10 DAYS |
| TOTAL | BILL TO | | 738 | SITEONE LANDSCAPE SUPPLY,LLC | | | | 2077 | 2077 |
| TOTAL | BILLNAME | | 738 | SITEONE LANDSCAPE SUPPLY,LLC | | | | 2077 | 2077 |
| SNRA COMMODITIES | Bill to Name SNRA COMMODITIES | 82 | 827 | SNRA COMMODITIES | 411 | 71457 | 51520 | 16464 | 16464 NET 30 DAYS |
| TOTAL | BILL TO | | 827 | SNRA COMMODITIES | | | | 16464 | 16464 |
| TOTAL | BILLNAME | | 827 | SNRA COMMODITIES | | | | 16464 | 16464 |
| SNRA COMMODITIES INC | Bill to Name SNRA COMMODITIES INC | 249 | 2498 | SNRA COMMODITIES INC | 622 | 69396 | 52119 | 16800 | 16800 NET 30 DAYS |
| TOTAL | BILL TO | | 2498 | SNRA COMMODITIES INC | | | | 16800 | 16800 |
| TOTAL | BILLNAME | | 2498 | SNRA COMMODITIES INC | | | | 16800 | 16800 |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 73987 | 176672 | 68040 | 59535 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74048 | 176700 | 45360 | 45360 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74081 | 176727 | 37800 | 37800 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74154 | 176824 | 30240 | 30240 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74184 | 176886 | 60480 | 60480 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74215 | 177006 | 60480 | 60480 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74243 | 177039 | 22680 | 22680 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74252 | 177046 | 22680 | 22680 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74318 | 177149 | 22680 | 22680 NET 30 DAYS |
| TABLE TALK INC. | Bill to Name TABLE TALK INC. | 160 | 1606 | TABLE TALK INC. | 1606000 | 74508 | 177295 | 15120 | 15120 NET 30 DAYS |
| TOTAL | BILL TO | | 1606 | TABLE TALK INC. | | | | 385560 | 377055 |
| TOTAL | BILLNAME | | 1606 | TABLE TALK INC. | | | | 385560 | 377055 |
| TEXAS STAR NUT & FOOD CO | Bill to Name TEXAS STAR NUT & FOOD CO | 223 | 2235 | TEXAS STAR NUT & FOOD CO | 2235000 | 75643 | PO22 1039 | 31600 | 31600 NET 60 DAYS |
| TEXAS STAR NUT & FOOD CO | Bill to Name TEXAS STAR NUT & FOOD CO | 223 | 2235 | TEXAS STAR NUT & FOOD CO | 2235000 | 75742 | PO22 1039 | 31600 | 31600 NET 60 DAYS |
| TOTAL | BILL TO | | 2235 | TEXAS STAR NUT & FOOD CO | | | | 63200 | 63200 |
| TOTAL | BILLNAME | | 2235 | TEXAS STAR NUT & FOOD CO | | | | 63200 | 63200 |
| THE SYGMA NETWORK CORP OFFICE | Bill to Name THE SYGMA NETWORK CORP OFFICE | 42 | 428 | THE SYGMA NETWORK CORP OFFICE | 187 | 75675 | 1554SC44 | 18961.2 | 18961.2 NET 30 DAYS |
| THE SYGMA NETWORK CORP OFFICE | Bill to Name THE SYGMA NETWORK CORP OFFICE | 42 | 428 | THE SYGMA NETWORK CORP OFFICE | 187 | 75732 | 17463C44 | 18961.2 | 18961.2 NET 30 DAYS |
| TOTAL | BILL TO | | 428 | THE SYGMA NETWORK CORP OFFICE | | | | 37922.4 | 37922.4 |
| TOTAL | BILLNAME | | 428 | THE SYGMA NETWORK CORP OFFICE | | | | 37922.4 | 37922.4 |
| TUCKER INTERNATIONAL INC | Bill to Name TUCKER INTERNATIONAL INC | 253 | 2533 | TUCKER INTERNATIONAL INC | 662 | 75698 | 14150 | 208696.5 | 208696.5 NET 30 DAYS |
| TOTAL | BILL TO | | 2533 | TUCKER INTERNATIONAL INC | | | | 208696.5 | 208696.5 |
| TOTAL | BILLNAME | | 2533 | TUCKER INTERNATIONAL INC | | | | 208696.5 | 208696.5 |
| U.S. PECAN TRADING CO LTD | Bill to Name U.S. PECAN TRADING CO LTD | 226 | 2268 | U.S. PECAN TRADING CO LTD | 2268000 | 54111 | | 765.44 | 158.68 NET 10 DAYS |
| U.S. PECAN TRADING CO LTD | Bill to Name U.S. PECAN TRADING CO LTD | 226 | 2268 | U.S. PECAN TRADING CO LTD | 2268000 | 56209 | | 510 | 510 NET 10 DAYS |
| TOTAL | BILL TO | | 2268 | U.S. PECAN TRADING CO LTD | | | | 1275.44 | 668.68 |
| TOTAL | BILLNAME | | 2268 | U.S. PECAN TRADING CO LTD | | | | 1275.44 | 668.68 |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75527 | 4505037178 | 194040 | 194040 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75563 | 4505091607 | 194040 | 194040 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75578 | 4505091608 | 194040 | 194040 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75625 | 4505121045 | 121275 | 121275 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75731 | 4505138249 | 194040 | 194040 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75779 | 4505155240 | 89817 | 89817 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 222 | 2228 | UNILEVER NORTH AMERICAN | 2228000 | 75784 | 4505171502 | 161700 | 161700 NET 90 DAYS |
| TOTAL | BILL TO | | 2228 | UNILEVER NORTH AMERICAN | | | | 1148952 | 1148952 |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75307 | 4505027947 | 43024 | 688 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75537 | 4505103688 | 48363 | 48363 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75538 | 4505103691 | 13141.8 | 13141.8 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75543 | 4505091468 | 42336 | 42336 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75636 | 4505130173 | 33868.8 | 33868.8 NET 90 DAYS |
| UNILEVER NORTH AMERICAN | Bill to Name UNILEVER NORTH AMERICAN | 232 | 2326 | UNILEVER NORTH AMERICAN | 2326000 | 75788 | 4505186879 | 42336 | 42336 NET 90 DAYS |
| TOTAL | BILL TO | | 2326 | UNILEVER NORTH AMERICAN | | | | 223069.6 | 179357.6 |
| TOTAL | BILLNAME | | 2228 | UNILEVER NORTH AMERICAN | | | | 1372021.6 | 1328309.6 |
| VM PALLETS BUY & SALE | Bill to Name VM PALLETS BUY & SALE | 257 | 2574 | VM PALLETS BUY & SALE | 712 | 75691 | N/A | 267.75 | 267.75 CHK IN ADV. |
| TOTAL | BILL TO | | 2574 | VM PALLETS BUY & SALE | | | | 267.75 | 267.75 |
| TOTAL | BILLNAME | | 2574 | VM PALLETS BUY & SALE | | | | 267.75 | 267.75 |
| WINFREY'S FUDGE | Bill to Name WINFREY'S FUDGE | 233 | 2337 | WINFREY'S FUDGE | 2337000 | 75773 | PER EMAILS | 12503 | 12503 NET 10 DAYS |
| TOTAL | BILL TO | | 2337 | WINFREY'S FUDGE | | | | 12503 | 12503 |
| TOTAL | BILLNAME | | 2337 | WINFREY'S FUDGE | | | | 12503 | 12503 |
| TOTAL | REPORT | | 2478 | ARMADA WAREHOUSE SOLUTIONS | | | | 5073600.98 | 4037645 |

{00010107:1}

**TO BE SUPPLEMENTED**

| BILLNAME | DESCRIPTION | | Bill To | Name | Customer I | Invoice # | Customer PO# | Original Amt | Balance Due | Terms Description |
|---|---|---|---|---|---|---|---|---|---|---|
| APPLE VALLEY FOODS | Bill to Name APPLE VALLEY FOODS | 64 | 648 | APPLE VALLEY FOODS | 331 | 75279 | 001965 00 | 236352 | 24.04 | WIRE IN ADVANCE |
| TOTAL | BILL TO | | 648 | APPLE VALLEY FOODS | | | | 236352 | 24.04 | |
| TOTAL | BILLNAME | | 648 | APPLE VALLEY FOODS | | | | 236352 | 24.04 | |
| BARGUES AGRO INDUSTRIES***** | Bill to Name BARGUES AGRO INDUSTRIES***** | 160 | 1603 | BARGUES AGRO INDUSTRIES***** | 1603000 | 75718 | | 205254 | 205254 | CASH AGAINST DOCUME |
| TOTAL | BILL TO | | 1603 | BARGUES AGRO INDUSTRIES***** | | | | 205254 | 205254 | |
| TOTAL | BILLNAME | | 1603 | BARGUES AGRO INDUSTRIES***** | | | | 205254 | 205254 | |
| DELINUTS BV **** | Bill to Name DELINUTS BV **** | 201 | 2015 | DELINUTS BV **** | 2015000 | 75782 | IOR2202879 | 202500 | 202500 | WIRE TRANSFER UPON E |
| TOTAL | BILL TO | | 2015 | DELINUTS BV **** | | | | 202500 | 202500 | |
| TOTAL | BILLNAME | | 2015 | DELINUTS BV **** | | | | 202500 | 202500 | |
| INTERSNACK PROCUREMENT BV*** | Bill to Name INTERSNACK PROCUREMENT BV*** | 2 | 294 | INTERSNACK PROCUREMENT BV*** | 111 | 75596 | 4075802001 | 237330 | 237330 | NET 60 DAYS |
| TOTAL | BILL TO | | 294 | INTERSNACK PROCUREMENT BV*** | | | | 237330 | 237330 | |
| TOTAL | BILLNAME | | 294 | INTERSNACK PROCUREMENT BV*** | | | | 237330 | 237330 | |
| KING NUT & RAAPHORST BV***** | Bill to Name KING NUT & RAAPHORST BV***** | 123 | 1230 | KING NUT & RAAPHORST BV***** | 497 | 75751 | B22008876 1 | 202500 | 202500 | CASH AGAINST DOCUME |
| TOTAL | BILL TO | | 1230 | KING NUT & RAAPHORST BV***** | | | | 202500 | 202500 | |
| TOTAL | BILLNAME | | 1230 | KING NUT & RAAPHORST BV***** | | | | 202500 | 202500 | |
| OILSEED S.R.O | Bill to Name OILSEED S.R.O | 258 | 2582 | OILSEED S.R.O | 719 | 75710 | | 226800 | 204145 | SPECIAL TERMS |
| TOTAL | BILL TO | | 2582 | OILSEED S.R.O | | | | 226800 | 204145 | |
| TOTAL | BILLNAME | | 2582 | OILSEED S.R.O | | | | 226800 | 204145 | |
| SHEKARCHI LTD. ****** | Bill to Name SHEKARCHI LTD. ****** | 125 | 1254 | SHEKARCHI LTD. ****** | 1254000 | 74981 | TS022313 1 | 145200 | 27369 | CASH AGAINST DOCUME |
| TOTAL | BILL TO | | 1254 | SHEKARCHI LTD. ****** | | | | 145200 | 27369 | |
| TOTAL | BILLNAME | | 1254 | SHEKARCHI LTD. ****** | | | | 145200 | 27369 | |
| TOTALLY NUTS & MORE INC** | Bill to Name TOTALLY NUTS & MORE  INC** | 18 | 180 | TOTALLY NUTS & MORE INC** | 49 | 75340 | 005950 2 | 70616 | 704.76 | NET 30 DAYS |
| TOTAL | BILL TO | | 180 | TOTALLY NUTS & MORE INC** | | | | 70616 | 704.76 | |
| TOTAL | BILLNAME | | 180 | TOTALLY NUTS & MORE INC** | | | | 70616 | 704.76 | |
| TOTAL | REPORT | | 648 | APPLE VALLEY FOODS | | | | 1526552 | 1079778.72 | |

{00010107:1}

**TO BE SUPPLEMENTED**

## Schedule 2.1(j) – Prepaid Assets

**Ambris (Lloyds of London)**

Insurance Policy: Storm Buyback Policy
Amount Prepaid: $74,178.88
Coverage for period: 1/1/2023 - 12/31/2023

**McGill (Lloyds of London)**

Insurance Policy: Stock Policy
Amount Prepaid: $174,394.00
Coverage for period: 1/1/2023 - 12/31/2023

**Bailey Insurance and Risk Management Inc.**

Address: 1201 Washington Ave
         Waco, TX 76701

Insurance Policy: Product Recall Insurance
Amount Prepaid: $13,001.96
Coverage for period: 1/1/2023 - 12/31/2023

**Evolution Insurance Partners**

Address: PO Box 310508
         New Braunfels, TX 78131

Insurance Policy: Directors and Officers Policy
Amount Prepaid: $21,055.00
Coverage for period: 1/1/2023 - 12/31/2023

### Schedule 2.1(l) – Real Property

#### Legal Description

All that certain lot, tract or parcel of land situated in the J. Peoples Survey, Abstract No. 9, Navarro County, Texas, being all of a called 22.321 acre tract described by deed recorded in Volume 877, Page 743, being part of a called 4.629 acre tract described by deed recorded in Volume 823, Page 135, being the abandoned portion of Powell Pike Street recorded in Volume 1463, Page 562, being a certain tract recorded in Volume 1448, Page 376, being part of Lots 8, 9, 10, 11, 12 and 13, Block C of the Parkdale Addition recorded in Volume 439, Page 16 and further described by deeds recorded in Volume 1448, Page 376, Volume 1555, Page 734, Instrument No. 2008-5112, Volume 1418, Page 483 (Tracts One and Two) of the Deed Records of Navarro County, Texas.  Said tract or parcel of land being more fully described by metes and bounds as follows:

BEGINNING on a set 1/2" iron rod for the southeast corner of this tract and the above-mentioned abandoned Powell Pike Street located in the St. Louis and Southwestern Railroad R.O.W.; Witness: N28° 32' 55" E 20.1 feet, a found 1/2" iron rod located on the north ROW of the St. Louis and Southwestern Railroad;

THENCE with said abandoned Powell Pike Street N86° 49' 12" W 1320.43 feet to the southwest corner of this tract; Witness: N36° 36' 56" E 22.9 feet, a found 6od nail on said north railroad R.O.W.;

THENCE N36° 36' 56" E 391.03 feet to an angle corner of this tract; Witness: S36° 36' 56" W 23.0 feet, a set 1" iron pipe;

THENCE N07° 33' 11" E 33.31 feet to an ell corner of this tract; Witness: N83° 10' 45" W 2.2 feet, a 2" pipe post;

THENCE S83° 10' 45" E 126.76 feet to an ell corner of this tract; Witness: S83° 10' 45" E 1.8 feet, a 2" pipe post;

THENCE N06° 43' 46" E 95.86 feet to a set 1/2" iron rod for an ell corner of this tract;

THENCE N82° 26' 50" W 125.37 feet to a set 1/2" iron rod for an ell corner of this tract located on the east line of Valley Drive;

THENCE with said east line N07° 33' 11" E 198.37 feet to a found 1" iron rod for an ell corner of this tract located on said east line of Valley Drive;

THENCE S82° 23' 25" E 122.88 feet to a found 1/2" iron rod for an ell corner of this tract;

THENCE N08° 00' 04" E 50.00 feet to a set 1/2" iron rod for an ell corner of this tract;

{00010107:1}

THENCE N82 ° 23' 25" W 123.27 feet to a set 1/2" iron rod for an ell corner of this tract located on said east line of Valley Drive;
THENCE with said east line N07° 33' 11" E 49.97 feet to a set 1/2" iron rod for an ell corner of this tract;

THENCE S82° 23' 25" E 123.66 feet to a found 1/2" iron rod for an ell corner of this tract;

THENCE N05° 49' 58" E 50.77 feet to a found 1" iron pipe for an ell corner of this tract;

THENCE S83° 17' 39" E 25.49 feet to a found 1" iron pipe for an ell corner of this tract;

THENCE N07° 19' 55" E 113.04 feet to a found 1" iron pipe for the northwest corner of this tract located on the south ROW of State Highway No. 31;

THENCE with said ROW S88° 05' 40" E 149.98 feet, N88° 14' 20" E 150.20 feet, N85° 46' 47" E 126.03 feet, S04° 03' 18" W 12.40 feet, N82° 05' 18" E 295.35 feet and N67 ° 30' 15" E 63.25 feet to the most northerly northeast corner of this tract; Witness:  N03 ° 54' 23" W 0.9 feet, a found T-Post;

THENCE S03° 54' 23" E 299.90 feet to a fence corner for an ell corner of this tract;

THENCE N77° 59' 42" E 300.39 feet to a found 1/2" iron rod for the most easterly northeast corner of this tract;

THENCE S04° 00' 35" E 319.63 feet to a found 1/2" iron rod for an angle corner of this tract;

THENCE S28° 32' 55" W 525.49 feet to the PLACE OF BEGINNING and containing 25.27 acres of land.

**TO BE SUPPLEMENTED**

## Schedule 2.4(k) – Truist Non-Purchased Accounts Receivable

None.

**TO BE SUPPLEMENTED**

## Schedule 4.1(b) – Seller Business Jurisdictions

State of Texas

County of Navarro

2131 East Highway 31, Corsicana, Texas 75109

Debtor is also registered to do business in Minnesota and New Jersey

**TO BE SUPPLEMENTED**

## Schedule 4.1(c) – Seller's Corporate Organizational Chart

Navarro Pecan Company, Inc. is owned by:

>    Estate of George Martin, (49%)

>    Collin Street Bakery (49%)

>    Estate of Jasper B. Sanfilippo (2%).


Pecan Producers International, Inc. is a wholly-owned subsidiary of Seller.

**TO BE SUPPLEMENTED**

### Schedule 4.3 – Seller's Consents

APA transactions may require consents by governmental entities or may require Buyer to seek a new permit or license, of which Buyer is aware.

**TO BE SUPPLEMENTED**

## Schedule 4.4 – Compliance with Law

APA transactions may require consents by governmental entities or may require Buyer to seek a new permit or license, of which Buyer is aware.

**TO BE SUPPLEMENTED**

## Schedule 4.8 – Material Contracts

| Counterparty Name | Counterparty Address | Description of Contract/Lease |
|---|---|---|
| 3M Partners | c/o Mark Franks, PO Box 147, Corsicana, TX 75151-0147 | Apartment Lease |
| A T & T | P.O. BOX 5001, CAROL STREAM, IL 60197-5001 | Utilities - Phones |
| A T & T | P.O. BOX 5014, CAROL STREAM, IL 60197-5014 | Agreement re Fire Alarms |
| A. L. SCHUTZMAN | N21 W23560 RIDGEVIEW, PARKWAY WEST, WAUKESHA, WI 53188 | FANCY JR. MAMMOTH PECAN HALVES |
| A. L. SCHUTZMAN | N21 W23560 RIDGEVIEW, PARKWAY WEST, WAUKESHA, WI 53188 | FANCY JUMBO PECAN HALVES |
| AETNA | 151 Farmington Ave, Hartford, CT 06156 | Employee Health Insurance |
| AFLAC | ATTN: REMITTANCE PROC SVCS, 1932 WYNNTON ROAD, COLUMBUS, GA 31999-0001 | Disability/Supplemental Benefits |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY JR. MAMMOTH PECAN HALVES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY MEDIUM PECAN PIECES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY LARGE PECAN PIECES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY JR. MAMMOTH PECAN HALVES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY TOPPER PECAN HALVES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY MEDIUM PECAN PIECES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY SMALL PECAN PIECES |
| ALBANESE CONFECTIONARY | 5441 E. LINCOLN HWY., MERRILLVILLE, IN 46410 | FANCY LARGE PECAN PIECES |
| AMERIFLEX | P.O. BOX 871655, KANSAS CITY, MO 64187-1655 | COBRA Health |
| APPLE VALLEY FOODS | P.O. BOX 516, KENTVILLE, NS B4N 3X3 | FANCY TOPPER PECAN HALVES |
| APPLE VALLEY FOODS | P.O. BOX 516, KENTVILLE, NS B4N 3X3 | FANCY TOPPER PECAN HALVES |
| APPLE VALLEY FOODS | P.O. BOX 516, KENTVILLE, NS B4N 3X3 | FANCY MEDIUM PECAN PIECES |

| APPLE VALLEY FOODS | P.O. BOX 516, KENTVILLE, NS B4N 3X3 | FANCY TOPPER PECAN HALVES |
|---|---|---|
| ASPIRE BAKERIES LLC | 6500 OVERLAKE PLACE, NEWARK, CA 94560 | FANCY MEDIUM PECAN PIECES |
| ASPIRE BAKERIES LLC | 6500 OVERLAKE PLACE, NEWARK, CA 94560 | FANCY LARGE PECAN PIECES |
| ATMOS ENERGY | P.O. Box 790311, Saint Louis, MO 63179-0311 | Utilities - Gas |
| BEST FOOD COMPANY | P.O. BOX 10602, DUBAI, UAE | FANCY MAMMOTH PECAN HALVES |
| BEST FOOD COMPANY | P.O. BOX 10602, DUBAI, UAE | FANCY MAMMOTH PECAN HALVES |
| BILL MILLER BAR-B-QUE | 301 SOUTH FLORES STREET, SAN ANTONIO, TX 78204 | FANCY LARGE PECAN PIECES |
| C.J. DANNEMILLER COMPANY | 5300 HAMETOWN ROAD, NORTON, OH 44203 | FANCY JR. MAMMOTH PECAN HALVES |
| C.J. DANNEMILLER COMPANY | 5300 HAMETOWN ROAD, NORTON, OH 44203 | FANCY MEDIUM PECAN PIECES |
| CAPITOL FOODS CO LLC | 13930 MICA STREET, SANTA FE SPRINGS, CA 90670 | FANCY MEDIUM PECAN PCS ROASTED |
| CHICAGO RABBINICAL | COUNCIL (CRC), 2701 W. HOWARD STREET, CHICAGO, IL 60645 | Agreement re Kosher Certification |
| COMPUTHINK | 151 E. 22ND. STREET, LOMBARD, IL 60148 | Document Management Software |
| CONAGRA FOODS FSC AP | 6 CONAGRA DRIVE, BLDG 6, OMAHA, NE 68102 | FANCY X-LARGE PECAN PIECES RST |
| CONAGRA FOODS FSC AP | 6 CONAGRA DRIVE, BLDG 6, OMAHA, NE 68102 | FANCY SMALL PECAN PIECES |
| CREATIVE SNACKS CO | 4165 MENDENHALL OAKS PKWY, INDIANAPOLIS, IN 46241 | FANCY JR. MAMMOTH PECAN HALVES |
| CREATIVE SNACKS CO | 4165 MENDENHALL OAKS PKWY, INDIANAPOLIS, IN 46241 | FANCY JR. MAMMOTH PECAN HALVES DRNS |
| DELINUTS BV | PO BOX 8100, 6710 AC EDE (NL) | FANCY JR. MAMMOTH PECAN HALVES |
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FANCY JR. MAMMOTH PECAN HALVES |
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FANCY JR. MAMMOTH PECAN HALVES |
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FANCY MEDIUM PECAN PIECES |
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FANCY MEDIUM PECAN PIECES |

{00010107:1}

| | | |
|---|---|---|
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FCY PECAN MEAL |
| DUTCH VALLEY FOODS | 7615 LANCASTER AVE, MYERSTOWN, PA 17067 | FCY PECAN MEAL |
| EULER HERMES | C/O FINANCE DEPT., 800 RED BROOK BLVD., OWINGS MILLS, MD 21117 | CUSTOMER CREDIT INS |
| FANNIE MAY CONFECTIONS | 5353 LAUBY ROAD, NORTH CANTON, OH 44720 | FANCY SM/MED PECAN PIECES |
| FERRARA CANDY COMPANY | 404 W HARRISON ST, SUITE 650, CHICAGO, IL 60607 | FANCY SMALL PECAN PIECES |
| FERVALUE USA INC | 7 SYLVAN WAY, PARSIPANY, NJ 07054 | FANCY MED/LRG PECAN PIECES |
| FERVALUE USA INC | 7 SYLVAN WAY, PARSIPANY, NJ 07054 | FANCY SMALL PECAN PIECES |
| FIELDS PIES | P.O. BOX 7, PAULS VALLEY, OK 73075 | FANCY TOPPER HLVS/MED PCS BLEND |
| FIELDS PIES | P.O. BOX 7, PAULS VALLEY, OK 73075 | FANCY TOPPER HLVS/MED PCS BLEND |
| FIELDS PIES | P.O. BOX 7, PAULS VALLEY, OK 73075 | FANCY TOPPER HLVS/MED PCS BLEND |
| FOCUS BRANDS | 5620 GLENRIDGE DR NE, ATLANTA, GA 30342 | FANCY MEDIUM PECAN PCS ROASTED |
| FOCUS BRANDS | 5620 GLENRIDGE DR NE, ATLANTA, GA 30342 | FANCY MEDIUM PECAN PCS ROASTED |
| GENERAL MILLS OPERATIONS LLC | PO BOX 59145, MINNEAPOLIS, MN 55459-0145 | STYLE 6 MACADMAIA |
| GENERAL MILLS OPERATIONS LLC | PO BOX 59145, MINNEAPOLIS, MN 55459-0145 | FANCY MEDIUM PECAN PIECES |
| GENERAL MILLS OPERATIONS LLC | PO BOX 59145, MINNEAPOLIS, MN 55459-0145 | FANCY SMALL PECAN PIECES |
| GLOBAL BOTTOMLINE | PO BOX 7004, GRANBURY, TX 76049 | FCY PECAN MEAL |
| GLOBAL BOTTOMLINE | PO BOX 7004, GRANBURY, TX 76049 | FANCY MIDGET PECAN PIECES |
| H.P. HOOD | 6 KIMBALL LANE, LYNNFIELD, MA 01940 | CHOICE MEDIUM PECAN PIECES RST |
| HORMEL FOODS CORPORATION | P.O. BOX 8589, ST LOUIS, MO 63126 | FANCY EX-LRG/JUMBO PECAN HALVES |
| IDV SAFESITE | 237 EAST MAIN STREET, WACONIA, MN 55387 | Offsite Data Backup Agreement |
| INTERNATIONAL DAIRY QUEEN | P.O. BOX 39286, MINNEAPOLIS, MN 55439 | FANCY LARGE PECAN PIECES B/R/S |

| | | |
|---|---|---|
| INTERSNACK PROCUREMENT BV | HAVENSTRAAT 62, AG DOETINCHEM, 7005 | FANCY JR. MAMMOTH PECAN HALVES |
| JOHN DEERE FINANCIAL | P.O. BOX 650215, DALLAS, TX 75265-0215 | |
| KARS NUTS | 1200 E 14 MILE ROAD, MADISON HEIGHTS, MI 48071 | FANCY EX-LARGE PECAN HALVES |
| KARS NUTS | 1200 E 14 MILE ROAD, MADISON HEIGHTS, MI 48071 | FANCY EX-LARGE PECAN HALVES |
| KELLOGG COMPANY | GBS CENTER, PO BOX 8881011, GRAND RAPIDS, MI 49588 | FANCY LARGE PECAN HALVES |
| KELLOGG COMPANY | GBS CENTER, PO BOX 8881011, GRAND RAPIDS, MI 49588 | FANCY JR. MAMMOTH PECAN HALVES |
| KIND HEALTHY SNACKS | P.O. BOX 705, MIDTOWN STATION, NY, NY 10018 | FANCY LARGE PECAN PIECES |
| KING NUTS&RAAPHORST BV | SPANJEWEG 4, 2411 PX BODEGRAVE (NL) | FANCY JR. MAMMOTH PECAN HALVES |
| KING NUTS&RAAPHORST BV | SPANJEWEG 4, 2411 PX BODEGRAVE (NL) | FANCY JR. MAMMOTH PECAN HALVES |
| LEON'S CANDY | 138 SECOND AVE NORTH #102, NASHVILLE, TN 37201 | FANCY TOPPER PECAN HALVES |
| METLIFE | P.O. BOX 804466, KANSAS CITY, MO 64180-4466 | Dental, Vision, Term Life, and Disability |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | BUILDING |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | BUSINESS PERSONAL |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | MACHINERY, EQUIPMENT |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | ACCOUNTS RECEIVABLE |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | BUSINESS INCOME |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | AUTO LIAB |
| NATIONWIDE AGRIBUSINESS INSURANCE | PO Box 856824, Minneapolis, MN 55485-6824 | GENERAL LIAB |
| NIDA TRADING CORP | P.O. BOX 318, WOODSTOCK, IL 60098 | FANCY TOPPER PECAN HALVES |
| NUTTOS PEANUT & POPCORN | 3807 SENECA STREET, WEST SENECA, NY 14224 | FANCY JR. MAMMOTH PECAN HALVES |
| NUTTOS PEANUT & POPCORN | 3807 SENECA STREET, WEST SENECA, NY 14224 | FANCY TOPPER PECAN HALVES |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| NUTTOS PEANUT & POPCORN | 3807 SENECA STREET, WEST SENECA, NY 14224 | FANCY MEDIUM PECAN PIECES |
| PANERA BREAD | 1600 SOUTH BENTWOOD BLVD., ST LOUIS, MO 63144 | FANCY LARGE PECAN PIECES R/NS |
| PB&H BENEFITS LLC | 401 WEST HIGHTWAY 6, P.O. BOX 20725, WACO, TX 76702-0725 | HRA/Section 125 Plan |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | FANCY MIDGET PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE LARGE PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE MEDIUM PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE SMALL PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE LARGE PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE X-LARGE PECAN PIECES |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE MEDIUM PECAN PIECES RST |
| PECAN DELUXE CANDY CO. | 2570 LONE STAR DRIVE, DALLAS, TX 75212-6308 | CHOICE MEDIUM PECAN PIECES DR |
| PECAN GROVE MARKETING LLC | 2310 NORTH HENDERSON AVE, DALLAS, TX 75206 | FANCY TOPPER PECAN HALVES |
| PERRY'S ICE CREAM | ONE ICE CREAM PLAZA, AKRON, NY 14001-0328 | CHOICE LARGE PECAN PIECES BRS |
| QUALITY BAKERY PRODUCTS INC | 14330 INTERDRIVE WEST, HOUSTON, TX 77032 | FANCY MIDGET PECAN PIECES |
| RASC MANUFACTURING AP | P.O. BOX 305255, NASHVILLE, TN 37230 | FANCY MIDGET PECAN PIECES |
| RELIANT ENERGY | P.O. BOX 120954, DALLAS, TX 75312-0954 | Utilities - Electricity |
| RUSSELL STOVER CANDIES | 4900 OAK STREET, KANSAS CITY, MO 64112 | FANCY SMALL PECAN PIECES |
| SANDERS CANDY LLC | 23770 HALL ROAD (M59), CLINTON TOWNSHIP, MI 48036 | FANCY SM/MED PECAN PIECES DRY ROASTED |
| SIMPLY GOOD FOODS USA | 1225 17TH ST SUITE 1000, DENVER, CO 80202 | FANCY SMALL PECAN PIECES |
| SOUTHEASTERN EMPLOYEE BENEFIT SERVICES | 4837 Carolina Beach Road, Suite 112, Wilmington, NC 28412 | 401k Plan |
| STEWARTS PROCESSING | PO BOX 435, SARATOGA SPRINGS, NY 12866 | FANCY EX-LARGE PECAN HALVES B/R/S |

{00010107:1}

| | | |
|---|---|---|
| STROUD SECURITY SYSTEMS LP | P.O. BOX 20157, WACO, TX 76702-0157 | Alarm Service Contract |
| SWEET STREET DESSERTS | 722 HEISTERS LANE, READING, PA 19612 | FANCY MEDIUM PECAN HALVES |
| SWEET STREET DESSERTS | 722 HEISTERS LANE, READING, PA 19612 | FANCY JUMBO PECAN HALVES |
| SWEET STREET DESSERTS | 722 HEISTERS LANE, READING, PA 19612 | FANCY MEDIUM PECAN PIECES |
| SWISS RE CORP SOL. | - | PRODUCT RECALL |
| T H FOODS INC. | 2134 HARLEM RD, LOVES PARK, IL 61111 | FCY PECAN MEAL |
| TABLE TALK INC. | 120 WASHINGTON, WORCESTER, MA 01610 | FANCY TOPPER HLVS/SM/MED PCS BLEND |
| TABLE TALK INC. | 120 WASHINGTON, WORCESTER, MA 01610 | FANCY SML/LRG MIDGET PCS BLEND |
| TEXAS MUTUAL INSURANCE | PO Box 841843, Dallas, TX 75284 | WORKERS COMP |
| THE CINCINNATI INSURANCE CO. | PO Box 145496, Cincinnati, OH 45250 | BOILER AND MACHINERY |
| TOTALLY NUTS & MORE INC | 2000 PEEL STE. 610, MONTREAL, QUEBEC H3A 2W5 | FANCY MEDIUM PECAN PIECES |
| TOYOTA TSUSHO FOODS CORP | C/O TOYOTA TSUISHO AMERICA, 1000 BROADWAY SUITE 405, OAKLAND, CA 94607 | FANCY JR. MAMMOTH PECAN HALVES |
| TRAVELERS PROPERTY CASUALTY | PO Box 660317, Dallas, TX 75266-0317 | ERISA FIDELITYBONDS |
| TRAVELERS PROPERTY CASUALTY | PO Box 660317, Dallas, TX 75266-0317 | FRAUD AND THEFT |
| TRAVELERS PROPERTY CASUALTY | PO Box 660317, Dallas, TX 75266-0317 | FOREIGN GENERAL LIAB |
| TRAVELERS PROPERTY CASUALTY | PO Box 660317, Dallas, TX 75266-0317 | UMBRELLA LIAB POLICY |
| TREEHOUSE PRIVATE BRANDS | PO BOX 19043, GREEN BAY, WI 54307 | FANCY MEDIUM PECAN PCS ROASTED |
| TROPHY NUT | 320 N. SECOND STREET, TIPP CITY OH, 45371 | FANCY JR. MAMMOTH PECAN HALVES |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FCY TOPPER MED/LRG PECAN HALVES |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FANCY JR. MAMMOTH PECAN HALVES |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FANCY X-LARGE PECAN PIECES BRS |

**TO BE SUPPLEMENTED**

| | | |
|---|---|---|
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FCY TOPPER MED/LRG PECAN HALVES & PCS |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FANCY JR. MAMMOTH PECAN HALVES |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FANCY X-LARGE PECAN PIECES BRS |
| UNILEVER ASCC AG | AAA674047626, 700 SYLVAN AVE., ENGLEWOOD CLIFFS, NJ 07632 | FANCY LARGE PECAN PIECES |
| V BESANA SPA | VIA FERROVIA 210, 80040 SAN GENNARO VESUVIANO, NAPLES | FANCY JR. MAMMOTH PECAN HALVES |

{00010107:1}

**TO BE SUPPLEMENTED**

## Schedule 4.9 – Seller's Employee Benefit Plans

Aetna – Health

Aflac – Short Term Disability

Aflac – Long Term Disability

Ameriflex – COBRA Health

Metlife – Accidental Death and Dismemberment

Metlife – Dental and Vision

Metlife – Life Insurance

Metlife – Long Term Disability

Navarro Pecan Company, Inc.- Health Reimbursement Account

PB&H Benefits LLC - Health Reimbursement Account/Section 125 Plan

Southeastern Employee Benefit Services - 401k Plan

Texas Mutual Insurance – Workers Compensation Insurance

Voya Financial – Employee 401K Plan

**<u>EXHIBIT 2</u>**

US PECAN TRADING/INVENTORY SUMMARY
AS OF 3/7/23

PG 1

### NAVARRO WAREHOUSE--CORSICANNA

| DATE | REF # | LOT # | PDS | $ | |
|------|-------|-------|-----|---|---|
| 2/21/2016 | 31035/OK2 | MA 16.16 | 43233 | $69,172.80 | TO BE CONFIRMED |
| 01/09/19 | 32338 | MA-30-19 | 42,275 | $45,657.00 | |
| 01/09/19 | 32339 | MA-31-19 | 40,602 | $32,590.30 | |
| 01/31/19 | 32781 | CRK-1-19 | 39,420 | $48,092.40 | |
| 03/19/19 | 32787 | GY 2.19 | 48,040 | $72,948.74 | |
| 03/19/19 | 32788 | GY 3.19 | 32,060 | $48,330.45 | |
| 3/26/2019 | 32643 | NEX 8332643 | 44,891 | $91,101.80 | |
| 3/26/2019 | 32500 | NEX 5932500 | 43,739 | $68,845.19 | |
| 3/26/2019 | 32975 | NEX 1273297 | 43,894 | $62,083.67 | |
| 5/25/2019 | 32573 | MA 138.19 | 33366 | $27,026.46 | |
| 8/28/2019 | 32890 | PA 18.19 | 44,000 | $6,600.00 | |
| 5/29/2020 | 33836 | MA 163.20 | 44,290 | $23,473.70 | |
| 5/29/2020 | 33848 | CR 3.20 | 45,180 | $38,403.00 | |
| 4/25/2020 | 33829 | PA 8.20 | 35304 | $16,945.92 | |
| 4/25/2020 | 33832 | PA 11.20 | 40,837 | $20,619.89 | |
| 5/10/2020 | 33837 | MA 164.20 | 43,270 | $22,197.51 | |
| 5/10/2020 | 33845 | MA 166.20 | 34,235 | $18,452.67 | |
| 5/29/2020 | 33835 | MA 162.20 | 43,991 | $22,875.32 | |
| 02/09/20 | 33678 | BAKER 1.20 | 40,898 | $38,497.65 | |
| 02/09/20 | 33681 | MA 100.20 | 40,465 | $32,372.00 | |
| 3/1/2020 | 33682 | MA 101.20 | 42,236 | $32,944.80 | |
| 2/20/2020 | 33683 | MA 102.20 | 41,000 | $27,880.20 | |
| 03/01/20 | 33693 | MA 112.20 | 37,694 | $32,793.78 | |
| 03/01/20 | 33701 | MA 113.20 | 40,868 | $29,424.96 | |
| 03/01/20 | 33705 | MA 117.20 | 38,090 | $28,974.35 | |
| 04/17/20 | 33761 | MA 139.20 | 42420 | $17,392.20 | |
| 5/22/2020 | 33844 | PA 12.20 | 16784 | $13,797.52 | |
| 5/29/2020 | 33814 | BAKER 4.20 | 36700 | $30,657.65 | |
| 5/29/2020 | 33828 | BAKER 5.20 | 33201 | $23,868.90 | |
| 9/2/2020 | 33843 | MA 165.20 | 46690 | $25,679.50 | |
| 2/20/2020 | 33685 | MA 104.20 | 40,145 | $28,101.50 | |
| 1/12/2016 | 31088 | MA 14.16 | 13078 | $25,546.74 | |
| 1/12/2016 | 31090 | MA 12.16 | 20055 | $37,617.26 | |
| 4/19/2016 | 31091 | MA 45.16 | 33819 | $64,589.38 | |
| 11/5/2016 | 31115 | MA 48.16 | 22336 | $41,880.00 | TO BE CONFIRMED |
| 12/30/2012 | 25234 | MA 70.13 | 43766 | $44,385.91 | TO BE CONFIRMED |
| 4/1/2020 | 33711 | BAKER 2.20 | 46090 | $31,735.50 | |
| 4/1/2020 | 33787 | MA 150.2 | 32903 | $27,309.49 | |
| 5/10/2020 | 33796 | MA 157.20 | 46,290 | $24,996.60 | |
| 4/26/2019 | 33002 | PA 12.19 | 37940 | $22,384.60 | |
| 5/25/2019 | 32572 | MA 137.19 | 32208 | $31,563.84 | |
| 4/25/2020 | 33454 | MA 64.20 | 41790 | $45,133.20 | |
| 4/25/2020 | 33797 | MA 158.20 | 30,967 | $23,904.56 | |
| 5/29/2020 | 33834 | MA 161.20 | 31,960 | $27,166.00 | |
| 04/17/20 | 33758 | MA 136.20 | 42990 | $24,934.20 | |
| 01/26/20 | 33105 | MA 16.20 | 42,868 | $58,002.62 | |

|  |  | NAVARRO WAREHOUSE-IN SHELL | 1,758,878 | $1,628,951.73 | |

B PECAN TRADING/NAVARRO PECAN INVENTORY
AS OF 3/7/23

### NAVARRO WAREHOUSE--CORSICANNA--- MEATS INVENTORY

| MEATS AT NAVARRO PECAN WAREHOUSE | | | **LBS** | **$** |
|---|---|---|---|---|
| LOTS 12152-A, 120921-A,120821-A,12521-A | | | **171,349** | **$943,461.25** |

| MEATS PURE & NATURAL NON BANK | | | | |
|---|---|---|---|---|
| **DATE** | **BOL** | **LOT #** | **LBS** | **$** |
| 3/16/2022 | 10589 | 031822-A | 34,776 | $132,148.80 |
| 8/25/2022 | 10653 | 082622-B | 35,796 | $136,024.80 |
| 8/26/2022 | 10654 | 082922-A | 34,473 | $130,997.40 |
| 8/29/2022 | 10655 | 083022-B | 17,854 | $67,845.20 |
| 9/29/2022 | 10660 | 090322-C | 23,749 | $90,246.20 |
| | | | ----------------- | ----------------------- |
| **TOTAL MEATS AT PURE & NATURAL** | | | **146,648** | **$557,262.40** |
| | | **TOTAL MEATS** | **317,997** | **$1,500,723.65** |

| | | | | |
|---|---|---|---|---|
| **TOTAL INVENTORY AT NAVARRO** | | | **2,076,875** | **$3,129,675.38** |

WAREHOUSE:                        NAVARRO PECAN CO, CORSICANNA, TX

| DATE | LOT REF | LOAD # | PDS | $ | |
|------|---------|--------|-----|---|---|
| 3/19/2019 | 32859 | GY-69070 | 34794 | $64,068.30 | |
| 1/25/2019 | 32824 | AB 1.1819 | 44460 | $79,067.80 | |
| 01/17/20 | 33390 | 70605 | 44,840 | $70,416.74 | |
| 01/17/20 | 33391 | 70606 | 44,025 | $68,529.32 | |
| 01/17/20 | 33393 | 70607 | 43,760 | $67,906.77 | |
| 01/17/20 | 33396 | 70608 | 45,090 | $68,933.59 | |
| 01/17/20 | 33397 | 70609 | 46,140 | $68,241.06 | |
| 01/17/20 | 33398 | 70610 | 44,663 | $67,972.62 | |
| 01/17/20 | 33436 | 70611 | 42,610 | $63,667.86 | |
| 01/17/20 | 33437 | 70612 | 44,200 | $68,068.00 | |
| 01/24/20 | 33487 | 70682 | 42,330 | $64,087.62 | |
| 6/30/2020 | 33860 | DS 3.1920 | 44061 | $51,110.76 | |
| 12/6/2017 | 31610 | TD 7.1718 | 43753 | $65,454.48 | |
| 12/18/2017 | 31757 | TD 11.1718 | 42791 | $74,456.34 | |
| 12/28/17 | 31691 | EPC 6351 | 42,113 | $104,446.49 | |
| 01/04/18 | 31789 | EPC 6071 | 41,652 | $93,619.72 | |
| 01/04/18 | 31794 | EPC 13678 | 43,164 | $114,395.92 | |
| 12/26/2018 | 31218 B&C | 31218 B&C | 27111 | $38,470.51 | |
| 7/22/2019 | 33071 | MWP 11.1819 | 45985 | $17,612.26 | |
| 7/22/2019 | 33072 | MWP 13.1819 | 29963 | $11,132.19 | |
| 3/21/2019 | 32912 | NEX 137 | 44,785 | $88,038.35 | |
| 3/21/2019 | 32911 | NEX 136 | 44,637 | $85,082.59 | |
| 3/21/2019 | 32783 | NEX 128 | 43,937 | $81,670.10 | |
| 3/21/2019 | 32782 | NEX 200 | 43,058 | $85,530.41 | |
| 4/3/2019 | 32478 | NEX 42 | 43,174 | $84,621.04 | |
| 4/3/2019 | 32644 | NEX 84 | 44,693 | $124,125.87 | |
| 4/3/2019 | 32913 | NEX 138 | 43,174 | $91,805.19 | |
| 4/3/2019 | 32914 | NEX 139 | 44,216 | $95,670.16 | |
| 05/04/20 | 33652 | MLP 4.1920 | 36,840 | $20,262.00 | |
| 05/04/20 | 33284 | MLP 8.1920 | 36,760 | $16,983.12 | |
| 05/13/20 | 33286 | PGF 1.20 | 34,989 | $14,227.95 | |
| 05/13/20 | 33288 | PGF 3.20 | 37,749 | $15,350.25 | |
| 05/13/20 | 33776 | PGF 4.20 | 37,204 | $15,128.65 | |
| 05/13/20 | 33778 | PGF 6.20 | 41,060 | $16,696.68 | |
| 05/13/20 | 33803 | PGF 7.20 | 34,313 | $13,953.04 | |
| | | TOTAL INSHELL | 1,447,976 $ | 2,170,803.75 | |

| DATE | LOT REF | LOAD # | PDS | CK TOTAL | |
|------|---------|--------|-----|----------|---|
| 02/16/22 | 35120 | MWSI 75.2122 | 43,971 | $63,691.84 | CRITICAL VENDOR CK #34126 |
| 01/11/22 | 35093 | MWSI 35.2122 | 46,410 | $84,968.39 | CRITICAL VENDOR CK #34115 |
| 01/14/22 | 35095 | MWSI 37.2122 | 43,760 | $61,349.00 | CRITICAL VENDOR CK #34119 |
| 01/19/22 | 35103 | MWSI 47.2122 | 43,380 | $63,263.74 | CRITICAL VENDOR CK #34133 |
| 01/14/22 | 35096 | MWSI 38.2122 | 43,938 | $91,166.82 | CRITICAL VENDOR CK #34130 |
| | | | 221,459 | $364,439.79 | |
| | | INSHELL | 1,669,435 $ | 2,535,243.54 | |

| WAREHOUSE: | | NAVARRO PECAN- MEATS | | | |
|------------|---------|-----|-----|---|---|
| DATE | LOT REF | BOL | PDS | $ | |
| 01/05/22 | 123021E | 8597 | 42,030 | $213,092.10 | COA#'S 45542896-0  45536814-0 |
| | | | 1,711,465 $ | 2,383,895.85 | |

**EXHIBIT 3**

| EXT LOT | PROCESS | ITEM | UM | LOC | LOT NO | MFG LOT | SHELL | INT LOT NO | PALLET | DESCRIPTION | MFG DATE | BIN | QTY ON HAND | WEIGHT ON HAND | SHIPPED QTY | SHIPPED WEIGHT | BOL # | SHIP DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33226 | 3 | 29161 | LB | 1 | | | 33226 | 515970 | 499926 | CHOICE no 2 SMALL | 44894 | 522 | 1543 | 1543 | 0 | 0 | 0 | |
| 33165 | 3 | 20101 | LB | 1 | | | 33165 | 460644 | 449105 | CH MIDGET PIECES | 44069 | 555 | 1543 | 1543 | 0 | 0 | 0 | |
| 33165 | 3 | 20101 | LB | 1 | | | 33165 | 463078 | 451377 | CH MIDGET PIECES | 44105 | 507 | 1465 | 1465 | 0 | 0 | 0 | |

**<u>EXHIBIT 4</u>**

| EXT LOT | PROCESS | ITEM | UM | LOC | LOT NO | MFG LOT | SHELL | INT LOT NO | PALLET | DESCRIPTION | MFG DATE | BIN | QTY ON HAND | WEIGHT ON HAND | SHIPPED QTY | SHIPPED WEIGHT | BOL # | SHIP DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34281 | 3 | 29161 | LB | 1 | | | 34281 | 493829 | 479628 | CHOICE no 2 SMALL | 44515 | 507 | 1633 | 1633 | 0 | 0 | 0 | |