Joshua N. Eppich
Texas Bar I.D. No. 24050567
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NOC, INC., | § | CASE NO. 23-40266-elm11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

### NOTICE OF FILING OF PLAN SUPPLEMENT FOR PLAN OF LIQUIDATION OF NOC, INC., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby files the documents included herewith as **Exhibits 1–4** (collectively, the "**Plan Supplement**") supplementing the *Plan of Liquidation of Navarro Pecan Company, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 203] dated April 28, 2023 (as may be amended, supplemented, or otherwise modified from time to time and including all exhibits thereto, the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement consists of the following documents as set forth in the Plan:

**Exhibit 1**: Schedule of Assumed Contracts and Leases

**Exhibit 2**: Schedule of Rejected Contracts and Leases

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109.

[2] Capitalized terms used herein but not otherwise defined shall have the mean given to them in the Plan.

**Exhibit 3**: Schedule of Retained Causes of Action

**Exhibit 4**: Liquidating Trust Agreement

Dated: June 16, 2023                    Respectfully Submitted,

                                        */s/ Joshua N. Eppich*
                                        Joshua N. Eppich
                                        Texas Bar I.D. No. 24050567
                                        C. Joshua Osborne
                                        Texas Bar I.D. No. 24065856
                                        Bryan C. Assink
                                        Texas Bar I.D. No. 24089009
                                        BONDS ELLIS EPPICH SCHAFER JONES LLP
                                        420 Throckmorton Street, Suite 1000
                                        Fort Worth, Texas 76102
                                        (817) 405-6900 telephone
                                        (817) 405-6902 facsimile
                                        Email: joshua@bondsellis.com
                                        Email: c.joshosborne@bondsellis.com
                                        Email: bryan.assink@bondsellis.com

                                        **COUNSEL FOR DEBTOR AND
                                        DEBTOR-IN-POSSESSION**

**CERTIFICATE OF SERVICE**

        I certify that on June 16, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and/or by first-class mail on each of the parties included on the service list, which is attached **Exhibits A–D**.

                                        */s/ Joshua N. Eppich*
                                        Joshua N. Eppich

# Exhibit 1

## Schedule of Assumed Contracts and Leases

As defined in the Plan,[1] "Executory Contract" means an executory contract or unexpired lease as such terms are used in Section 365 of the Code, including all operating leases, capital leases, and contracts to which the Debtor is a party or beneficiary, and "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Code.

Below is table detailing the Executory Contract or Unexpired Lease the Debtor will assume effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Code, and any amounts necessary to cure such Executory Contract or Unexpired Lease:

| Producer | Insurer | Description of Contract/Lease | Policy Number | Amount to Cure |
|---|---|---|---|---|
| Evolution Insurance Partners P.O. Box 310508 New Braunfels, TX 78131 | Zurich American Insurance Company 1299 Zurich Way Schaumburg, IL 60196 | D&O Insurance Policy—Combined Total Limit | MPL1494163-04 | $0.00 |
| Evolution Insurance Partners P.O. Box 310508 New Braunfels, TX 78131 | Zurich American Insurance Company 1299 Zurich Way Schaumburg, IL 60196 | D&O Insurance Policy—Liability Defense Cost | MPL1494163-04 | $0.00 |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Plan of Liquidating of Navarro Pecan Company, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 203] (as may be amended, supplemented, or modified, the "**Plan**").

**Exhibit 2**

**Schedule of Rejected Contracts and Leases**

As defined in the Plan,[1] "Executory Contract" means an executory contract or unexpired lease as such terms are used in Section 365 of the Code, including all operating leases, capital leases, and contracts to which the Debtor is a party or beneficiary, and "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Code.

On the Effective Date, any Executory Contract or Unexpired Lease not previously assumed by the Debtor by Final Order of the Court, not included in a motion to assume pending on the Effective Date, or not listed in the Schedule of Assumed Contracts and Leases, which is attached to the Plan as **Exhibit 1**, will be deemed **REJECTED** in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Plan of Liquidating of Navarro Pecan Company, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 203] (as may be amended, supplemented, or modified, the "**Plan**").

## Exhibit 3

## Schedule of Retained Causes of Action

As defined in the Plan,[1] "Causes of Action" means all of the Debtor's and Estate's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, through and including the Effective Date, including, but not limited to, the Chapter 5 Causes of Action, any D&O Cause of Action, and all causes of action listed in this Schedule of Retained Causes of Action.

The retained Causes of Action shall include, *without limitation*, any Causes of Action held by the Debtor or the Estate based on the following:

> breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, breach of implied covenant of good faith and fair dealing, conversion, declaratory judgment, declaratory relief, claims regarding the validity and/or priority of liens, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, claims regarding the validity of title, claims regarding equitable title, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, specific performance, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for indemnification, promissory estoppel, quasi-contract claims, claims for setoff, offset, and/or recoupment, claims for attorney's fees, any counterclaims, equitable subordination, avoidance actions provided for under sections 544, 547, and 548 of the Code, any other claims brought under Chapter 5 of the Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The retained Causes of Action shall also include, *without limitation*, all D&O Causes of Action held by the Debtor or the Estate, including:

(A) all Causes of Action held by the Debtor or the Estate against the Debtor and/or its directors, managers, officers, employees, or other representatives arising from any act or omission, including, but not limited to, misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Plan of Liquidation of Navarro Pecan Company, Inc., Pursuant to Chapter 11 of the Code* [Docket No. 203] (as may be amended, supplemented, or modified, the "**Plan**").

breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims; and

(B) those relating to, arising from, or covered by any and all insurance contracts, insurance policies, including any D&O Liability Insurance Policies, occurrence policies, and occurrence contracts to which (i) the Debtor, the Liquidating Trust, or the Liquidating Trustee is a party, or (ii) the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee has any rights, regardless of whether such contract or policy is specifically identified in this exhibit or the Plan, including any Causes of Action the Debtor, the Estate, the Liquidating Trust, or Liquidating Trustee has or may have against insurance carriers, reinsurance carriers, insurance brokers, underwriters, or occurrence carriers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

For the avoidance of doubt, the retained Causes of Action shall include, *without limitation*, any Causes of Action against the following persons and entities:

Any and all persons and entities identified on the Debtor's Statement of Financial Affairs as having received payments from the Debtor in the aggregate amount exceeding $7,575 in the ninety-day period preceding the Petition Date, or between ninety days and one year before the Petition Date if such creditor at the time of the transfer was an insider.

For the avoidance of doubt, the retained Causes of Action specifically include, *without limitation*, the Causes of Action in the following pending lawsuits, as well as any and all Causes of Action (including, without limitation, any and all potential Causes of Action, claims, counterclaims, third-party claims, and/or cross claims) relating to the facts, allegations, claims, and defenses contained in such lawsuit:

1. *NOC, Inc. v. Navarro Central Appraisal District*, pending before the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, Adv. Proc. No. 23-04013. This suit is a dispute against the Debtor related to the assessment of *ad valorem* taxes and the valuation of Debtor's former property for tax purposes.

2. *SNRA Commodities, Inc. v. Navarro Pecan Company, Inc.*, pending before the El Paso County Court at Law No. 6. The Debtor has asserted counterclaims against SNRA for breach of contract and quantum meruit.

3. *Navarro Pecan Company, Inc. v. Table Talk Pies, Inc.*, pending before the Navarro County 13th Judicial Court. The Debtor has asserted claims against Table Talk Pies, Inc., for suit on sworn account and breach of contract.

For the avoidance of doubt, the retained Causes of Action specifically include, *without limitation*, any cause of action arising from or related to the following transactions, contracts, agreements, and/or documents:

1. The investment banker agreement, effective July 1, 2022, between the Debtor and Galena Capital Partners Inc.

2. The D&O Insurance Policies.

**<u>Exhibit 4</u>**

**"<u>Liquidating Trust Agreement</u>"**

**LIQUIDATING TRUST AGREEMENT**

**Dated as of**

**[_], 2023**

**by and between**

**NOC, Inc. (the "<u>Debtor</u>"),**

**and**

**Daniel J. Sherman,**
**as Liquidating Trustee**

## LIQUIDATING TRUST AGREEMENT

This **LIQUIDATING TRUST AGREEMENT**, dated as of [_], 2023 (as it may be amended, modified, supplemented or restated from time to time, this "**Liquidating Trust Agreement**"), is made and entered into by and among NOC, Inc. (the "**Debtor**"), and Daniel J. Sherman (the "**Liquidating Trustee**"), solely in his capacity as the Liquidating Trustee hereunder, and is executed in connection with and pursuant to the terms of the *Plan of Liquidation of Navarro Pecan Company, Inc., Pursuant to Chapter 11 of the Code* [Docket No. 203] (as it may be amended, modified, supplemented or restated from time to time, the "**Plan**").

## RECITALS

**WHEREAS**, the trust created hereby (the "**Liquidating Trust**") is created pursuant to and to effectuate the Plan and liquidation of the Debtor;

**WHEREAS**, the initial Liquidating Trustee was selected to serve as the Liquidating Trustee by the Debtor pursuant to the Plan;

**WHEREAS**, pursuant to the Plan, the Liquidating Trust is established for the purpose of administering and liquidating the Liquidating Trust Assets, resolving all Claims that are Disputed Claims, making all Distributions of the proceeds of the Liquidating Trust Assets to Holders of Allowed Claims in accordance with the Plan, and otherwise implementing the Plan, all in accordance with the terms of the Plan and this Liquidating Trust Agreement.

**WHEREAS**, the Liquidating Trust shall be established for the primary purpose of liquidating and distributing the Liquidating Trust Assets, in accordance with Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidating Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidating Trust Assets and provide for the orderly liquidation thereof. Accordingly, the Liquidating Trustee shall, in an orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the beneficiaries of the Liquidating Trust (the "**Beneficiaries**"), and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth in the Plan or in this Liquidating Trust Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidating Trustee expressly for such purpose.

**WHEREAS**, the Liquidating Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) with the beneficiaries treated as owners of the Liquidating Trust and in part as one or more Disputed Claims reserves treated as disputed ownership funds described in Treasury Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and for all U.S. federal income tax purposes, all parties (including the Debtor, Liquidating Trustee, and Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtor to the Liquidating Trust, as set forth in this Liquidating Trust Agreement, consistent with such intention;

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained herein and in the Plan, the Debtor and the Liquidating Trustee agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>. All capitalized terms used in this Liquidating Trust Agreement not otherwise defined herein shall have the respective meanings ascribed to such terms in the Plan. The following capitalized terms have the meanings ascribed to them herein:

1.1.1.    "<u>Beneficiaries</u>" shall mean the Holders of the Liquidating Trust Interests.

1.1.2.    "<u>Distribution</u>" shall mean any transfers or payments made to Beneficiaries pursuant to the Plan and this Liquidating Trust Agreement.

1.1.3.    "<u>Liquidating Trust Assets</u>" shall have the meaning given to such term in the Plan.

1.1.4.    "<u>Liquidating Trust Interests</u>" shall mean the beneficial interests in the Liquidating Trust held by the Beneficiaries.

1.1.5.    "<u>Liquidating Trustee</u>" shall mean (a) initially, the person named in the introductory paragraph to this Liquidating Trust Agreement as the Liquidating Trustee; and (b) any successors or replacements duly appointed under the terms of this Liquidating Trust Agreement.

1.1.6.    "<u>Schedules</u>" shall mean the Debtor's Schedules of Assets and Liabilities, as amended or supplemented.

1.1.7.    "<u>Transfer</u>" shall mean, with respect to a Liquidating Trust Interest, any transfer, sale, pledge, assignment, conveyance, gift, bequest, inheritance, grant, Distribution, hypothecation, or other disposition of or creation of a security interest in such Liquidating Trust Interest, whether voluntarily or by operation of law. "Transferor," "Transferee," and "Transferred" shall have correlative meanings.

1.1.8.    "<u>TSA</u>" shall mean that certain Transition Services Agreement dated as of March 22, 2023, by and between the Debtor and NAVARRO PECAN HOLDINGS, LLC, a Texas corporation ("<u>Navarro</u>") owned and operated by Navarro Pecan Holdings, LLC.

1.2    <u>Plan Terms Control</u>. In the case of any inconsistency between the terms of this Liquidating Trust Agreement and the terms of the Plan, the terms of the Plan shall govern and control. This Liquidating Trust Agreement shall not be construed to impair or limit in any way the rights of any person under the Plan. Further, references herein to the "Plan" shall also include the terms, provisions, and Plan modifications as set forth in any supplement thereto and the Confirmation Order.

1.3    Interpretation.

1.3.1.  Certain References. Unless the context otherwise requires, (a) all references in this Liquidating Trust Agreement to Sections, Articles, or Schedules are to Sections, Articles or Schedules of or to this Liquidating Trust Agreement, (b) words in the singular include the plural and vice versa, and (c) the verb "will" will have a mandatory connotation, indicating the parties' respective obligations hereunder. Whenever the words "include," "includes" or "including" are used in this Liquidating Trust Agreement, they will be deemed to be followed by the words "without limitation." All references to "$" or dollar amounts are to lawful currency of the United States.

1.3.2.  Titles and Headings. Titles and headings to Sections, Articles, and Schedules in or to this Liquidating Trust Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Liquidating Trust Agreement.

## ARTICLE II
## ESTABLISHMENT OF THE LIQUIDATING TRUST

2.1    Creation and Purposes of the Liquidating Trust. The Debtor and the Liquidating Trustee, pursuant to the Plan and in accordance with the Code, hereby create a trust, which is the Liquidating Trust contemplated by the Plan. The Liquidating Trustee may conduct the affairs of the Liquidating Trust under the name of the "NOC Liquidating Trust," or such variation thereof as the Liquidating Trustee sees fit. Subject to and to the extent set forth in the Plan, the Confirmation Order, this Liquidating Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the Liquidating Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) establish, maintain, and administer accounts with respect to the Liquidating Trust Assets; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Liquidating Trust Assets (directly or through his professionals or an agent) in accordance with the Plan and this Liquidating Trust Agreement; (d) to the extent Claims relate to the Liquidating Trust Assets, review, reconcile, settle, or object to all such Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (e) calculate and make Distributions of the proceeds of the Liquidating Trust Assets to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (f) pursue Retained Causes of Actions that are transferred to the Liquidating Trust to the extent that their pursuit would likely result in a material economic benefit to the Beneficiaries and raise any defenses in any adverse actions or counterclaims; (g) comply with the TSA in accordance with the terms thereunder; (h) serve as sole director, officer, or other governing body or controlling authority of the Debtor in accordance with the Plan; (i) control and exercise authority over the management and conduct of the affairs of the Debtor and amend, modify, restate, or otherwise alter the corporate constituent documents of the Debtor as necessary and appropriate to comply with the Plan; (j) merge, dissolve, or otherwise terminate the corporate existence of the Debtor and implement any necessary or appropriate dissolution transactions, subject to, and in accordance with, the Plan; (k) file appropriate certificates of incorporation, merger, or consolidation for the Debtor with the appropriate governmental authorities pursuant to applicable law; (l) retain, compensate and employ professionals to represent the Liquidating Trust;

(m) file appropriate tax returns and other reports on behalf of the Liquidating Trust and Debtor and pay or seek refunds in respect of taxes or other obligations owed by the Liquidating Trust; (n) file, to the extent reasonably feasible and subject to this Liquidating Trust Agreement, appropriate tax returns on behalf of the Debtor and pay taxes or other obligations arising in connection therewith; (o) exercise such other powers as may be vested in the Liquidating Trust under this Liquidating Trust Agreement and the Plan or as are deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of the Plan and this Liquidating Trust Agreement; (p) take such actions as are necessary or appropriate to close the Debtor's Chapter 11 case and not otherwise inconsistent with the Plan; and (q) dissolve and terminate the Liquidating Trust in accordance with the terms of this Liquidating Trust Agreement and the Plan.

2.2    Claims Register. The Debtor shall instruct Epiq Corporate Restructuring, LLC, as claims agent, to deliver a copy of the official claims register as of the Effective Date to the Liquidating Trustee.

2.3    Funding of and Transfer of Assets into the Liquidating Trust.

2.3.1.   Except as otherwise provided in the Plan or Confirmation Order, on the Effective Date, the Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust, and all such assets shall vest in the Liquidating Trust on such date to be administered by the Liquidating Trustee in accordance with the Plan and this Liquidating Trust Agreement. Except as set forth in the Plan, the Liquidating Trust Assets shall be transferred to the Liquidating Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Code.

2.3.2.   The act of transferring the Liquidating Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the Debtor.

2.3.3.    The Liquidating Trustee shall have the authority to create additional sub-accounts and sub-trusts within the Liquidating Trust, which may have a separate legal existence but which shall be considered sub-accounts or sub-trusts of the Liquidating Trust. This shall include the creation of sub-accounts and/or sub-trusts to accomplish the purposes of the Liquidating Trust.

2.4    Capacity of Liquidating Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Liquidating Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Liquidating Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5    Tax Treatment. The Liquidating Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated as disputed ownership funds

described in Treasury Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes). For U.S. federal income tax purposes, the transfer of assets by the Debtor to the Liquidating Trust will be treated in part as the transfer of assets by the Debtor to the Holders of Allowed General Unsecured Claims, subject to any liabilities of the Debtor or Liquidating Trust payable from the proceeds of such assets, followed by the deemed transfer of such assets (subject to such liabilities) by such Holders to the Liquidating Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtor to one more Disputed Claims reserves. The Holders of Allowed General Unsecured Claims will be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidating Trust (subject to such liabilities), depending on their rights to Distributions under the Plan. As grantors and deemed owners of such assets, the Holders of Allowed General Unsecured Claims will be required to include in income their respective shares of the income, deductions, gains, losses, and credits attributable to such assets. The value of such assets will be determined by the Liquidating Trustee as the trustee of the Liquidating Trust, and such values will be used consistently by all parties for all U.S. federal (and applicable state and local) income tax purposes. Among other things, the Holders of Allowed General Unsecured Claims will be required to use the values assigned to such assets by the Liquidating Trustee for all U.S. federal (and applicable state and local) income tax purposes, including the recognition of income, deduction, gain, or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the Holder holds an interest. This Liquidating Trust Agreement contains certain provisions intended to comply with IRS guidance for trusts treated as liquidating trusts. This Liquidating Trust Agreement (i) requires that the Liquidating Trust terminate no later than three years after the Effective Date; provided, however, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidating Trust to complete its liquidating purpose, the term of the Liquidating Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the liquidating trust as a grantor trust for U.S. federal income tax purposes), (ii) limits the Liquidating Trustee's investment powers, (iii) limits the business operations carried on by the Liquidating Trust to activities reasonably necessary to and consistent with the Liquidating Trust's purpose, (iv) prohibits the Liquidating Trust from receiving or retaining Cash or Cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation, and (v) distributes at least annually to the Holders of Allowed General Unsecured Claims the Liquidating Trust's net income and the net proceeds from the sale of Liquidating Trust Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidating Trust Assets. Liquidating Trust Assets reserved for Holders of Disputed Claims will be treated as one or more Disputed Claims reserves for U.S. federal income tax purposes, which will be subject to an entity-level tax on some or all of their net income or gain. No Holder of an Allowed General Unsecured Claims will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such Holder receives or is allocated an interest in such asset. The Liquidating Trustee will file all tax returns on a basis consistent with the treatment of the Liquidating Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as disputed ownership funds governed by Treasury

Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and will pay all taxes owed from Liquidating Trust Assets.

2.6     <u>Liquidating Trustee's Acceptance</u>. The Liquidating Trustee hereby accepts the duties as trustee imposed on him by this Liquidating Trust Agreement and agrees to observe and perform such duties, on and subject to the terms and conditions set forth in this Liquidating Trust Agreement. In connection with and in furtherance of the purposes of the Liquidating Trust, the Liquidating Trustee hereby expressly accepts the transfer of Liquidating Trust Assets to the Liquidating Trustee pursuant to Section 2.3 of this Liquidating Trust Agreement, subject to the provisions of the Plan, and the Liquidating Trustee hereby further expressly agrees to establish and maintain the Trust Accounts and to distribute the Liquidating Trust Assets in accordance with the Plan and this Liquidating Trust Agreement.

2.7     <u>Effectiveness</u>. The effectiveness of this Liquidating Trust Agreement shall occur upon the Effective Date of the Plan.

**ARTICLE III
TRUST ACCOUNTS**

3.1     <u>Creation of the Trust Accounts</u>. On or prior to the Effective Date, the Liquidating Trustee will establish in his own name with federally insured United States banks each of the Liquidating Trust Accounts. On the Effective Date, title to each of the Liquidating Trust Accounts, and the contents thereof, will be transferred to and irrevocably vest in the Liquidating Trust.

3.2     <u>Preservation of Retained Causes of Action</u>. Except as provided in the Plan, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Code, the Liquidating Trustee will retain and may enforce any claims, demands, rights, and causes of action that the Estate or Debtor may hold against any Person to the extent not satisfied, settled, or released under the Plan or otherwise, including the Retained Causes of Action. The Liquidating Trustee may pursue any such retained claims, demands, rights, or causes of action, as appropriate, in accordance with the best interests of the Beneficiaries. Except to the extent any such claim is specifically satisfied, settled, or released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial, or waiver of any claims, demands, rights or causes of action that the Debtor or Estate may hold against any Person. Except to the extent any such claim is specifically satisfied, settled, or released herein, the Debtor intends to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action.

3.3     <u>Payment of Liquidating Trust Expenses</u>. The fees and expenses of the Liquidating Trustee shall be paid after the Effective Date pursuant to the terms and conditions of this Liquidating Trust Agreement. The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtor) to assist in carrying out his duties under this Liquidating Trust Agreement and may compensate and reimburse the expenses of these professionals based upon the

nature of the work performed by such professional, without further order of the Bankruptcy Court, subject to any limitations and procedures established by this Liquidating Trust Agreement.

3.4     Treatment of Disputed Claims. Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of the Disputed portion of any Disputed Claim until such Disputed portion of the Disputed Claim becomes an Allowed Claim, unless otherwise ordered by the Bankruptcy Court.

# ARTICLE IV
# ADMINISTRATION OF THE LIQUIDATING TRUST

4.1     Rights, Powers and Privileges. The Liquidating Trustee will have only the rights, powers, and privileges to act on behalf of the Liquidating Trust expressly provided in the Plan and this Liquidating Trust Agreement and/or as provided by law in the event that the Plan or this Liquidating Trust Agreement does not reference any such right, power, or privilege. Unless otherwise expressly limited or restricted by the Plan or this Liquidating Trust Agreement, as long as such actions are, in the Liquidating Trustee's best judgment, necessary to manage the affairs of the Liquidating Trust and safeguard the interest of the Beneficiaries, the Liquidating Trustee will have the right, power and privilege, and obligation, to:

4.1.1.   perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan;

4.1.2.   establish, maintain, and administer the Liquidating Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan;

4.1.3.   accept, preserve, receive, collect, manage, invest, sell, liquidate, abandon, transfer, supervise, prosecute, settle, and protect, as applicable, the Liquidating Trust Assets in accordance with the Plan and this Liquidating Trust Agreement;

4.1.4.   liquidate, transfer, abandon, or otherwise dispose of the Liquidating Trust Assets or any part thereof or any interest therein upon such terms as the Liquidating Trustee determines to be necessary, appropriate, or desirable, pursuant to the procedures for allowing Claims and making Distributions prescribed in the Plan and otherwise consistent with the terms of the Plan;

4.1.5.   to the extent Claims relate to the Liquidating Trust Assets and without further order of the Court: review, reconcile, settle, or object to all such Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan;

4.1.6.   calculate and make Distributions of the proceeds of the Liquidating Trust Assets to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing the Plan;

4.1.7.   pursue Retained Causes of Actions that are transferred to the Liquidating Trust to the extent that their pursuit would likely result in a material economic benefit to the Beneficiaries, and raise any defenses in any adverse actions or counterclaims;

4.1.8.   comply with the TSA and fulfill the Debtor's obligations in accordance with the terms thereunder;

4.1.9.   serve as sole manager, officer, or other governing body or controlling authority of the Debtor in accordance with the Plan;

4.1.10. control and exercise authority over the management and conduct of the affairs of the Debtor and amend, modify, restate or otherwise alter the corporate constituent documents of the Debtor as necessary and appropriate to comply with the Plan;

4.1.11. merge, dissolve, or otherwise terminate the corporate existence of the Debtor and implement any necessary or appropriate dissolution transactions, subject to, and in accordance with, the Plan;

4.1.12. file appropriate certificates of incorporation, merger, or consolidation for the Debtor with the appropriate governmental authorities pursuant to applicable law;

4.1.13. retain and compensate, without further order of the Bankruptcy Court, the services of professionals or other persons or entities to represent, advise, or assist the Liquidating Trustee in the fulfillment of his responsibilities in connection with the Plan and this Liquidating Trust Agreement, including other persons or entities to provide advice or assistance in connection with the making of Distributions required by the Plan and this Liquidating Trust Agreement;

4.1.14. file appropriate tax returns and other reports on behalf of the Liquidating Trust and/or Debtor and pay or seek refunds in respect of taxes or other obligations owed by the Liquidating Trust;

4.1.15. enforce, waive, assign, or release rights, powers, and immunities of any kind of the Debtor and the Estate, except to the extent expressly limited by, or otherwise contrary to his duties established by, the Plan or this Liquidating Trust Agreement;

4.1.16. appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan, the Debtor, this Liquidating Trust Agreement, the Liquidating Trust, or the Liquidating Trust Assets;

4.1.17. sue, defend, and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding relating to the Plan, the Debtor, this Liquidating Trust Agreement, the Liquidating Trust, or the Liquidating Trust Assets;

4.1.18. consult with the Beneficiaries at such times and with respect to such issues relating to the conduct of the Liquidating Trust as the Liquidating Trustee determines, in his reasonable discretion, to be necessary, appropriate, or desirable;

4.1.19. undertake any action or perform any obligation of the Liquidating Trustee and Debtor provided for or required by the Plan;

4.1.20. exercise such other powers as may be vested in the Liquidating Trust under this Liquidating Trust Agreement and the Plan, or as are deemed by the Liquidating Trustee to be

necessary and proper to implement the provisions of the Plan and this Liquidating Trust Agreement;

       4.1.21. take such actions as are necessary or appropriate to close the Debtor's Chapter 11 case; and

       4.1.22. dissolve and terminate the Liquidating Trust in accordance with the terms of this Liquidating Trust Agreement and the Plan.

    4.2    <u>Limitation on Investigations; Delivery of Documents and Related Matters</u>. The Liquidating Trustee will be entitled to rely upon the Plan to determine the Liquidating Trust Assets existing immediately prior to the Effective Date. The Liquidating Trustee will have no obligation to investigate or to determine the existence of any Liquidating Trust Asset other than those identified in the Plan. If, notwithstanding the foregoing, the Liquidating Trustee becomes aware of a potential Cause of Action with potential value to the Liquidating Trust, he will take such reasonable steps as he determines, in his reasonable discretion, to be appropriate to investigate such Cause of Action. The Liquidating Trustee may reasonably rely upon any document or record that the Debtor delivers to him and will be protected in acting or refraining from acting on any such document based upon such reasonable reliance. The Debtor will cooperate with the Liquidating Trustee in providing him with pertinent documents and business records or access thereto. In fulfilling its obligations in the preceding sentence, the Debtor will undertake, in good faith, to locate and deliver to the Liquidating Trustee documents currently in the Debtor's physical possession that it believes, in its reasonable discretion, are relevant to any Claims currently in dispute or to any asset or liability being transferred to the Liquidating Trust; <u>provided</u>, <u>however</u>, that (a) the Debtor, its directors, officers, employees, or professional advisors will not have any liability if, despite their good faith efforts, the Debtor is unable to locate or deliver to the Liquidating Trustee any such relevant documents referred to above or if any additional relevant documents are identified later that were not delivered by the Debtor to the Liquidating Trustee and (b) no party (including the Liquidating Trustee) will have recourse against the Debtor, its directors, officers, employees or professional advisors, or the Debtor's respective assets with respect to such matters under any circumstances.

    4.3    <u>No Personal Liability</u>. None of the provisions in the Plan or this Liquidating Trust Agreement will be construed to require the Liquidating Trustee to expend or risk his own funds or otherwise incur personal liability in the performance of its duties or in the reasonable exercise of his rights, powers, and privileges hereunder if there are reasonable grounds for the Liquidating Trustee to believe that the repayment of any such validly expended funds or adequate indemnity against such risk of liability is not reasonably assured. Notwithstanding the foregoing, nothing in this paragraph will relieve the Liquidating Trustee of any liability for any action or omission resulting from bad faith, fraud, willful misconduct, gross negligence, or breach of his fiduciary duties.

    4.4    <u>Agents and Professionals</u>. Except as otherwise provided in the Plan or this Liquidating Trust Agreement: (a) the Liquidating Trustee may consult with independent legal counsel to be selected by him, and the advice or opinion of such counsel will be full and complete personal protection to the Liquidating Trustee and agents of the Liquidating Trustee in respect of any action taken or suffered by him in good faith and in reliance on, or in accordance with, such

advice or opinion; and (b) persons (including any professionals retained by the Liquidating Trustee) dealing with the Liquidating Trustee will look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Plan or this Liquidating Trust Agreement, and (subject to any provisions of this Agreement with respect to liabilities resulting from the Liquidating Trustee's bad faith, fraud, willful misconduct, gross negligence, or breach of his fiduciary duties) the Liquidating Trustee will have no personal or individual obligation to satisfy any such liability.

4.5    <u>Investment and Safekeeping of Liquidating Trust Assets</u>. All Liquidating Trust Assets received by the Liquidating Trust shall, until distributed, liquidated, transferred, abandoned, or paid as provided in this Liquidating Trust Agreement or the Plan, be held in the Liquidating Trust, including any sub-accounts established by the Liquidating Trustee, for the benefit of the Beneficiaries. The Liquidating Trustee shall be under no obligation to generate or produce, or have any liability for, interest or other income on any monies received by the Liquidating Trust and held for Distribution or payment to the Beneficiaries, except as such interest or income shall be actually received by the Liquidating Trustee. Investments of any monies held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs; <u>provided</u>, <u>however</u>, that the right and power of the Liquidating Trustee to invest monies held by the Liquidating Trustee, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such monies pending periodic Distributions in accordance with the terms hereof and the Plan. Notwithstanding anything to the contrary in this Liquidating Trust Agreement, the investment powers of the Liquidating Trustee in this Liquidating Trust Agreement, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and the liquidation purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, and in all cases limited only to those assets permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and the Internal Revenue Service Revenue Procedure 94-45.

4.6    <u>Limitations on the Liquidating Trustee</u>.

4.6.1.   The Liquidating Trustee will not, at any time, on behalf of the Liquidating Trust or the Beneficiaries, operate as a business entity within the meaning of Treasury Regulations § 301.7701-2, or engage in any trade or business as proscribed by Treasury Regulations § 301.7701-4(d), and the Liquidating Trustee will not use or dispose of any part of the Liquidating Trust Assets in furtherance of any trade or business, except to the extent reasonably necessary to, and consistent with, the Liquidating Trust liquidating purpose and reasonably necessary to conserve and protect the Liquidating Trust Assets and provide for the orderly liquidation thereof. Notwithstanding the foregoing, the Liquidating Trustee will not be prohibited from engaging in any trade or business for his own account, provided that, such activity does not interfere with the Liquidating Trustee's administration of the Liquidating Trust.

4.6.2.   Notwithstanding anything contained in this Liquidating Trust Agreement, the Liquidating Trustee may review, reconcile, allow, object to, compromise, settle, or withdraw objections to Claims.

4.6.3. The Liquidating Trustee may invest Cash of the Liquidating Trust, including any earnings thereon or proceeds therefrom, any Cash realized from the liquidation of the Liquidating Trust Assets, or any Cash that is remitted to the Liquidating Trust from any other Person, which investments, for the avoidance of doubt, will not be required to comply with section 345(b) of the Code; provided, however, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities (including the Internal Revenue Service Revenue Procedure 94-45). The Liquidating Trustee shall have no liability in the event of the insolvency or failure of any institution in which they have invested any funds of the Liquidating Trust.

4.6.4. The Liquidating Trustee shall hold, collect, conserve, protect, and administer the Liquidating Trust Assets in accordance with the provisions of this Liquidating Trust Agreement and the Plan and pay and distribute amounts as set forth herein for the purposes set forth in this Liquidating Trust Agreement. Any determination by the Liquidating Trustee as to what actions are in the best interest of the Liquidating Trust shall be determinative.

4.7     Bankruptcy Court Approval of Liquidating Trustee Actions. Except as expressly provided in the Plan or otherwise specified in this Liquidating Trust Agreement, the Liquidating Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. Except as otherwise expressly provided herein, the Liquidating Trustee shall exercise his reasonable business judgment for the benefit of the Beneficiaries in order to maximize the value of the Liquidating Trust Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions, disputes, or other issues regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust with respect to any of the Liquidating Trust Assets, this Liquidating Trust Agreement, or the Plan, including the administration or Distribution of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trust.

4.8     Reliance by Liquidating Trustee:

(a)     The Liquidating Trustee may rely, and shall be fully protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties;

(b)     The Liquidating Trustee may consult with any and all of the Liquidating Trustee's professionals, and the Liquidating Trustee shall not be liable for any action taken or omitted to be taken by the Liquidating Trustee in accordance with the advice of such professionals; and

(c)     The Liquidating Trustee will have no liability for taking any action approved by the Bankruptcy Court or any other court of competent jurisdiction or for otherwise complying with an order of the Bankruptcy Court or any other court of competent jurisdiction.

4.9     Valuation of Liquidating Trust Assets. The Liquidating Trustee shall (to the extent the Liquidating Trustee deems it necessary or appropriate in his reasonable discretion) determine the value of the Liquidating Trust Assets as soon as possible after the Effective Date, and all parties, including the Liquidating Trustee and Beneficiaries, shall consistently use this valuation for all U.S. federal income tax purposes, including for determining gain, loss, or tax basis.

4.10     Abandonment. If, in the Liquidating Trustee's reasonable judgment, any non-cash Liquidating Trust Assets cannot be sold in a commercially reasonable manner or the Liquidating Trustee believes in good faith that such property has inconsequential value to the Liquidating Trust or Liquidating Trust Beneficiaries, the Liquidating Trustee shall have the right to cause the Liquidating Trust to abandon or otherwise dispose of such property, including the dissolution of any corporate entities; provided that such abandonment must comply with all applicable local, state, and federal laws, ordinances, and regulations.

## ARTICLE V
## DISTRIBUTIONS FROM THE TRUST

5.1     Distribution Register. As of the close of business on the Effective Date, the transfer register for Claims maintained by the Debtor, or its respective agent, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims and Interests, including with respect to General Unsecured Claims. The Liquidating Trustee shall have no obligation to recognize any transfer of the Claims occurring on or after the Effective Date.

5.2     Delivery of Distributions in General. Except as otherwise provided herein, the Liquidating Trustee shall make Distributions to Holders of Allowed Claims as of the Effective Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such Distribution; provided, however, that the manner of such Distributions shall be determined at the discretion of the Liquidating Trustee. Notwithstanding anything in this Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall distribute at least annually the Liquidating Trust's net income and the net proceeds from the sale of the assets of the Liquidating Trust in excess of an amount reasonably necessary to meet Claims and contingent liabilities to maintain the value of the Liquidating Trust Assets.

5.3     Minimum Distributions. No Distribution shall be made by the Liquidating Trustee on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

5.4     Undeliverable Distributions and Unclaimed Property. In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtor or the Liquidating Trustee shall have determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under

section 347(b) of the Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interests in property shall be redistributed pro rata (it being understood that "pro rata" shall be determined as if the Claim underlying such unclaimed Distribution had been Disallowed) without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

5.5     Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Liquidating Trustee and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions until receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Allowed General Unsecured Claims against the Debtor shall be required to provide any additional information reasonably necessary for the Liquidating Trustee and any applicable withholding agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Liquidating Trustee reserves the right to allocate all Distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

5.6     Foreign Currency Exchange Rate. Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

5.7     Surrender of Cancelled Instruments or Securities. As a condition precedent to receiving any Distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to the Plan, except to the extent otherwise provided in the Plan.

5.8     Allocations. The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.

5.9     No Postpetition Interest on Claims. Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

5.10    Setoffs and Recoupment. The Liquidating Trustee may, but shall not be required to, set off against, or recoup from, any Allowed Claim (other than an Allowed General Unsecured Claim) against the Debtor of any nature whatsoever that the Debtor or Liquidating Trustee (as applicable) may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim against the Debtor hereunder shall constitute a waiver or release by the Debtor or Liquidating Trustee (as applicable) of any such Claim it may have against the Holder of such Allowed Claim.

5.11    Payments Limited to Liquidating Trust Assets. All payments to be made by the Liquidating Trustee to or for the benefit of any Beneficiary shall be made only to the extent that the Liquidating Trust has sufficient funds or reserves to make such payments in accordance with this Liquidating Trust Agreement and the Plan. Each Beneficiary shall have recourse only to the Liquidating Trust Assets for Distributions under this Liquidating Trust Agreement and the Plan.

5.12    Sales of Assets. The Liquidating Trustee may conduct any sales or liquidations of non-Cash Liquidating Trust Assets on any terms he deems reasonable, without further order of the Bankruptcy Court. Upon the sale, liquidation, transfer or other disposition of the Liquidating Trust Assets by the Liquidating Trustee, the Liquidating Trustee shall deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Liquidating Trust Accounts.

5.13    Distributions to Holders of Disputed Claims. Notwithstanding any other provision of this Plan to the contrary, no payment or Distribution of any kind or nature provided under the Plan shall be made to the extent that all or any portion of any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is filed as set forth in the Plan, unless and until such Disputed Claim becomes an Allowed Claim; provided, however, that any portion of a Claim that is an Allowed Claim shall receive the payment or Distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

5.14    Fees and Expenses. The Liquidating Trustee is authorized to pay the Liquidating Trust Expenses from the Liquidating Trust Assets without further approval or order of the Bankruptcy Court.

## ARTICLE VI
## INTERESTS AND BENEFICIARIES

6.1     Identification and Addresses of Beneficiaries. In order to determine the actual names and addresses of the Beneficiaries, the Liquidating Trustee may, but is under no obligation to, deliver a notice to the Beneficiaries. Such notice may include a form for each Beneficiary to complete in order to be properly registered as a Beneficiary and be eligible for Distributions under the Liquidating Trust. Such form may request the Beneficiary's U.S. federal taxpayer identification number or social security number if the Liquidating Trustee determines that such information is

necessary to fulfill the Liquidating Trust's tax reporting and withholding obligations. A Beneficiary may, after the Effective Date, select an alternative mailing address but only by notifying the Liquidating Trustee in writing via prepaid U.S. certified mail, return receipt requested, of such alternative Distribution address. Absent receipt of such notice, the Liquidating Trustee shall not be obligated to recognize any such change of address. For Distributions, the Liquidating Trustee shall use the address set forth in the applicable proof of claim (or in the bankruptcy Schedules if no proof of claim was filed). The Liquidating Trustee shall have no obligation to refer to or use for Distributions, Claim objections, or otherwise, any other address of any Beneficiary, including addresses set forth on ballots, on pleadings, or otherwise. The Liquidating Trustee, in his reasonable discretion, may suspend Distributions to any Beneficiary that has not provided its U.S. federal taxpayer identification number or social security number, as the case may be, after a request is made. If tax information is not provided within forty-five (45) days after an initial request, the applicable Beneficiary's underlying claim will be expunged and its Liquidating Trust Interest disallowed for all purposes of this Liquidating Trust Agreement to the extent provided under the Plan. Each Beneficiary's Liquidating Trust Interest is dependent upon such Beneficiary's classification under the Plan and the status of its Allowed Claim.

6.2    <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Liquidating Trust will not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee. The Liquidating Trustee shall, upon the written request of a Beneficiary, provide reasonably adequate documentary evidence of such Beneficiary's Claim, as indicated on the books and records of the Liquidating Trust. The expense of providing such documentation shall be borne by the requesting Beneficiary. No Holder will have a beneficial interest in the Liquidating Trust Assets until such time as the Holder's related Claim becomes an Allowed Claim pursuant to the mechanism for determining Allowed Claims prescribed in the Plan. Payments under this Liquidating Trust Agreement may not be assigned, alienated, pledged, encumbered, or subjected to attachment, garnishment, levy, execution, or other legal or equitable process.

6.3    <u>Beneficial Interest Only</u>. The ownership of a Liquidating Trust Interest shall not entitle any Beneficiary to any title in or to, possession of, management of, or control of any of the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided herein. Except as expressly provided in this Liquidating Trust Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Liquidating Trust or Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidating Trust Assets.

6.4    <u>Ownership of Beneficial Interests Hereunder</u>. Each Beneficiary shall own a beneficial interest in the Liquidating Trust (as represented by the Liquidating Trust Interest(s) issued to such Beneficiary consistent with the Plan). The record holders of the Liquidating Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Liquidating Trustee expressly for such purpose.

6.5    <u>No Standing</u>. Except as expressly provided in this Liquidating Trust Agreement, if at all, a Beneficiary shall not have standing to direct or to seek to direct the Liquidating Trust or

Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidating Trust Assets.

6.6 <u>Requirement of Undertaking</u>. The Liquidating Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Liquidating Trust Agreement, or in any suit against the Liquidating Trustee for any action taken or omitted by him as Liquidating Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that this shall not apply to any suit by the Liquidating Trustee.

6.7 <u>Exemption from Registration</u>. The parties hereto intend that the rights of the Beneficiaries arising under this Liquidating Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities law. If such rights constitute securities, the exemption from registration provided by section 1145 of the Code and under applicable securities laws shall apply to their issuance under the Plan. No party to this Liquidating Trust Agreement shall make a contrary or different contention.

## ARTICLE VII
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1 <u>Parties Dealing with the Liquidating Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents to act in connection with the Liquidating Trust Assets. No Person that may deal with the Liquidating Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

7.2 <u>Limitation of Liquidating Trustee's Liability</u>.

7.2.1. Notwithstanding anything to the contrary in this Liquidating Trust Agreement, in exercising the rights granted hereunder, the Liquidating Trustee will use the same degree of care and skill as an individual of ordinary prudence, discretion, and judgment would exercise or use in such individual's own affairs. The Liquidating Trust, the Liquidating Trustee, and their respective employees, agents, professionals, and other representatives, acting in such capacity, will neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, this Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or this Liquidating Trust Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions of this paragraph will have no effect on (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan, this Liquidating Trust Agreement, or any contract, instrument, release, or other agreement to be entered into or delivered in connection with the Plan or (b) the liability of any such entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted bad faith, fraud, willful misconduct, gross negligence, or a breach of fiduciary duty.

7.2.2.    Notwithstanding anything to the contrary in this Liquidating Trust Agreement, none of the Beneficiaries shall have any liability for the obligations or responsibilities of, or for any actions taken by, the Liquidating Trust or Liquidating Trustee.

7.2.3.    Upon the appointment of a successor Liquidating Trustee and the delivery of the then-remaining Liquidating Trust Assets to the successor Liquidating Trustee, the predecessor Liquidating Trustee and any of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, distribution agents, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer, and successors shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as the Liquidating Trustee). A successor Liquidating Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility. A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidating Trustee for any events or occurrences subsequent to the cessation of its role as the Liquidating Trustee.

7.3    _Indemnification_. The Liquidating Trustee and each of his respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer, and successors (each, an "**Indemnified Party**") shall be indemnified for, and defended and held harmless against, by the Liquidating Trust and solely from the Liquidating Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable attorney, other professional and related costs of defense) actually incurred without being solely a direct result of gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Liquidating Trust Agreement. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid by the Liquidating Trustee out of the Liquidating Trust Assets. The Liquidating Trustee shall not be personally liable, nor shall any firm for whom the Liquidating Trustee is employed (the "**Liquidating Trustee Firm**"), be liable for the payment of any Liquidating Trust expense or claim or other liability of the Liquidating Trust, and no Person shall look to the Liquidating Trustee personally or the Liquidating Trustee Firm for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation, or removal of the Liquidating Trustee or any Indemnified Party or the termination of the Liquidating Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns. If the Liquidating Trustee becomes involved in any action, lawsuit, proceeding, or investigation in connection with any matter arising directly or indirectly out of or in connection with the Plan, this Liquidating Trust Agreement, the

Confirmation Order, or the affairs of the Liquidating Trust, the Liquidating Trust shall periodically advance or otherwise reimburse on demand the reasonable legal and other expenses including, without limitation, the cost of any investigation and preparation and attorney's fees, disbursements, and related expenses of the Liquidating Trustee incurred in connection therewith as a Liquidating Trust Expense, but the Liquidating Trustee shall be required to repay promptly to the Liquidating Trust the amount of any such advanced or reimbursed expense paid to the Liquidating Trustee to the extent that it shall be ultimately determined by Final Order that the Liquidating Trustee engaged in fraud, willful misconduct, or gross negligence in connection with the affairs of the Liquidating Trust with respect to which such expenses were paid. The Liquidating Trust shall indemnify and hold harmless the officers, employees, agents, affiliates, and professionals of the Liquidating Trust and Liquidating Trustee to the same extent as provided in this Section 7.3 for the Liquidating Trustee. The provisions of this Section 7.3 shall remain available to any former Liquidating Trustee or the estate of any decedent Liquidating Trustee. The indemnification provided hereby shall be a Liquidating Trust Expense.

## ARTICLE VIII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

8.1     Appointment. The Liquidating Trustee has been selected pursuant to the provisions of the Plan to effectuate an orderly and efficient transition of the administration, in accordance herewith, of the Liquidating Trust Assets for the benefit of the Beneficiaries.

8.2     Term of Service. The Liquidating Trustee shall serve until the earlier to occur of (a) the termination of the Liquidating Trust in accordance with this Liquidating Trust Agreement and the Plan and (b) the Liquidating Trustee's death, dissolution, incapacity, resignation, or removal.

8.3     Removal of a Liquidating Trustee. Any Person serving as Liquidating Trustee may be removed at any time for cause by the Debtor.  Notwithstanding the removal of the Liquidating Trustee pursuant to this section, the rights of the resigning Liquidating Trustee under this Liquidating Trust Agreement, including all rights of indemnification, with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning Liquidating Trustee following the effectiveness of such resignation.

8.4     Resignation of Liquidating Trustee. The Liquidating Trustee may resign at any time by giving the Debtor and the Bankruptcy Court at least thirty (30) days' written notice of the Liquidating Trustee's intention to do so. In the event of a resignation, the resigning Liquidating Trustee (or the successor Liquidating Trustee) will render to the Bankruptcy Court a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Liquidating Trustee. The resignation will be effective on the latest of (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; (c) the date the accounting described in the preceding sentence is delivered; and (d) the date the successor Liquidating Trustee accepts its appointment as such.

8.5     Appointment of Successor Liquidating Trustee. Upon the resignation, death, incapacity, or removal of a Liquidating Trustee, a successor Liquidating Trustee shall be appointed by the Debtor on an interim or permanent basis, on request of an interested Person or on its own

motion. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of this Liquidating Trust Agreement and agrees that the provisions of this Liquidating Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

8.6     <u>Acceptance of Appointment by Successor Liquidating Trustee</u>. Any successor Liquidating Trustee appointed pursuant to this Liquidating Trust Agreement shall execute an instrument accepting such appointment as the Liquidating Trustee under this Agreement and shall file and maintain such acceptance with the books and records of the Liquidating Trust. Upon acceptance of such appointment as aforesaid, such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Liquidating Trust with like effect as if originally named herein; <u>provided</u>, <u>however</u>, that a removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all such estates, properties, rights, powers and trusts of such predecessor Liquidating Trustee.

8.7     <u>Powers and Duties of Successor Trustee</u>. A successor Liquidating Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Liquidating Trust Agreement and the Plan. Notwithstanding anything to the contrary herein, a removed or resigning Liquidating Trustee shall, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

8.8     <u>Liquidating Trust Continuance</u>. The death, resignation, dissolution, incapacity, or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any then-existing agency created pursuant to this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee.

8.9     <u>Trustee Compensation</u>. The Liquidating Trustee shall be paid based upon his or her normal, established hourly rates, which shall be provided to the Debtor prior to the Effective Date.

8.10     <u>Prohibited Use of Liquidating Trust Assets</u>. Except as required in the performance of its duties, the Liquidating Trustee shall not use for personal gain any material, non-public information of or pertaining to the Liquidating Trust Assets.

## ARTICLE IX
## MAINTENANCE OF RECORDS; REPORTING; FEES

9.1     <u>Books and Records</u>. The Liquidating Trustee will maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets (which assets will be valued consistently for all federal income tax purposes) and an accounting of all receipts and disbursements. All such books and records will be open to inspection by any Beneficiary or the Bankruptcy Court at any reasonable time during normal business hours. The fiscal year of the Liquidating Trust will be the calendar year.

9.2     <u>Reports to Be Filed with the Bankruptcy Court</u>. The Liquidating Trustee, on behalf of the Liquidating Trust, shall File with the Bankruptcy Court (and provide to the U.S. Trustee and

any other party entitled to receive any such report pursuant to this Liquidating Trust Agreement), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, any Distributions made by him, and other matters relating to the implementation of the Plan and this Liquidating Trust Agreement. The Liquidating Trustee shall also provide the U.S. Trustee and the Bankruptcy Court the information and reports that they may reasonably request concerning the Liquidating Trust administration, including post-confirmation operating reports in accordance with the U.S. Trustee's guidelines.

9.3     <u>Tax Returns</u>. The Liquidating Trustee will file all tax returns on a basis consistent with the treatment of the Liquidating Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as disputed ownership funds governed by Treasury Regulation § 1.468B-9 (each of which will be taxable as "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and will pay all taxes owed from Liquidating Trust Assets.

9.4     <u>Statutory Fees</u>. The Liquidating Trustee shall pay any and all fees due and payable pursuant to 28 U.S.C. § 1930 with respect to the Debtor that accrue from and after the Effective Date.

## ARTICLE X
## DURATION OF TRUST

10.1     <u>Duration</u>. This Liquidating Trust Agreement shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of this Liquidating Trust Agreement and the Plan.

10.2     <u>Termination of the Trust</u>. The Liquidating Trustee will liquidate (including objecting to Claims and determining the proper recipients and amounts of Distributions to be made from the Liquidating Trust) and distribute the Liquidating Trust Assets to the Beneficiaries that are determined to hold Allowed General Unsecured Claims and take such steps as are necessary, appropriate or desirable to close the Debtor's Chapter 11 case. Upon (a) the payment of all costs, expenses and obligations incurred in connection with administering the Liquidating Trust; (b) the Distribution or abandonment of all remaining Liquidating Trust Assets and/or proceeds therefrom in accordance with the provisions of the Plan, the Confirmation Order, and this Liquidating Trust Agreement; (c) the closure of the Debtor's Chapter 11 case; and (d) the completion of any necessary or appropriate reports, tax returns or other documentation, the Liquidating Trust will terminate, and the Liquidating Trustee will have no additional responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in <u>Section 10.4</u> of this Liquidating Trust Agreement.

10.3     <u>Termination After Three Years</u>. If the Liquidating Trust has not been previously terminated pursuant to <u>Section 10.2</u> of this Liquidating Trust Agreement, on the third anniversary of the Effective Date, the Liquidating Trustee will distribute all of the Liquidating Trust Assets to the Beneficiaries in accordance with the Plan and this Liquidating Trust Agreement; <u>provided</u>, <u>however</u>, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidating Trust to complete its liquidating purpose, the term of

the Liquidating Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for U.S. federal income tax purposes); <u>provided</u>, <u>further</u>, notwithstanding anything to the contrary herein or in the Plan, in no event shall a Beneficiary be required to accept a Liquidating Trust Asset and any Beneficiary may refuse acceptance of a Liquidating Trust Asset by notice to the Liquidating Trustee. Immediately after (a) the payment of all costs, expenses and obligations incurred in connection with administering the Liquidating Trust; (b) the Distribution or abandonment of all remaining Liquidating Trust Assets and/or proceeds therefrom in accordance with the provisions of the Plan, the Confirmation Order, and this Liquidating Trust Agreement; (c) the closure of the Debtor's Chapter 11 case; and (d) the completion of any reports, tax returns, or other documentation determined by the Liquidating Trustee, in its reasonable discretion, to be necessary, appropriate, or desirable, the Liquidating Trust will terminate and the Liquidating Trustee will have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in <u>Section 10.4</u> of this Liquidating Trust Agreement.

10.4    <u>Other Termination Procedures</u>. The Liquidating Trustee will at all times endeavor to liquidate expeditiously the Liquidating Trust Assets, and in no event will the Liquidating Trustee unduly prolong the duration of the Liquidating Trust. On termination of this Liquidating Trust, the Liquidating Trustee will advise the Bankruptcy Court in writing of the Liquidating Trust's termination. Notwithstanding the foregoing, after the termination of the Liquidating Trust, the Liquidating Trustee will have the power to exercise all the powers, authorities, and discretion herein conferred solely for the purpose of liquidating and winding up the affairs of the Liquidating Trust. For a period of five years after the Distribution of all of the Liquidating Trust Assets, the Liquidating Trustee will retain the books, records, and files that have been delivered to or created by the Liquidating Trustee, at which time the Liquidating Trustee may dispose of such books, records, and files in any manner that the Liquidating Trustee deems appropriate.

10.5    <u>No Termination by Beneficiaries</u>. The Liquidating Trust may not be terminated at any time by the Beneficiaries.

10.6    <u>No Reversions</u>. Notwithstanding anything to the contrary in the Plan or this Liquidating Trust Agreement, in no event will any of the Liquidating Trust Assets revert to the Debtor upon termination of the Liquidating Trust.

**ARTICLE XI**
**MISCELLANEOUS**

11.1    <u>No Assignment</u>. Neither the Debtor nor the Trustees may assign this Agreement without the prior written consent of the other.

11.2    <u>Notices</u>. Unless otherwise expressly provided herein, all notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Liquidating Trustee. Any notice or other communication that may be or is required to be given, served, or sent to the Liquidating Trust shall

be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid or transmitted by hand delivery (if receipt is confirmed) addressed as follows:

      If to the Liquidating Trustee:

            Daniel Sherman
            Sherman & Yaquinto LLP
            509 N. Montclair Ave.
            Dallas, Texas 75208
            Email: djsherman@syllp.com

      If to the Debtor:

            Joshua N. Eppich
            Bonds Ellis Eppich Schafer Jones LLP
            420 Throckmorton Street, Suite 1000
            Fort Worth, Texas 76102
            Email: josh@bondsellis.com

      11.3   No Bond / Insurance. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction unless the Liquidating Trustee decides in its reasonable judgment to obtain such bond or other security. The Liquidating Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for himself, his agents, representatives, employees, or independent contractors, including coverage with respect to the liabilities, duties, and obligations of the Liquidating Trustee and his agents, representatives, employees, or independent contractors under this Liquidating Trust Agreement and the Plan ("**Insurance Coverages**"). The cost of any such Insurance Coverage shall be an expense of the Liquidating Trust and paid out of the Liquidating Trust Assets.

      11.4   Governing Law. This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of Texas (excluding conflict of laws rules), including all matters of validity, construction, and administration; provided, however, that there shall not be applicable to the Liquidating Trust, the Liquidating Trustee, or this Liquidating Trust Agreement any provisions of the laws (statutory or common) of the State of Texas pertaining to trusts that relate to or regulate, in a manner inconsistent with the terms hereof, (a) the filing with any court or governmental body or agency of trustee accounts or schedule of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income and principal, (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding or investing trust assets, or (g) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees.

11.5    <u>Successors and Assigns</u>. This Liquidating Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Liquidating Trust Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.7    <u>No Execution</u>. All funds in the Liquidating Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the Liquidating Trust Assets or Liquidating Trust in any manner or compel payment from the Liquidating Trust except by Final Order of the Bankruptcy Court. Payment will be solely governed by this Liquidating Trust Agreement and the Plan.

11.8    <u>Amendment</u>. This Agreement may be amended by agreement between the Debtor and Liquidating Trustee or by order of the Bankruptcy Court.

11.9    <u>Waiver</u>. No failure by any Party to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.10    <u>Severability</u>. If any term, provision, covenant, or restriction contained in this Liquidating Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Liquidating Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.11    <u>Further Assurances</u>. Without limitation of the generality of this Liquidating Trust Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Liquidating Trust Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

11.12    <u>Counterparts and Facsimile Signatures</u>. This Liquidating Trust Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

11.13    <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Liquidating Trust, Liquidating Trustee, and Liquidating Trust Assets, including the determination of all disputes arising out of or related to administration of the Liquidating Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Liquidating Trust Agreement or the administration of the Liquidating Trust. The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 case, including the matters set forth in this Liquidating Trust Agreement, then the provisions of

this Liquidating Trust Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Liquidating Trust Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the parties have executed this Liquidating Trust Agreement as of the day and year written below.

**DEBTOR**:

NOC, Inc.

By: _____

Name: _____

Its:     _____

Date:   _____

**LIQUIDATING TRUSTEE**:

Daniel J. Sherman, solely in his capacity as Liquidating Trustee

By: _____

Daniel J. Sherman

Date:   _____