**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NOC, INC., | § | CASE NO. 23-40266-elm11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

**AMENDED DISCLOSURE STATEMENT IN SUPPORT OF AMENDED
PLAN OF LIQUIDATION OF NOC, INC.,
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich
Texas Bar I.D. No. 24050567
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

Dated: June 28, 2023

---

[1] The Debtor's principal address is 4200 South Hulen Street, Suite 680, Fort Worth, Texas 76109.

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT AS CONTAINING "ADEQUATE INFORMATION" AS DEFINED IN SECTION 1125(a) OF THE CODE FOR USE IN SOLICITATION OF ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN. THE FILING AND DISSEMINATION OF THIS DISCLOSURE STATEMENT ARE NOT INTENDED TO BE, AND SHOULD NOT IN ANY WAY BE CONSTRUED AS, A SOLICITATION OF VOTES ON THE DEBTOR'S PLAN , NOR SHOULD THE INFORMATION CONTAINED IN THIS PROPOSED DISCLOSURE STATEMENT BE RELIED UPON FOR ANY PURPOSE BEFORE THE COURT DETERMINES THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL INVESTOR OR CREDITOR OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT ANY TIME BEFORE THE HEARING TO CONSIDER WHETHER THE SAME CONTAINS "ADEQUATE INFORMATION" AND AUTHORIZE THE SOLICITATION OF ACCEPTANCES AND REJECTIONS OF THE DEBTOR'S PLAN.**

**A SEPARATE NOTICE OF HEARING WILL BE SERVED BY THE DEBTOR TO NOTIFY PARTIES IN INTEREST OF THE DATE AND TIME SCHEDULED FOR A HEARING ON THE APPROVAL OF THIS PROPOSED DISCLOSURE STATEMENT.**

## ARTICLE I. INTRODUCTION

1.      The Debtor submits this Disclosure Statement for use in the solicitation of votes on the *Amended Plan of Liquidation of NOC, Inc., Pursuant to Chapter 11 of the Code* (the "**Plan**"). The Plan is annexed as **Exhibit 1** to this Disclosure Statement. Capitalized terms used in this Disclosure Statement shall have the meaning give to them in the Plan.

The following is a nonexclusive list of certain key terms in the Plan:

- Payment in full of all Allowed Secured, Administrative, and Priority Claims;

- Creation of the Liquidating Trust as further described in this Disclosure Statement and the Plan; and

- Implementation of settlement terms with other parties.

2.      The sources of funding for the Plan include: Cash on hand, Causes of Action, and proceeds from the D&O Cause of Action.

3.      If the Plan is approved, the remaining assets of the Debtor will be placed into the Liquidating Trust, which will distribute funds to Holders of Allowed Claims.

4.      This Disclosure Statement sets forth certain relevant information regarding the Debtor's pre-petition operations and financial history, the need to seek Chapter 11 protection, significant events that have occurred during the Case, and the resultant analysis of the expected treatment of the Debtor's Creditors and Interest Holders. This Disclosure Statement also describes terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of Confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims and Interests must follow for their votes to be counted.

5.      All descriptions of the Plan set forth in this Disclosure Statement are for summary purposes only. To the extent there are any inconsistency between this Disclosure Statement and the Plan, the Plan shall control. You are encouraged to review the Plan in full.

**YOU ARE BEING SENT THIS DISCLOSURE STATEMENT BECAUSE YOU ARE A CREDITOR, SHAREHOLDER, OR OTHER PARTY IN INTEREST OF THE DEBTOR. THIS DOCUMENT DESCRIBES A CHAPTER 11 PLAN WHICH, WHEN CONFIRMED BY THE COURT, WILL GOVERN HOW YOUR CLAIM OR INTEREST WILL BE TREATED. THE DEBTOR URGES YOU TO CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND THE PLAN.**

**THE DEBTOR BELIEVES THAT ALL CREDITORS SHOULD VOTE IN FAVOR OF THE PLAN.**

A. **Summary of the Plan**

1.      The Debtor is proposing a plan in which all Holders of Allowed Claims will be paid a percentage of their Claim pursuant to the terms of the Liquidating Trust Agreement. Distributions under the Liquidating Trust, as contemplated by the Plan, shall be made with Cash on hand and proceeds from prosecuting Causes of Action.

2.      Under the Plan, Claims and Interests are classified, and each Class has its own treatment. The table below describes each Class of Claims and Interests, which Holders of Claims and Interests belong in each class, the treatment of each Class of Claims or Interests, and the expected recovery of each Holder of Claims or Interests in the respective class.[2]

| <u>**Class Description**</u> | <u>**Voting and Treatment**</u> |
|---|---|
| <u>Class 1: Other Priority Claims.</u> | Class 1 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited. |
| | Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, receive one of the following treatments, in the sole discretion of the Debtor: (i) full payment in cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim in a manner that leaves such Claim Unimpaired. |
| | Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable after the Effective Date, or (ii) if such Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable after such date. |
| <u>Class 2: Other Secured Claims.</u> | Class 2 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited. |
| | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, in full and final |

---

[2] The estimated totals are based upon the Debtor's Schedules and/or the Claims Register, unless otherwise provided.

| | |
|---|---|
| | satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim be paid cash in an amount equal to the Allowed amount of such Claim as determined in accordance with Section 506(a) of the Code, on the Effective Date or as soon after the Effective Date as practicable, or receive the collateral securing its Allowed Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable. |
| Class 3: Truist Secured Claim | Class 3 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited. |
| Class 4: Hillcrest Secured Claim | Class 4 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited. |
| Class 5: Unsecured Claims | Class 5 is Impaired under the Plan. Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan. |
| Class 6: Equity Interests | Class 6 is Impaired under the Plan. In accordance with Section 1126(f) of the Code, Holders of Interests in Class 6 are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan. |

## B.      Filing of the Debtor's Case

3.      On January 30, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The Debtor filed the Case to preserve the value of its estate and to restructure its financial and legal affairs. To such end, the Debtor has continued to manage its business as a debtor in possession in accordance with Sections 1107 and 1108 of the Code. No trustee, examiner, or committee of unsecured creditors has been appointed in the Case.

## C.        Purpose of Disclosure Statement

4.        The purpose of this Disclosure Statement is to enable creditors whose Claims are impaired to make an informed decision in exercising their right to vote to accept or reject the Plan. Approval of this Disclosure Statement does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered under the Plan. The Court's approval does indicate, however, that the Court has determined that the Disclosure Statement contains adequate information to permit a Creditor to make an informed judgment regarding acceptance or rejection of the Plan.

## D.        Hearing on Approval of Disclosure Statement

5.        The Court has scheduled a hearing to consider final approval of this Disclosure Statement (the "**Disclosure Statement Hearing**") on **[DATE] at [TIME] .m., Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Once commenced, the Disclosure Statement Hearing may be adjourned or continued by announcement in open court with no further notice.

## E.        Hearing on Confirmation of Plan

6.        Pursuant to Section 1128 of the Code, the Court has scheduled a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"), on [DATE] at [_____.m.], Central Time, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice.

## F.        Disclaimers

THIS DISCLOSURE STATEMENT IS PROVIDED FOR USE SOLELY BY HOLDERS OF CLAIMS AND INTERESTS AND THEIR ADVISERS IN CONNECTION WITH THEIR DETERMINATION TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY OTHER ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY IMPACT ON YOUR DECISION TO ACCEPT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE REPRESENTATION OF THE DEBTOR ONLY AND NOT OF ITS ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS. FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. THE FINANCIAL PROJECTIONS AND OTHER FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, NECESSARILY WERE BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND MAY BE BEYOND THE CONTROL OF THE DEBTOR AND THE DEBTOR'S MANAGEMENT.

THE DEBTOR IS NOT ABLE TO CONFIRM THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT INCLUDE ANY INACCURACIES. HOWEVER, THE DEBTOR HAS MADE ITS BEST EFFORT TO PROVIDE ACCURATE INFORMATION AND IS NOT AWARE OF ANY INACCURACY IN THIS DISCLOSURE STATEMENT.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN INDEPENDENTLY INVESTIGATED BY THE COURT AND HAS NOT YET BEEN APPROVED BY THE COURT. IN THE EVENT THIS DISCLOSURE STATEMENT IS APPROVED, SUCH APPROVAL DOES NOT CONSTITUTE A DETERMINATION BY THE COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED BY THE DEBTOR CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS, THE EXTENT OF ITS LIABILITIES, OR ANY OTHER FACTS MATERIAL TO THE PLAN ARE THE REPRESENTATIONS MADE IN THIS DISCLOSURE STATEMENT. REPRESENTATIONS CONCERNING THE PLAN OR THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT ARE NOT AUTHORIZED BY THE DEBTOR.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE, AND ALL SUCH HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR OWN ADVISERS.

THE DEBTOR HAS NO ARRANGEMENT OR UNDERSTANDING WITH ANY BROKER, SALESMAN, OR OTHER PERSON TO SOLICIT VOTES FOR THE PLAN. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS IN CONNECTION WITH THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS SHOULD NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AS OF ANY TIME AFTER THIS DATE OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT OR IN THE AFFAIRS OF THE DEBTOR SINCE THIS DATE. ANY ESTIMATES OF CLAIMS AND INTERESTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE COURT. SIMILARLY, THE ANALYSIS OF ASSETS AND THE AMOUNT ULTIMATELY REALIZED FROM THEM MAY DIFFER MATERIALLY.

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED TO BRIEFLY SUMMARIZE THE MATERIAL PROVISIONS OF THE PLAN AND IS SUBJECT TO AND QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS OF THE PLAN.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THIS DATE UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIMS ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS OR INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH IN THIS DISCLOSURE STATEMENT HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

## ARTICLE II. VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

### A.        Ballots and Voting Deadline

7.        Holders of Claims and Interests who are entitled to vote on the Debtor's Plan in this Case will receive instructions for submitting a Ballot to vote to accept or reject the Plan. After carefully reviewing the Disclosure Statement, each Holder of a Claim or Interest (or its authorized representative) entitled to vote should follow the instructions to indicate its vote on the Ballot. All Holders of Claims or Interests (or their authorized representatives) entitled to vote must (i) carefully review the Ballot and the instructions for completing it, (ii) complete all parts of the Ballot, and (iii) submit the Ballot by the specified deadline for the Ballot to be considered. Holders of Claims or Interests entitled to vote must either (i) send the Ballot(s) by electronic mail to Joshua@bondsellis.com and C.JoshOsborne@bondsellis.com, or (ii) send the Ballot(s) by First Class Mail to the Debtor at the following address: Bonds Ellis Eppich Schafer Jones LLP, c/o Joshua N. Eppich, 420 Throckmorton St., Suite 1000, Fort Worth, Texas 76102. Holders of Claims or Interests may contact the Debtor's counsel, Joshua N. Eppich by telephone at (817) 405-6905, or by email at Joshua@bondsellis.com.

8.        The Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received by the Debtor by no later than [DATE] at [TIME] []. m. prevailing Central Time (the "Voting Deadline"). **BALLOTS SUBMITTED IN PAPER FORM MUST BE SUBMITTED SO AS TO BE ACTUALLY RECEIVED BY THE DEBTOR OR ITS COUNSEL NO LATER THAN THE VOTING DEADLINE. ANY BALLOTS SUBMITTED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED UNLESS AGREED TO BY THE DEBTOR.**

### B.        Holders of Claims Entitled to Vote

9.        The Court has ordered [DATE] as the record date (the "**Voting Record Date**") for the purposes of determining the Holders of Claims that are entitled to vote on the Plan.

10.     Any Holder of a Claim of the Debtor whose Claim is Impaired under the Plan is entitled to vote if such Claim has not been Disallowed and either (i) the Claim is evidenced by a Proof of Claim that has been timely filed by the Claims Bar Date and as to which the Debtor or any other party in interest, as of the Voting Record Date, has not filed an objection, or (ii) the Claim has been listed in the Schedules in an amount greater than $0.00 and such Claim is not scheduled as unknown, disputed, contingent, or unliquidated.

11.     Any Holder of a Claim that is otherwise not entitled to vote may seek the temporary allowance of such Claim, by filing a motion, in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Such motion must be heard and determined by the Court on or before the Voting Deadline.

12.     In addition, a vote may be disregarded if the Court determines that the acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Code.

## C.      Claims and Interests Impaired or Unimpaired Under the Plan

13.     Classes 5 and 6 are Impaired under the Plan. Holders of Claims in Class 5 are eligible, subject to the voting requirements described above, to vote to accept or reject the Plan. Holders of Interests in Class 6 are deemed to reject the Plan and, thus, are not entitled to vote to accept or reject the Plan.

14.     Classes 5 and 6 are Impaired because the proposed treatments of Classes 5 and 6 alter the legal, equitable, or contractual rights of Holders of Allowed Claims and Interests in such Classes.

15.     Allowed Claims in Classes 1, 2, 3, and 4will receive full payment on such Allowed Claim on or before the Effective Date and, therefore will be conclusively presumed to accept the Plan and will not be entitled to vote on the Plan pursuant to Section 1126(f) of the Code.

## D.      Information on Voting and Vote Tabulations

### 1.      Transmission of Ballots to Holders of Claims and Interests

16.     Instructions for completing and submitting Ballots are being provided to all Holders of Claims entitled to vote on the Plan in accordance with the Bankruptcy Rules. In the event a Holder of a Claim entitled to vote does not vote, the Court may deem such Holder of a Claim to have accepted the Plan. Those Holders of Claims whose Claims are Unimpaired under the Plan are conclusively presumed to have accepted the Plan under Section 1126(f) of the Code, and therefore need not vote with regards to the Plan. Under Section 1126(g) of the Code, Holders of Claims or Interests who do not either receive or retain any property under the Plan are deemed to have rejected the Plan.

### 2.      Ballot Tabulation Procedures

17.     The Debtor shall count all Ballots filed on account of (i) Claims evidenced by a Proof of Claim that have been timely filed by the Claims Bar Date and as to which the Debtor or

any other party in interest, as of the Voting Record Date, has not filed an objection or (ii) Claims that have been listed in the Schedules in an amount greater than $0.00 and such Claims are not scheduled as unknown, disputed, contingent, or unliquidated. The foregoing general procedures will be subject to the following exceptions and clarifications:

    (a)    if a Claim is Allowed under the Plan or by order of the Court, such Claim is Allowed for voting purposes in the Allowed amount set forth in the Plan or order;

    (b)    if a Claim is listed in the Debtor's Schedules and is not listed as unknown, contingent, unliquidated, or disputed, and is listed in an amount in excess of $0.00, such Claim is temporarily Allowed for voting purposes in the amount set forth in the Debtor's Schedules;

    (c)    if a Claim is listed in the Debtor's Schedules and no Proof of Claim was timely filed by the Claims Bar Date, and such Claim is listed or asserted as unknown, contingent, unliquidated, or disputed, or is listed or asserted for $0.00, such Claim shall not be counted or included for voting purposes;

    (d)    if any Claim is otherwise a Disputed Claim as of the Voting Deadline, or an order has been entered disallowing such Claim, such Claim shall not be counted or included for voting purposes;

    (e)    if a Creditor filed duplicate Proofs of Claim by the Claims Bar Date against the Debtor, such Creditor's Claim shall only be counted once; and

    (f)    if a Proof of Claim has been amended by a later-filed Proof of Claim, only the later-filed Claim shall be entitled to vote unless the later-filed Claims was filed after the Voting Record Date, in which case, the earlier-filed Claim shall be entitled to vote.

18.    The following procedures shall apply for tabulating votes:

    (a)    any Ballot that is otherwise timely completed, executed, and properly cast to the Debtor but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, shall not be counted; if no votes to accept or reject the Plan are received with respect to a particular Class that is entitled to vote on the Plan, such Class shall be deemed to have voted to accept the Plan;

    (b)    if a Creditor casts more than one (1) Ballot voting the same Claim before the Voting Deadline, the last properly cast Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus supersede any prior Ballots;

(c)     Creditors must vote all of their Claims within a particular Class to either accept or reject the Plan and may not split their votes within a particular Class and thus a Ballot (or group of Ballots) within a particular Class that partially accepts and partially rejects the Plan shall not be counted;

(d)     a Creditor who votes an amount related to a Claim that has been paid or otherwise satisfied in full or in part shall only be counted for the amount that remains unpaid or not satisfied, and if such Claim has been fully paid or otherwise satisfied, such vote will not be counted for purposes of amount or number; and

(e)     for purposes of determining whether the numerosity and amount requirements of Sections 1126(c) and 1126(d) of the Code have been satisfied, the Debtor will tabulate only those Ballots received by the Voting Deadline. For purposes of the numerosity requirement of Section 1126(c) of the Code, separate Claims held by a single Creditor in a particular Class shall be aggregated as if such Creditor held one (1) Claim against the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

19.     The following Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any Ballot received after the Voting Deadline unless the Debtor, in its sole discretion, grants an extension of the Voting Deadline with respect to such Ballot;

(b)     any Ballot that is illegible or contains insufficient information to permit identification of the voter;

(c)     any Ballot cast by a Person that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

(d)     any duplicate Ballot will only be counted once; and

(e)     any unsigned Ballot or paper Ballot that does not contain an original signature.

### 3.  Execution of Ballots by Representatives

20.     To the extent applicable, if a Ballot is submitted by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such Persons must indicate their capacity when submitting the Ballot and, at the Debtor's request, must submit proper evidence satisfactory to the Debtor of their authority to so act. For purposes of voting tabulation, a Ballot submitted by a representative shall account for the total number of represented parties with respect to the numerosity requirement set forth in this Article.

**4. Waivers of Defects and Other Irregularities Regarding Ballots**

21.     Unless otherwise directed by the Court, all questions concerning the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, whose determination will be final and binding. The Debtor reserves the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel, be unlawful. The Debtor further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines. Neither the Debtor nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification; provided, however, that the Debtor will indicate on the ballot summary the Ballots, if any, that were not counted and will provide copies of such Ballots with the ballot summary to be submitted at the Confirmation Hearing. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until any irregularities have been cured or waived. Unless otherwise directed by the Court, Ballots previously furnished, and as to which any irregularities have not subsequently been cured or waived, will be invalidated.

**5. Withdrawal of Ballots and Revocation**

22.     The Debtor may allow any claimant who submits a properly completed Ballot to supersede or withdraw such Ballot on or before the Voting Deadline. In the event the Debtor does permit such supersession or withdrawal, the claimant, for cause, may change or withdraw its acceptance or rejection of the Plan in accordance with Bankruptcy Rule 3018(a).

**E.     Confirmation of Plan**

**1. Solicitation of Acceptances**

23.     The Debtor is soliciting your vote.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO DEBTOR'S COUNSEL FOR APPROPRIATE ACTION.**

**THIS IS A SOLICITATION SOLELY BY THE DEBTOR, AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR AND NOT OF SUCH**

**SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

### 2. Requirements for Confirmation of Plan

24.     At the Confirmation Hearing, the Court shall determine whether the requirements of Section 1129 of the Code have been satisfied, in which event, the Court shall enter an order confirming the Plan. The Debtor believes that the Plan satisfies all the statutory requirements of the Code for Confirmation because, among other things:

(a)     The Plan complies with the applicable provisions of the Code;

(b)     The Debtor has complied with the applicable provisions of the Code;

(c)     The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     Any payment or distribution made or promised by the Debtor or by a Person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Court as reasonable;

(e)     The Debtor will have disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Holders of Claims and Interests and with public policy;

(f)     Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(g)     With respect to each Impaired Class of Claims or Interests, either each Holder of a Claim or Interest of the Class will have accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Code. If Section 1111(b)(2) of the Code applies to the Claims of a Class, each Holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value

of that Holder's interest in the Debtor's interest in the property that secures that Claim;

(h)     Each Class of Claims or Interests will have accepted the Plan or is not Impaired under the Plan, subject to the Debtor's right to seek cramdown of the Plan under Section 1129(b) of the Code;

(i)     Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expenses and Priority Claims, other than Priority Tax Claims, will be paid in full on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable after the Effective Date), and that Priority Tax Claims will receive either payment in full on the Effective Date or as soon as reasonably practical after the Effective Date, or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claims;

(j)     With respect to an Other Secured Claim, the Holder of that Claim will receive on account of such Claim either (i) a payment equal to 100% of its Allowed Class 2 Claim in Cash on the Effective Date; (ii) the collateral securing its Allowed Class 2 Claim, provided, however, any collateral remaining after satisfaction of such Allowed Class 2 Claim shall re-vest in the Liquidating Trust pursuant to the Plan; or (iii) Reinstatement of its Allowed Class 2 Claim;

(k)     If a Class of Claims or Interests is Impaired under the Plan, at least one such Class of Claims or Interests will have accepted the Plan determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class;

(l)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan;

(m)     All court fees, as determined by the Court at the Confirmation Hearing, will have been paid or the Plan provides for the payment of such fees on the Effective Date; and

(n)     The Plan provides that all transfers of property shall be made in accordance with applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

25.     The Debtor asserts that it has proposed the Plan in good faith and it believes that it has complied, or will have complied, with all the requirements of the Code governing confirmation of the Plan.

### 3.  Acceptances Necessary to Confirm the Plan

26.     Voting on the Plan by each Holder of an Impaired Claim or Interest (or its authorized representative) is important. Chapter 11 of the Code does not require that each Holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan. Generally, under the acceptance provisions of Section 1126(a) of the Code, each Class of Claims or Interests has accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan vote to accept the Plan. With regard to a Class of Interests, more than two-thirds of the shares actually voted must accept to bind that Class. Even if all Classes of Claims and Interests accept the Plan, the Court may refuse to confirm the Plan**.**

### 4.  Cramdown

27.     In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Court may still confirm the Plan at the request of the Debtor if (i) at least one Impaired Class has voted to accept the Plan and (ii) as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A Chapter 11 plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Interests. "Fair and equitable" has different meanings for Holders of secured and unsecured Claims and Interests.

28.     With respect to a Secured Claim, "fair and equitable" means either (i) the Impaired secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred Cash payments at least equal to the allowed amount of its Claims with a present value as of the effective date of the plan at least equal to the value of such Creditor's interest in the property securing its Liens; (ii) property subject to the Lien of the Impaired secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of sale, and such Lien proceeds must be treated in accordance with clauses (i) and (iii) of this paragraph; or (iii) the Impaired secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

29.     With respect to an Unsecured Claim, "fair and equitable" means either (i) each Impaired Creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

30.     With respect to Interests, "fair and equitable" means either (i) each Impaired Interest receives or retains, on account of that Interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the Holder is entitled, any fixed redemption price to which the Holder is entitled, or the value of the Interest or (ii) the Holder of any Interest that is junior to the Interest of that Class will not receive or retain under the Plan, on account of that junior equity interest, any property.

31.     The Debtor believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class of Claims and Interests. In the event at least one

Class of Impaired Claims or Interests rejects or is deemed to have rejected the Plan, the Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims or Interests.

### 5. Conditions Precedent to Confirmation and Effectiveness of the Plan

32.     In addition to the requirements of the Code, Article X of the Plan contains certain conditions to Confirmation and effectiveness of the Plan.

## ARTICLE III. THE DEBTOR AND ITS BUSINESS

### A.     History of the Debtor

33.     The Debtor was founded in 1977 in Corsicana, Texas, as a pecan shelling, marketing, packaging, and distribution operation. The Debtor's customer base consisted of large, well-known consumer and commercial brands that historically provided the Debtor with reliable operations and cash flow year to year.

34.     The Debtor provided a range of different services to its customers relating to the sale of pecans. These services include the sizing, grading, shelling, sorting, and distribution of raw in-shell and shelled pecan products.

### B.     Financial Background

35.     The Debtor had two secured lenders, Truist and Hillcrest, and a number of unsecured creditors ranging from vendors to lenders to owners, including the Debtor's primary provider of in-shell pecans.

36.     Truist served as the Debtor's asset-based secured lender pursuant to a credit facility and provided the Debtor with operating capital to fund ordinary course expenditures such as inventory, labor costs, and other operational costs.

37.     Hillcrest served as the Debtor's secured lender with respect to real property assets and equipment.

38.     As of the Petition Date, the Debtor had outstanding obligations to Easterlin Pecan Company and Pecan Producers, Inc.—two of the Debtor's principal suppliers of in-shell pecans.

39.     Finally, the Debtor currently had obligations to insiders of the Debtor, including the Estate of George Martin, Collin Street Bakery, and Mary Martin Magers.

### C.     Events Leading to Bankruptcy

40.     The Debtor initiated this Case to address a severe cash flow tightening that almost eliminated the Debtor's ability to operate its business. From 2018 through 2021, market prices for pecans consistently dropped, affecting the company's profit margins and credit availability with Truist. The change in management precipitated by the unfortunate passing of the Debtor's co-founder and long-time leader also resulted in Truist declaring a default under its loan

documents. Finally, the Debtor's operations in the face of these difficulties resulted in the build-up of significant shelled pecan inventory that had to be stored in its on-site cold storage facilities.

41.      The combination of these factors caused the Debtor to gradually become unable to pay its debts as they became due.

42.      Prior to the Petition Date, the Debtor ran a two-year marketing process to sell the Debtor's assets or raise additional capital. These efforts did not result in a successful capital raise or a sale.

## ARTICLE IV. THE CHAPTER 11 CASE

### A.      Brief History of the Case

43.      On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Code. No request for the appointment of a trustee or examiner has been made as of the filing of this Disclosure Statement. No Unsecured Creditors Committee has been appointed in this Case as of the filing of this Disclosure Statement.

44.      In additional to typical administrative matters, the Debtor filed certain First Day motions to ensure the continuance of its operations post-petition. These First Day motions have been approved by the Court on a final basis.

45.      On Petition Date, the Debtor filed its *Motion for Entry of an Order (A) Authorizing the Sale of Subject Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interest, (B) Granting the Buyer the Protections Afforded to a Good Faith Purchaser, (C) Approving Buyer Protections in Connection with Sale of Asserts of the Debtor and (D) Granting Related Relief* [Docket No. 6] (the "**Sale Motion**"), In relation to the Sale Motion, the Debtor filed its *Debtor's Emergency Motion for an Interim and Final Order (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens on Debtor's Assets, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [Docket No. 9] (the "**DIP Motion**"), which was financing that the Debtor obtained in contemplation of its sale of substantially all of its assets.

46.      On February 22, 2023, the Debtor filed its *Amended Motion for Entry of an Order (A) Authorizing the Sale of Subject Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interest, (B) Granting the Buyer the Protections Afforded to a Good Faith Purchaser, (C) Approving Buyer Protections in Connection with Sale of Asserts of the Debtor and (D) Granting Related Relief* [Docket No. 88] (the "**Amended Sale Motion**").

47.      On March 9 2023, the Court entered the Sale Order. The sale closed on March 22, 2023.

**B.      The Debtor's Professionals**

48.     On February 20, 2023, the Debtor applied to the Court to employ Bonds Ellis Eppich Schafer Jones LLP ("**BEESJ**") as counsel [Docket No. 72]. The Court approved the employment of BEESJ on March 23, 2023, effective as of the Petition Date [Docket No. 171].

49.     On February 22, 2023, the Debtor applied to the Court to employ Brad Walker, LLC, d/b/a Riverbend Special Situations Group as the Debtor's Chief Restructuring Officer (the "**CRO**") [Docket No. 87]. The Court approved the employment of the CRO on March 23, 2023, effective as of the Petition Date [Docket No. 172].

50.     On March 1, 2023, the Debtor applied to the Court to employ JoAnn Means as special counsel to the Debtor ("**Ms. Means**") [Docket No. 108]. The Court approved the employment of Ms. Means on March 27, 2023, effective as of the Petition Date [Docket No. 176].

51.     No committee of unsecured creditors has been formed or appointed in this Case as of the filing of this Disclosure Statement. No financial advisors have been retained in this Case.

## ARTICLE V. THE PLAN

**A.      Introduction**

52.     A summary of the principal provisions of the Plan and the treatment of Classes of Allowed Claims and Allowed Interests is outlined below. The summary is entirely qualified by the Plan. This Disclosure Statement is only a summary of the terms of the Plan.

**B.      Classification in General**

53.      Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below and in Article III of the Plan in accordance with Sections 1122 and 1123(a)(1) of the Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**C.      Designation of Claims and Interests/Impairment**

54.     The following are the Classes of Claims and Interests designated under the Plan. In accordance with Section 1123(a)(1) of the Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified. No distribution shall be made on account of any Claim that is not Allowed.

55.     Classes of Claims against and Interests in the Debtor are designated as follows:

Class 1          Other Priority Claims

Class 2          Other Secured Claims

Class 3          Truist Secured Claim

Class 4          Hillcrest Secured Claim

Class 5          Unsecured Claims

Class 6          Equity Interests

**D.     Allowance and Treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims**

**1.   Administrative Claims**

56.     Except to the extent that a Holder of an Allowed Administrative Claim and the Debtor or the Liquidating Trust, as applicable, against which such Allowed Administrative Claim is asserted, agree to less favorable treatment for such Holder, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable after the Effective Date); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable after the Effective Date; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or Liquidating trust, as applicable; and (v) at such time and upon such terms as set forth in an order of the Court.

57.     Except for Professional Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Liquidating Trust no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Liquidating Trust and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Court.

58.     Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, the Liquidating Trust, or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Liquidating Trust or any action by the Court.

**2.  Professional Fee Claims**

(a)     <u>Final Fee Applications and Payment of Professional Fee Claims.</u>

59.     All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the Debtor or Liquidating Trust and the U.S. Trustee and their counsel no later than thirty (30) days after the Effective Date unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the U.S. Trustee, the Debtor, their counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. The Debtor shall pay Professional Fee Claims in Cash in the amount the Court allows by a Final Order.

(b)     <u>Post-Effective Date Fees and Expenses.</u>

60.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating trust shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation, incurred by the Liquidating Trust. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trust may employ and pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Court.

**3.  Priority Tax Claims.**

61.     Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code.

### E.    Allowance and Treatment of Classified Claims and Interests

62.    Claims and Interests are classified as set forth in Article III of the Plan and their respective treatment is described in Article IV of the Plan. A Claim or Interest shall be deemed classified within a particular class only to the extent that the Claim or Interest fits the description of that class. To the extent that any portion of a Claim or Interest does not fit the description of such class, but fits the description of a different class, the Claim or Interest shall be classified in such different class. A creditor may have a Claim that falls within one or more classes. Those Claims specified in Sections 507(a)(1), 507(a)(2), and 507(a)(8) of the Code and included within the definition of Class 1 have been so described therein for convenience only, and shall not be deemed classified for purposes of Section 1123(a)(1) of the Code.

#### 1.    Allowance and Treatment of Other Priority Claims (Class 1)

63.    This Class includes any Allowed Unsecured Claim entitled to priority status pursuant to Section 507(a) of the Code that is not (a) an Administrative Claim, (b) a Professional Compensation Claim, or (c) a Priority Unsecured Tax Claim.

64.    Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable after the Effective Date or (ii) if such Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order or as soon as reasonably practicable after such date. Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, one of the following treatments, in the sole discretion of the Debtor: (i) full payment in cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim in a manner that leaves such Claim Unimpaired. Claims in this Class are Unimpaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited. The Debtor does not believe that there will be any Allowed Class 1 Claims and, thus, the estimated recovery is $0.00.

#### 2.    Allowance and Treatment of Other Secured Claims (Class 2)

65.    This Class includes any Allowed Secured Claim that is not a Truist Secured Claim or Hillcrest Secured Claim. Other Secured Claims shall not include any such Claims secured by Liens that are avoidable, unperfected, subject to subordination, or otherwise unenforceable. The Debtor is unaware of any other Claims in this Class 2, other than the alleged tax Claim of Navarro County.

66.     Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtor or Liquidating Trust agree to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim, be paid cash in an amount equal to the Allowed amount of such Claim as determined in accordance with Section 506(a) of the Code on the Effective Date or as soon after the Effective Date as practicable, or receive the collateral securing its Allowed Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable.

67.     Any Holder of a Class 2 Claim may agree to any treatment of such Claim, which treatment may include preservation of such Holder's Lien; provided that such treatment shall not provide a return to such Holder, by reason of such Class 2 Claim, having a present value in excess of the amount of such Secured Claim. The Debtor does not believe that there will be any Allowed Class 2 Claims but has $346,586.65 in segregated funds by agreement with Navarro County to satisfy the Other Secured Claim of Navarro County if it is deemed allowed. These funds will be returned to the Buyer if not fully used.

### 3.   Allowance and Treatment of Truist Secured Claim (Class 3)

68.     This Class consists of the Secured Claim of Truist against the Debtor in accordance with the terms of the Sale Order. Truist shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Truist Secured Claim, receive the treatment set forth in the Sale Order. The estimated recovery for the Allowed Class 3 Claim is $5,665,000.00.

### 4.   Allowance and Treatment of Hillcrest Secured Claim (Class 4)

69.     This Class consists of the Secured Claim of Hillcrest against the Debtor in accordance with the terms of the Sale Order. Hillcrest shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Hillcrest Secured Claim, receive the treatment set forth in the Sale Order. The estimated recovery for the Allowed Class 4 Claim is $5,458,474.81.

### 5.   Allowance and Treatment of Unsecured Claims (Class 5)

70.     This Class consists of any Allowed Unsecured Claims against the Debtor. Except to the extent that a Holder of a Class 5 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, periodic pro rata distributions from the Liquidating Trust as beneficiaries of the Liquidating Trust. The estimated recovery for the Allowed Class 5 Claims is between $0.00 and an unknown amount.[3]

---

3 The recovery for a Holder of an Allowed Unsecured Claim is dependent upon the Liquidating Trustee's ability to monetize the Liquidating Trust Assets. Any attempt to estimate a recovery would be entirely speculative.

### 6. Allowance and Treatment of Equity Interests (Class 6)

71.     This Class consists of Holders of Interests in the Equity in the Debtor. The Holders of Interests shall not receive or retain any Property under this Plan.

72.     On the Effective Date, all Interests in the Debtor will be transferred to the Liquidating Trust.

## F.    Procedures for Resolving Contingent, Unliquidated and Disputed Claims

### 1. Claims Administration Responsibilities

73.     Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trust, with respect to all Claims shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses the Debtor had with respect to any Claims immediately prior to the Effective Date.

### 2. Estimation of Claims

74.     Before or after the Effective Date, the Debtor or Liquidating Trust, as applicable, may (but are not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Section 502(c) of the Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### 3. Adjustment to Claims without Objection

75.     Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trust without any further notice to or action, order, or approval of the Court.

### 4. Time to File Objections to Claims

76.     Except as otherwise specifically provided in the Plan, or as further ordered by the Court, any objections to Claims shall be filed on or before the later of (i) 180 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by a Final Order of the Court for objecting to such claims.

### 5. Disallowance of Claims

77.     Except as otherwise specifically provided in the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Code, shall be deemed Disallowed pursuant to Section 502(d) of the Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Court order with respect to these Claims has been entered. Except as provided in this Disclosure Statement or otherwise agreed, any and all Proofs of Claim Filed after the applicable Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

### 6. Amendments to Claims

78.     On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Court or the Liquidating Trust and any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Court or the Liquidating Trust to file or amend a Proof of Claim prior to the Claims Bar Date applicable to Governmental Units pursuant to Section 502(b)(9) of the Code.

### 7. No Distributions Pending Allowance

79.     If an objection to a Claim or portion of such Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8. Distributions After Allowance

80.     To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. No later than ten (10) days after the date on which an order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trust shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

## G.      Treatment of Executory Contracts and Unexpired Leases

### 1. Rejection of Executory Contracts Under the Plan

81.     On the Effective Date, except as otherwise provided in this Disclosure Statement, all Executory Contracts or Unexpired Leases (i) included in the Schedule of Rejected Contracts and Leases, (ii) not previously assumed by the Debtor by Final Order of the Court, or (iii) not included in a motion to assume pending on the Confirmation Date, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

82.     Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of Sections 365 and 1123 of the Code, other than any Executory Contracts and/or Unexpired Leases that: (i) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (ii) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (iii) are a contract, release, or other agreement or document entered into in connection with the Plan or the sale of the Debtor's assets pursuant to the Sale Order. Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan or the Schedule of Assumed Contracts and Leases pursuant to Sections 365(a) and 1123 of the Code. Except as otherwise specifically set forth in this Disclosure Statement, assumptions or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order. Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to alter, amend, modify, or supplement the Schedule of Rejected Contracts and Leases at any time through and including the Effective Date

## 2.  Claims Based on Rejection of Executory Contracts or Unexpired Leases

83.     Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or Confirmation Order, if any, must be filed with the Court within thirty (30) days after the later of (i) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented but only with respect to any Executory Contract or Unexpired Lease that is affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or Liquidating Trust, the Estate, or their property without the need for any objection by the Liquidating Trust or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as Unsecured Claims and shall be treated in accordance with § 4.6 of the Plan.

## 3.  Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases

84.     Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor

expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

### 4. Insurance Policies

85.     Each of the Debtor's insurance policies and any agreements, documents, or instruments relating to such insurance policy, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (ii) such insurance policies and any agreements, documents, or instruments relating to such insurance policy shall revest in the Liquidating Trust.

### 5. Reservation of Rights

86.     Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Contracts and Leases or Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Trust has any liability such Executory Contract or Unexpired Lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or Liquidating Trust, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

### 6. Nonoccurrence of Effective Date

87.     In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to Section 365(d)(4) of the Code.

### 7. Contracts and Leases Entered into After the Petition Date

88.     Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Liquidating Trust in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## H.    Plan Supplement

89.     **In addition to considering the Plan and Disclosure Statement, Creditors and Interest Holders entitled to vote on the Plan should also carefully consider the Plan Supplement and documents contained in the Plan Supplement, which will be filed with the Court no later than five (5) days before the Voting Deadline or such later date as may be approved by the Court. The Plan Supplement will include, without limitation, the following documents, as applicable (i) Schedule of Assumed Contracts and Leases; (ii) the Schedule of Rejected Contracts and Leases; (iii) the Schedule of Retained Causes of Action; (iv)**

**Liquidating Trust Agreement; (v) the identity of the Liquidating Trustee for the Liquidating Trust, to the extent known at the time of the filing of the Plan Supplement; and (vi) related documents and information (each as may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan and in accordance with the Code and Bankruptcy Rules).**

## ARTICLE VI. MEANS FOR EXECUTION OF THE PLAN

### A.    Formation of Liquidating Trust

90.    On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing Causes of Action (ii) administering and pursuing the Liquidating Trust Assets, (iii) resolving all Disputed Claims, (iv) making all distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement, and (v) winding up the Debtor following the Effective Date. The Liquidating Trust Agreement is incorporated in this Disclosure Statement in full and is made a part of this Plan as if set forth in this Disclosure Statement.

91.    Upon execution of the Liquidating Trust Agreement, the Debtor and Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided that, prior to the Effective Date, the Debtor or Liquidating Trustee, as applicable, may act as organizers of the Liquidating Trust and take such steps in furtherance of the Liquidating Trust as may be necessary, useful, or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall have authority to incur indebtedness in furtherance of its objectives.

92.    It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. All Assets transferred to the Liquidating Trust on the Effective Date shall be deemed for federal income tax purposes to have been distributed by the Debtor on a pro rata basis to Class 5 Holders of Allowed Unsecured Claims and then contributed by such Holders to the Liquidating Trust in exchange for the Liquidating Trust Interests. All Class 5 Holders of Allowed Unsecured Claims have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The beneficiaries under the Liquidating Trust will be treated as the deemed owners of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

### B.    Assets of the Liquidating Trust

93.    On the Effective Date, or as soon as reasonably practicable after the Effective Date, the Debtor will transfer and assign to the Liquidating Trust the Liquidating Trust Assets,

which shall be deemed vested in the Liquidating Trust. For the avoidance of doubt, the Debtor will not transfer any tax attributes it has to the Liquidating Trust making such tax attributes Liquidating Trust Assets. The Debtor will transfer only proceeds from the sale of any tax attributes if and when the Debtor sells such tax attributes. On and after the Effective Date, the Liquidating Trustee shall have discretion with respect to the timing of the transfers of Liquidating Trust Assets. The Liquidating Trust will hold and administer, among other things, (i) all of the Debtor's cash in bank account(s) and (ii) the Disputed Claims Reserve.

## C.      Rights and Powers of the Liquidating Trust and the Liquidating Trustee

94.      The Liquidating Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Code and Rule 2004 of the Bankruptcy Rules, including without limitation, the right to (i) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and Liquidating Trust Agreement; (ii) prosecute, settle, abandon, or compromise any Causes of Action without the need of Court approval; (iii) make distributions contemplated by the Plan and Liquidating Trust Agreement, (iv) establish and administer any necessary reserves for Disputed Claims that may be required; (v) object to Disputed Claims and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Court such objections; (vi) employ and compensate professionals (including professionals previously retained by the Debtor), provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets without the need for Court approval; and (vii) file all federal, state and local tax returns if necessary.

95.      On and after the Effective Date, the Liquidating Trust shall assume any outstanding responsibility of the Debtor under the Plan and shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. The actions to implement the Plan may include: (i) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; and (iii) the filing of appropriate certificates or articles pursuant to applicable state or provincial law. The Confirmation Order shall, and shall be deemed to, pursuant to Sections 363 and 1123 of the Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

96.      The Liquidating Trustee shall have the full authority to take any steps necessary to administer the Liquidating Trust Agreement, including without limitation, the duty and obligation to liquidate Liquidating Trust Assets, to make distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Causes of Action all in accordance with the Liquidating Trust Agreement.

97.      On or before the Effective Date, the Debtor shall transfer to the Liquidating Trustee the Debtor's evidentiary privileges, including the attorney/client privilege, solely as they

relate to Causes of Action. The Plan shall be considered a motion pursuant to Sections 105, 363, and 365 of the Code for such relief. Upon such transfer, the Debtor and the Estate shall have no other further rights or obligations with respect to such transfers.

98.     On the Effective Date, each Class 5 Holder of an Allowed Unsecured Claim shall, by operation of the Plan, receive its pro rata share of the Liquidating Trust Interests. Liquidating Trust Interests shall be reserved for Class 5 Holders of Disputed Unsecured Claims and issued by the Liquidating Trust to, and held by the Liquidating Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Disputed Unsecured Claims. No other entity, shall have any interest, legal, beneficial, or otherwise, in the Liquidating Trust, its assets or causes of action upon their assignment and Transfer to the Liquidating Trust.

99.     In accordance with § 5.2 of the Plan, the Liquidating Trust Interests shall be uncertificated and shall be non-transferable except upon death of the Holder or by operation of law. Holders of Liquidating Trust Interests, in such capacity, shall have no voting rights with respect to such Interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to extend such term conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or later amended).

**D.    Control of the D&O Causes of Action and D&O Insurance Recoveries.**

100.    The right to control the D&O Causes of Action and all D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof, shall be vested in the Liquidating Trust on and after the Effective Date. Notwithstanding the foregoing, the Debtor shall cooperate with the Liquidating Trustee in pursuing the D&O Causes of Action and the D&O Liability Insurance Policies through such means, and shall provide reasonable access to personnel and books and records of the Debtor relating to the D&O Causes of Action and D&O Liability Insurance Policies to representatives of the Liquidating Trust, to enable the Liquidating Trustee to perform the Liquidating Trustee's tasks under the Liquidating Trust Agreement and the Plan. Nothing in this paragraph nor the Plan limits, excuses, or in any way affects or impairs any coverage to which the current and/or former officers and directors are entitled to with respect to any and all D&O Liability Insurance Policies or other applicable insurance policies of the Debtor.

**E.    Appointment of a Liquidating Trustee.**

101.    The initial Liquidating Trustee shall be Daniel Sherman. The appointment of the Liquidating Trustee shall be approved by the Confirmation Order and such appointment shall be effective on the Effective Date. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Liquidating Trust Agreement.

102.    The Liquidating Trustee shall serve pursuant to the terms of the Liquidating Trust Agreement and Plan. Any successor Liquidating Trustee shall be designated by the previous Liquidating Trustee or Court.

103.    The Liquidating Trustee and his/her professionals shall be exculpated and indemnified pursuant to and in accordance with the terms of the Plan and Liquidating Trust Agreement.

**F.      Liquidating Trust Distributions**

104.    <u>Interim Distributions.</u> The Liquidating Trustee may make interim distributions: (i) to Holders of the Liquidating Trust Interests solely in accordance with this Plan and the Liquidating Trust Agreement and (ii) from the Disputed Claims Reserve.

105.    <u>Final Distributions.</u> The Liquidating Trust shall be dissolved and its affairs wound up and the Liquidating Trustee shall make the final distributions, upon the earlier of (i) the date which is five (5) years after the Effective Date and (ii) that date when, (A) in the reasonable judgment of the Liquidating Trustee, substantially all of the Liquidating Trust Assets have been liquidated and there are no substantial potential sources of additional cash for distribution; and (B) there remain no substantial Disputed Unsecured Claims. Notwithstanding the foregoing, on or prior to a date not less than three (3) months prior to such termination, the Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for one or more finite terms based upon the particular facts and circumstances at that time, if an extension is necessary to the liquidating purpose of the Liquidating Trust. The date on which the Liquidating Trustee determines that all obligations under the Plan and the Liquidating Trust Agreement have been satisfied is referred to as the "**Trust Termination Date**". On the Trust Termination Date, the Liquidating Trustee shall promptly request the Court enter an order closing the Cases (unless this has already been done).

106.    After final distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining cash is less than $1,000, the Liquidating Trustee, may donate such amount to a charity.

**G.      Sources of Plan Distributions**

107.    Distributions under the Plan shall be funded with the Liquidating Trust Assets.

**H.      Cancellation of Existing Securities and Agreements**

108.    On the Effective Date, all notes, instruments, and other documents evidencing Claims, including credit agreements and indentures, shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, except the rights provided for pursuant to the Plan.

**I.      Corporate Action**

109.    On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtor shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan). The

authorizations and approvals contemplated by Article V of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**J.    Effectuating Documents; Further Transactions**

110.    On and after the Effective Date, the Liquidating Trust and/or the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**K.    Section 1146 Exemption**

111.    To the fullest extent permitted by Section 1146(a) of the Code, any transfers (whether from the Debtor to the Liquidating Trust or to any other Person) of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity interest, or other interest in the Debtor or the Liquidating trust; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(c) of the Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**L.    Liability Insurance**

112.    On or before the Effective Date, the Debtor shall obtain liability insurance coverage for the Liquidating Trust following the Effective Date.

**M.    Retained Causes of Action**

113.    Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Code, the Liquidating Trust shall retain and shall have the exclusive

right, authority, and discretion to (without further order of the Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtor or the Estate may hold against any Entity, whether arising before or after the Petition Date. The Debtor reserves and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Case.

114.    Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Court, the Debtor expressly reserves such Cause of Action (including any counterclaims) for later adjudication by the Liquidating Trust. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action (including counterclaims) by virtue of Confirmation of the Plan

**N.     Settlement, Releases, Exculpation, Injunctions, and Related Provisions**

**1.   Compromise and Settlement**

115.    Pursuant to Section 1123 of the Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under Section 1123 of the Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and are fair, equitable, and within the range of reasonableness. The provisions of the Plan are mutually dependent and non-severable.

**2.   Release of Liens**

116.    **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTOR ELECTS TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THE PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATE SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE**

LIQUIDATING TRUST AND ITS SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE LIQUIDATING TRUST, SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTOR (INCLUDING ANY CASH COLLATERAL AND POSSESSORY COLLATERAL) HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE LIQUIDATING TRUST TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL, OR LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.

117. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTOR ELECTS TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THE PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATE SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE DEBTOR AND ITS SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE DEBTOR OR LIQUIDATING TRUST, SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTOR HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE DEBTOR OR THE LIQUIDATING TRUST TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL, OR LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.

118. WITHOUT LIMITING THE AUTOMATIC RELEASE PROVISIONS OF THE IMMEDIATELY PRECEDING PARAGRAPH: (i) EXCEPT AS OTHERWISE PROVIDED IN ARTICLE IV OF THE PLAN, NO OTHER DISTRIBUTION SHALL BE MADE TO OR ON BEHALF OF ANY CLAIM HOLDER UNLESS AND UNTIL SUCH HOLDER EXECUTES AND DELIVERS TO THE DEBTOR OR LIQUIDATING TRUST

SUCH RELEASE OF LIENS OR OTHERWISE TURNS OVER AND RELEASES SUCH CASH, PLEDGE, OR OTHER POSSESSORY LIENS; AND (ii) ANY SUCH HOLDER THAT FAILS TO EXECUTE AND DELIVER SUCH RELEASE OF LIENS WITHIN 180 DAYS OF THE EFFECTIVE DATE SHALL BE DEEMED TO HAVE NO CLAIM AGAINST THE DEBTOR OR ITS ASSETS OR PROPERTY IN RESPECT OF SUCH CLAIM AND SHALL NOT PARTICIPATE IN ANY DISTRIBUTION.

3. **Exculpation**

119.    **THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, FOR ANY ACT, EVENT, OR OMISSION FROM THE PETITION DATE TO THE EFFECTIVE DATE IN CONNECTION WITH OR ARISING OUT OF THE CASE, THE CONFIRMATION OF THE PLAN, CONSUMMATION OF THE PLAN, ADMINISTRATION OF THE PLAN, OR ASSETS AND PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN (INCLUDING UNCLAIMED PROPERTY UNDER THE PLAN), UNLESS SUCH ENTITY'S ACTION IS DETERMINED AS (i) BAD FAITH; (ii) ACTUAL FRAUD; (iii) WILLFUL MISCONDUCT; OR (iv) GROSS NEGLIGENCE, IN EACH CASE BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. EACH ENTITY MAY REASONABLY RELY UPON THE OPINIONS OF ITS COUNSEL, CERTIFIED PUBLIC ACCOUNTANTS, AND OTHER EXPERTS OR PROFESSIONALS. FOR THE AVOIDANCE OF DOUBT, THE EXCULPATION IN THE PLAN SHALL NOT APPLY TO ANY ACTIONS TAKEN PRIOR TO THE PETITION DATE. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING THE PARTIES EXCULPATED IN PLAN FROM LIABILITY. NOTHING IN THIS SECTION SHALL BE DEEMED TO RELEASE OR EXCULPATE ANY PARTY FROM ANY CAUSES OF ACTION OR D&O CAUSES OF ACTION.**

4. **Injunction**

120.    **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR ANY OTHER ORDER ENTERED PREVIOUSLY BY THE COURT WITH RESPECT TO A COMPROMISE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, WITHOUT FIRST SEEKING AND BEING GRANTED LEAVE FROM THE COURT, FROM (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, LIQUDATING TRUST, LIQUIDATING TRUST ASSETS, OR D&O LIABILITY INSURANCE POLICIES WITH RESPECT TO ANY SUCH CLAIM OR INTEREST; (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, LIQUDATING TRUST, LIQUIDATING TRUST ASSETS, OR D&O LIABILITY INSURANCE POLICIES ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; (iii) CREATING, PERFECTING,**

**OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE LIQUDATING TRUST, OR ITS ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR, THE LIQUDATING TRUST, OR ITS ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST. THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF THE DEBTOR AND LIQUDATING TRUST AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.**

5. **Protections Against Discriminatory Treatment**

121.    Consistent with Section 525 of the Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidating Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidating Trust, or another Entity with whom the Liquidating Trust has been associated, solely because the Debtor has been a debtor under Chapter 11 of the Code, has been insolvent before the commencement of the Case (or during the Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Case.

6. **Reimbursement or Contribution**

122.    If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding Section 502(j) of the Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**O.    Retention of Jurisdiction**

123.    To the fullest extent permitted by applicable law, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Case and the Plan pursuant to Sections 105(a) and 1142 of the Code, including jurisdiction with respect to the matters more fully described in Article XI of the Plan.

**P.    Modifications and Amendments, Revocation, or Withdrawal of the Plan**

1. **Modification and Amendments**

124.    Subject to the limitations contained in this Disclosure Statement, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to

the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, Disclosure Statement, or Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article VII of the Plan.

## 2. Effect of Confirmation on Modifications

125.    Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation of the Plan and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## 3. Revocation or Withdrawal of Plan

126.    The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or Effective Date and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE VII. LEGAL PROCEEDINGS

127.    The following is a summary of material litigation involving the Debtor that existed as of the Petition Date, including potential Claims and Causes of Action that arose as a result of the filing of the Case.

## A.    NOC, Inc. v. Navarro County Appraisal District

128.    This is a lawsuit by the Debtor against the Navarro County Appraisal District, where the Debtor is challenging the value of certain property used to determine the Debtor's 2022 tax liability to Navarro County with respect to ad valorem taxes. This action was removed from the Navarro County District Court to the Court after the Petition Date. The Debtor filed a related action in the Court, objecting to Navarro County's proof of claim.

## B.    SNRA Commodities, Inc. v. Navarro Pecan Company, Inc.

129.    This is a breach of contract/quantum meruit action pending in the El Paso County Court at Law 6. The Debtor has asserted counterclaims against SNRA Commodities, Inc., in connection with that litigation.

## C.    Recovery on Preference Actions and Other Avoidance Actions

130.    During the ninety (90) days immediately preceding the Petition Date (the "**Preference Period**"), while presumed insolvent, the Debtor made various payments and other transfers to Creditors on account of antecedent debts. Some of those payments may be subject to avoidance and recovery as preferential and/or fraudulent transfers pursuant to Sections 329, 544, 545, 548, 549, 550, and 553(b) of the Code.

131.    The Debtor continues to investigate Causes of Action it may have against third parties. The Debtor has not completed its investigation of potential objections to Claims and recoveries on Causes of Action and there may be additional Claims and Causes of Action possessed by the Debtor.

132.    **OTHER THAN AS EXPRESSLY SET FORTH IN ARTICLE IX OF THE PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION, AVOIDANCE ACTIONS, OR OBJECTIONS TO PROOFS OF CLAIM. ALL SUCH RIGHTS ARE SPECIFICALLY PRESERVED UNLESS SPECIFICALLY RELEASED UNDER THE PLAN.**

**D.      Retained Causes of Action**

133.    Creditors and other parties in interest should understand that certain legal rights, Claims, and causes of action the Debtor may have against them, if any exist, are retained under the Plan for prosecution by the Liquidating Trust unless expressly released under the Plan.

## ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Timing and Calculation of Amounts to Be Distributed**

134.    Unless otherwise provided in the Plan and/or the Liquidating Trust Agreement, on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.      Record Date for Distributions**

135.    As of the close of business on the Distribution Record Date, the register for each of the Classes of Claims as maintained by the Debtor shall be closed, and the Debtor, or its agents shall not be required to make any further changes in the record Holders of any of the Claims or Interests. The Debtor or Liquidating Trust shall have no obligation to recognize any

transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtor or Liquidating Trust shall be entitled to recognize and deal for all purposes under this Disclosure Statement only with those record Holders stated on the Debtor's transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 2. Delivery of Distributions in General

136.    Except as otherwise provided in this Disclosure Statement, the Debtor or Liquidating Trust shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Liquidating Trust; provided further, however, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

### 3. Undeliverable Distributions and Unclaimed Property

137.    In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidating Trust has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property shall be discharged and forever barred.

### 4. De Minimis Distributions as to Allowed Class 5 General Unsecured Claims

138.    In order to avoid the disproportionate expense and inconvenience associated with making a de minimis distribution to the Holder of an Allowed Unsecured Claim, the Liquidating Trustee shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder which is in the amount of less than or equal to $10.00. At the time of any final distribution to the Holders of Allowed Class 5 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregate amount is $10.01 or more, the Liquidating Trustee shall make a final distribution to such Holder equal to such aggregated amount.

### 5. Manner of Payment

139.    All distributions to the Holders of Allowed Claims under the Plan shall be made by the Liquidating Trust. At the option of the Liquidating Trust, any Cash payment to be made under this Disclosure Statement may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### C. Compliance with Tax Requirements

140.    In connection with the Plan, to the extent applicable, the Liquidating Trust shall

comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trust shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms its believes are reasonable and appropriate. The Liquidating Trust reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## D.      No Post-Petition Interest on Claims

141.    Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any pre-petition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

## E.      Setoffs and Recoupment

142.    Except as expressly provided in the Plan, the Liquidating Trust may, pursuant to Section 553 of the Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Liquidating Trust and Holder of Allowed Claim or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim under this Disclosure Statement shall constitute a waiver or release by the Liquidating trust or its successor of any and all claims, rights, and Causes of Action that such Liquidating trust or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtor be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtor or Liquidating Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice of such recoupment in writing to the Debtor in accordance with § 13.8 of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## F.      Claims Paid or Payable by Third Parties

### 1.   Claims Paid by Third Parties

143.    The Debtor or Liquidating Trust, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Liquidating Trust. Subject to the last sentence of this paragraph, to the extent a Holder of a

Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Liquidating Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt of such payment, repay or return the distribution to the Liquidating Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

### 2. Claims Payable by Third Parties

144.    No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

### 3. Applicability of Insurance Policies

145.    Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE IX. ALTERNATIVES TO THE PLAN

### A.      Chapter 7 Liquidation

146.    As a condition to Confirmation of a plan, Section 1129(a)(7)(A)(ii) of the Code requires that each impaired class of claims or interests must receive or retain at least the amount of value it would receive if the debtor were liquidated under Chapter 7 of the Code on the effective date of the plan. The Debtor believes that, under the proposed terms of the Plan, all holders of Impaired Claims and Interests will receive property with a value not less than the value such holders would receive in a Chapter 7 liquidation of the Debtor's assets. The Debtor's belief is based primarily on consideration of the effect that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of Impaired Claims, including (i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and professional advisors to the trustee, (ii) the substantial increases in claims, and (iii) the substantial delay in distributions to holders of Impaired Claims and Interests that will likely ensue in a Chapter 7 liquidation. Relatedly, liquidation under Chapter 7 of the Code would likely entail the appointment of a trustee having no experience or knowledge of the Debtor's businesses, its records, or assets. A substantial period of education would be required in order for any Chapter 7 trustee to effectively wind up the case. Also, in the event litigation

were to prove necessary, the Chapter 7 trustee would likely be in an inferior position to prosecute such actions without prior knowledge regarding the Debtor's business and particularly if there were a lack of funding to support such efforts.

147.   In addition, the Debtor believes that creditors will receive more under the Plan than they would in a chapter 7 liquidation because the Liquidating Trust Funds of $100,000.00 would revert to the Buyer if the Case is converted to a case under Chapter 7 of the Code.

**B.     Dismissal**

148.   If dismissal of the Case were to occur, the Debtor would no longer benefit from the protections of the Court and the applicable provisions of the Code. In the event of dismissal, it is likely that many Holders of Unsecured Claims would not receive any payment on their Claims. Dismissal would force a race among Creditors to take over and dispose of the Debtor's available assets. Even the most diligent Holders of Unsecured Claims would be unlikely to obtain a recovery on their Claims similar to the recovery proposed under the Plan, and many Holders of Unsecured Claims would likely not obtain any recovery on their Claims.

## ARTICLE X. FEASIBILITY

**A.     Financial Projections and Feasibility**

149.   Pursuant to Section 1129(a)(11) of the Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan, unless such liquidation or reorganization is proposed under the Plan. Because the Plan liquidates all the Debtor's assets, the Plan complies with this provision. Further, distributions from the Liquidating Trust do not depend on future operations of the Debtor; thus, the Debtor reasonably believes the Liquidating Trustee and Unsecured Creditor Trustee will be able to make all such distributions under the Plan. Therefore, the Debtor believes the Plan is feasible and is not likely to be followed by subsequent liquidation or the need for further financial reorganization of the Debtor.

## ARTICLE XI.  CERTAIN RISK FACTORS TO BE CONSIDERED

150.   The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each Holder of a Claim or Interest of the Plan and this Disclosure Statement as a whole with such Holder's own advisors.

**A.     Bankruptcy Risks**

151.   There can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Proponents will be able to use the cramdown provisions of the Code for confirmation of the Plan. The Debtor has made concerted efforts to propose a Plan that would be accepted by a sufficient number of Claimants and a sufficient amount of Claims to confirm the Plan.

**B.     Confirmation Risks**

152.   The following specific risks exist with respect to confirmation of the Plan:

- Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time.

- Since the Debtor may be seeking to obtain approval of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay confirmation.

## C.    Conditions Precedent

153.    Confirmation of the Plan and occurrence of the Effective Date are subject to certain conditions precedent that may not occur. The Debtor, however, is working diligently with all parties in interest to ensure that all conditions precedent are satisfied.

## ARTICLE XII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

154.    THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. MOREOVER, MANY OF THE INTERNAL REVENUE CODE PROVISIONS DEALING WITH THE FEDERAL INCOME TAX ISSUES ARISING FROM THE PLAN HAVE BEEN THE SUBJECT OF RECENT LEGISLATION AND, AS A RESULT, MAY BE SUBJECT TO AS YET UNKNOWN ADMINISTRATIVE OR JUDICIAL INTERPRETATIONS. THE DEBTOR HAS NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR AN OPINION OF COUNSEL WITH RESPECT TO THESE MATTERS. ACCORDINGLY, NO ASSURANCE CAN BE GIVEN AS TO THE INTERPRETATION THAT THE IRS WILL ADOPT. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND OTHER TAX LAWS.

## ARTICLE XIII. CONCLUSION

155.    This Disclosure Statement provides information regarding the Debtor's bankruptcy and the potential benefits that might accrue to Holders of Claims against and Interests in the Debtor under the Plan, as proposed. The Plan is the result of extensive efforts by the Debtor and its advisors to provide the Holders of Allowed Claims with a meaningful dividend and to preserve the Interests. The Debtor believes that the Plan is feasible and will provide each Holder of a Claim or Interest against the Debtor with an opportunity to receive greater benefits than those that would be received by any other alternative. The Debtor, therefore, urges interested parties to vote in favor of the Plan.

DATED: June 28, 2023


*/s/ Joshua N. Eppich*

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich
Texas Bar I.D. No. 24050567
C. Joshua Osborne
Texas Bar I.D. No. 24065856
Bryan C. Assink
Texas Bar I.D. No. 24089009
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: c.joshosborne@bondsellis.com
Email: bryan.assink@bondsellis.com

**COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**